Samuel R. Maizel (CA Bar No. 189301)
Scotta E. McFarland (CA Bar No. 165391)
Mary D. Lane (CA Bar No. 071592)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail: smaizel@pszjlaw.com
smcfarland@pszjlaw.com
mlane@pszjlaw.com

[Proposed] Attorneys for Debtor and Debtor in Possession,
Victor Valley Community Hospital

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

In re:

VICTOR VALLEY COMMUNITY HOSPITAL,[1]

Debtor.

Case No.: 6:10-bk-39537-CB

Chapter 11

**NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION OF DEBTOR FOR ORDER LIMITING SCOPE OF NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[The concurrently filed Declaration of Edward T. Matthews in Support of the Emergency Motions]

Date: TBD
Time: TBD
Place: 3420 Twelfth Street
Courtroom 303
Riverside, CA 92501-3819
Judge: Honorable Catherine E. Bauer

[1] The Debtor is a California nonprofit public benefit corporation, Fed. Tax I.D. No. 95-2475762. The Debtor's address is 15248 Eleventh Street Victorville, CA 92395.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY JUDGE, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, ANY ALLEGED SECURED CREDITORS, PARTIES REQUESTING SPECIAL NOTICE AND THE OFFICE OF THE UNITED STATES TRUSTEE,:**

**PLEASE TAKE NOTICE** that the above-captioned debtor and debtor in possession (the "Debtor") hereby moves the Court for entry of an order limiting the scope of notice of certain matters as set forth herein (the "Motion"). By this Motion, the Debtor seeks, pursuant to Rules 2002(i), 2002(m), 4001, 6004, 6006, 6007, 9006, 9007, 9013, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), an order authorizing the Debtor to limit notice of the Limited Notice Matters (as defined in the Memorandum of Points and Authorities) in this chapter 11 case (the "Case") to the following parties: (1) the Office of the United States Trustee, (2) the creditors appearing on the list filed by the Debtor in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") unless and until an official committee of unsecured creditors (the "Committee") is appointed, then in that event, to counsel of the Committee, (3) parties that file with the Court and serve upon the Debtor requests for notice of all matters in accordance with Bankruptcy Rule 2002(i), (4) any alleged secured creditors, and (5) any party with a pecuniary interest in the subject matter of the particular Limited Notice Matter or its counsel. If the relief requested herein is granted, the burden, complication, delay and cost to the Debtor's estate that is associated with administering this case and providing notice of the proceedings in this case to hundreds of parties would be dramatically reduced.

**PLEASE TAKE FURTHER NOTICE** that because the Debtor is concurrently with this Motion filing other motions seeking relief in connection with other matters and will in all likelihood file various other motions during the first days of this Case, the Debtor, pursuant to Local Bankruptcy Rule 2081-1(a)(1),[2] requests that this Motion be heard on an emergency basis. Indeed, Local Bankruptcy Rule 2081(a)(1) specifically authorizes the Court to hear this Motion on an emergency basis. Granting the relief requested in this Motion on an emergency basis will benefit the Estate immediately by saving the Debtor the substantial costs of serving the various notices and

[2] Pursuant to Local Bankruptcy Rule 9075-1(a)(3), no separate motion for an expedited hearing is required.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

motions that will be filed in the beginning of this chapter 11 case on the many parties who will view such service as a waste of the Debtor's assets.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice and Motion, the Notice of Emergency Motions that will be filed and served upon obtaining a hearing date for the Debtor's "First Day Motions," the attached Memorandum of Points and Authorities, the Declaration of Edward T. Matthews in Support of the Emergency Motions filed concurrently herewith, the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion. In addition, the Debtor requests that the Court take judicial notice of all documents filed with the Court in this case.

**PLEASE TAKE FURTHER NOTICE** that any opposition or objection to the Motion must be filed with the Court and served on proposed counsel for the Debtor at the above address any time before the hearing or may be presented at the hearing on the Motion. You will receive separate notice of the date and time of the hearing. Your failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.

**PLEASE TAKE FURTHER NOTICE** that the Debtor will serve this Notice and Motion and the attached Memorandum of Points and Authorities, and the Declaration, on the Limited Service List (as defined in the Memorandum of Points and Authorities) in the manner forth in the Memorandum of Points and Authorities. To the extent necessary, the Debtor requests that the Court waive compliance with Local Bankruptcy Rule 9075-1(a)(5) and approve service (in addition to the means of service set forth in such Local Bankruptcy Rule) by overnight delivery. In the event that the Court grants the relief requested by the Motion, the Debtor shall provide notice of the entry of the order granting such relief upon each of the foregoing parties and any other parties in interest as the Court directs. The Debtor submits that such notice is sufficient and that no other or further notice be given.

**WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be advanced at or prior to the hearing on this Motion, the Debtor respectfully requests that this Court enter an order (1) limiting the scope and manner of notice as set forth herein and in the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Memorandum of Points and Authorities attached hereto, and (2) granting such other and further

relief as is just and proper under the circumstances.

Dated:      September __, 2010            PACHULSKI STANG ZIEHL & JONES LLP

By      /s/ *Samuel R. Maizel*
                                                         Samuel R. Maizel
                                                         [Proposed] Attorneys for Victor Valley
                                                         Community Hospital, Debtor and Debtor in
                                                         Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 1
A. Jurisdiction and Venue ..... 1
B. General Background ..... 1
C. General Description of the Debtor ..... 1
D. The Debtor's Physical Plant ..... 2
E. The Debtor's Staff ..... 2
F. The Debtor's Services ..... 2
G. The Debtor's Management ..... 3
H. The Debtor's Revenues ..... 4
I. The Chapter 11 Filing ..... 5
III. ARGUMENT ..... 7
A. Proposed Limited Notice ..... 7
B. The Court Has Authority to Limit the Scope of Notice ..... 8
C. Proposed Notice Procedures ..... 8
1. Service of Limited Notice Matters that Are Not Emergency or Expedited Motions ..... 9
2. Service of Limited Notice Matters that Require Emergency or Expedited Relief ..... 9
D. Service of this Motion ..... 10
IV. CONCLUSION ..... 11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## TABLE OF AUTHORITIES

Page

**Statutes**

11 U.S.C. § 1102 .......... 8
11 U.S.C. § 363 .......... 7
28 U.S.C. § 1334 .......... 1
28 U.S.C. § 1408 .......... 1
28 U.S.C. § 1409 .......... 1
28 U.S.C. § 157 .......... 1
28 U.S.C. § 157(b)(2) .......... 1
Fed. R. Bankr. Proc. 2019(a) .......... 7
Fed. R. Bankr. Proc. 2019(b) .......... 7
Fed. R. Bankr. Proc. 4001(a) .......... 7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Debtor hereby requests that this Court approve a limited notice procedure. Such a procedure is necessary and appropriate because the Debtor's creditor matrix in this Case exceeds 6,000 parties and the Debtor anticipates that numerous creditors will assert claims against the estate. Requiring notice to, and service upon, so many persons or entities would substantially increase the cost and administrative burden to the Debtor and its estate and diminish the assets ultimately available for creditors without conferring any meaningful benefit on the Debtor's estate. The Debtor submits that the proposed limited scope of notice is necessary to avoid the administrative costs of serving notice of all pleadings on hundreds of parties while simultaneously assuring that the interested parties in these cases receive proper and sufficient notice of all matters

## II.

## STATEMENT OF FACTS

### A. Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### B. General Background

On September 13, 2010 (the "Petition Date"), the debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manages its affairs as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in this chapter 11 case (the "Case").

### C. General Description of the Debtor

The Debtor, a California nonprofit public benefit corporation, operates the Victor Valley Community Hospital (the "Debtor" or the "Hospital"). The Debtor was founded in 1967 and is the only non-profit community hospital in the California High Desert, a service area that includes the

communities of Adelanto, Apple Valley, Hesperia and Victorville, serving a population of over 300,000 people. The High Desert communities served by the Debtor are culturally and ethnically diverse. They also are economically depressed, and suffer under unemployment rates that are higher than 20%. The Debtor, therefore, serves a high volume of medically under served and indigent patients and has been designated as a Disproportionate Share Hospital. As a result of this high volume of indigent patients, millions of dollars worth of the Debtor's services were expended on charity care in 2009, and, with a worsening economy and growing unemployment, the amount in uncompensated, charity care will increase significantly in 2010.

**D. The Debtor's Physical Plant**

The Hospital is located at 15248 Eleventh Street, Victorville, California 92392. The facility was designed and constructed as an acute care hospital, and over the years it has been renovated and expanded to accommodate the needs of its patients and the communities it serves. Originally the facility was operated as a 115 bed facility, but the capacity was reduced in the mid-2000s to approximately 106 beds, and subsequently further reduced to its current 101 bed capacity. The Debtor owns the main, two-story, hospital building and its adjacent modular office complex which houses its administrative offices. The Debtor also leases two other facilities: (a) the Women's Center and Outpatient Imaging facility, along with the Debtor's human resources department, at 15203 Eleventh Street in Victorville, and (b) the Education Center, at 15366 Eleventh Street, Suite R, in Victorville.

**E. The Debtor's Staff**

The Hospital is currently staffed to operate approximately 65 beds on a normal day, although it has access to visiting nurse registries, which allow it to quickly increase its staff to meet patient needs. Approximately 257 doctors from the local community have privileges at the Hospital. As of the Petition Date, the Debtor employed approximately 572 people. Of this, approximately 160 are nurses. The rest include, but are not limited to, office staff, technicians, maintenance staff, IT staff, human resources staff, and Quality Assurance staff.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**F. The Debtor's Services**

As an acute care facility, the Debtor provides a full range of inpatient and outpatient specialty services, including, but not limited to, basic 24-hour emergency room services, surgical services, pediatric services, operating room services, physical therapy, respiratory therapy, outpatient ambulatory services, catheterization laboratory, diagnostic services, women's health center and outpatient imaging services, laboratory and pathology services, social and Medi-Cal eligibility services, physician referral service, and community wellness and education programs. The Debtor treats approximately 2,900 patients per month in the Emergency Room, of which approximately 250 are eventually admitted to the Hospital. Annually, the Debtor has approximately 6,600 patients admitted to the Hospital, not including newborns. Doctors working in the Hospital perform approximately 2,500 out-patient surgeries and approximately 2,000 in-patient surgeries, and deliver approximately 1,400 babies annually.

**G. The Debtor's Management**

The Debtor is governed by a Board of Directors (the "Board") that is comprised of six members who are leaders in the High Desert community: Kathy Davis, Chair (retired political consultant); Dennis G. Killion, Vice-Chair (educator);Thomas Brown (retired bank president); Michael Fermin (Deputy District Attorney); Tim Jasper (local business owner); and Herbert Williamson, III (Public Defender).

The Debtor's Chief Executive Officer is Cathy Pelley, who has served in this position since July 2009. Prior to that, she was a consultant for the Hospital for the previous four months; CEO at Glendale Memorial Hospital in Glendale, California; and CEO at St . Mary's Regional Medical Center in Apple Valley, California. She is a veteran, having served as an Army nurse during the Vietnam War. She has a Nursing Degree from Philadelphia General Hospital, a Bachelor of Science degree in Business Administration and a Master of Science degree in Organization Development, both from the University of San Francisco, and has worked in the hospital industry since approximately 1970, including more than 40 years as a CEO or equivalent position.

The Debtor's Chief Financial Officer ("CFO") and Chief Information Officer is Edward Matthews, who has served in this position since December 2008. Prior to that, he served as founder

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and principal manager for Neved Investments; CFO for St. Johns Regional Medical Center in Oxnard, California; as a principal with Healthcare Marketing Group, a healthcare industry investment banking group; and as CFO of Doctors' Hospital of Montclair, in Montclair, California. He served in the United States Army during the Vietnam War, including service in Vietnam, and was awarded the Bronze Star Medal. He has a degree in Business Administration, with a concentration in Accounting, and a Masters of Business Administration, both from the University of Texas at Arlington. He has worked in the hospital industry since 1975.

Additionally, the Debtor contracts, pursuant to a management agreement, with Physicians Hospital Management, LLC, a California limited liability company, (the "Manager") as contract administrator to provide a qualified professional senior management team for the Debtor that assists the Board in implementing measures necessary to improve the Debtor's fiscal and operational management. The management fee currently in effect pursuant to the management agreement is $30,000.00 per month. The Debtor intends to reject this agreement.

**H. <u>The Debtor's Revenues</u>**

The primary source of the Debtor's revenues are payments for services provided to its patients from either health plans or from governmental programs such as Medicare and Medi-Cal (the California state version of the Medi-caid Program). The following are the approximate percentages of the Debtor's sources for payments for providing patient services: Medi-Cal and Medi-Cal Managed Care: 42.7%; Medicare and Medicare Managed Care: 29.1%; Managed Care Health Maintenance Organizations/Preferred Provider Organization ("HMO/PPO"), including Aetna, Blue Cross/Blue Shield, Cigna and United: 10.1%; Commercial Workers' Compensation Insurance: 8%; and County Indigent Programs: 4.6%; and Self-Pay: 5%. Thus, more than 75% of the Debtor's revenues come from governmental payors. Further, historically, the Hospital has collected only approximately 8% of the amount due from self-pay patients.

The Debtor, as a Disproportionate Share Hospital, also receives payments from the California state government to help cover the extraordinary costs of serving a particularly high number of indigent patients, whether Medi-Cal and Medicare eligible or not. For fiscal year 2009-2010 the Debtor received approximately $3.8 million in DSH payments, and is still owed two payments.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

However, what amount of DSH monies will be forthcoming and when it will be paid is unknown, because one payment, estimated at being over $750,000, is being withheld by the State pending resolution of a lawsuit brought against it by the Federal government; the last payment is not expected until October 2011 and will be a relatively small amount.

Additionally, the Debtor qualifies for a new program called the Hospital Quality Assurance Revenue Fund. Although this program still awaits approval by the federal Center For Medicare and Medicaid Services ("CMS"), a recent memo of the California Hospital Association ("CHA") lists the Debtor as being likely to receive several million dollars over the expected twenty-one month life of the program.

## I. The Chapter 11 Filing

The current fiscal crisis for the Debtor is the result of the confluence of several factors. First, the Debtor provides millions of dollars per year in care to indigents, for which it is not compensated at all or is inadequately compensated. The percentage of the Debtor's resources expended on indigent care is increasing because the Debtor serves a depressed community and the economic condition of this community has worsened in the past few years. As the unemployment rate has risen, so has the number of uninsured patients. Over the last year, the volume of patients has not increased substantially, however, the number of Medi-Cal and self-pay patients increased by 7%.

Second, the Hospital's plant is approximately 45 years old and the maintenance costs for this plant are substantial and increasing every year. In addition to the maintenance costs, the costs of bringing and keeping the hospital plant in compliance with the various governmental regulatory requirements is also substantial.

Third, Medi-Cal arbitrarily reduced its payment rate by 10% in January 2010, and Medicare payment rates will be reduced by 2.9% in October 2010. These changes have caused a decline in the Debtor's revenues without a corresponding reduction in the Debtor's obligations to provide patient care.

Fourth, California's financial crisis and the inability of its legislature to pass a budget has caused uncertainty in the timing and the amounts of the DSH Payments and a delay in the hoped for Quality Assurance Fee payments.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Fifth, being a stand alone, small rural hospital in California is simply not an advantageous financial situation. Such hospitals, including the Hospital, suffer from a lack of economies of scale, poor payor mix, high overhead costs, less high-margin specialty service lines, and an overall lower revenue base. Thus, the Hospital, like many rural small hospitals, struggles to meet even the relatively small (1 - 3 %) profit margins that is the norm for most of the not-for-profit hospital industry.

During the relatively short period of time that Ms. Pelley and Mr. Matthews have managed the Hospital they have made extensive efforts to deal with the financial crisis, including, but not limited to, laying off staff, changing to outsourcing for medical transcriptions, negotiating an increase in payor rates from Inland Empire Health Plan, a public entity, and attempting to re-negotiate commercial contracts, however, they lacked leverage and were not able to increase those contract rates. In any event, because 75% of the Debtor's payments come from governmental payors, even an increase in payment rates from HMOs/PPOs would not make a significant difference in the Hospital's cash flow.

The Debtor needs to generate approximately $150,000 to $200,000 per day in revenue to cover its operating costs. No appreciable cost savings are recognized by the Debtor when the patient census drops below 65 beds a day, as the fixed costs remain fairly constant. The Hospital has been generating only approximately $100,000 per day in revenue. Thus, the Debtor loses money every month it operates, and could not have paid its employees their last pay period absent an emergency loan from the Corwin Medical Group. In light of this ongoing cash flow shortage, the Debtor was forced to file this chapter 11 case.

Because the Debtor's CEO, CFO, and Board have concluded that the Debtor cannot survive at its current cash flow levels and would have to close absent drastic measures, representatives of the Board approached Prime Healthcare Services Foundation, Inc. ("Prime"), which had previously expressed an interest in purchasing the Hospital, and negotiated the Asset Sale Agreement which is being presented as part of the initial bankruptcy filings. The proposed sale to Prime, a Delaware non-stock corporation organized exclusively for charitable purposes under Section 501(c)(30 of the Internal Revenue Code, or its permitted assignee, will allow the Debtor to pay all its secured

creditors, and provide a significant distribution to unsecured creditors. The chapter 11 case will give the Debtor the breathing room necessary to sell its assets either to Prime or an over-bidder at a bankruptcy auction, allowing the Hospital to continue to provide its essential healthcare services to the High Desert Communities and provide a recovery that will benefit all of its creditors. The proposed sale provides for Prime to acquire substantially all the Debtor's assets in exchange for $25 million in cash or assumption of debt, as well as up to an additional $3.1 million in Debtor in Possession Financing to be provided postpetition and prior to the closing of the proposed sale to allow the Hospital to continue to operate.

## III.

## ARGUMENT

### A. Proposed Limited Notice

The Debtor requests that the Court limit the scope of service of all notices, motions, or applications, including, but not limited to, the following:

- any proposed use, sale, or lease of property of the estate pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 4001(b), and 6004);
- any proposed debtor in possession financing or use of cash collateral;
- any proposed extension of the Debtor's exclusive time to file a plan of reorganization and solicit acceptance thereof (including, without limitation, the time to file a disclosure statement) pursuant to section 1121 of the Bankruptcy Code and Bankruptcy Rule 3016;
- any proposed approval of a compromise or settlement of a controversy pursuant to section Bankruptcy Rules 2002(a)(3) and 9019 and/or section 363 of the Bankruptcy Code;
- any proposed abandonment or disposition of property of the estate pursuant to section 554 of the Bankruptcy Code and Bankruptcy Rules 6007(a) or (c);
- any proposed assumption, assumption and assignment or rejection of contracts or leases under section 365 of the Bankruptcy Code and Bankruptcy Rule 6006(a) or (c);
- any proposal to prohibit or condition the use, sale or lease of property pursuant to § 363 of the Bankruptcy Code or Bankruptcy Rule 4001(a);
- any proposed objections to claims pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rules 3002, 3003 or 3007;
- any verified statement filed by any entity or committee (other than those appointed pursuant to section 1102 or 1104 of the Bankruptcy Code) representing more than one creditor pursuant to Bankruptcy Rule 2019(a) and any motion filed in respect thereof pursuant to Bankruptcy Rule 2019(b);
- any proposed application for employment of professionals pursuant to sections 327, 1103 or 1104 of the Bankruptcy Code or Bankruptcy Rule 2014;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

- any proposed application for compensation or reimbursement of expenses of professionals, pursuant to sections 328, 329, 330, or 331 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(6), 2016, 2017, and 6005; except as provided by other orders of this Court;
- a hearing on any other contested matter in this case that requires notice to all creditors or equity holders pursuant to the Bankruptcy Code, Bankruptcy Rule 9014, or the Local Bankruptcy Rules; and
- all other pleadings, papers, and requests for relief or other order of the Court, except as limited below.

(The notices, motions and applications for which the Debtor is seeking to limit notice are hereinafter referred to as the "Limited Notice Matters.") Notwithstanding the foregoing, the relief requested in this Motion does not affect the rights of all creditors to receive notice of the following matters or proceedings: (i) the date fixed for filing proofs of claim; (ii) the time fixed for filing objections to any disclosure statement and any hearing to consider approval of any disclosure statement; (iii) the time fixed for accepting, rejecting, or objecting to confirmation of a plan or any modification thereof and the hearing thereon; (iv) the entry of an order confirming a plan; and (v) a hearing on the dismissal or conversion of this Case (the "Complete Notice Matters").

**B. <u>The Court Has Authority to Limit the Scope of Notice</u>**

Bankruptcy Rule 2002(i) provides, in pertinent part, as follows:

> [T]he Court may order that notices required by subdivision (a)(2), (3) and (6) of this rule be transmitted to the United States Trustee and be mailed only to the committees . . . appointed under § 1102 of the Code or to their authorized agents and to the creditors and equity security holders who serve on the trustee or debtor in possession and file a request that all notices be mailed to them.

Fed. R. Bankr. P. 2002(i).

In addition, Bankruptcy Rules 4001, 6004, 6006, 9006, 9007, 9013, 9014, and 9019 each allow this Court to determine those parties to whom the Debtor must provide notice. Given the large number of parties in interest in this Case, it would be impractical and would impose a large administrative and economic burden upon the Debtor's estate if the Debtor were required to mail notice of every matter in this Case to all parties listed on the creditor matrix.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**C. Proposed Notice Procedures**

As permitted by Bankruptcy Rules 2002(i) and (m), the Debtor proposes that the Court enter an order that, to the extent allowed, limits the parties upon whom the Debtor must serve the Limited Notice Matters in this Case. This Order should also designate the manner of service as set forth below regarding all matters for which the Bankruptcy Code and the Bankruptcy Rules authorize the Court to designate the manner of service, including matters subject to Bankruptcy Rules 2002(i), 4001, 6004, 6006 or 6007 and Local Bankruptcy Rule 2081-1. It is well within the Court's authority to regulate notices and to approve the notice procedures proposed by the Debtor. Furthermore, these notice procedures will minimize administrative burdens in this Case without diminishing creditor participation.

**1. Service of Limited Notice Matters that Are Not Emergency or Expedited Motions**

Specifically, the Debtor proposes that notices regarding the Limited Notice Matters that will be heard on regular notice be served by first class mail upon only: (a) the Office of the United States Trustee, (b) the creditors appearing on the list filed in accordance with Bankruptcy Rule 1007(d) by the Debtor unless and until a Creditors' Committee is appointed, then in that event, to counsel for the Committee, (c), parties that file with the Court and serve upon the Debtor requests for notice of all matters in accordance with Bankruptcy Rule 2002(i), and (d) any party with a pecuniary interest in the subject matter of the particular Limited Notice Matter or its counsel (collectively, the "Limited Service List").

**2. Service of Limited Notice Matters that Require Emergency or Expedited Relief**

Pursuant to Local Bankruptcy Rule 9075-1(a)(5), motions filed in chapter 11 cases that require emergency or expedited relief must be served by email, fax or personal service. In some instances, service by one of the means listed is not possible within the time frame available or is not practical (*e.g.*, service on a very large group for which the Debtor has no fax or email addresses readily available). The Debtor proposes that, in addition to the service methods authorized by Local Bankruptcy Rule 9075-1, service of emergency or expedited Limited Notice Matters by overnight

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

delivery be authorized if such notice will be delivered prior to the scheduled hearing time and that service of emergency or expedited Limited Notice Matters be upon only the Limited Service List.

The above proposed limited notice procedures are necessary and appropriate given that the creditor body is large and many of the creditors would not be interested in receiving copies of all the Limited Notice Matters but would find service of all these motions and other documents wasteful. Requiring notice to, and service upon, so many parties, therefore, would substantially augment the cost and administrative burden on the Debtor, without conferring any meaningful benefit to the Debtor's estate, and thus would diminish the assets ultimately available for distribution to creditors. Further, allowing service of an emergency motion by overnight delivery in the instances outlined above provides the other parties notice of the matter and preserves the Debtor's ability to bring such matters on a timely and efficient basis. The Debtor submits that such notice constitutes due and sufficient notice of the Limited Notice Matters.

If this Motion is granted, the Debtor will provide a copy of the Limited Service List to any creditor or party in interest that requests it. The Debtor will also send a copy of any order granting this Motion to all known creditors.

**D. <u>Service of this Motion</u>**

The Debtor is serving this Motion by email, overnight delivery or facsimile on the Limited Service List prior to the day of the hearing. The Debtor submits such notice is appropriate under the circumstances.

The Debtor notes that Local Bankruptcy Rule 9075-1(a)(4) and (5) could plausibly be interpreted to require that the Debtor serve all parties on the creditor matrix by personal delivery, messenger, telephone, fax or email with this Motion because the Motion affects their right to receive service of certain notices, motions and applications. As stated above, there are approximately 700 parties on the creditor matrix for which the Debtor has few telephone or fax numbers or email addresses. Serving the Motion by messenger or personal delivery on each of the parties would clearly be cost and time prohibitive, if not impossible.

Further, serving the Motion by overnight delivery on approximately 700 parties would be cost prohibitive, defeat the very purpose for which this Motion is filed and would accomplish very

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

little. The vast majority of parties will not be interested in receiving the Limited Notice Matters or this Motion and will likely simply dispose of the material upon receipt. Also, the Debtor is serving the Limited Service List, which contains the names of the creditors holding the largest claims against the Debtor as well as the U.S. Trustee. The Debtor submits that service of this Motion as set forth above is sufficient under the circumstances and, in the event that Local Bankruptcy Rule 9075-1(a)(4) and (5) actually requires personal delivery, messenger, telephone, fax or email on approximately 700 creditors, the Debtor hereby requests that the Court waive compliance with said Rule and find that notice of this Motion to the Limited Service List is sufficient and appropriate notice.

## IV.

## CONCLUSION

**WHEREFORE**, to facilitate the efficient administration of this Case, and to reduce the significant costs, delays, and burdens that would be associated with providing notice of all matters in this Case to all creditors, the Debtor hereby respectfully requests that the Court enter the order granting (a) the relief requested herein; (b) finding that notice of the Motion is sufficient under the circumstances; and (c) granting such other and further relief as is just and proper under the circumstances.

Dated: September 13, 2010

PACHULSKI STANG ZIEHL & JONES LLP

By /s/ *Samuel R. Maizel*
Samuel R. Maizel
[Proposed] Attorneys for Victor Valley Community Hospital, Debtor and Debtor in Possession