Samuel R. Maizel (CA Bar No. 189301)
Scotta E. McFarland (CA Bar No. 165391)
Mary D. Lane (CA Bar No. 071592)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:    smaizel@pszjlaw.com
    smcfarland@pszjlaw.com
    mlane@pszjlaw.com

[Proposed] Attorneys for Debtor and Debtor in Possession
Victor Valley Community Hospital

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>VICTOR VALLEY COMMUNITY HOSPITAL,[1]<br><br>　　　　　　　Debtor. | Case No.: 6:10-bk-39537-CB<br><br>Chapter 11<br><br>**NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION OF DEBTOR FOR AN ORDER EXTENDING TIME TO COMPLETE SCHEDULE OF ASSETS AND LIABILITIES AND STATEMENT OF FINANCIAL AFFAIRS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[The concurrently filed Declaration of Edward T. Matthews in Support of Emergency Motions]<br><br>Hearing:<br>Date:　　TBD<br>Time:　　TBD<br>Place:　　U.S. Bankruptcy Court<br>　　　　　3420 Twelfth Street<br>　　　　　Courtroom 303<br>　　　　　Riverside, CA 92501-3819<br>Judge:　　Catherine E. Bauer |

---

[1] The Debtor is a California nonprofit public benefit corporation, Fed. Tax I.D. No. 95-2475762. The Debtor's address is 15248 Eleventh Street Victorville, CA  92395.

90231-001\DOCS_LA:223365.2

**TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY JUDGE, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, ANY ALLEGED SECURED CREDITORS, PARTIES REQUESTING SPECIAL NOTICE, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that the above-captioned debtor and debtor in possession (the "Debtor"), hereby moves (the "Motion") this Court, pursuant to Rule 1007(c) of the Federal Rules of Bankruptcy Procedure (collectively, the "Bankruptcy Rules") and Local Bankruptcy Rule 1007-1, for an extension of fourteen days to file its Schedules of Assets and Liabilities and Statement of Financial Affairs (collectively, the "Schedules"), which are currently due on September 27, 2010.

**PLEASE TAKE FURTHER NOTICE** that this Motion is brought pursuant to Local Bankruptcy Rules 2081-1 and 9075-1(a),[2] seeking emergency relief. On September 13, 2010, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Due to the short amount of time the Debtor has to file its Schedules (the current deadline is September 27, 2010), or to get Court approval for the extension of that deadline, the Debtor believes that an emergency hearing on the Motion is justified. Moreover, the Debtor is a relatively small, nonprofit public benefit hospital. It is short staffed and needs additional time to gather the information necessary to prepare the schedules and statement of financial affairs.

**PLEASE TAKE FURTHER NOTICE** that any opposition or objection to the Motion must be filed with the Court and served on proposed counsel for the Debtor at the above address any time before the hearing or may be presented at the hearing on the Motion. You will receive a separate notice of the date and time of the hearing. Your failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.

---

[2] Pursuant to Local Bankruptcy Rule 9075-1(a)(3), no separate motion for an expedited hearing is required.

90231-001\DOCS_LA:223365.2

1     WHEREFORE, the Debtor requests that the Court enter an Order granting the Debtor a

2 fourteen (14) day extension to October 11, 2010 to file the Schedules.

4 Dated:    September 13, 2010              PACHULSKI STANG ZIEHL & JONES LLP

                                                                     By    */s/ Samuel R. Maizel*
                                                                           Samuel R. Maizel (CA Bar No. 189301)
                                                                           [Proposed ] Attorneys for Victor Valley
Community Hospital, Debtor and Debtor in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

90231-001\DOCS_LA:223365.2

**MEMORANDUM OF POINTS AND AUTHORITIES**

By the above *Emergency Motion of Debtor for an Order Extending Time to Complete Schedule of Assets and Liabilities and Statement of Financial Affairs* (the "Motion"),[3] the Debtor requests an extension of fourteen days of the current September 27, 2010 deadline to October 11, 2010, to file its Schedules. In support of this Motion, the Debtor respectfully represents as follows.

## I.

## THE FACTS

### A. General Description of the Debtor

The Debtor, a California nonprofit public benefit corporation, operates the Victor Valley Community Hospital (the "Debtor" or the "Hospital"). The Debtor was founded in 1967 and is the only non-profit community hospital in the California High Desert, a service area that includes the communities of Adelanto, Apple Valley, Hesperia and Victorville, serving a population of over 300,000 people. The High Desert communities served by the Debtor are culturally and ethnically diverse. They also are economically depressed, and suffer under unemployment rates that are higher than 20%. The Debtor, therefore, serves a high volume of medically under served and indigent patients and has been designated as a Disproportionate Share Hospital. As a result of this high volume of indigent patients, millions of dollars worth of the Debtor's services were expended on charity care in 2009, and, with a worsening economy and growing unemployment, the amount in uncompensated, charity care will increase significantly in 2010.

### B. The Debtor's Physical Plant

The Hospital is located at 15248 Eleventh Street, Victorville, California 92392. The facility was designed and constructed as an acute care hospital, and over the years it has been renovated and expanded to accommodate the needs of its patients and the communities it serves. Originally the facility was operated as a 115 bed facility, but the capacity was reduced in the mid-2000s to approximately 106 beds, and subsequently further reduced to its current 101 bed capacity. The Debtor owns the main, two-story, hospital building and its adjacent modular office complex which

---

[3] Capitalized terms not otherwise defined in this Memorandum of Points and Authorities shall have the meaning given them in the Motion.

4

houses its administrative offices. The Debtor also leases two other facilities: (a) the Women's Center and Outpatient Imaging facility, along with the Debtor's human resources department, at 15203 Eleventh Street in Victorville, and (b) the Education Center, at 15366 Eleventh Street, Suite R, in Victorville.

**C.    The Debtor's Staff**

The Hospital is currently staffed to operate approximately 65 beds on a normal day, although it has access to visiting nurse registries, which allow it to quickly increase its staff to meet patient needs. Approximately 257 doctors from the local community have privileges at the Hospital. As of the Petition Date, the Debtor employed approximately 572 people. Of this, approximately 160 are nurses. The rest include, but are not limited to, office staff, technicians, maintenance staff, IT staff, human resources staff, and Quality Assurance staff.

**D.    The Debtor's Services**

As an acute care facility, the Debtor provides a full range of inpatient and outpatient specialty services, including, but not limited to, basic 24-hour emergency room services, surgical services, pediatric services, operating room services, physical therapy, respiratory therapy, outpatient ambulatory services, catheterization laboratory, diagnostic services, women's health center and outpatient imaging services, laboratory and pathology services, social and Medi-Cal eligibility services, physician referral service, and community wellness and education programs. The Debtor treats approximately 2,900 patients per month in the Emergency Room, of which approximately 250 are eventually admitted to the Hospital. Annually, the Debtor has approximately 6,600 patients admitted to the Hospital, not including newborns. Doctors working in the Hospital annually perform approximately 2,500 out-patient surgeries and approximately 2,000 in-patient surgeries and deliver approximately 1,400 babies.

**E.    The Debtor's Management**

The Debtor is governed by a Board of Directors (the "Board") that is comprised of six members who are leaders in the High Desert community: Kathy Davis, Chair (retired political consultant); Dennis G. Killion, Vice-Chair (educator); Thomas Brown (retired bank president); Michael Fermin (Deputy District Attorney); Tim Jasper (local business owner); and Herbert

Williamson, III (Public Defender).

The Debtor's Chief Executive Officer is Cathy Pelley, who has served in this position since July 2009. Prior to that, she was a consultant for the Hospital for the previous four months; CEO at Glendale Memorial Hospital in Glendale, California; and CEO at St. Mary's Regional Medical Center in Apple Valley, California. She is a veteran, having served as an Army nurse during the Vietnam War. She has a Nursing Degree from Philadelphia General Hospital, a Bachelor of Science degree in Business Administration and a Master of Science degree in Organization Development, both from the University of San Francisco, and has worked in the hospital industry since approximately 1970, including more than 40 years as a CEO or equivalent position.

The Debtor's Chief Financial Officer ("CFO") and Chief Information Officer is Edward Matthews, who has served in this position since December 2008. Prior to that, he served as founder and principal manager for Neved Investments; CFO for St. Johns Regional Medical Center in Oxnard, California; as a principal with Healthcare Marketing Group, a healthcare industry investment banking group; and as CFO of Doctors' Hospital of Montclair, in Montclair, California. He served in the United States Army during the Vietnam War, including service in Vietnam, and was awarded the Bronze Star Medal. He has a degree in Business Administration, with a concentration in Accounting, and a Masters of Business Administration, both from the University of Texas at Arlington. He has worked in the hospital industry since 1975.

Additionally, the Debtor contracts, pursuant to a management agreement, with Physicians Hospital Management, LLC, a California limited liability company, (the "Manager") as contract administrator to provide a qualified professional senior management team for the Debtor that assists the Board in implementing measures necessary to improve the Debtor's fiscal and operational management. The management fee currently in effect pursuant to the management agreement is $30,000.00 per month. The Debtor intends to reject this agreement.

**F.    The Debtor's Revenues**

The primary source of the Debtor's revenues are payments for services provided to its patients from either health plans or from governmental programs such as Medicare and Medi-Cal (the California state version of the Medi-caid Program). The following are the approximate

percentages of the Debtor's sources for payments for providing patient services: Medi-Cal and Medi-Cal Managed Care: 42.7%; Medicare and Medicare Managed Care: 29.1%; Managed Care Health Maintenance Organizations/Preferred Provider Organization ("HMO/PPO"), including Aetna, Blue Cross/Blue Shield, Cigna and United: 10.1%; Commercial Workers' Compensation Insurance: 8%; and County Indigent Programs: 4.6%; and Self-Pay: 5%. Thus, more than 75% of the Debtor's revenues come from governmental payors. Further, historically, the Hospital has collected only approximately 8% of the amount due from self-pay patients.

The Debtor, as a Disproportionate Share Hospital, also receives payments from the California state government to help cover the extraordinary costs of serving a particularly high number of indigent patients, whether Medi-Cal and Medicare eligible or not. For fiscal year 2009-2010 the Debtor received approximately $3.8 million in DSH payments, and is still owed two payments. However, what amount of DSH monies will be forthcoming and when it will be paid is unknown, because one payment, estimated at being over $750,000, is being withheld by the State pending resolution of a lawsuit brought against it by the Federal government; the last payment is not expected until October 2011 and will be a relatively small amount.

Additionally, the Debtor qualifies for a new program called the Hospital Quality Assurance Revenue Fund. Although this program still awaits approval by the federal Center For Medicare and Medicaid Services ("CMS"), a recent memo of the California Hospital Association ("CHA") lists the Debtor as being likely to receive several million dollars over the expected twenty-one month life of the program.

**G.    The Chapter 11 Filing**

The current fiscal crisis for the Debtor is the result of the confluence of several factors. First, the Debtor provides millions of dollars per year in care to indigents, for which it is not compensated at all or is inadequately compensated. The percentage of the Debtor's resources expended on indigent care is increasing because the Debtor serves a depressed community and the economic condition of this community has worsened in the past few years. As the unemployment rate has risen, so has the number of uninsured patients. Over the last year, the volume of patients has not increased substantially, however, the number of Medi-Cal and self-pay patients increased by 7%.

7

Second, the Hospital's plant is approximately 45 years old and the maintenance costs for this plant are substantial and increasing every year. In addition to the maintenance costs, the costs of bringing and keeping the hospital plant in compliance with the various governmental regulatory requirements is also substantial.

Third, Medi-Cal arbitrarily reduced its payment rate by 10% in January 2010, and Medicare payment rates will be reduced by 2.9% in October 2010. These changes have caused a decline in the Debtor's revenues without a corresponding reduction in the Debtor's obligations to provide patient care.

Fourth, California's financial crisis and the inability of its legislature to pass a budget has caused uncertainty in the timing and the amounts of the DSH Payments and a delay in the hoped for Quality Assurance Fee payments.

Fifth, being a stand alone, small rural hospital in California is simply not an advantageous financial situation. Such hospitals, including the Hospital, suffer from a lack of economies of scale, poor payor mix, high overhead costs, less high-margin specialty service lines, and an overall lower revenue base. Thus, the Hospital, like many rural small hospitals, struggles to meet even the relatively small (1 - 3 %) profit margins that is the norm for most of the not-for-profit hospital industry.

During the relatively short period of time that Ms. Pelley and Mr. Matthews have managed the Hospital they have made extensive efforts to deal with the financial crisis, including, but not limited to, laying off staff, changing to outsourcing for medical transcriptions, negotiating an increase in payor rates from Inland Empire Health Plan, a public entity, and attempting to re-negotiate commercial contracts, however, they lacked leverage and were not able to increase those contract rates. In any event, because 75% of the Debtor's payments come from governmental payors, even an increase in payment rates from HMOs/PPOs would not make a significant difference in the Hospital's cash flow.

The Debtor needs to generate approximately $150,000 to $200,000 per day in revenue to cover its operating costs. No appreciable cost savings are recognized by the Debtor when the patient census drops below 65 beds a day, as the fixed costs remain fairly constant. The Hospital has been

generating only approximately $100,000 per day in revenue. Thus, the Debtor loses money every month it operates, and could not have paid its employees their last pay period absent an emergency loan from the Corwin Medical Group. In light of this ongoing cash flow shortage, the Debtor was forced to file this chapter 11 case.

Because the Debtor's CEO, CFO, and Board have concluded that the Debtor cannot survive at its current cash flow levels and would have to close absent drastic measures, representatives of the Board approached Prime Healthcare Services Foundation, Inc. ("Prime"), which had previously expressed an interest in purchasing the Hospital, and negotiated the Asset Sale Agreement which is being presented as part of the initial bankruptcy filings. The proposed sale to Prime, a Delaware non-stock corporation organized exclusively for charitable purposes under Section 501(c)(3) of the Internal Revenue Code, or its permitted assignee, will allow the Debtor to pay all its secured creditors, and provide a significant distribution to unsecured creditors. The chapter 11 case will give the Debtor the breathing room necessary to sell its assets either to Prime or an over-bidder at a bankruptcy auction, allowing the Hospital to continue to provide its essential healthcare services to the High Desert Communities and provide a recovery that will benefit all of its creditors. The proposed sale provides for Prime to acquire substantially all the Debtor's assets in exchange for $25 million in cash or assumption of debt, as well as up to an additional $3.1 million in Debtor in Possession Financing to be provided postpetition and prior to the closing of the proposed sale to allow the Hospital to continue to operate.

## II.

## ARGUMENT

**A.    The Bankruptcy Rules Allow Only Fourteen Days To File The Schedules And Statement of Financial Affairs**

Pursuant to Rule 1007(c) of the Federal Rules of Bankruptcy Procedure, the Debtor is permitted fourteen days after the Petition Date within which to file its Schedules and Statements of Affairs (collectively the "Schedules"). The Debtor's fourteen day period expires on September 27, 2010.

90231-001\DOCS_LA:223365.2

### B. The Debtor Needs A Two Week Extension To File Its Schedules

The Debtor has a small administrative office staff. Due to the demands on the Debtor created by (i) filing this Case and the financial difficulties giving rise thereto, (ii) the need to maintain continuity in the Debtor's business, (iii) the need to prepare and file several "First Day Motions," and (iv) the immediate need to comply with the filing requirements as set forth in the "*Guidelines for Fulfilling the Requirements of the United States Trustee*," the Debtor will not be able to complete the Schedules within the fourteen day statutory period. As such, given the foregoing, the Debtor requires additional time in order to compile the requisite information necessary to ensure that accurate and complete Schedules will be filed.

Pursuant to Rule 1007(c) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 1007-3, the Debtor requests an additional fourteen calendar days, up to and including October 11, 2010, within which to file the Schedules.

Bankruptcy Rule 1007(c) provides that an extension of time may be granted to file Schedules "only on motion for cause shown and on notice to the United States Trustee and to any [official] committee . . . , trustee, examiner or other party as the court may direct." Fed. R. Bankr. P. 1007(c). The Debtor is serving this Motion on the United States Trustee, creditors holding the twenty largest unsecured claims, and parties requesting special notice.

Because the requested extension of time (i) is short, (ii) will allow the Debtor to file more accurate Schedules and (iii) will not prejudice creditors, the Debtor believes that cause has been shown for the requested fourteen (14) day extension from the current September 27, 2010 deadline to October 11, 2010.

90231-001\DOCS_LA:223365.2

## III.

## CONCLUSION

WHEREFORE, the Debtor requests that the Court enter an Order granting the Debtor a fourteen (14) day extension to October 11, 2010, to file the Schedules.

Dated:   September 13, 2010

PACHULSKI STANG ZIEHL & JONES LLP

By   /s/ *Samuel R. Maizel*
   Samuel R. Maizel
   [Proposed] Attorneys for Victor Valley
   Community Hospital, Debtor and Debtor in
   Possession

90231-001\DOCS_LA:223365.2