Samuel R. Maizel (CA Bar No. 189301)
Scotta E. McFarland (CA Bar No. 165391)
Mary D. Lane (CA Bar No. 071592)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:      smaizel@pszjlaw.com
             smcfarland@pszjlaw.com
             mlane@pszjlaw.com

[Proposed] Attorneys for Victor Valley Community
Hospital, Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No. 6:10-39537 CB |
| VICTOR VALLEY COMMUNITY HOSPITAL, | Chapter 11 |
| Debtor. | **APPLICATION OF DEBTOR FOR ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF ALVAREZ & MARSAL HEALTHCARE INDUSTRY GROUP, LLC AS ADVISOR REGARDING THE SALE OF ITS ASSETS EFFECTIVE AS OF SEPTEMBER 22, 2010**<br><br>[Declaration of George D. Pillari filed concurrently herewith]<br><br>[No Hearing Required Unless Requested] |

Victor Valley Community Hospital, the debtor and debtor in possession in the above referenced case (the "Debtor") hereby files this application (the "Application") to employ Alvarez & Marsal Healthcare Industry Group, LLC ( "A&M"; together with its professional advisory affiliates, all of which are wholly-owned by A&M's parent company, Alvarez & Marsal Holdings, LLC and employees, the "Firm"), whose business offices are located at 633 West Fifth Street, Suite 2560, Los Angeles, California 90071, as its advisor in connection with a proposed sale of the Hospital (as defined below) effective September 22, 2010.  This Application is brought pursuant to section 327(a)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    of title 11 of the United States Code,  Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

2    "Bankruptcy Rules"), Local Bankruptcy Rule 2014-1, and the *Guide to Applications for Professional*

3    *Compensation* issued by the Office of the United States Trustee (the "US Trustee").  In support of

4    the Application, the Debtor respectfully represents as follows:

5        1.    On September 13, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for

6    relief under chapter 11 of title 11 of the United States Code (the "Case").  The Debtor continues to

7    operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and

8    1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

9    On September 24, 2010, the Office of the United States Trustee appointed an official committee of

10   unsecured creditors (the "Committee").

11       2.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The venue is proper

12   pursuant to 28 U.S.C. §§ 1408 and 1409.

13       3.    The Debtor, a California nonprofit public benefit corporation, operates the Victor

14   Valley Community Hospital (the "Hospital").  The Debtor was founded in 1967 and is the only non-

15   profit community hospital in the California High Desert, a service area that includes the

16   communities of Adelanto, Apple Valley, Hesperia and Victorville, serving a population of over

17   300,000 people.

18       4.    The Debtor is seeking to sell the Hospital through a section 363 sale process.  At a

19   hearing on September 22, 2010, the Court has approved certain sale procedures by which the section

20   363 sale shall proceed.  The Court has also scheduled a subsequent hearing on the sale of the

21   Hospital to the highest and best bidder in accordance with the applicable procedures approved by the

22   Court.  At the hearing on the bidding and sale procedures, various parties expressed concerns about

23   the marketing of the Debtor's assets and the Debtor's resources to prepare bidders for participation

24   in the auction process.  Also, given the apparent interest in the Assets, the Debtor concluded it

25   needed professional assistance to navigate the sale process.  A&M has been assisting the Debtor

26   since September 22, 2010, and has already created a "virtual data room" with information for

27   bidders and bidders are already using that site.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5. The Debtor desires to retain A&M because of its particular expertise in the areas of bankruptcy asset sales and other debtor/creditor matters in the healthcare area. A&M has a particular specialty in the healthcare services sector. The Firm has extensive experience in advising debtors, individual creditors, committees of various constituencies, asset purchasers and sellers, and investors in both in and out of court restructurings. Because of the combination of industry experience, skill in providing financial analysis and advisory services and bankruptcy and restructuring experience, A&M is uniquely qualified to advise the Debtor. Therefore, the Debtor believes that A&M's retention is in its best interests and the best interests of its Estate.

6. The Firm has provided advisory services to companies in and out of bankruptcy in a wide range of industries, including major health care enterprises, such as: *In re Watts Health Foundation, Inc. dba UHP Healthcare, In re St. Vincent's Catholic Medical Center, In re Integrated Health Services, HealthSouth Corporation* and many others. A&M has advised creditors' committees in numerous chapter 11 cases in a wide range of industries, including major health care bankruptcies such as: *In re Maxicare, In re Tower Health, In re Fountain View, In re Pleasant Care Corporation, In re Parkview Community Medical Center* and others.

7. The Declaration of George D. Pillari in support of this Application, which is filed concurrently herewith (the "Pillari Declaration"), includes a copy of the resume of A&M's professionals currently expected to work on this matter.

8. A&M's services are necessary to serve as advisor to the Debtor in connection with its efforts to sell the Hospital. Subject to further order of this Court, A&M is expected to render the following services, among others, to the Debtor:

  a. assistance in creation of an online data room that will allow prospective purchasers of the Hospital (the "Bidders") to evaluate documents, financial statements and other information that the Debtor seeks to make available;

  b. assistance in the qualification of Bidders according to criteria established by the Debtor;

  c. assistance as requested by Bidders with requests for additional information and/or explanation of issues as they arise during the course of a Bidder's due diligence of the Hospital;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

d.    assistance in the management of the auction process, including the collection of deposits, the management of the bid/overbid process,  and the analysis of the value of each bid;

e.    report to the Debtor's Board of Directors (the "Board"), the Committee and its counsel, and the bankruptcy court as requested by the Debtor; and

f.    other activities as are approved by the Responsible Officer or the Board and agreed to by A&M.

9.    To the best of the Debtor's knowledge, other than as set forth in the Pillari Declaration attached hereto, neither A&M nor its professionals has any connection with the Debtor, any creditors of the estate, any party in interest, their respective attorneys or accountants, the US Trustee, or any person employed in the office of the US Trustee, except as set forth in the Declaration.  In addition, A&M does not employ any person that is related to a judge of this Court or the US Trustee for this region.

10.    To the best of the Debtor's knowledge and based on the Pillari Declaration, neither A&M nor any of its professionals represents any interest adverse to that of the Debtor or of the estate in the matters on which it is to be retained.  Accordingly, A&M and its professionals are disinterested persons under section 101(14) of the Bankruptcy Code.

11.    Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the United States Trustee Guidelines, and this Court's rules, the Debtor proposes to pay A&M its customary hourly rates in effect from time to time and to reimburse A&M according to its customary reimbursement policies plus a 3% fee to be applied against in house, indirect administrative expenses such as telephone charges, computer use, in house copying, facsimiles and other internal services.  A&M's standard hourly rates for its professionals range from $225 to $850 per hour.  George Pillari, a managing director of A&M, is the individual primarily responsible for this engagement.  Mr. Pillari's hourly billing rate is $675 per hour.  A copy of the agreement between the Debtor and A&M is attached hereto as **Exhibit A** (the "Engagement Letter"), the terms of which shall govern the Debtor's retention of A&M except as explicitly set forth herein or in any order approving this Application.

12.    A&M has requested a postpetition retainer in the amount of $25,000.00 to be applied against any amounts due at the termination of the A&M's engagement (the "Retainer").

13.    The Debtor requests by the terms of this engagement that the indemnity agreement attached to the Engagement Letter (the "Indemnity Agreement") apply to A&M services, which provides for, among other matters set forth therein, the Debtor to indemnify and hold harmless A&M and all other Indemnified Parties (as defined in the Indemnity Agreement) against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the terms of the Indemnity Agreement, as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Indemnity Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.

13.    Pursuant to Local Bankruptcy Rule 2014-1(b)(4), a hearing is not required in connection with the Application unless requested by the United States Trustee, a party in interest, or otherwise ordered by the Court.  Pursuant to Local Bankruptcy Rule 2014-1(b)(3), any response to the Application and request for hearing must be in the form prescribed by Local Bankruptcy Rule 9013-1(f)(1) and must be filed with the Court and served upon the Trustee through his counsel, and the United States Trustee no later than fourteen days from the date of service of notice of the filing of the Application.

14.    Notice of the filing of this Application was provided to (1) the Office of the United States Trustee, (2) to all secured creditors, (3) other parties in interest, (4) the Committee and its counsel of record, and (5) any party who filed and served a request for special notice as of the date of service of the Notice.

**WHEREFORE,** the Debtor requests that this Court approve the employment of Alvarez &
Marsal Healthcare Industry Group as its auction advisor effective as of the petition date to render
services as described above, with compensation to be paid by the estate as an administrative expense
in such amounts as this Court may hereafter determine and allow.

Dated: October 13, 2010                    PACHULSKI STANG ZIEHL & JONES  LLP


                              By    /s/ Samuel R. Maizel
                                    Samuel R. Maizel
                                    [Proposed] Attorneys for the Debtor and
                                    Debtor in Possession

# EXHIBIT A

October 1, 2010

Ms. Kathy Davis
Chairperson, Board of Directors
Victor Valley Community Hospital
15248 Eleventh Street
Victorville, CA 92395

Dear Ms. Davis:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal Healthcare Industry Group, LLC ("A&M") and Victor Valley Community Hospital (the "Company"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company and A&M (the "Agreement").

1.    <u>Description of Services</u>

(a)    A&M shall provide consulting services to the Company at the direction of the Company's Designated Officer (the "Responsible Officer") or its general bankruptcy counsel in connection with the Company's efforts in seeking to sell the Company's assets through a Section 363 sale process in its pending chapter 11 bankruptcy case (the "Bankruptcy Case"). It is anticipated that A&M's activities shall include the following:

(i)    *assistance in preparation of an online data room that will allow prospective purchasers of the Company's assets (the "Bidders") to evaluate documents, financial statements and other information that the Company seeks to make available.*

(ii)    *assistance in the qualification of Bidders according to criteria established by the Company.*

(iii)    *assistance as requested by Bidders with requests for additional information and/or explanation of issues as they arise during the course of a Bidder's due diligence of the Company's assets.*

(iv)   *assistance in the management of the auction process, including the collection of deposits, the management of the bid/overbid process, and the analysis of the value of each bid;*

(v)   *report to the Company's Board of Directors (the "Board"), Committee of Unsecured Creditors, and the Bankruptcy Court as requested by the Company; and*

(vi)   *other activities as are approved by the Responsible Officer or the Board and agreed to by A&M.*

In rendering its services to the Company, A&M will report directly to the Responsible Officer and will make recommendations to and consult with the Responsible Officers and other senior officers as the Board or Responsible Officer direct.

(b)   In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates, wholly-owned subsidiaries, and independent contractors. Such affiliates are wholly owned by A&M's parent company and employees. A&M personnel providing services to the Company may also work with other A&M clients in conjunction with unrelated matters.

2.    **Information Provided by the Company and Forward Looking Statements**

The Company shall use all reasonable efforts to: (i) provide A&M with access to management and other representatives of the Company; and (ii) to furnish all material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that A&M reasonably request in connection with the services to be provided to the Company. A&M shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and all information that is furnished by or on behalf of the Company and otherwise reviewed by A&M in connection with the services performed for the Company. Company acknowledges and agrees that A&M is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein.

*8*

3.    Limitation of Duties

    A&M does not assume any responsibility for the Company's decision to pursue, or not pursue, any business strategy, or to effect, or not to effect any transaction. .

4.    Compensation

    (a)    A&M will receive fees based on the following hourly rates:

| | |
|---|---|
| Managing Dir's/Sr. Dir's/Dir's | $450-850 |
| Associates/Analysts | $225-450 |

    Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

    (b)    In addition, A&M will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, computer research and messenger charges and 3% of fees billed for in-house, indirect administrative expenses such as telephone charges, computer use, in-house copying facsimiles and other internal services. All fees and expenses will be billed and payable on a monthly basis or, at A&M's discretion, more frequently.

    (c)    The Company shall promptly remit to A&M a retainer in the amount of $25,000, which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.

5.    Term

The engagement will commence as of the date hereof and may be terminated by either party without cause by giving 30 days' written notice to the other party. A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue to represent the Company, or unless other just cause exists. In the event of any such termination, any fees and expenses due to A&M shall be remitted promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination). The Company may immediately terminate A&M's services hereunder at any time for Cause by giving written notice to A&M.  Upon any such termination, the Company shall be relieved of all of its payment obligations under this Agreement, except for the payment of fees and expenses through the effective date of termination (including fees and expenses that accrued prior to but were invoiced subsequent to such

termination) and its obligations under paragraphs 9 and 10. For purposes of this Agreement, "Cause" shall mean if A&M breaches any of its material obligations hereunder and does not cure such breach within 30 days of the Company having given written notice of such breach to A&M describing in reasonable detail the nature of the alleged breach. A&M shall be entitled to immediately terminate its services hereunder for Good Reason. For purposes of this Agreement, termination for "Good Reason" shall mean either its resignation caused by a breach by the Company of any of its material obligations under this Agreement that is not cured within 30 days of A&M having given written notice of such breach to the Company describing in reasonable detail the nature of the alleged breach or failure by the Court to approve retention of A&M pursuant to this Agreement by November 15, 2010.

6.    <u>Relationship of the Parties</u>

The parties intend that an independent contractor relationship will be created by this engagement letter. Neither A&M nor any of its personnel or agents is to be considered an employee or agent of the Company and the personnel and agents of A&M are not entitled to any of the benefits that the Company provides for the Company employees. The Company acknowledges that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7.    <u>No Third Party Beneficiary</u>

The Company acknowledges that all advice (written or oral) provided by A&M to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

10

8.    Conflicts

A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware, Because A&M is a consulting firm that serves clients on a national basis in numerous cases, both in and out of court, it is possible that A&M may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. In the event you accept the terms of this engagement, A&M will not represent, and A&M has not represented, the interests of any such entities or people in connection with this matter. Each of the Companies acknowledges and agrees that the services being provided hereunder are being provided on behalf of each of them and each of them hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any other Company. Each Company represents that it has taken all corporate action necessary and is authorized to waive such potential conflicts of interest.

9.    Confidentiality / Non-Solicitation

A&M shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except:  (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. The Company, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("Solicited Person").   Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the party extending such offer equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Company breaches this provision. The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

11

10.    <u>Indemnification and Limitations on Liability</u>

The attached indemnification and limitation on liability agreement is incorporated herein by reference and shall be executed upon the acceptance of this Agreement. Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect.

11.    <u>Dispute Resolution Process</u>

The Company and A&M have agreed that (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Engagement Letter or the services provided by the A&M Personnel to the Debtors, including any matter involving a successor in interest or agent of the Company or of A&M, shall be brought in the Bankruptcy Court for the Central District of California (the "Bankruptcy Court") (or if the reference is withdrawn, in the United States District Court for the Central District of California (the "District Court")); (b) A&M, the Company, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of action, or lawsuits; (c) A&M and the Company, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if the Bankruptcy Court, or the District court if the reference is withdrawn, does not have or retain jurisdiction over the foregoing claims and controversies, A&M and the Company, and any and all successors and assigns therefore, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures (as set forth in Exhibit A attached hereto); and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction. Further, A&M and the Company have agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Bankruptcy Court or the District Court if the reference is withdrawn, to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder.

12.    <u>Miscellaneous</u>

This engagement letter (together with the attached indemnity provisions): (a) shall be governed and construed in accordance with the laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter hereof; and (c) may not be amended or modified except in writing executed by both parties hereto. The Company and A&M agree to waive

trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder. The Company and A&M agree, to the extent permitted by applicable law, that the Bankruptcy Court shall have exclusive jurisdiction over any litigation arising out of this Agreement.   Notwithstanding anything herein to the contrary, A&M may reference or list the Company's name and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal Healthcare Industry Group, LLC

By: _____

George D. Pillari
Managing Director

Accepted and agreed:

Victor Valley Community Hospital

By: _____

Ms. Kathy Davis
Chairperson of the Board

13

# INDEMNIFICATION AGREEMENT

This indemnity is made part of an agreement, dated October 1, 2010 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") by and between Alvarez & Marsal Healthcare Industry Group, LLC ("A&M") and Victor Valley Community Hospital (the "Company"), for services to be rendered to the Company by A&M.

A.   The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.  The Company also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.   These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise

-1-

review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.    If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action. The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.    In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees

15

actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.    In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.    Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.    The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

VICTOR VALLEY COMMUNITY HOSPITAL

ALVAREZ & MARSAL HEALTHCARE

INDUSTRY GROUP, LLC

By: _____

By: _____

-3-

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10100 Santa Monica Blvd. 11th Floor, Los Angeles, CA 90067.

A true and correct copy of the foregoing document described as **APPLICATION OF DEBTOR FOR ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF ALVAREZ & MARSAL HEALTHCARE INDUSTRY GROUP, LLC AS ADVISOR REGARDING THE SALE OF ITS ASSETS EFFECTIVE AS OF SEPTEMBER 22, 2010** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **_October 13, 2010,_** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **_October 13, 2010,_** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 13, 2010,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**By Overnight Federal Express**
Honorable Catherine Bauer
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 369
Riverside, CA  92501-3819

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 13, 2010 | Sophia Margetis | /s/ Sophia Margetis |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):**

Martin R Barash on behalf of Interested Party The Senior Associates Group, Inc.
mbarash@ktbslaw.com

Kirk A Barber on behalf of Creditor Professional Hospital Supply, Inc.
barberlawgroup@yahoo.com

Manuel A Boigues on behalf of Creditor SEIU United Healthcare Workers - West
bankruptcycourtnotices@unioncounsel.net

Jeff Cohen on behalf of Interested Party Southpaw Asset Management LP
JC@SouthpawAsset.com

Sanaea Daruwalla on behalf of Interested Party Courtesy NEF
sdaruwalla@bwslaw.com

Richard K Diamond (TR) on behalf of Interested Party Courtesy NEF
jlv@dgdk.com, rdiamond@ecf.epiqsystems.com

Robert A Hessling on behalf of Interested Party Courtesy NEF
rhessling@dgdk.com

Lawrence J Hilton on behalf of Creditor Cerner Corporation
lhilton@oneil-llp.com, ssimmons@oneil-llp.com

Mark D Houle on behalf of Creditor Health Net of California, Inc.
mark.houle@pillsburylaw.com

Raffi Khatchadourian on behalf of Creditor Sysco Food Services of Los Angeles, Inc.
raffi@hemar-rousso.com

Mary D Lane on behalf of Debtor Victor Valley Community Hospital
mlane@pszjlaw.com

Samuel R Maizel on behalf of Debtor Victor Valley Community Hospital
smaizel@pszjlaw.com, smaizel@pszjlaw.com

Scotta E McFarland on behalf of Debtor Victor Valley Community Hospital
smcfarland@pszjlaw.com, smcfarland@pszjlaw.com

Jane Odonnell on behalf of Creditor California Health Facilities Financing Authority
jane.odonnell@doj.ca.gov

Misty A Perry Isaacson on behalf of U.S. Trustee United States Trustee (RS)
misty.isaacson@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                            **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:226522.1

Courtney E Pozmantier on behalf of Interested Party The Senior Associates Group, Inc.
cpozmantier@ktbslaw.com

Martha E Romero on behalf of Creditor San Bernardino County Tax Collector
Romero@mromerolawfirm.com

Steven J Schwartz on behalf of Interested Party Courtesy NEF
sschwartz@dgdk.com

United States Trustee (RS)
ustpregion16.rs.ecf@usdoj.gov

Michael H Weiss on behalf of Interested Party Choice Medical Group
mw@weissandspees.com, lm@weissandspees.com;jb@weissandspees.com

**II.**  **SERVED BY U.S. MAIL:**

Parties listed on attached 2002 list.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

DOCS_LA:226522.1

**F 9013-3.1.PROOF.SERVICE**

**Victor Valley Community Hospital**
**Chapter 11 Case No.: 6:10-bk-39537-CB**
**2002 Service List**

**Debtor**
Victor Valley Community Hospital
Catherine M. Pelley
Chief Executive Officer
15248 Eleventh Street
Victorville, CA  92395

Board of Directors
Kathy Davis
Chair, Governing Board of Directors
17100 B Bear Valley Rd.
Box 357
Victorville, CA  92395

Charlie Slyngstad
Burke Williams and Sorenson, LLP
444 S. Flower St., Ste. 2400
Los Angeles, CA  90071

United States Trustee
Misty Isaacson
Office of the United States Trustee
3685 Main St., Ste. 300
Riverside, CA  92501

Attorneys for Creditors' Committee
Richard K. Diamond
Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067

Committee Member
Medtronic USA, Inc.
MS V215
3850 Victoria Street North
Shoreview, MN  55126-2978
Representative: Steve Carlson

Committee Member
PHS Professional Hospital Supply
42500 Winchester Road
Temecula, CA 92590
Representative: Kirk Barber

Committee Member
Rodney W. Brown, J.D.
LabWest, Inc.
1821 E. Dyer Rd., Suite 100
Santa Ana, CA 92705

**Government Agencies**

Counsel for the US DHHS/CMS
Phillip Seligman, Esq.
US Department of Justice
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, DC  20044-0875

Wendi A. Horwitz
Deputy Attorney General
California Department of Justice
Office of the Attorney General
300 South Spring St., Suite 1702
Los Angeles, CA 90013

90231-001\DOCS_LA:224983.1

Office of Statewide Health Planning and Development
Cal-Mortgage Loan Insurance Division
818 K. Street, Room 210
Sacramento, CA  95814

California Health Facilities Financing Authority
915 Capitol Mall, Suite 590
Sacramento, CA  95814

Office of Statewide Health Planning and Development –
State of California
300 Capital Mall, Suite 1500
Sacramento, CA  95814

**Secured Creditors**

Gregg Buxton, Vice President
Desert Community Bank
a Division of East West Bank
14800 La Paz Drive
Victorville, CA  92395

Corwin Medical Group
Manmohan Nayyar, MD
Raman Poola, MD
Anna Sugi
18564 Hwy 18, Suite 110
Apple Valley, CA  92307

Manmohan Nayyar, MD
Physicians Hospital Management, LLC
18523 Corwin Rd., Suite H
Apple Valley, CA  92307

Attorneys for PHM
Michael S. Weiss, Esq.
Weiss & Spees
1925 Century Park East, Suite 650
Los Angeles, CA 90067-

2701 Commonwealth Land Title Company
888 West Sixth Street, 4th Floor
Los Angeles, CA  90017

BNY Western Trust Company
700 South Flower Street, Suite 500
Los Angeles, CA  90017

Counsel to the Indenture Trustee for the HFFA Bonds
Catherine D. Meyer
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406

90231-001\DOCS_LA:224983.1

**Interested Parties**

Thomas L. Driscoll, Esq.
Attorney at Law
185 Berry Street, Suite 5511
San Francisco, CA  94107

Attorney for Biotronicks
Paul Boyce
Greenberg, Grant & Richards
5858 Westheimer #500
Houston TX  77057

Delta One Partners, Inc.
Corporate Headquarters South
48550 North View Drive
Palm Desert, CA  92260

Attorneys for LabWest, a subsidiary of LabCorp.
Michael Benjamin Lubic
K&L Gates
10100 Santa Monica Blvd., 7th Floor
Los Angeles, California  90067

Law Offices of Leslie M. Lava
580 California Street, Suite 1600
San Francisco, CA  94104

Westhoff, Cone & Holmstedt
1777 Botelho Drive, Suite 370
Walnut Creek, CA  94596

Davis Wright Tremaine LLP
64 Oak Knoll Drive
San Anselmo, CA  94960

Daniel Settelmayer, Esq.
Latham & Watkins LLP
PO Box 894256
Los Angeles, CA  90189-4256

Stacking Horse Bidder
Prime Healthcare Services Foundation, Inc.
Attn: Lex Reddy
Chief Executive Officer
3300 East Guasti Road, 2nd Fl.
Ontario, CA  91761

Counsel for Prime Healthcare Services Foundation, Inc.
Lee Shulman
Mark Bradshaw
Shulman Hodges & Bastian LLP
26632 Towne Centre Drive, Ste. 300
Foothill Ranch, CA  92610

J. Raymond Elliott
President and Chief Executive Officer
Boston Scientific
re: Guidant Corporation
One Boston Scientific Place
Natick, MA 01760-1537

Johnson & Johnson Health Care Systems Inc.
425 Hoes Lane
Piscataway, NJ 08854

Radiometer America, Inc.
810 Sharon Drive
Westlake, OH 44145

Quadramed
Attention:  Penny W. Collings
QuadraMed Corporation
12110 Sunset Hills Road # 600
Reston VA 20190

Stephen M. O'Hara
President and CEO
Angelica Textile Services (R-Colton
1105 Lakewood Parkway #210
Alpharetta, GA  30004

**Requests for Special Notice**

Attorneys for Professional Hospital Supply
Kirk Barber
Kirk Barber Law Group, A.P.L.C.
43426 Business Park Drive
Temecula, CA 92590

Attorneys for Creditor OSHPD and the
CA Health Facilities and Financing Authority
Jane O'Donnell
Deputy Attorney General Dept of Justice
Office of the Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550

Attorneys for Cerner Corporation
Lawrence J. Hilton
O'Neil LLP
19900 MacArthur Boulevard; Suite 1050
Irvine, California 92612

DARRELL W. CLARK
Stinson Morrison Hecker LLP
1150 18th Street, NW; Suite 800
Washington, DC 20036-3816

Counsel for The Senior Associates Group
Klee, Tuchin, Bogdanoff & Stern LLP
Attn: Thomas E. Patterson, Esq. and
Martin R. Barash, Esq.
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049

Counsel for The Senior Associates Group
Michael C. Kelcy, Esq.
3605 Canon Blvd.
Altadena, CA 91001

Attorneys for Health Net
Mark D. Houle, Esq.
Pillsbury Winthrop Shaw Pittman LLP
650 Town Center Drive, Suite 700
Costa Mesa, California 92626-7122

Attorneys for County of San Bernardino
Martha E. Romero
Romero Law Firm
BMR Professional Building
6516 Bright Avenue
Whittier, CA  90601

90231-001\DOCS_LA:224983.1