Samuel R. Maizel (CA Bar No. 189301)
Scotta E. McFarland (CA Bar No. 165391)
Mary D. Lane (CA Bar No. 071592)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:     smaizel@pszjlaw.com
            smcfarland@pszjlaw.com
            mlane@pszjlaw.com

Attorneys for Victor Valley Community Hospital, Debtor and
Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No. 6:10-39537 CB |
| | Chapter 11 |
| VICTOR VALLEY COMMUNITY HOSPITAL, | SUBMISSION OF TRANSCRIPT OF AUCTION HELD ON NOVEMBER 5, 2010 |
| Debtor. | [No Hearing Required] |

**TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE LIMITED SERVICE LIST AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

Victor Valley Community Hospital, the above-captioned Chapter 11 debtor and debtor in possession (the "Debtor"), hereby submits a true and correct copy of the transcript of the auction held on November 5, 2010 in connection with the sale of the Debtor's assets.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    .

2

3    Dated:    November 8, 2010                  PACHULSKI STANG ZIEHL & JONES LLP

4                                               By    /s/ Samuel R. Maizel
5                                                     Samuel R. Maizel
                                                     Scotta E. McFarland
6                                                     Mary D. Lane
                                                     Attorneys for Victor Valley Community
7                                                     Hospital, Debtor and Debtor in Possession

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Page 1

1                UNITED STATES BANKRUPTCY COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3                   RIVERSIDE VALLEY DIVISION

4                          --oOo--

5

6     In re:                          )CASE NO.
                                      )6:10-39537 CB
7                                     )
      VICTOR VALLEY COMMUNITY HOSPITAL,)Chapter 11
8                                     )
                Debtor.               )
9

10                         AUCTION

11                 VICTORVILLE, CALIFORNIA

12                FRIDAY, NOVEMBER 5, 2010

13                 10:52 A.M. - 1:48 P.M.

14

15

16

17

18

19

20

21    REPORTED BY:

22    AMY P. SMITH

23    CSR #12154

24

25    Job No. 34005

Page 2

```
 1              A P P E A R A N C E S

 2

 3   ATTORNEYS FOR THE DEBTOR IN POSSESSION OF VICTOR VALLEY
     COMMUNITY HOSPITAL:
 4
             PACHULSKI STANG ZIEHL & JONES
 5           BY:  SAMUEL R. MAIZEL
                  ATTORNEY AT LAW
 6           10100 SANTA MONICA BOULEVARD
             11TH FLOOR
 7           LOS ANGELES, CALIFORNIA 90067

 8
             BURKE, WILLIAMS & SORENSEN
 9           BY:  CHARLES E. SLYNGSTAD
                  ATTORNEY AT LAW
10           444 SOUTH FLOWER STREET
             SUITE 2400
11           LOS ANGELES, CALIFORNIA 90071

12

13   FOR PRIME HEALTHCARE MANAGEMENT, INC.:

14           PRIME HEALTHCARE MANAGEMENT
             BY:  MICHAEL J. SARRAO
15                VICE PRESIDENT & GENERAL COUNSEL
             3300 EAST GUASTI ROAD
16           3RD FLOOR
             ONTARIO, CALIFORNIA 91761

17

18           PRIME HEALTHCARE MANAGEMENT
             BY:  LEX REDDY, M.B.A., M.H.A.
19                CHIEF EXECUTIVE OFFICER
             3300 EAST GUASTI ROAD
20           3RD FLOOR
             ONTARIO, CALIFORNIA 91761

21

22           PRIME HEALTHCARE MANAGEMENT
             BY:  ROGER KRISSMAN
23                CORPORATE CHIEF FINANCIAL OFFICER
             3300 EAST GUASTI ROAD
24           3RD FLOOR
             ONTARIO, CALIFORNIA 91761

25
```

```
 1                  A P P E A R A N C E S
                         (CONTINUED)
 2

 3     FOR PRIME HEALTHCARE MANAGEMENT, INC.:

 4              SHULMAN, HODGES & BASTIAN
                BY:  LEONARD M. SHULMAN
 5                   ATTORNEY AT LAW
                26632 TOWNE CENTRE DRIVE
 6              SUITE 300
                FOOTHILL RANCH, CALIFORNIA 92610
 7

 8              SHULMAN, HODGES & BASTIAN
                BY:  MARK BRADSHAW
 9                   ATTORNEY AT LAW
                26632 TOWNE CENTRE DRIVE
10              SUITE 300
                FOOTHILL RANCH, CALIFORNIA 92610
11

12
       FOR VICTOR VALLEY COMMUNITY HOSPITAL AND VICTOR VALLEY
13     HOSPITAL REAL ESTATE, LLC:

14
                STUTMAN, TREISTER & GLATT
15              BY:  GARY E. KLAUSNER
                     ATTORNEY AT LAW
16              1901 AVENUE OF THE STARS
                12TH FLOOR
17              LOS ANGELES, CALIFORNIA 90067

18
                STRATEGIC GLOBAL MANAGEMENT
19              BY:  WILLIAM E. THOMAS
                     ATTORNEY AT LAW
20              6800 INDIANA AVENUE
                SUITE 130
21              RIVERSIDE, CALIFORNIA 92506

22

23

24

25
```

Page 4

```
1                   A P P E A R A N C E S
                         (CONTINUED)
2

3  FOR VICTOR VALLEY COMMUNITY HOSPITAL AND VICTOR VALLEY
   HOSPITAL REAL ESTATE, LLC:
4

                PLATINUM HEALTH
5               BY:  JAMES W. YOUNG
                    PRESIDENT AND CEO
6               628 MACADAMIA LANE
                PLACENTIA, CALIFORNIA 92870
7

8
   FINANCIAL ADVISORS:
9

                ALVAREZ & MARSAL
10              BY:  GEORGE D. PILLARI
                    MANAGING DIRECTOR
11              100 PINE STREET
                SUITE 2200
12              SAN FRANCISCO, CALIFORNIA 94111

13

                ALVAREZ & MARSAL HEALTHCARE INDUSTRY
14               GROUP
                BY:  BRIAN BUCHANAN
15                  SENIOR DIRECTOR
                100 PINE STREET
16              SUITE 900
                SAN FRANCISCO, CALIFORNIA 94111
17

18

                ALVAREZ & MARSAL HEALTHCARE INDUSTRY
19               GROUP
                BY:  JOSHUA ZAZULIA
20                  ASSOCIATE
                100 PINE STREET
21              SUITE 900
                SAN FRANCISCO, CALIFORNIA 94111
22

23

24

25
```

Page 5

```
 1                    A P P E A R A N C E S
                         (CONTINUED)
 2

 3    FINANCIAL ADVISORS:

 4              ALVAREZ & MARSAL NORTH AMERICA
                BY:  MILEN HAYRIYAN
 5                   ASSOCIATE
                633 WEST FIFTH STREET
 6              SUITE 850
                LOS ANGELES, CALIFORNIA 90071
 7

 8    FOR THE UNSECURED CREDITORS COMMITTEE:

 9              KIRK BARBER LAW GROUP
                BY:  KIRK BARBER
10                   ATTORNEY AT LAW
                43426 BUSINESS PARK DRIVE
11              TEMECULA, CALIFORNIA 92590

12

13              LAW OFFICES OF DANNING, GILL, DIAMOND &
                   KOLLITZ
14              BY:  STEVEN J. SCHWARTZ
                     ATTORNEY AT LAW
15              2029 CENTURY PARK EAST
                THIRD FLOOR
16              LOS ANGELES, CALIFORNIA 90067

17

18

19

20

21

22

23

24

25
```

1                      E X H I B I T S

2                                                  PAGE

3    Exhibit 1 - Asset Sale Agreement Filed 10/15/2010..7

4    Exhibit 2 - Asset Sale Agreement...................7

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

 1          FRIDAY, NOVEMBER 5, 2010; VICTORVILLE, CALIFORNIA

 2                          10:52 A.M.

 3                          --oOo--

 4

 5          MR. MAIZEL:  Okay.  Let's start.                        10:52

 6                For the purposes of today's proceeding,

 7     if -- just to make sure everyone's in the right place,

 8     this is the auction of Victor Valley Community Hospital

 9     under the bankruptcy proceedings.  So if you're meant

10     to be in one of the other conference rooms, now would     10:52

11     be an appropriate time to leave.

12                There is a court reporter who is going to

13     take a verbatim transcript of everything that's said

14     here today.  So any of the bidders, anyone who speaks

15     up, please identify yourself by name, and if you         10:52

16     represent an organization, please identify the

17     organization, at least the first couple of times so the

18     court reporter knows who you are.

19                Members of the public, thank you for coming.

20     This is not a proceeding where you're going to be       10:52

21     allowed to participate, but you are welcome to stay;

22     help yourself to the refreshments in the back.

23                The record that will be produced by the

24     court reporter will have drafts, per the Attorney

25     General's request, of both the asset purchase -- asset  10:52

Page 8

1   sale agreements that were submitted by both the bidding

2   parties.

3              (Whereupon Exhibits 1 and 2

4              were marked for identification.)

5       MR. MAIZEL:  For the record, why don't I have the          10:53

6   spokesman for bidders identify the organizations that

7   are bidding this morning.

8              There's a microphone, if you think you need

9   it.

10      MR. KLAUSNER:  For the record, I'm Gary Klausner of        10:53

11  Stutman, Treister & Glatt, of counsel to the purchaser

12  known as Victor Valley Hospital Real Estate, LLC, and

13  Victor Valley Hospital Acquisition, Inc.

14      MR. SARRAO:  And Michael Sarrao on behalf of Prime

15  Healthcare Services Foundation, the stalking-horse         10:53

16  bidder.

17      MR. MAIZEL:  And I realize I didn't identify

18  myself.  I'm Sam Maizel from Pachulski, Stang, Ziehl &

19  Jones.  And I am counsel to the hospital in its

20  Chapter 11 case.                                           10:54

21              With me is Charley Slyngstad who is the

22  business advisor and who's also doing all the work for

23  the hospital in preparing the voluminous papers which

24  have to be submitted to the Attorney General to get

25  approval of the sale.                                      10:54

Page 9

1          Also with us today are representatives

2    Alvarez & Marsal Healthcare Industry Group, which have

3    been retained to provide advice and assist -- advice to

4    the Board of Directors in making the decision on the

5    sale and to assist in the bid and auction process          10:54

6    today.

7          Behind me are representatives, the

8    management of the hospital and the Board of Directors

9    of the hospital, and also my co-counsel, Mary Lane.

10         All right.  There are matters that I want to         10:54

11   put on the record to make sure that all the bidders

12   start from the same point.

13         First, for the public's knowledge, last

14   night -- what we're going to deal with today is the

15   monetary aspects of the sale of the hospital.               10:54

16         Last night both bidding groups were given an

17   opportunity and did make presentations to the Board of

18   Directors and also the official committee of unsecured

19   creditors, which is represented here today by counsel,

20   Steven Schwartz, and the chairman of the committee.         10:55

21         And they were given a presentation on the

22   nonmonetary aspects of the sale, including the ability,

23   obviously, of the bidder to successfully run a

24   hospital.

25         And the Board, when it makes its decision          10:55

Page 10

1    later today, is required to consider both the

2    nonmonetary and monetary aspects of the bids.

3          There was some issue, just for both bidders,

4    in the asset sale agreements that were submitted about

5    whether bank accounts were excluded or included.          10:55

6          I think in Section 1.9 they were included --

7    they were excluded assets, but in 1.8(c) they were

8    listed -- in Schedule 1.8(c) they were listed as --

9    bank accounts were included in the list of assets being

10    acquired.                                                 10:55

11          So I'll need both parties to make clear on

12    the record what their intent is with regard to the bank

13    accounts, cash in the accounts.

14          Just to make clear, every -- that the

15    bidders understand some other issues that have come up    10:56

16    in the last week.

17          We were notified by the Federal government

18    with regard to the Medicare provider agreement that

19    their position would be that any bidder who wanted to

20    have the debtor assume and then assign the provider       10:56

21    agreement to the bidder -- successful buyer, would have

22    to take it with successor liability, including

23    liability for false claims act, and also for the CLIA

24    litigation, which I think both parties are aware of.

25          The alterative, of course, to the bidders          10:56

Page 11

1    would be to have us reject those agreements and get

2    your own provider agreement.  A third alternative would

3    be to ask the debtor to try to make the transfer free

4    and clear of successful liability.

5              Based on my experience, that is certain to          10:56

6    lead to litigation, but that is an option.

7              I informed both bidders yesterday, but I'll

8    put on the record again today, that I was notified

9    yesterday morning that the Medi-Cal -- the Department

10   of Healthcare Services for the State of California, the      10:57

11   Medi-Cal overseer had asserted a right to recoup the

12   quality assurance fees to repay the approximately

13   6.1 million dollars in Medi-Cal overpayments that are

14   owed by the hospital, which would not otherwise be due,

15   at least in part, for the next 34 years.                     10:57

16             I believe we've resolved that, at least

17   temporarily, so that the governments -- state

18   government agrees not to make a recoupment.  But,

19   obviously, for both bidders' purposes, I cannot make

20   any promises that -- there's no settlement agreement,        10:57

21   and there's no long-term assurances.  The assurances

22   are just that the next recoupment wouldn't -- next

23   payment wouldn't be recouped.

24             Also, both bidders should be aware that last

25   night Inland Empire Health Plan filed a limited             10:57

Page 12

1    objection to the sale, asking for certain kinds of

2    treatment.  I think both bidders have seen the

3    objection, are aware of the issues raised by that

4    health plan.

5         The other -- next issue is with regard to          10:58

6    the financing issues.  The current DIP financing is

7    provided by the stalking-horse bidder, and any DIP

8    financing would be forgiven if the stalking-horse

9    bidder is the successful bidder.

10         However, any overbidder who would be               10:58

11   successful would have to be prepared to step into the

12   shoes of the DIP financing entity and pay off the DIP

13   within 20 days of the -- within 20 days of the court

14   approving the sale to someone other than the

15   stalking-horse bidder, if the stalking-horse bidder     10:58

16   required that.

17         Of course, the stalking-horse bidder, if not

18   the successful bidder, would agree to allow the DIP to

19   remain in place.

20         Again, to remind both bidders, the committee      10:58

21   has, I think, reached out to -- the creditors'

22   committee has reached out to both bidders and asked

23   about the avoidance actions.  For the debtor's

24   purposes, we view this as a nonmonetary consideration.

25         Obviously, the input of the creditors'            10:59

Page 13

1    committee will be of value to the Board in making a

2    decision.

3          The -- I've already discussed the

4    nonmonetary aspects, but I think both sides have been

5    informed by Mr. Slyngstad of the considerations the          10:59

6    Board required to consider that are nonmonetary in

7    deciding who to sell the hospital to.

8          There is -- I think entities are aware --

9    both bidders are aware that if you're not the

10   successful bidder, the back-up bidder would be bound        10:59

11   for, I think, through the hearing -- through entry of

12   an order approving the sale to someone else.

13         Of course, any -- if either entity wants to

14   remain as the back-up bidder bound longer than that,

15   nothing precludes you from staying as the back-up          10:59

16   bidder.

17         The minimum bids today are in $250,000

18   increments, but I urge you to consider larger bids.  If

19   you want to bid more than $250,000, you shouldn't

20   consider yourself restrained from doing so.               10:59

21         There was a question this morning from one

22   of the bidders, and I want to make clear that everyone

23   understands, that it's our understanding of the

24   procedure now for running the hospital after the sale

25   is that through the close -- through the entry of an      11:00

Page 14

1    order approving the sale, through closing of the sale,

2    which requires AG, the debtor in possession would

3    remain in control of the hospital, and that a

4    management agreement would then be entered into that

5    would allow the debtor -- the successful bidder to run                11:00

6    the hospital until AG -- until they get final approval,

7    as necessary.

8              That's all the notes I have.

9              Does anybody have any questions?

10        MR. KLAUSNER:  Hang on one second.                                11:00

11             Sam, I think we --

12        MR. MAIZEL:  You need to identify yourself, though.

13   It's Gary Klausner for the --

14        MR. KLAUSNER:  Gary Klausner.

15             I would appreciate your clarifying that last               11:00

16   point.  I want to make sure that there's no

17   misunderstanding.

18             Our understanding of the way this is going

19   to work, Sam, is that between the time of the court

20   hearing on November 9 and the time of the closing,                   11:01

21   which will follow the Attorney General approval --

22        MR. MAIZEL:  Right.

23        MR. KLAUSNER:  -- it's the status quo -- debtor in

24   possession, debtor manages, debtor operates, buyer is

25   really, at that point, working on getting approval, but              11:01

Page 15

1    otherwise has no responsibilities or commitments.

2              Once the sale closes -- and I think the

3    terminology using your agreement is the effective

4    time -- at that point, the purchaser completes its

5    obligations under the agreement and takes over                    11:01

6    operation of the hospital under the management

7    agreement, which would then go into effect.

8         MR. MAIZEL:  Yes.  And I think I used the wrong

9    term.  I mean, what we're looking at is, until

10   licensed -- until you can get -- the period will be               11:01

11   after AG approval, interim management agreement until

12   you get your own license.

13        MR. KLAUSNER:  Yes, and the term, the management

14   agreement would -- would stay in effect until approval,

15   and I think that was the confusion.                               11:02

16        MR. MAIZEL:  Right.  That's my mistake.

17        MR. KLAUSNER:  Because we're really talking about

18   the management agreement staying in effect until

19   licensure.

20        MR. MAIZEL:  I misspoke.  That's absolutely right.          11:02

21        MR. KLAUSNER:  Thank you.

22        MR. MAIZEL:  Any questions from either side?

23        MR. SARRAO:  No.

24        MR. MAIZEL:  One other issue -- I just want to make

25   sure -- the difference between the two bids is, one bid          11:02

Page 16

1  effectively gives us the cash to pay off some of the

2  secured debt -- the secured debt, including PHM, and

3  your bid, as I understand it, provides for that

4  obligation to be assumed.

5        Obviously, you will have to -- if you cannot                 11:03

6  obtain the approval of that secured entity -- secured

7  party, then you have to make it the same to us, which

8  would mean you would have to give us the cash to pay

9  them off.

10       You understand that?                                        11:03

11    MR. KLAUSNER:  That's confirmed.  At closing we're

12  either going to provide you with a release of the

13  security claim or we're going to provide you with the

14  funds to -- to pay it off.

15    MR. MAIZEL:  Okay.  All right.  George, I'm ready.             11:03

16   (Discussion held on the record out of the hearing of

17                  the reporter.)

18    MR. PILLARI:  Okay.  We have an initial overbid of

19  30,650,000 entered by Victor Valley Hospital

20  Acquisition, which we will mercifully reduce to VHA for           11:11

21  the discussion today.

22       And the opportunity to bid now is over to

23  Prime Healthcare Services Foundation.  The minimum bid

24  would be 30,900,000.

25    MR. MAIZEL:  Or more.                                          11:11

1     MR. SARRAO:  Can we have just a minute here?

2     MR. MAIZEL:  Okay.

3     MR. PILLARI:  One -- one correction.  We need

4 clarification as well with the bid on the issues Sam

5 brought, in particular the bank accounts.

6     MR. MAIZEL:  Right.  Whether you're --

7     MR. SARRAO:  Can we get the paragraph number?  I'm

8 sorry.

9     MR. MAIZEL:  It's -- Paragraph 1.9(m) listed them

10 as excluded assets.  In Schedule 1.8(c) they were

11 listed -- there was a list of bank accounts which were

12 going to be purchased, so it's not -- I mean, it -- it

13 could be that your position is, anything not listed is

14 excluded, but, I don't -- you know, I'm not -- just not

15 sure where you're at on this, so . . .

16     MR. SARRAO:  What is the overbidder's position?

17     MR. PILLARI:  30,650,000.

18     MR. KLAUSNER:  We bid the agreement that Prime

19 submitted, some minor modifications, so, at the moment,

20 we've bid the same ambiguity that they have, but --

21 and --

22     MR. MAIZEL:  But -- and you're the leading bidder,

23 so, I guess, it's not unfair to -- somebody's going to

24 have to start by clarifying their position.  So you're

25 the high bidder right now.

Page 18

1      MR. KLAUSNER:  Right.   Well, I indicated -- okay.

2  So you want us to clarify for their purposes --

3      MR. MAIZEL:  For everybody's purposes.

4      MR. KLAUSNER:  Sure.  Okay.  We'll get back to you.

5      MR. MAIZEL:  Okay.                                      11:11

6              (Recess taken.)

7      MR. KLAUSNER:  You've asked us to clarify our

8  position on the two sections that you mentioned --

9  the -- the money -- the money in the bank being

10  excluded assets under Section 1.9(m); however, the bank    11:27

11  accounts being included in Section 1.8(c).

12          First of all, I think you could argue, based

13  on the agreement, that the language of 1.9 trumps 1.8,

14  because it does say "notwithstanding what's in 1.8.

15  Here's what's excluded."  So I think that's probably      11:27

16  the better way to interpret the agreement.

17          Our view is the following:  We will agree

18  that the exclusion of 1.9(m) governs.  On condition of

19  that, the debtor continue to operate in the ordinary

20  course, and that the debtor not make any drawdowns on     11:27

21  the DIP loan that are not clearly within the stated

22  terms and provisions of the credit agreement that's

23  been approved by the bankruptcy court.

24      MR. MAIZEL:  We agree to that.

25      MR. KLAUSNER:  Thank you.                              11:28

Page 19

1       MR. MAIZEL:  Okay.  So we understand what their bid

2   is on.

3           So the bid is to the --

4       MR. PILLARI:  So we're back then to Prime

5   Healthcare Foundation.  Minimum amount will be            11:28

6   30,900,000.

7       MR. SARRAO:  Just one second.

8    (Discussion held on the record out of the hearing of

9               the reporter.)

10      MR. SARRAO:  On behalf of Prime Healthcare          11:29

11  Foundation, our bid is $30,900,000, plus, upon

12  bankruptcy court approval of sale, we will deposit

13  $10,000,000 into escrow to establish our commitment to

14  perform the improvements at Victor Valley Community

15  Hospital that they are promised in the asset settlement   11:29

16  agreement, and we will provide quarterly reports to --

17  as we understand it, the Victor Valley Community

18  Hospital Board will then be -- will still stay in place

19  and act more as a community Foundation.  We'll provide

20  quarterly reports to that community Foundation as to      11:30

21  the spending of that $10,000,000.

22          And we agree with VHA's interpretation on

23  the excluded assets in the bank account.

24      MR. KLAUSNER:  I need some clarification on --

25      MR. MAIZEL:  Yeah.  I just want to make sure I      11:30

Page 20

1    understand what you just --

2            So, the bid is 30,900,000, plus a commitment

3    to place 10,000,000 of that money into escrow or an

4    additional --

5        MR. SARRAO:  In addition.                           11:30

6        MR. MAIZEL:  The --

7        MR. SARRAO:  The point is, the asset sale agreement

8    provides for a commitment to spend at least $25,000,000

9    on improvements, equipment, working capital, et cetera.

10   No less than $15,000,000 of that being on equipment,     11:30

11   infrastructure improvements.

12           And to show our commitment and ability to do

13   that, we will place $10,000,000 in escrow Tuesday -- at

14   the hearing on Tuesday.

15       MR. MAIZEL:  And then provide quarterly reports       11:31

16   on --

17       MR. SARRAO:  On how that money is being spent.  So,

18   as I understand it, the Board that currently exists for

19   Victor Valley Community Hospital is not going to go

20   away.  It will still be there.  They'll still probably    11:31

21   have some assets left as far as a community Foundation.

22   And we will, obviously, provide reports to the

23   governing board on all that, but we'll provide reports

24   to them as well.

25       MR. MAIZEL:  But are you proposing that you'll        11:31

Page 21

1  start spending the $10,000,000 on capital expenditures

2  immediately?

3       MR. SARRAO:  Upon closing.

4       MR. MAIZEL:  Upon closing.  Okay.

5       MR. PILLARI:  Just to clarify the governings of the        11:30

6  escrow:  How are decisions -- who's ultimately in

7  charge?

8       MR. SARRAO:  Prime Healthcare Foundation would be

9  ultimately in charge of the escrow.  It's just that the

10 money will be there.  There's no question about the        11:30

11 ability to perform those commitments and perform those

12 improvements.

13          We know that Victor Valley Community

14 Hospital needs new equipment, needs infrastructure

15 improvements, and that's our demonstration that we are        11:31

16 prepared to do that day one.

17      MR. PILLARI:  Okay.  Let's restate that.

18 $30,900,000, excluding the bank accounts, and

19 $10,000,000 placed into an escrow.

20      MR. SARRAO:  Correct.  And the -- excluding the        11:31

21 bank accounts is with the condition or caveat that

22 Mr. Klausner --

23      MR. MAIZEL:  Sure.  The settlement agreements from

24 the data?

25      MR. SARRAO:  Correct.        11:31

Page 22

1      MR. MAIZEL:  And so just so you understand, we

2   appreciate the references to the 10,000,000 in escrow

3   for capital expenditures at a future date.

4          In terms of today's bidding, it's, in

5   effect, a nonmonetary consideration, but the Board will          11:32

6   certainly consider that aspect.

7      MR. SARRAO:  Okay.

8      MR. PILLARI:  Next bid will be back to VHA with the

9   minimum amount of 31,150,000.

10   (Discussion held on the record out of the hearing of          11:32

11              the reporter.)

12      MR. KLAUSNER:  Okay.  On behalf of VHA, we're

13   increasing our bid from the original 30,650,000 to

14   32,000,000.

15          At this time we're not matching the          11:36

16   nonmonetary component relating to the $10,000,000

17   escrow deposit.

18      MR. MAIZEL:  Okay.

19      MR. PILLARI:  Back to Prime Healthcare Foundation.

20   Minimum amount of 32,250,000.          11:36

21   (Discussion held on the record out of the hearing of

22              the reporter.)

23      MR. SARRAO:  On behalf of Prime Healthcare

24   Foundation, we'll increase our bid to $32,500,000.  We

25   will continue to include the $10,000,000 deposited into          11:39

Page 23

1   escrow upon bankruptcy court approval of the sale.

2          We believe that's a very -- although it may

3   be nonmonetary from bankruptcy counsel's perspective,

4   we believe that is very important to the community and

5   the hospital.  It shows the commitment to follow                  11:39

6   through with the commitment to the asset sale

7   agreement, and we will leave the bankruptcy avoidance

8   actions to the bankruptcy estate or the creditors'

9   committee on how that plays out.

10      MR. MAIZEL:  I -- I certainly didn't mean to                  11:40

11  suggest it wasn't an important statement of commitment.

12  I just -- for purposes of this auction, we're just not

13  going to value it.

14      MR. SARRAO:  I understand.  And we just think for

15  the community and for the hospital, because what it               11:40

16  needs and what the community needs, that's an important

17  factor.

18      MR. MAIZEL:  Thank you.

19      MR. PILLARI:  Back to VHA.  Minimum would be

20  32,750,000.                                                        11:40

21   (Discussion held on the record out of the hearing of

22                  the reporter.)

23      MR. KLAUSNER:  I think we're ready.

24          Before I go forward, let me clarify a couple

25  of points for which you asked clarification earlier.              11:42

Page 24

1           We understand your point about the Federal

2   Government's request for successor liability.  We're

3   still evaluating whether that will be agreeable to us

4   or whether we would prefer you reject the agreement.

5           We understand what you said about Medi-Cal          11:43

6   and the potential recoupment or offset.

7           With regard to I.E.H.P. and their -- as I

8   read it, it was a conditional approval, or you could

9   call it a limited objection -- but in any event, their

10  objective appears to be to have the buyer committed to      11:43

11  continue to provide O.B. and pediatric services to its

12  members for a period of five years, which is acceptable

13  to us, with the understanding that we haven't entered

14  into any contract or agreed on any particular rates.

15          Concerning your point about DIP financing,          11:43

16  what we would propose to do is the following:  That if

17  we are the successful bidder and approved by the

18  bankruptcy court, and in the event that the DIP lender

19  calls the loan -- declares a mature date and requests

20  payment, we would agree to the use of 2.1 million          11:44

21  dollars of the good-faith -- of the five million

22  good-faith deposit that we will -- we've already

23  provided to you.

24          We would agree that that money can be

25  applied towards the satisfaction of the outstanding DIP     11:44

Page 25

1   loan.

2          At which point, VHA would be considered to

3   have acquired all of the rights and remedies of the DIP

4   lender as to that 2.1 million dollars.

5       MR. MAIZEL:  Is that it?                              11:44

6       MR. KLAUSNER:  That's it on those issues.

7       MR. MAIZEL:  Okay.  And then what's the bid?

8       MR. PILLARI:  What about the DIP --

9       MR. MAIZEL:  Wait.  I'll do that.

10         But I didn't hear a -- did I miss the bid?        11:45

11      MR. KLAUSNER:  No, you didn't.  I wanted to just

12  deal with those clarifying issues before we got --

13      MR. MAIZEL:  Okay.

14      MR. KLAUSNER:  I should have done it in the last

15  round.                                                   11:45

16      MR. MAIZEL:  Yeah.  Okay.  Let me take them in

17  reverse order.

18         You said you'd agree to the use of

19  2.1 million.  But I assume if we're required, under the

20  conditions we've already discussed publicly here, to    11:45

21  draw against the DIP financing, that what you mean is,

22  you'll commit to pay whatever is necessary out of

23  the -- out of the good-faith deposit to repay the DIP

24  financing.  So if it's 2.2 million --

25      MR. KLAUSNER:  You're correct.                       11:45

1        MR. MAIZEL:  Okay.  And then it's our understanding

2   that we would --

3        MR. KLAUSNER:  However, whatever -- whatever is

4   withdrawn from the good-faith deposit and applied to

5   pay down the DIP becomes a secured claim of VHA with          11:45

6   the same rights and -- or remedies as have been

7   provided to the DIP lender.

8        MR. MAIZEL:  That's -- that's the debtor's intent.

9           And then with regard to the I.E.H.P. limited

10  objection, we appreciate that you're saying that you          11:46

11  would agree to commit to keep the O.B. and pediatric

12  practice for the five years they've requested in their

13  limited objection.  Obviously -- I shouldn't say

14  "obviously."

15          But we're going to consider that a                    11:46

16  nonmonetary consideration that the Board will certainly

17  take into consideration when it makes its decision.

18       MR. KLAUSNER:  Yeah.  And I -- I don't believe

19  you've had confirmation from Prime on that -- on that

20  point.                                                        11:46

21       MR. MAIZEL:  I'm assuming if they overbid, we will.

22       MR. KLAUSNER:  Okay.  Getting to the numbers, we're

23  increasing the bid of VHA to $32,750,000.

24          In addition, we're also agreeable to

25  excluding the avoidance actions from the purchase            11:47

Page 27

1    assets.

2         MR. MAIZEL:  The comment was that they would

3    exclude the avoidance actions as have been suggested by

4    the creditors' committee.

5              Thank you.                                    11:47

6      (Discussion held on the record out of the hearing of

7                    the reporter.)

8         MR. MAIZEL:  Just to clarify, there was a good

9    point raised by the other bidder about -- because if at

10   that point -- if you step into the shoes of the DIP      11:48

11   lender, then we'll need your commitment, as the current

12   DIP lender's committed to, that, at closing, you will

13   forgive the DIP lender the DIP loan.  That's -- their

14   agreement now is it would be forgiven.  We'll need your

15   commitment to the same, because at that point, you'll    11:49

16   have stepped into their shoes for 2.1 million or some

17   other number.

18        MR. KLAUSNER:  That's confirmed.

19        MR. MAIZEL:  Thank you.

20        MR. PILLARI:  Bidding is back to Prime Healthcare   11:49

21   Services Foundation.  Minimum bid of $33,000,000.

22     (Discussion held on the record out of the hearing of

23                    the reporter.)

24        MR. SARRAO:  We're ready.

25              On behalf of Prime Healthcare Foundation, we  11:52

Page 28

1    will increase the purchase price to 33,000,000.  We'll

2    continue our commitment to put 10,000,000 into escrow.

3    With respect to I.E.H.P., like VHA, we will continue to

4    provide O.B. and pediatric services for no less than

5    five years, with the expectation that we would enhance          11:53

6    O.B. services at Victor Valley Community Hospital for

7    the community.  And our other terms stay the same.

8         MR. MAIZEL:  Thank you.

9         MR. PILLARI:  Bid is to VHA.  Minimum amount

10   33,250,000.                                                      11:53

11    (Discussion held on the record out of the hearing of

12                    the reporter.)

13         MR. KLAUSNER:  We're ready to go.

14            On behalf of VHA -- VHA, we're increasing

15   our bid to $33,500,000.  All other terms and conditions          11:54

16   of our remaining bid, the same.

17         MR. MAIZEL:  Thank you.

18         MR. KLAUSNER:  Or of our existing bid remain the

19   same.

20         MR. PILLARI:  Next bid is to Prime.  Minimum bid is         11:54

21   33,750,000.

22    (Discussion held on the record out of the hearing of

23                    the reporter.)

24         MR. SARRAO:  We're ready.

25            On behalf of Prime Healthcare Foundation, we             11:55

Page 29

1    will increase the bid to 34,000,000, continue the terms

2    and conditions of our prior offer, including the

3    $10,000,000 into escrow, O.B. and pediatric services,

4    with the expectation to enhance O.B. services for the

5    community.                                                    11:56

6          MR. MAIZEL:  Thank you.

7          MR. PILLARI:  The bid is back to VHA.  Minimum

8    34,250,000.

9    (Discussion held on the record out of the hearing of

10                    the reporter.)                               11:56

11          MR. KLAUSNER:  We're ready to go.

12             On behalf of VHA, we'll increase our bid to

13    $34,250,000.  All other terms remaining the same.

14          MR. PILLARI:  The bid is to Prime Healthcare

15    Foundation.  Minimum will be $34,500,000.                    11:57

16          MR. MAIZEL:  Do you want to take a break now?

17             There's been a request to take a 30-minute

18    break for lunch.  I'll do this:  So there's been a

19    request by one of the bidders to take 30 minutes for

20    lunch.  That doesn't seem unreasonable to me.                11:57

21             We actually ordered pizzas, so anybody who

22    wants to stay, they should be here in about 15 minutes.

23    And you can have lunch on us -- actually, on my firm.

24    If you don't want to stay, we'll start again at 12:30.

25          MR. KLAUSNER:  Are you still working off the --        11:58

Page 30

1          MR. MAIZEL:  This is not charged back to the

2    hospital.  This is actually on my firm.

3          MR. PILLARI:  Where are we exactly on the --

4          MR. MAIZEL:  So the bid's to -- the bid is at

5    34,250,000, and the next bid is to them, so we'll start          11:58

6    again at 12:30.

7               Again, if you want to stick around, pizza

8    should be here within 15 minutes, and you're welcome to

9    stay and have a lunch.

10        (At 11:58 a.m., the proceedings were adjourned          11:58

11                    for noon recess.)

12    ///

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 31

1        (At 12:44 p.m., the proceedings were reconvened.)

2        MR. PILLARI:  Back on the record.

3            The previous bid was 34,250,000 from -- from

4   VHA.  It's thirty-four- -- now, it's over to Prime

5   Healthcare Foundation.  Minimum bid 34,500,000.                    12:44

6        MR. SARRAO:  On behalf of Prime Healthcare

7   Foundation, our bid is 34,500,000.  Again, with the

8   same terms and conditions, including the $10,000,000

9   deposit into escrow for the benefit of the community.

10       MR. PILLARI:  Bid is to VHA.  Minimum of                      12:44

11  34,750,000.

12       MR. KLAUSNER:  On behalf of VHA, we are increasing

13  our bid to $34,750,000.  All other terms remain the

14  same.

15       MR. PILLARI:  VHA bids 34,750,000.                            12:45

16            It's to Prime Healthcare Foundation.

17  Minimum 35,000,000.

18   (Discussion held on the record out of the hearing of

19                  the reporter.)

20       MR. SARRAO:  On behalf of Prime Healthcare                    12:46

21  Foundation, we'll increase our bid to 35,000,000.  All

22  other terms and condition remain the same, except we'll

23  increase the amount deposited into escrow from

24  10,000,000 to 15,000,000.

25       MR. PILLARI:  That moves the bid back to VHA.                 12:46

Page 32

1    Minimum bid will be 35,250,000.

2        MR. KLAUSNER:  On behalf of VHA, our bid is

3    increased to $35,250,000.

4        MR. PILLARI:  35,250,000 from VHA.

5            That moves it back to Prime Healthcare                    12:47

6    Foundation.  Minimum bid will be 35,500,000.

7        MR. SHULMAN:  We'd like a five-minute break.

8        MR. PILLARI:  A request for a five-minute break.

9        MR. MAIZEL:  Sure.  Sure.  Take five minutes.

10               (Recess taken.)                                       12:55

11       MR. PILLARI:  The bid is 35,500,000 to Prime

12   Healthcare Foundation.

13           35,250,000 was here (Indicating).  Minimum

14   is 35,500,000.

15           We've got like six people making sure.                   12:56

16       MR. SARRAO:  On behalf of Prime Healthcare

17   Foundation, we're going to maintain our bid of

18   $35,000,000.  Thank the Board of Directors of Victor

19   Valley Community Hospital for the opportunity to

20   participate, and reiterate that we believe our bid of            12:57

21   35,000,000 is in the best interest of the community.

22   It would be on the hospital to be operated as a

23   nonprofit, and we're committed to put $15,000,000 in

24   escrow to complete the necessary improvements and

25   upgrades to Victor Valley, which will lead to better             12:57

Page 33

1    patient care and improved healthcare access to the

2    community.

3        MR. MAIZEL:  Thank you.

4            Thank you for participating.

5        MR. PILLARI:  One clarification, the $15,000,000        12:57

6    escrow, community benefit?  Cap "X"?  Both?  What box

7    are we in?

8        MR. SARRAO:  The $15,000,000 will be for cap "X" --

9    infrastructure, equipment upgrades, capital

10   improvements to the hospital.                              12:57

11           The point being that we -- we believe that

12   commitment shows our commitment to the community and

13   will improve access to care and the quality of care for

14   the community.

15       MR. MAIZEL:  Thank you.  Okay.                         12:57

16       MR. PILLARI:  Thank you.  So the high bid is

17   35,250,000 to VHA.

18       MR. MAIZEL:  All right.  Any questions?

19       MR. KLAUSNER:  Yeah, Sam.  We want to take a break

20   for a minute.                                             12:58

21       MR. MAIZEL:  Do you want to take a break?

22       MR. KLAUSNER:  Yeah.

23       MR. MAIZEL:  Okay.  We'll take five minutes.

24       MR. KLAUSNER:  Just to clarify something.

25       MR. MAIZEL:  Okay.                                    12:58

Page 34

1                    (Recess taken.)

2          MR. MAIZEL:  Back on the record.

3              I think we had finished the bidding.

4          MR. PILLARI:  We finished the bidding.

5          MR. MAIZEL:  And then you asked for a recess, so          13:44

6   it's --

7          MR. PILLARI:  The bidding finished at -- at --

8   Prime Healthcare Foundation passed.  The bid here was

9   35,000,000- --

10         MR. MAIZEL:  35,250,000.                                 13:44

11         MR. PILLARI:  35,250,000.

12         MR. KLAUSNER:  Okay.  Thank you for the indulgence.

13             We wanted to review and clarify our

14   proposal.  We also wanted to talk to the creditors'

15   committee about what we were proposing to do, and we           13:44

16   wanted to explain why it might seem unusual for us to

17   increase our own offer.

18             The way the bidding ended, we were at

19   $35,250,000.  Prime was at $35,000,000, so ostensibly

20   we were the high bidder.                                       13:45

21             However, there was some nonmonetary

22   consideration that was discussed today that -- in

23   connection with which Prime had proposed to deposit

24   $15,000,000 in an escrow account upon court approval,

25   which would be money that would then be used to satisfy        13:45

Page 35

1    the contractual obligation to provide capital

2    improvements to the hospital.

3            In our view, that doesn't add any particular

4    value to the proposal, for the simple reason that both

5    bidders are contractually obligated to contribute                    13:45

6    $25,000,000 for capital improvements.

7            And in our view, depositing money into one's

8    own bank account doesn't really accomplish anything or

9    make anyone more committed.

10            Nevertheless, in order to address what could           13:45

11    be perceived as nonmonetary consideration, we decided

12    to increase our offer and actually provide more cash to

13    the debtor -- to the estate.

14            So we've revised our offer, and we've

15    increased it in two respects:  Number one, we're              13:46

16    increasing our offer to $37,000,000.  And we have also

17    agreed to leave in the estate any claims or causes of

18    action that the estate might have against the entity

19    that's known PHM.

20        MR. MAIZEL:  "PHM"?                                       13:46

21        MR. KLAUSNER:  Yes.

22            We have reviewed the terms of our proposal

23    with the debtor's financial advisor, and the financial

24    advisor has confirmed to us that on a purely economic

25    basis, that our offer is a superior offer.                    13:47

Page 36

1          We have also conferred with the creditors'

2   committee, through counsel and their chairman, and we

3   understand that -- that committee members have also

4   been contacted, and we understand from Mr. Schwartz

5   that the creditors' committee has agreed to support the        13:47

6   sale to VHS (sic) on the terms that we've just

7   articulated and to advocate that the court, on Tuesday,

8   approve the sale to VHS -- VHA on these terms.

9       MR. MAIZEL:  Well, thank you for your additional

10  clarifications.                                                 13:47

11          And I do want to say that the Board will

12  obviously independently determine the value to be

13  assessed on and the weight to be attributed to any

14  nonmonetary considerations.

15          I appreciate your thoughts.  I'd like to              13:47

16  stop it here, if I could.

17      MR. KLAUSNER:  We'll you've indicated --

18      MR. MAIZEL:  No.  No.  No.  The bidding is done,

19  but I -- I mean -- so we're done.  So -- okay.  I think

20  that concludes today's activities.                              13:48

21          Thank you.

22      (The proceedings were concluded at 1:48 p.m.)

23                  --oOo--

24

25

Page 37

1                    REPORTER'S CERTIFICATE

2

3    STATE OF CALIFORNIA          )
                                  )   SS.
4    COUNTY OF SAN BERNARDINO     )

5

6              I, AMY P. SMITH, a certified shorthand

7    reporter for the State of California, do hereby certify:

8              That the said proceeding was taken down by me

9    in stenotype at the time and place therein stated and

10   thereafter reduced to typewriting under my direction and

11   that the transcript is a true and correct record of the

12   proceedings here held.

13             I further certify that I am not of counsel or

14   attorney for any of the parties hereto or in any way

15   interested in the event of this cause and that I am not

16   related to any of the parties thereto.

17             Dated this 8th day of November, 2010.

18

19             _____

20                        AMY P. SMITH
                          Certified Shorthand Reporter
21                        License No. 12154

22

23

24

25

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA  90067

A true and correct copy of the foregoing documents described as: **SUBMISSION OF TRANSCRIPT OF AUCTION HELD ON NOVEMBER 5, 2010** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 8, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **November 8, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**Via Federal Express**
Honorable Catherine Bauer
U.S.B.C.
3420 Twelfth Street
Suite 369
Riverside, CA 92501

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 8, 2010 | Sophia Margetis | /s/ Sophia Margetis |
|---|---|---|
| Date | Type Name | Signature |

I.   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**:

Allison R Axenrod on behalf of Creditor Claims Recovery Group LLC
allison@claimsrecoveryllc.com

Martin R Barash on behalf of Interested Party The Senior Associates Group, Inc.
mbarash@ktbslaw.com

Kirk A Barber on behalf of Creditor Professional Hospital Supply, Inc.
barberlawgroup@yahoo.com

Manuel A Boigues on behalf of Creditor SEIU United Healthcare Workers - West
bankruptcycourtnotices@unioncounsel.net

Mark Bradshaw on behalf of Creditor Prime Healthcare Services Foundation, Inc.
mbradshaw@shbllp.com

Jeff Cohen on behalf of Interested Party Southpaw Asset Management LP
JC@SouthpawAsset.com

Sanaea Daruwalla on behalf of Interested Party Courtesy NEF
sdaruwalla@bwslaw.com

Richard K Diamond (TR) on behalf of Interested Party Courtesy NEF
jlv@dgdk.com, rdiamond@ecf.epiqsystems.com

Matthew A Gold on behalf of Creditor Argo Partners
courts@argopartners.net

Everett L Green on behalf of U.S. Trustee United States Trustee (RS)
everett.l.green@usdoj.gov

Robert A Hessling on behalf of Interested Party Courtesy NEF
rhessling@dgdk.com

Lawrence J Hilton on behalf of Creditor Cerner Corporation
lhilton@oneil-llp.com, ssimmons@oneil-llp.com

Mark D Houle on behalf of Creditor Health Net of California, Inc.
mark.houle@pillsburylaw.com

Raffi Khatchadourian on behalf of Creditor Sysco Food Services of Los Angeles, Inc.
raffi@hemar-rousso.com

Mary D Lane on behalf of Debtor Victor Valley Community Hospital
mlane@pszjlaw.com

Samuel R Maizel on behalf of Debtor Victor Valley Community Hospital
smaizel@pszjlaw.com, smaizel@pszjlaw.com

Elmer D Martin on behalf of Interested Party Courtesy NEF
elmermartin@gmail.com

Scotta E McFarland on behalf of Debtor Victor Valley Community Hospital
smcfarland@pszjlaw.com, smcfarland@pszjlaw.com

Jane Odonnell on behalf of Creditor California Health Facilities Financing Authority
jane.odonnell@doj.ca.gov

Misty A Perry Isaacson on behalf of U.S. Trustee United States Trustee (RS)
misty.isaacson@usdoj.gov

Courtney E Pozmantier on behalf of Interested Party The Senior Associates Group, Inc.
cpozmantier@ktbslaw.com

Martha E Romero on behalf of Creditor San Bernardino County Tax Collector
Romero@mromerolawfirm.com

Steven J Schwartz on behalf of Creditor Committee Committee Of Creditors, Unsecured Claims
sschwartz@dgdk.com

Seth B Shapiro on behalf of Interested Party Centers for Medicare and Medicaid Services
seth.shapiro@usdoj.gov

United States Trustee (RS)
ustpregion16.rs.ecf@usdoj.gov

Michael H Weiss on behalf of Interested Party Choice Medical Group
mw@weissandspees.com, lm@weissandspees.com;jb@weissandspees.com

Andrew F Whatnall on behalf of Creditor DACA 2010L, LP
awhatnall@daca4.com


**II. SERVED BY U.S. MAIL:**

*Parties on attached list.*

**Victor Valley Community Hospital**
**Chapter 11 Case No.:  6:10-bk-39537-CB**
**2002 Service List**

**Debtor**
Victor Valley Community Hospital
Catherine M. Pelley
Chief Executive Officer
15248 Eleventh Street
Victorville, CA  92395

Board of Directors
Kathy Davis
Chair, Governing Board of Directors
17100 B Bear Valley Rd.
Box 357
Victorville, CA  92395

Charlie Slyngstad
Burke Williams and Sorenson, LLP
444 S. Flower St., Ste. 2400
Los Angeles, CA  90071

United States Trustee
Misty Isaacson
Office of the United States Trustee
3685 Main St., Ste. 300
Riverside, CA  92501

Attorneys for Creditors' Committee
Richard K. Diamond
Steven Schwartz
Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067

Committee Member
Medtronic USA, Inc.
MS V215
3850 Victoria Street North
Shoreview, MN  55126-2978
Representative: Steve Carlson

Committee Member
PHS Professional Hospital Supply
42500 Winchester Road
Temecula, CA 92590
Representative: Kirk Barber

Committee Member
Rodney W. Brown, J.D.
LabWest, Inc.
1821 E. Dyer Rd., Suite 100
Santa Ana, CA 92705

**Government Agencies**

Counsel for the US DHHS/CMS
Phillip Seligman, Esq.
US Department of Justice
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, DC  20044-0875

Wendi A. Horwitz
Deputy Attorney General
California Department of Justice
Office of the Attorney General
300 South Spring St., Suite 1702
Los Angeles, CA 90013

Office of Statewide Health Planning and Development
Cal-Mortgage Loan Insurance Division
818 K. Street, Room 210
Sacramento, CA  95814

California Health Facilities Financing Authority
915 Capitol Mall, Suite 590
Sacramento, CA  95814

Office of Statewide Health Planning and Development –
State of California
300 Capital Mall, Suite 1500
Sacramento, CA  95814

**Secured Creditors**

Gregg Buxton, Vice President
Desert Community Bank
a Division of East West Bank
14800 La Paz Drive
Victorville, CA  92395

Corwin Medical Group
Manmohan Nayyar, MD
Raman Poola, MD
Anna Sugi
18564 Hwy 18, Suite 110
Apple Valley, CA  92307

Manmohan Nayyar, MD
Physicians Hospital Management, LLC
18523 Corwin Rd., Suite H
Apple Valley, CA  92307

Attorneys for PHM
Michael S. Weiss, Esq.
Weiss & Spees
1925 Century Park East, Suite 650
Los Angeles, CA 90067-

2701 Commonwealth Land Title Company
888 West Sixth Street, 4th Floor
Los Angeles, CA  90017

BNY Western Trust Company
700 South Flower Street, Suite 500
Los Angeles, CA  90017

Counsel to the Indenture Trustee for the HFFA Bonds
Catherine D. Meyer
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406

**Interested Parties**

Thomas L. Driscoll, Esq.
Attorney at Law
185 Berry Street, Suite 5511
San Francisco, CA  94107

Biotronik
Attention:  Allen Trammell
6024 Jean Road
Lake Oswego, Oregon  97035

Delta One Partners, Inc.
Corporate Headquarters South
48550 North View Drive
Palm Desert, CA  92260

Attorneys for LabWest, a subsidiary of LabCorp.
Michael Benjamin Lubic
K&L Gates
10100 Santa Monica Blvd., 7th Floor
Los Angeles, California  90067

Law Offices of Leslie M. Lava
580 California Street, Suite 1600
San Francisco, CA  94104

Westhoff, Cone & Holmstedt
1777 Botelho Drive, Suite 370
Walnut Creek, CA  94596

Davis Wright Tremaine LLP
64 Oak Knoll Drive
San Anselmo, CA  94960

Daniel Settelmayer, Esq.
Latham & Watkins LLP
PO Box 894256
Los Angeles, CA  90189-4256

Stalking Horse Bidder
Prime Healthcare Services Foundation, Inc.
Attn: Lex Reddy
Chief Executive Officer
3300 East Guasti Road, 2nd Fl.
Ontario, CA  91761

Counsel for Prime Healthcare Services Foundation, Inc.
Lee Shulman
Mark Bradshaw
Shulman Hodges & Bastian LLP
26632 Towne Centre Drive, Ste. 300
Foothill Ranch, CA  92610

J. Raymond Elliott
President and Chief Executive Officer
Boston Scientific
re: Guidant Corporation
One Boston Scientific Place
Natick, MA 01760-1537

Johnson & Johnson Health Care Systems Inc.
425 Hoes Lane
Piscataway, NJ 08854

Radiometer America, Inc.
810 Sharon Drive
Westlake, OH 44145

Quadramed
Attention:  Penny W. Collings
QuadraMed Corporation
12110 Sunset Hills Road # 600
Reston VA 20190

Stephen M. O'Hara
President and CEO
Angelica Textile Services (R-Colton
1105 Lakewood Parkway #210
Alpharetta, GA  30004

**Requests for Special Notice**

Attorneys for Professional Hospital Supply
Kirk Barber
Kirk Barber Law Group, A.P.L.C.
43426 Business Park Drive
Temecula, CA 92590

Attorneys for Creditor OSHPD and the
CA Health Facilities and Financing Authority
Jane O'Donnell
Deputy Attorney General Dept of Justice
Office of the Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550

Attorneys for Cerner Corporation
Lawrence J. Hilton
O'Neil LLP
19900 MacArthur Boulevard; Suite 1050
Irvine, California 92612

DARRELL W. CLARK
Stinson Morrison Hecker LLP
1150 18th Street, NW; Suite 800
Washington, DC 20036-3816

Counsel for The Senior Associates Group
Klee, Tuchin, Bogdanoff & Stern LLP
Attn: Thomas E. Patterson, Esq. and
Martin R. Barash, Esq.
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049

Counsel for The Senior Associates Group
Michael C. Kelcy, Esq.
3605 Canon Blvd.
Altadena, CA 91001

Attorneys for Health Net
Mark D. Houle, Esq.
Pillsbury Winthrop Shaw Pittman LLP
650 Town Center Drive, Suite 700
Costa Mesa, California 92626-7122

Attorneys for County of San Bernardino
Martha E. Romero
Romero Law Firm
BMR Professional Building
6516 Bright Avenue
Whittier, CA  90601

Attorneys for the United States of America, on behalf of the United
States Department of Health and Human Services and the Centers for
Medicare and Medicaid Services
Seth B. Shapiro, Trial Attorney
U.S. Department of Justice - Civil Division
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044