Samuel R. Maizel (CA Bar No. 189301)
Scotta E. McFarland (CA Bar No. 165391)
Mary D. Lane (CA Bar No. 071592)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail: smaizel@pszjlaw.com;
smcfarland@pszjlaw.com; mlane@pszjlaw.com

Attorneys for Debtor and Debtor in Possession
Victor Valley Community Hospital

Richard K. Diamond (CA Bar No. 070634)
Steven Schwartz (CA Bar No. 200586)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, California 90067
Telephone: 310/277-0077
Facsimile: 310/277-5735
Email: rdiamond@dgdk.com; sschwartz@dgdk.com

Attorneys for Official Committee of Creditors Holding
Unsecured Claims

Michael H. Weiss (CA Bar No. 107481)
WEISS & SPEES
1925 Century Park East, Suite 650
Los Angeles, California 90067-2701
Telephone: 424/245-3100
Facsimile: 424/245-3199
Email: mw@weissandspees.com

Attorneys for Physicians Hospital
Management and Corwin Medical Group,
Inc.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>VICTOR VALLEY COMMUNITY HOSPITAL, a California corporation,<br><br>    Debtor | Case No.: 6:10-bk-39537-CB<br><br>Chapter 11<br><br>**FIRST AMENDED LIQUIDATING PLAN OF REORGANIZATION FOR VICTOR VALLEY COMMUNITY HOSPITAL (April 15, 2011)**<br><br>**Confirmation Hearing:**<br>Date: May 6, 2011<br>Time: 10:00 am<br>Place: 3420 Twelfth Street<br>      Riverside, CA 92501-3819<br>      Courtroom 303<br>Judge: Honorable Catherine E. Bauer |

# **TABLE OF CONTENTS**

**Page**

I. DEFINITIONS AND RULES OF CONSTRUCTION ................................................................. 1

    A.    Definitions. ............................................................................................... 1

    B.    Interpretation, Rules Of Construction, Computation Of Time. .............................. 18

        1.    Defined Terms. .......................................................................... 18

        2.    Rules Of Interpretation. ............................................................... 18

        3.    Time Periods. ............................................................................ 19

II. DESIGNATION OF CLASSES OF CLAIMS ........................................................................ 20

    A.    Secured Claims (Class 1). ............................................................................ 20

        1.    Secured Tax Claims (Class 1a). .................................................... 20

        2.    Secured Claim of Physicians Hospital Management, LLC (Class 1b) ......................................................................................... 20

        3.    Secured Claim of Corwin Medical Group, Inc. (Class 1c) ................ 20

        4.    Secured Claim of Department of Health Care Services (Medi-Cal) (Class 1d) ........................................................................... 20

        5.    Secured Claim of California Office of State Health Planning and Development (Class 1e) ......................................................... 21

        6.    Secured Claim of The Bank of New York Mellon Trust Company, N.A, as Indenture Trustee of the Bonds (Class 1f) ............ 21

        7.    Miscellaneous Secured Claims (Class 1g). ...................................... 21

    B.    Priority Non-Tax Claims (Class 2). ............................................................... 21

        1.    Priority Non-Tax Claims that are not Priority Assumed Employee Claims (Class 2a) ....................................................... 21

        2.    Priority Assumed Employee Claims (Class 2b). ................................ 21

    C.    General Unsecured Claims (Class 3) .............................................................. 21

    D.    Subordinated Unsecured Claims (Class 4) ...................................................... 21

    E.    Unimpaired Classes ................................................................................... 22

III. TREATMENT OF CLASSES OF CLAIMS ......................................................................... 22

    A.    Unclassified Claims. ................................................................................... 22

        1.    Allowance of Administrative Claims .............................................. 22

            a.    Allowance of Non-Ordinary Course Administrative

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Claims .................................................................................. 22

b.    Allowance of Ordinary Course Administrative Claims .................. 23

c.    Allowance of 503(b)(9) Claims ............................................ 23

d.    Allowance of Professional Fee Claims .................................... 24

2.    Treatment of Administrative Claims. ........................................... 24

a.    Payment of Allowed Non-Ordinary Course
Administrative Claims. ..................................................... 24

b.    Payment of Allowed Ordinary Course Administrative
Claims. ....................................................................... 24

c.    Payment of 503(b)(9) Claims. ............................................ 25

d.    Payment of Professionals. ................................................. 25

e.    Payment of U.S. Trustee Fees. ........................................... 25

3.    Treatment of Priority Tax Claims. ............................................. 25

4.    Treatment of Cure Claims. ..................................................... 26

B.    Classified Claims. ................................................................... 26

1.    Class 1 (Secured Claims). .................................................... 26

2.    Class 2 (Priority Non-Tax Claims). .......................................... 27

3.    Class 3 (General Unsecured Claims). ........................................ 28

4.    Class 4 (Subordinated Unsecured Claims) ................................... 28

IV. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................. 28

A.    Rejection of Executory Contracts and Unexpired Leases ....................... 28

B.    Bar Date for Rejection Damages ................................................ 29

C.    Insurance Policies ............................................................... 29

V. MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN .......................... 30

A.    Implementing Actions In General; Conditions to the Effective Date ................. 30

B.    Debtor's Authority. .............................................................. 31

C.    The Liquidating Debtor ........................................................... 31

1.    Continued Corporate Existence of the Debtor. .............................. 31

2.    Officers and Directors of the Liquidating Debtor. .......................... 32

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:235948.5

3.   Vesting of the Debtor's Assets.................................................................33

4.   Funding of the Liquidating Debtor .........................................................33

5.   No Liability of Liquidating Debtor .........................................................34

6.   Funding of the Liquidating Debtor's Post-Effective Date
     Expenses .................................................................................................34

D.   Liquidating Trust...........................................................................................35

1.   Effectiveness of the Liquidating Trust. ...................................................35

2.   Beneficiaries............................................................................................35

3.   Implementation of the Liquidating Trust. ...............................................35

4.   Transfer of Liquidating Debtor's Assets..................................................36

5.   Vesting of Assets. ...................................................................................36

6.   Funding of the Liquidating Trust ............................................................37

7.   No Liability of Liquidating Trustee. .......................................................37

8.   Funding of the Liquidating Trust's Post-Effective Date
     Expenses. ................................................................................................38

9.   Provisions Relating to Federal Income Tax Compliance..........................38

E.   Representative of the Estate. ..........................................................................38

F.   The Committee. ..............................................................................................39

G.   Earmarked Charitable Donations ...................................................................39

H.   Unrestricted Charitable Donations .................................................................39

I.   Provisions Governing Distributions. ..............................................................40

1.   Disbursing Agent ....................................................................................40

2.   The Source of Distributions. ...................................................................40

3.   Distribution Dates ...................................................................................41

4.   Manner of Cash Payments .......................................................................41

5.   Setoff and Recoupment. ..........................................................................41

6.   No *De Minimis* Distributions. .................................................................41

7.   Fractional Cents ......................................................................................41

8.   No Distributions with Respect to Disputed Claims. .................................42

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

iii

|   |     |                                                                                    |     |
|---|-----|------------------------------------------------------------------------------------|-----|
|   | 9.  | Undeliverable or Unclaimed Distributions. | 42 |
|   | 10. | Record Date | 43 |
| J. | | Donation of Remaining Liquidating Trust Cash. | 43 |
| **VI. LITIGATION AND CLAIMS OBJECTIONS** | | | 44 |
| A. | | Preservation of Rights of Action and Defenses | 44 |
| B. | | Disputed Claims. | 46 |
|   | 1. | Disputed Claims Reserve | 46 |
|   | 2. | Objections to and Resolution of Disputed Claims. | 47 |
| **VII.** | 47 | | |
| A. | | Exculpation and Release of Debtor, Committee and Professionals. | 47 |
| B. | | Injunction | 48 |
| C. | | Nondischarge of the Debtor. | 49 |
| D. | | Entry of Final Decree | 50 |
| E. | | Post-Effective Date Quarterly Reports and Fees | 50 |
| F. | | Post-Effective Date Status Reports | 51 |
| G. | | Exemption from Stamp, Transfer and Other Taxes | 51 |
| H. | | Withholding and Reporting Requirements | 51 |
| I. | | Pre-Confirmation Injunction and Stays | 51 |
| J. | | Retention Of Jurisdiction | 51 |
| K. | | Successors And Assigns. | 53 |
| L. | | Modification or Withdrawal of the Plan | 53 |
| M. | | Effect on Sale . | 53 |
| N. | | Severability of Plan Provisions. | 54 |
| O. | | Exhibits | 54 |
| P. | | No Admission. | 54 |
| Q. | | General Authority | 55 |
| R. | | Binding Effect. | 55 |
| S. | | Governing Law. | 55 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:235948.5

T.    Payment Dates. ................................................................................................. 55

U.    Headings. .......................................................................................................... 55

V.    No Waiver. ........................................................................................................ 56

W.    Post-Effective Date Notice. ............................................................................. 56

VIII. CONDITIONS TO CONFIRMATION .................................................................. 56

IX. RECOMMENDATION AND REQUEST TO CONFIRM PLAN WITHOUT
     DISCLOSURE STATEMENT ................................................................................. 56

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

v

# TABLE OF AUTHORITIES

**Page**

Statutes

11 U.S.C. § 101(10) ................................................................................................... 6

11 U.S.C. § 101(5) ..................................................................................................... 4

11 U.S.C. § 102 ........................................................................................................ 19

11 U.S.C. § 350 ........................................................................................................ 25

11 U.S.C. § 365 .............................................................................................. 7, 29, 30

11 U.S.C. § 365(b) ..................................................................................................... 7

11 U.S.C. § 503(b) ............................................................................................. passim

11 U.S.C. § 503(b)(3)(D) ......................................................................................... 16

11 U.S.C. § 503(b)(9) ...................................................................... 1, 14, 23, 25

11 U.S.C. § 506 .............................................................................................. 3, 26, 27

11 U.S.C. § 507(a)(2) ................................................................................................. 1

11 U.S.C. § 507(a)(4) ............................................................................................... 15

11 U.S.C. § 521(a) .................................................................................................... 17

11 U.S.C. § 541 ................................................................................................. 2, 3, 9

11 U.S.C. § 547 ..................................................................................................... 3, 44

11 U.S.C. § 1123(a)(1) ............................................................................................. 20

11 U.S.C. § 1123(a)(5) ............................................................................................. 38

11 U.S.C. § 1123(b)(2) ............................................................................................... 7

11 U.S.C. § 1123(b)(3) ............................................................................................. 45

11 U.S.C. § 1124 .......................................................................................... 26, 27, 57

11 U.S.C. § 1125 .............................................................................................. 22, 48

11 U.S.C. § 1129 ........................................................................................... 6, 25, 57

28 U.S.C. § 1930 ........................................................................................................ 1

28 U.S.C. § 1961(a) .................................................................................................. 10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

i

Other Authorities

Internal Revenue Code § 61(a)(12) ................................................................. 38

Internal Revenue Code § 501(c)(3) ................................................................. 43

Treasury Regulation Section 301.7701-4(d) .................................................... 35

Rules

Bankruptcy Rule 9006(a) ........................................................................... 3, 19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:235948.5

Victor Valley Community Hospital, the Official Committee of Unsecured Creditors, Physicians Hospital Management, LLC and Corwin Health Group, Inc. collectively propose the following First Amended Liquidating Plan of Reorganization for Victor Valley Community Hospital (April 15, 2011).  All holders of claims are encouraged to read the Plan in its entirety.  **The Debtor is not soliciting acceptances or rejections of the Plan from Holders of Claims in Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3 because the Claims in those Classes are Unimpaired under the Plan. Holders of Claims in Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3, therefore, are deemed to have accepted the Plan, are not permitted to vote, and are not required to respond.  Any Holder of a Claim in Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3, however, has the right to object to confirmation of the Plan if it wishes to do so.  Because Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3 are Unimpaired and deemed to have accepted the Plan and because the Holders of Claims in Classes 1b, 1c and 4 are co-proponents of the Plan and have waived their right to a disclosure statement, the Debtor has not filed or sought Court approval of a disclosure statement and will not distribute a disclosure statement with its Plan.**

## I.

## DEFINITIONS AND RULES OF CONSTRUCTION

A.    **Definitions.**

In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

**"503(b)(9) Claim"** means a Claim for the value of goods received by the Debtor in the ordinary course of its business within twenty (20) days before the Petition Date as provided in section 503(b)(9) of the Bankruptcy Code.

**"Administrative Claim"** means a Claim for administrative costs or expenses that is allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code or 28 U.S.C. § 1930, including, without limitation, (a) Non-Ordinary Course Administrative Claims; (b) Ordinary Course Administrative Claims; (c) 503(b)(9) Claims; (d) Professional Fee Claims; (e) Administrative Tax Claims; and (f) U.S. Trustee Fees.

1    **"Administrative Tax Claim"** means a Claim other than an Allowed Secured Claim

2    that a government unit asserts against the Debtor for taxes or related interest or penalties, which

3    Claim is entitled to priority and allowable under section 503(b) of the Bankruptcy Code.

4    **"Allowed Administrative Claim"** means an Allowed Claim that is an

5    Administrative Claim.

6    **"Allowed Claim"** means (a) a Claim, as to which no proof of claim has been filed,

7    that is (i) listed in the Schedules in an amount greater than zero and not in an unknown amount and

8    (ii) not listed as disputed, contingent or unliquidated; or (b) a Claim as to which a timely proof of

9    claim has been filed in a sum certain and (i) no objection or motion to estimate, equitably

10   subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the

11   expiration of the time period to object to such claim as set forth in this Plan or order of the

12   Bankruptcy Court or (ii) any objection or motion to estimate, equitably subordinate, reclassify, or set

13   off has been resolved by agreement between the Claimant and the Liquidating Trustee or by Final

14   Order of the Bankruptcy Court.

15   **"Allowed Class '\*\*' Claim"** means an Allowed Claim classified in the specified

16   Class.

17   **"Allowed Priority Tax Claim"** means an Allowed Claim that is a Priority Tax

18   Claim.

19   **"Amended ASA"** means that certain Asset Sale Agreement, dated as of October 29,

20   2010, between the Purchasers and the Debtor that was approved by the Sale Order, as amended and

21   as it may be further amended subject to approval of the California Attorney General and the

22   Bankruptcy Court if such approval is required.

23   **"Assets"** means all assets of the Debtor's Estate including "property of the estate" as

24   described in section 541 of the Bankruptcy Code not sold, transferred or assigned to the Purchasers

25   pursuant to the terms of the Asset Sale Documents and shall, without limitation, include Cash,

26   Causes of Action, proceeds of insurance and insurance policies, all rights and interests, all real and

27   personal property, and all files, books and records of the Estate, provided, however, Assets shall not

28   include the Earmarked Charitable Donations.

2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   **"Asset Sale Documents"** means the Amended ASA, the Interim Management and

2   Lease Agreement and the Other Sale Documents.

3   **"Available Cash"** means any Cash held by the Liquidating Debtor or the Liquidating

4   Trust that is not Unrestricted Charitable Donations or otherwise designated by the Liquidating

5   Debtor or the Liquidating Trustee as Cash to be used to satisfy Allowed Administrative Claims,

6   Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed

7   General Unsecured Claims, and Post-Effective Date Expenses or otherwise subject to a reserve

8   established by the Liquidating Debtor or the Liquidating Trustee.

9   **"Avoiding Power Causes of Action"** means causes of action, if any, arising under

10  sections 502(d), 506, 544, 545, 547, 548, 549, 550, 553, and 558 of the Bankruptcy Code, or any

11  fraudulent conveyance, fraudulent transfer or preference laws, or any cause of action arising under,

12  or relating to, any similar state law or federal law that constitutes property of the Estate under section

13  541 of the Bankruptcy Code, whether or not an action is initiated on or before the Effective Date.

14  **"Ballot"** means the Ballot for accepting or rejecting the Plan.

15  **"Balloting Deadline"** means the date that is seven (7) days prior to the date of the

16  Confirmation Hearing.

17  **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as codified in

18  title 11 of the United States Code, § 101 *et seq*., as now or hereafter amended

19  **"Bankruptcy Court"** means the United States Bankruptcy Court for the Central

20  District of California, Riverside Division.

21  **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as

22  applicable from time to time in the Case.

23  **"Beneficiaries"** means the Holders of Allowed Claims who are the beneficiaries of

24  the Liquidating Trust.

25  **"Bonds"** means the $8,470,000 Insured Hospital Refunding Revenue Bonds (Victor Valley

26  Community Hospital) Series 2000A in the current outstanding principal amount of $1,790,000.

27  **"Business Day"** means any day that is not a Saturday, Sunday, or "legal holiday" as

28  defined in Bankruptcy Rule 9006(a).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1          **"Case"** means the case under chapter 11 of the Bankruptcy Code commenced by the

2 Debtor and bearing Case Number 6:10-bk-39537-CB.

3          **"Cash"** means all of the Debtor's cash or cash equivalents held by the Debtor as of

4 the Effective Date and all cash held by the Liquidating Debtor or the Liquidating Trustee after the

5 Effective Date, including, but not limited to, bank deposits, checks or other similar items but

6 excluding cash in bank accounts that is Earmarked Charitable Donations or Unrestricted Charitable

7 Donations, cash held in the Operating and Capital Needs Escrow, cash held in the Community

8 Foundation Escrow and cash that is held in the Debtor's Governmental Deposit Account or otherwise

9 the property of the Purchasers under the Interim Management and Lease Agreement or the other

10 Asset Sale Documents.

11          **"Causes of Action"** means any and all claims, demands, rights, actions, suits, causes

12 of action, third-party claims, counterclaims and crossclaims of, or liabilities or obligations owing to,

13 the Debtor or the Estate not sold, transferred or assigned to the Purchasers pursuant to the terms of

14 the Asset Sale Documents, of any kind or character whatsoever, known or unknown, suspected or

15 unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort or otherwise,

16 at law or in equity or under any other theory, that the Debtor or the Estate has or asserts or may have

17 or assert, whether or not brought as of the Effective Date, and which have not been settled or

18 otherwise resolved by Final Order as of the Effective Date, including but not limited to (1) rights of

19 setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by

20 law, (2) the right to object to claims or interests, (3) such claims and defenses as fraud, mistake,

21 duress and usury, (4) Avoiding Power Causes of Action, (5) claims for tax refunds, (6) claims to

22 recover outstanding accounts receivable, and (7) any other claims which may be asserted against

23 other persons or entities.

24          **"Claim"** means a claim, as the term "claim" is defined in section 101(5) of the

25 Bankruptcy Code, against the Debtor.

26          **"Claims Objection Deadline"** means the deadline for the Liquidating Debtor or the

27 Liquidating Trustee to file objections to 503 (b)(9) Claims, Priority Claims, and General Unsecured

28 Claims as set forth in Section VI.B.2 hereof.

**"Class"** means a group of Claims as classified in Article II hereof.

**"Closing"** means the closing of the Sale.

**"Closing Date"** means the date upon which the Sale closes.

**"Committee"** means the Official Committee of Unsecured Creditors appointed in the Case.

**"Community Foundation Escrow"** means the $3,000,000 escrow account to be established upon Closing pursuant to the requirements of section XVI of the Conditions to Approval of Sale, as the conditions may be amended or modified by the California Attorney General.

**"Community Foundation Escrow Note"** means the promissory note made by the Purchasers payable to the Debtor in the amount of $3,000,000 that is related, as set forth below, to the Community Foundation Escrow. The Community Foundation Escrow Note will be personally guaranteed by Dr. Kali Chaudhuri, an owner in the Purchasers and will be recourse against the Purchasers and the Purchasers shall assign to the Debtor, to the extent of all principal and interest owing under the Community Foundation Escrow Note and the Operating and Capital Needs Note, all of the Purchasers' rights to receive the funds held in the Community Foundation Escrow and the Operating and Capital Needs Escrow. The principal amount owing under the Community Foundation Escrow Note shall accrue interest equal to the interest earned on the funds held in the Community Foundation Escrow. The Community Foundation Escrow Note will be fully due and payable upon the earlier of: (1) sixty (60) days after the release of the funds from the Community Foundation Escrow to the Community Foundation (a "Community Foundation Distribution") in accordance with the Conditions for Approval of Sale, as they may be modified or amended, (i.e., Purchasers have closed, sold, transferred, leased, exchanged, optioned, conveyed, or otherwise disposed of the Hospital (collectively, a "Hospital Disposition") or filed for bankruptcy); or (2) ten (10) business days after the date on which the funds held in the Community Foundation Escrow are unconditionally released to the Purchasers in accordance with the terms of the Conditions for Approval of Sale, as they may be modified or amended, (i.e., after April 30, 2016 if, as of such date, there has not been a Community Foundation Distribution), or for any other reason the funds held in

5

the Community Foundation Escrow are unconditionally released to the Purchasers.  The

Community Foundation Escrow Note will further provide that if, in connection with a proposed

Hospital Disposition, the California Attorney General waives or modifies the Conditions for

Approval of Sale as they relate to the release of the funds in the Community Foundation Escrow

such that the Community Foundation Escrow is maintained and the funds held therein are not

released to the Community Foundation upon the Hospital Disposition (i.e., if the Hospital purchaser

assumes and agrees to abide by the Escrow Conditions), the Community Foundation Escrow Note

shall not come due as a result of the Hospital Disposition, provided that the obligations under the

Community Foundation escrow Note are assigned to and assumed by the Hospital purchaser in

connection with the Hospital Disposition and provided that any such waiver or modification does

not extend the April 30, 2016 date set forth in Condition XVI of the Conditions for Approval of

Sale.

**"Conditions to Approval of Sal**e" means the California Attorney General's

Conditions to Approval of Sale of Victor Valley Community Hospital set forth in that certain letter

to Debtor's counsel dated December 29, 2010, as they may be amended or modified by the

California Attorney General.

**"Confirmation"** means the entry of the Order by the Bankruptcy Court confirming

the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which Confirmation occurs.

**"Confirmation Hearing"** means the hearing held pursuant to Bankruptcy

Rule 3020(b)(2), including any continuances thereof, at which the Bankruptcy Court will consider

Confirmation of the Plan.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming the

Plan under section 1129 of the Bankruptcy Code.

**"Corwin"** means Corwin Medical Group, Inc.

**"Creditor"** means "creditor," as the term is defined in section 101(10) of the

Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6

**"Cure Claims"** means the right to payment of cash or the distribution of other property (as the parties may agree or the Court may order), as necessary to cure defaults under an executory contract or unexpired lease of the Debtor, or as otherwise required by section 365(b) of the Bankruptcy Code as a condition of assumption and assignment, so that the Debtor may assume and assign the contract or lease pursuant to sections 365 or 1123(b)(2) of the Bankruptcy Code.

**"Debtor" or "Debtor in Possession"** means Victor Valley Community Hospital, when acting in its capacity as representative of the Estate in the Case.

**"Debtor's Governmental Deposit Account"**  means the bank account or accounts into which any payments to Debtor from Medicare, Medi-Cal or other governmental payment are initially deposited, which will be subject to special handling provisions pursuant to the Interim Management and Lease Agreement.

**"DHCS"** means the California Department of Health Care Services for Medi-Cal Program reimbursements.

**"DHCS Repayment Agreement"** means that certain Repayment Agreement dated as of June 21, 2004 by and between the Debtor and DHCS that was assumed by the Debtor and assigned to VVHA pursuant to that certain *Order Authorizing Assumption And Assignment Of Contracts With (1) California Department Of Health Services And (2) Anthem Blue Cross* entered by the Bankruptcy Court on February 10, 2011 (the "DHCS Assumption Order") [Docket no. 647]. Pursuant to the terms of the DHCS Assumption Order, the assumption and assignment of the DHCS Repayment Agreement is not effective until 12:00:01 a.m. on the day after the Closing Date.

**"Disallowed Claim"** means a Claim or any portion thereof that (i) has been disallowed by agreement between the Claimant and the Liquidating Debtor or the Liquidating Trustee or by Final Order, (ii) is Scheduled in an unknown amount or as zero or as contingent, disputed, or unliquidated or is not Scheduled and as to which no Proof of Claim or Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, or (iii) has been withdrawn by the Claimant.

7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    "**Disbursing Agent**" means the Liquidating Debtor, as long as it remains in

2    existence, and then the Liquidating Trustee or any entity selected by the Liquidating Trustee to act as

3    its agent in conducting the disbursements to Holders of Allowed Claims pursuant to the Liquidating

4    Trust Agreement.

5    "**Disputed Claim**" means any Claim that is not an Allowed Claim or a Disallowed

6    Claim.

7    "**Disputed Claim Reserve**" means the Cash reserves, established pursuant to Section

8    VI.B.1 hereof by the Liquidating Debtor in the estimated amount necessary to satisfy all

9    distributions under the Plan on account of Disputed Claims if such Disputed Claims become

10    Allowed Claims.  The Disputed Claim Reserve, to the extent it continues to exist on the Transfer

11    Date, will be transferred to the Liquidating Trust and the Liquidating Trustee will maintain the

12    Disputed Claim Reserve as required in the Plan and the Liquidating Trust Agreement.

13    "**Distribution(s)**" means any transfer under the Plan of Cash or other property or

14    instruments to a Holder of an Allowed Claim.

15    "**Distribution Date(s)**" means the date(s) for making Distributions to Holders of

16    Allowed Unsecured Claims in accordance with Section V.E.3 hereof.

17    "**DPH**" means the California Department of Public Health.

18    "**DPH License**" means the license or licenses and permits that the Purchasers need to

19    obtain after the Closing Date from the DPH in order for VVHA to operate the Hospital as a general

20    acute care hospital in its own right.

21    "**Earmarked Charitable Donations**" means cash or other property donated to the

22    Debtor for a specific charitable purpose that has not been utilized by the Debtor for such specified

23    purpose prior to the Effective Date but continues to be held by the Debtor in the approximate amount

24    of $69,000 as of the date of filing the Plan.

25    "**Effective Date**" means the first Business Day after the date when all of the

26    following have occurred, unless waived: (i) the Confirmation Order shall have become a Final

27    Order; provided, however, at the option of the Debtor with the consent of the Committee and the

28    Purchasers, a Confirmation Order that is subject to a pending appeal or certiorari proceeding may be

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8

considered a Final Order provided no court of competent jurisdiction has entered an order staying

the effect of the Confirmation Order; (ii) the Closing has occurred; (iii) the Debtor, Committee and

the Liquidating Trustee have executed the Trust Agreement; provided, however, that the no assets

shall be transferred to the Liquidating Trust until the Transfer Date and the Liquidating Trust shall

not incur any expenses until the Transfer Date; (iv) all actions, documents and agreements necessary

to implement the Plan will have been effected or executed, (v) the Debtor will have received all

authorizations, consents, rulings, opinions or other documents that are determined by the Debtor to

be necessary to implement the Plan, and (vi) the Proponents will have determined in their reasonable

discretion that sufficient Cash exists to satisfy all Unclassified Allowed Claims and all Allowed

Claims in Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b and 3.  In no event shall the Effective Date occur more

than forty-five (45) calendar days following entry of the Confirmation Order, unless the Plan is

modified pursuant to Order of the Court extending such date for good cause shown.  .

　　　　**"Estate"** means the estate created in the Case under section 541 of the Bankruptcy

Code.

　　　　**"Exhibit Filing Date"** means a Business Day on which drafts of all Exhibits to the

Plan shall be Filed and which day shall be no later than ten (10) days prior to the Confirmation

Hearing.  The Debtor reserves the right to File amended or revised versions of any Exhibit through

and including the Confirmation Date.

　　　　**"File" or "Filed"** means filed with the Bankruptcy Court in the Reorganization Case.

　　　　**"Final Order"** means an order or judgment of the Bankruptcy Court, as entered on

its docket, which has not been reversed, stayed, modified or amended, and as to which (a) the time to

appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no

appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be

pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been

waived in writing in form and substance satisfactory to the Debtor or Liquidating Trustee, as

applicable, or (b) in the event that an appeal, writ of certiorari, or re-argument or rehearing thereof

has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall

have been affirmed by the highest court to which such order or judgment was appealed, or certiorari

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

1  has been denied, or from which re-argument or rehearing was sought, and the time to take any

2  further appeal, petition for certiorari or move for re-argument or rehearing shall have expired.

3          **"General Unsecured Claim"** or **"Unsecured Claim"** means any Claim that is not

4  an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, or a Secured Claim.

5          **"Hired Employees"** means those employees of the Debtor who are hired at the

6  Closing by the Purchasers, or either of them, in accordance with the terms of the Amended ASA.

7          **"Holder"** means the owner of a Claim against the Debtor, provided, however, with

8  respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferor to be

9  deemed the Holder of the Claim for distribution purposes, the deadline for any objection to the

10  proposed transfer of a Claim must have passed with either (1) no objection to the transfer having

11  been filed, or (2) any objection to such transfer having been resolved in favor of the transferor by no

12  later than thirty (30) prior to the initial Distribution Date.

13          **"Hospital"** means the non-profit community hospital located at 15248 Eleventh

14  Street, Victorville, California.

15          **"IMA Termination Date"** means the date on which the Interim Management and

16  Lease Agreement terminates.

17          **"Impaired"** means, when used with respect to a Claim, the legal, equitable and

18  contractual rights to which a Claim entitles the Holder of such Claim are unaltered by the Plan.

19          **"Indenture Trustee"** means The Bank of New York Mellon Trust Company, N.A.,

20  as indenture trustee of the Bonds.

21          **"Interim Management and Lease Agreement"** means that certain Interim

22  Management and Lease Agreement to be executed by the Debtor and the Purchasers on the Closing

23  Date in connection with the Amended ASA and the Sale, a copy of which will be filed as Plan

24  **Exhibit C**.

25          **"Judgment Rate"** means the interest rate as set forth in 28 U.S.C. § 1961(a) on a

26  federal judgment entered on the Petition Date, which was .26% per annum.

27          **"Licensing Date"** means the effective date on which VVHA obtains the DPH

28  License and all other permits and licenses needed for VVHA to operate the Hospital in its own right.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10

1  **"Liquidating Debtor"** means the Debtor after the Effective Date until the date of its

2  dissolution, which date shall not occur any earlier than the Transfer Date.

3  **"Liquidating Debtor's Assets"** means any and all Assets of the Debtor's Estate,

4  including, but not limited to, Cash, Causes of Action, and any other real or personal property that

5  remain property of the Estate on the Effective Date, all of which shall vest in the Liquidating Debtor

6  on the Effective Date and any proceeds thereof.  The Liquidating Debtor's Assets shall be free and

7  clear of any liens or claims that might otherwise have existed in favor of any party, except any

8  rights, remedies, liens and claims of the Purchasers, or any liabilities or obligations of the Debtor,

9  under the Asset Sale Documents and as otherwise provided in the Plan or the Confirmation Order.

10  **"Liquidating Trustee"** means George Pilari with Alvarez & Marsal Healthcare

11  Industry Group in his capacity as trustee of the Liquidating Trust, or any other person approved by

12  the Bankruptcy Court as Liquidating Trustee, and any successor trustee(s) appointed pursuant to the

13  Liquidating Trust Agreements, that has the powers and responsibilities set forth in the Plan, the

14  Confirmation Order and the Liquidating Trust Agreement and in such capacity shall act as a

15  liquidator of Liquidating Trust's Assets for the benefit of Holders of Allowed Claims.  Whenever the

16  Liquidating Trustee is referred to herein, all such references are qualified by the Liquidating

17  Trustee's powers, rights and obligations as set forth in the applicable Liquidating Trust Agreement.

18  **"Liquidating Trustee's Agents"** means, collectively, employees, officers, directors,

19  agents, members, representatives, or professionals employed or retained by the Liquidating Trustee.

20  **"Liquidating Trust"** means the certain trust as described in Section V.E. of the Plan,

21  created pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, and created for

22  the benefit of Holders of all Allowed Claims.  Except as otherwise expressly provided in the Plan, all

23  Liquidating Debtor's Assets that remain assets of the Liquidating Debtor as of the Transfer Date will

24  be transferred to the Liquidating Trust on the Transfer Date or as soon thereafter as is practicable.

25  The Liquidating Trust will continue and conclude the work started by the Liquidating Debtor to

26  resolve all Disputed Claims, liquidate the Liquidating Trust's Assets, including the resolution of any

27  Causes of Action, make Distributions to the Holders of Allowed Claims, and pay the expenses of the

28  Liquidating Trust, all as provided in the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

**"Liquidating Trust Agreement"** means that certain liquidating trust agreement by and between the Debtor and the Liquidating Trustee to be entered into pursuant to the Plan and the Confirmation Order, substantially in the form included in the Plan Exhibits, as it may be amended from time to time, a copy of which will be filed as Plan **Exhibit B**.

**"Liquidating Trust's Assets"** means any and all Liquidating Debtor's Assets, including, but not limited to, Cash, Causes of Action, and other personal property that remain property of the Liquidating Debtor on the Transfer Date, all of which shall be transferred to the Liquidating Trust by the Liquidating Debtor on the Transfer Date or as soon thereafter as is practicable, plus the Liquidating Trust Proceeds.  The Liquidating Trust's Assets shall be free and clear of any liens or claims that might otherwise have existed in favor of any party, except any rights, remedies, liens and claims of the Purchasers, or any liabilities or obligations of the Debtor or the Liquidating Debtor, under the Asset Sale Documents and as otherwise provided in the Plan or the Confirmation Order

**"Liquidating Trust Proceeds"** means any and all Cash, property and other rents, profits and/or proceeds derived from the Liquidating Trust's Assets, including reducing Causes of Action to Cash.

**"Local Bankruptcy Rules"** means the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California, effective as of January 4, 2010, as now in effect or hereafter amended.

**"Miscellaneous Secured Claims"** means every Claim that is a Secured Claim other than a Secured Claim that is separately classified in the Plan.  The Debtor is currently unaware of any valid Miscellaneous Secured Claims.

**"Non-Ordinary Course Administrative Claim"** means any Administrative Claim, but excluding Ordinary Course Administrative Claims, 503(b)(9) Claims; Professional Fee Claims, or U.S. Trustee Fees.

**"Non-Ordinary Course Administrative Claim Bar Date"** means, with respect to Non-Ordinary Course Administrative Claims, the date that is twenty (20) days after the Effective Date.

12

"**Non-Ordinary Course Administrative Claim Objection Deadline**" means the date that is at least fourteen (14) days prior to the hearing date set with the Bankruptcy Court for the request for the allowance of the Non-Ordinary Course Administrative Claim.

"**Operating and Capital Needs Escrow**" means the $3,000,000 escrow account to be established upon Closing pursuant to the requirements of section XIV of the Conditions to Approval of Sale, as the condition may be amended or modified by the California Attorney General.

"**Operating and Capital Needs Escrow Note**" means the promissory note made by the Purchasers payable to the Debtor in the amount of $3,000,000 that is related, as set forth below, to the Operating and Capital Needs Escrow. The Operating and Capital Needs Escrow Note will be secured by the funds in the Operating and Capital Needs Escrow and will be recourse against the Purchasers. The Purchasers shall assign to the Debtor, to the extent of all principal and interest owing under the Community Foundation Escrow Note and the Operating and Capital Needs Note, all of the Purchasers' rights to receive the funds held in the Community Foundation Escrow and the Operating and Capital Needs Escrow. The principal amount owing under the Operating and Capital Needs Escrow Note shall accrue interest equal to the interest earned on the funds held in the Operating and Capital Needs Escrow. The Operating and Capital Needs Escrow Note shall be fully due and payable within ten (10) business days after the date on which the funds held in the Operating and Capital Needs Escrow are unconditionally released to the Purchasers in accordance with the terms of the Conditions to Approval of Sale. However, notwithstanding the Operating and Capital Needs Escrow Note, the Purchasers will still be able to use the funds in the Operating and Capital Needs Escrow for emergency operating and capital needs, as set forth in the Conditions to Approval of Sale. As an additional means of payment of the Operating and Capital Needs Escrow Note, the Purchasers have agreed that they, or either of them, will use, as and when received by the Purchasers, or either of them, fifty percent (50%) of any funds received as a result of current quality assurance fee legislation or any follow on quality assurance fee legislation (the "Quality Assurance Fees") by the Purchasers during calendar year 2011, after the receipt by the Purchaser of the first $4.5 million of such Quality Assurance Fees in 2011, to pay down the Operating and Capital Needs Escrow Note.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

13

1    **"Ordinary Course Administrative Claim"** means a claim for administrative costs

2    or expenses that are allowable under section 503(b) of the Bankruptcy Code that are incurred in the

3    ordinary course of the Debtor's operations but excluding 503(b)(9) Claims.

4        **"OSHPD"** means California Office of State Health Planning and Development.

5        **"Other Sale Documents"** means any agreement or document executed or delivered

6    in connection with the Amended ASA other than the Amended ASA and the Interim Management

7    and Lease Agreement.

8        **"Person"** means any natural person or entity.

9        **"Petition Date"** means September 13, 2010, the date on which the Debtor filed its

10   voluntary petition for relief commencing its Case.

11       **"PHM"** means Physicians Hospital Management, LLC.

12       **"Plan"** means this liquidating plan of reorganization under chapter 11 of the

13   Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules

14   hereto, either in its present form or as it may be altered, amended, or modified from time to time.

15       **"Plan Documents"** means those documents necessary to effectuate the Plan.

16       **"Post-Effective Date Expense(s)"** means all voluntary and involuntary, costs,

17   expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or

18   unliquidated (collectively, the **"Expenses"**) incurred by the Liquidating Debtor after the Effective

19   Date until the Transfer Date and thereafter by the Liquidating Trust related to the implementation of

20   the Plan and the operation and administration of the Liquidating Debtor or the Liquidating Trust, as

21   applicable, including, but not limited to: (i) the Expenses of the Liquidating Debtor and the

22   Liquidating Trustee, as applicable, in connection with administering and implementing the Plan,

23   including any taxes incurred by the Liquidating Debtor or Liquidating Trustee or on the Liquidating

24   Debtor's Assets or the Liquidating Trust's Assets and accrued on or after the Effective Date; (ii) all

25   fees which accrue after the Effective Date which are payable to the U.S. Trustee pursuant to 28

26   U.S.C. § 1930(a)(6); (iii) the Expenses of the Liquidating Debtor or the Liquidating Trustee, as

27   applicable, in making the Distributions required by the Plan, including paying taxes and filing tax

28   returns;  (iv) any Expenses incurred by the Liquidating Debtor or the Liquidating Trustee resulting

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14

from the employment of independent contractors and professionals (including, without limitation,

attorneys, advisors, accountants, brokers, consultants, experts, professionals and other Persons)

providing necessary services to the Liquidating Debtor or the Liquidating Trustee and (v) the

Expenses of the Liquidating Debtor in connection with fulfilling and satisfying the Debtor's and its

obligations under the Amended ASA, Interim Management and Lease Agreement, the Other Sale

Documents and the Plan, including the maintaining of its existence until the Transfer Date and the

winding down of its affairs after the Transfer Date and any compensation paid to officers and

directors.

**"Post-Effective Date Notice List"** means the list of Persons who have requested

notice in accordance with Section VII.V of the Plan, from and after the Effective Date, of Court

filings, hearings and other matters as to which the Bankruptcy Code requires that notice be given.

**"Postpetition"** means the time from and after the filing of the voluntary chapter 11

petition in the Debtor's Case on September 13, 2010 through the Effective Date.

**"Priority Assumed Employee Claims"** means those Claims of the Hired Employees

of the Debtor which both (i) constitute PTO owed to such Hired Employees as of the Closing Date

and (ii) constitute Priority Claims under section 507(a)(4) of the Bankruptcy Code.

**"Priority Non-Tax Claim"** means a Claim, other than an Administrative Claim or

Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy

Code.

**"Priority Tax Claim"** means an Allowed Claim entitled to priority under

section 507(a)(8) of the Bankruptcy Code.

**"Professionals"** means those Persons providing advisory or consulting services (i)

retained pursuant to an order of the Bankruptcy Court in accordance with sections 327, 1103 and/or

1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective

Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (ii) for which

compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to sections

330 and 503(b)(2) of the Bankruptcy Code.

**"Proponents"** means, collectively, the Debtor, the Committee, PHM, and Corwin.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    **"Professional Fee Claim"** means:

2        (a) a Claim under sections 327, 328, 330, 331, 503, or 1103 of the Bankruptcy Code

3    for compensation for professional services rendered or expenses incurred on the Estate's behalf; or

4        (b) a Claim either under section 503(b)(4) of the Bankruptcy Code for compensation

5    for professional services rendered or under section 503(b)(3)(D) of the Bankruptcy Code for

6    expenses incurred in making a substantial contribution to the Estate.

7        **"Pro-Rata"** means proportionately so that the ratio of (a) the amount of consideration

8    distributed on account of a particular Allowed Claim to (b) the amount of such Allowed Claim is the

9    same as the ratio of (x) the amount of consideration distributed on account of all Allowed Claims of

10    the class in which the particular Allowed Claim is included to (y) the amount of all Allowed Claims

11    of that class.

12        **"PTO"** means accrued and unused paid time off owed as of the Closing Date to any

13    Hired Employee.

14        **"Purchasers"** means Victor Valley Hospital Real Estate LLC and Victor Valley

15    Hospital Acquisition, Inc., the purchasers of substantially all of the Debtor's assets pursuant to the

16    Amended ASA.

17        **"Purchase Notes"** means the Community Foundation Escrow Note and the

18    Operating and Capital Needs Escrow Note.

19        **"Record Date"** means, for purposes of Distributions under this Plan, the

20    Confirmation Date.

21        **"Sale"** means the sale of substantially all of the Debtor's real and personal property

22    assets and other intangible property to the Purchasers pursuant to the terms of the Amended ASA

23    which was approved by the Sale Order, including, but not limited to, the main, two-story, hospital

24    building and its adjacent modular office complex which houses its administrative offices and leases

25    of two facilities, one that houses the Women's Center and Outpatient Imaging facility, along with

26    the Debtor's human resources department, and the other that houses the Education Center, to the

27    Purchasers.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16

**"Sale Order"** means the *Order (i) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claim, Encumbrances and Interests, (2) Authorizing the Assignment of Certain Obligations of the Debtor to the Purchasers, (3) Finding that Purchasers are Good Faith Purchasers, and (4) Granting Related Relief*, entered on December 3, 2010 by the Bankruptcy Court [Docket No. 351], as the same may be amended or supplemented.

**"Scheduled"** means set forth on the Schedules.

**"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court, pursuant to section 521(a) of the Bankruptcy Code, Bankruptcy Rule 1007(b), and the Official Bankruptcy Forms, as may be amended from time to time.

**"Secured Claim"** means an Allowed Claim of a Creditor which was secured by a valid, enforceable and unavoidable lien against property in which the Estate had an interest prior to the Closing of the Sale, or that was subject to setoff under the Bankruptcy Code, to the extent of the value of such Creditor's interest in the Estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be. Except as otherwise provided in the Amended ASA, pursuant to the terms of the Sale and the provisions of the Sale Order, all asserted liens, encumbrances and interests against the Debtor's assets and property that were sold to the Purchasers are transferred to the cash proceeds of the Sale received by the Debtor under the Amended ASA with the same right, validity and priority as existed prior to the closing of the Sale**.**

**"Secured Tax Claims"** means every Claim of a Governmental Unit for taxes which, by operation of applicable nonbankruptcy law, is a Secured Claim.

**"Subordinated Unsecured Claims"** means the Unsecured Claims of PHM and Corwin, which are being subordinated to the General Unsecured Claims by agreement.

**"Transfer Date"** means the first business day after which both of the following have occurred:

(1)      the Purchasers have received all licenses and permits necessary for VVHA to operate the Hospital in its own right, including the DPH License, and such licenses and permits are effective; and

17

1        (2)      the IMA Termination Date has occurred.

2        **"Unclassified Claim"** means any Claim that is not part of any Class, including

3    Administrative Claims, Priority Tax Claims and Cure Claims.

4        **"Unimpaired"** means that the legal, equitable, and contractual rights to which a

5    Claim entitles the Holder of such Claim are not altered pursuant to the Plan.

6        **"Unrestricted Charitable Donations"** means cash or other property donated to the

7    Debtor for an unspecified charitable purpose that has not been utilized by the Debtor prior to the

8    Effective Date but continues to be held by the Debtor in the approximate amount of $323,000 as of

9    the date of filing the Plan.

10       **"U.S. Trustee"** means the Office of the United States Trustee for the Central District

11   of California.

12       **"U.S. Trustee Fees"** means all fees and charges assessed against the applicable

13   Estate by the U.S. Trustee and due pursuant to 28 U.S.C. § 1930.

14       **"VVHA"** means Victor Valley Hospital Acquisition, Inc., one of the Purchasers.

15   **B.      Interpretation, Rules Of Construction, Computation Of Time.**

16       **1.      Defined Terms.**

17       Any term used in the Plan that is not defined in the Plan, but that is used in the

18   Bankruptcy Code or Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy

19   Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

20       **2.      Rules Of Interpretation.**

21       For purposes of the Plan:

22       a.      whenever from the context it is appropriate, each term, whether stated

23   in the singular or the plural, shall include both the singular and the plural;

24       b.      any payment required under the Plan on a particular date shall be made

25   on such date or as soon thereafter as practicable;

26       c.      any reference in the Plan to a contract, instrument, release or other

27   agreement or document being in a particular form or on particular terms and conditions

28   means that such document shall be substantially in such form or substantially on such terms

18

DOCS_LA:235948.5

1    and conditions, delivered and Filed on or before the Exhibit Filing Date as an exhibit to the

2    Plan;

3            d.      any reference in the Plan to an existing document or exhibit Filed or to

4    be Filed means such document or exhibit, as it may have been or may be amended, modified

5    or supplemented through and including the Confirmation Date which, after they are Filed,

6    may be amended, modified or supplemented only with the express written consent of the

7    Proponents;

8            e.      unless otherwise specified in a particular reference, all references in

9    the Plan to sections, articles and exhibits are references to sections, articles and exhibits of or

10    to the Plan;

11            f.      the words "herein," "hereof," "hereto," "hereunder" and others of

12    similar import refer to the Plan in its entirety rather than to only a particular portion of the

13    Plan;

14            g.      captions and headings to articles and sections are inserted for

15    convenience of reference only and are not intended to be a part of or to affect the

16    interpretation of the Plan;

17            h.      all exhibits to the Plan and Plan Documents are incorporated herein,

18    regardless of when those exhibits are Filed;

19            i.      to the extent any discrepancy exists between the description contained

20    herein of a document or agreement that is an exhibit to the Plan and with the provisions of

21    that exhibit, the actual agreement or document shall govern; and

22            j.      the rules of construction set forth in section 102 of the Bankruptcy

23    Code shall apply.

24    **3.      Time Periods.**

25          In computing any period of time prescribed or allowed by the Plan, the provisions of

26    Bankruptcy Rule 9006(a) shall apply.

27

28

## II.

## DESIGNATION OF CLASSES OF CLAIMS

The following is a designation of the classes of Claims under the Plan. Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim and has not been paid, released, or otherwise satisfied before the Effective Date.

**A.      Secured Claims (Class 1).**

Except as otherwise provided in the Amended ASA and to the extent not paid at or on the Effective Date, pursuant to the terms of the Sale and the provisions of the Sale Order, all asserted liens, encumbrances and interests against the Debtor's assets and property that were sold to the Purchasers are transferred to the cash proceeds of the Sale received by the Debtor under the Amended ASA with the same right, validity and priority as existed prior to the Sale.

**1.      Secured Tax Claims (Class 1a).**

Class 1a consists of all Claims that are Secured Tax Claims.

**2.      Secured Claim of Physicians Hospital Management, LLC (Class 1b)**

Class 1b consists of the Secured Claim of PHM in the approximate amount of $6,685,770.

**3.      Secured Claim of Corwin Medical Group, Inc. (Class 1c).**

Class 1c consists of the Secured Claim of Corwin in the approximate amount of $1,121,247.

**4.      Secured Claim of Department of Health Care Services (Medi-Cal) (Class 1d)**

Class 1d consists of the asserted Secured Claim of DHCS based upon a asserted right of recoupment in the current approximate amount of $5,560,000 which is being repaid pursuant to the DHCS Repayment Agreement.  The placement of the asserted Secured Claim of DHCS in this

20

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Class 1d is not an acknowledgement or admission by any party that the claim is secured in any amount.

**5.     Secured Claim of California Office of State Health Planning and Development (Class 1e)**

Class 1e consists of the Secured Claim of OSHPD in the approximate amount of $4,449,058.[1]

**6.     Secured Claim of The Bank of New York Mellon Trust Company, N.A, as Indenture Trustee of the Bonds (Class 1f)**

Class 1f consists of the Secured Claim of the Indenture Trustee for the Bonds in the current approximate outstanding principal amount of $1,790,000, which are secured by cash deposits and are the subject of the *Order Approving the Redemption of Bonds by the Debtor in the Ordinary Course of Business* entered by the Bankruptcy Court on March 30, 2011 [Docket No. 791].

**7.     Miscellaneous Secured Claims (Class 1g).**

Class 1g consists of any Miscellaneous Secured Claims.  The Debtor is currently unaware of any such Claims.

**B.     Priority Non-Tax Claims (Class 2).**

**1.     Priority Non-Tax Claims that are not Priority Assumed Employee Claims (Class 2a)**

Class 2a consists of any Priority Non-Tax Claims that are not Priority Assumed Employee Claims.

**2.     Priority Assumed Employee Claims (Class 2b).**

Class 2b consists of any Priority Assumed Employee Claims.

**C.     General Unsecured Claims (Class 3)**

Class 3 consists of all Unsecured Claims not in Class 4.

**D.     Subordinated Unsecured Claims (Class 4)**

Class 4 consists of the Unsecured Claims of PHM, and Corwin, which are being subordinated to Class 3 Claims by agreement of PHM and Corwin.

---

[1] This Claim was originally held by Desert Community Bank, now a division of East West Bank. OSHPD paid Desert Community Bank on the loan pursuant to a guaranty.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:235948.5

**E.    Unimpaired Classes**

Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3 are Unimpaired under the Plan.  The treatment of Allowed Claims in the Unimpaired Classes in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights of each Holder of an Allowed Claim in the Unimpaired Classes.  Although the Claims in Classes 1b, 1c and 4 are Impaired under the terms of the Plan, the Holders of the Claim in the Impaired Classes are co-Proponents of the Plan, have agreed to the treatment of their Class 1b and 1c Claims and to the subordination and treatment of their Class 4 Claims, and have waived rights to receive a disclosure statement pursuant to section 1125 of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, the treatment of Claims set forth in the Plan supersedes and replaces any agreements or rights the Holders of the Claims have in or against the Debtor or its property.  All Distributions under the Plan will be tendered to the Holder of the Allowed Claim as of the Record Date.  **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM, WHETHER AN ALLOWED CLAIM OR NOT.**

**III.**

**TREATMENT OF CLASSES OF CLAIMS**

**A.    Unclassified Claims.**

Certain types of Claims are not placed into Classes; instead, such Claims are Unclassified Claims.  Such Unclassified Claims are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has <u>not</u> placed the following Claims in a Class.  The respective treatments for these Claims are provided below.

**1.    Allowance of Administrative Claims**

a.    <u>Allowance of Non-Ordinary Course Administrative Claims</u>

Unless otherwise expressly provided in the Plan, Non-Ordinary Course Administrative Claims will be Allowed Claims only if:

22

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1          (i)      On or before the Non-Ordinary Course Administrative Claim Bar Date, the

2  entity holding such Non-Ordinary Course Administrative Claim both Files with the Court a motion

3  requesting allowance of the Non-Ordinary Course Administrative Claim and serves the motion on

4  the Liquidating Debtor, the Liquidating Trustee and the U.S. Trustee; and

5          (ii)     an order is entered by the Bankruptcy Court allowing the Non-Ordinary

6  Course Administrative Claim.

7      **Entities holding Non-Ordinary Course Administrative Claims that do not timely**

8  **File and serve a request for payment will be forever barred from asserting those Claims**

9  **against the Debtor, the Liquidating Debtor, the Liquidating Trustee, the Estate, or their**

10  **respective property.**

11      The Liquidating Debtor, the Liquidating Trustee or any other party in interest must

12  File any objection to such motion at least (14) days prior to the hearing date on such motion and any

13  reply to such objection must be filed at least seven (7) days prior to the hearing date pursuant to

14  Local Bankruptcy Rule 9013-1(f) and (g).

15      b.     <u>Allowance of Ordinary Course Administrative Claims</u>

16      Holders of Ordinary Course Administrative Claims (i.e., claims for administrative

17  costs or expenses that are allowable under section 503(b) of the Bankruptcy Code that are incurred in

18  the ordinary course of the Debtor's operations, including but not limited to PTO that accrued after

19  the Petition Date but remains unused) shall not be required to File any request for payment of such

20  Claims.

21      c.     <u>Allowance of 503(b)(9) Claims</u>

22      Holders of 503(b)(9) Claims were required to File their Claims by the January 7,

23  2011, the General Bar Date.  A 503(b)(9) Claim will be an Allowed 503(b)(9) Claim if (i) no

24  objection or motion to estimate, equitably subordinate, reclassify, set off, or otherwise limit the

25  recovery thereon has been asserted before the expiration of the Claims Objection Deadline or (ii) any

26  objection or motion to estimate, equitably subordinate, reclassify, or set off has been resolved by

27  agreement between the Claimant and the Debtor, the Liquidating Debtor or the Liquidating Trustee

28  or by Final Order of the Bankruptcy Court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:235948.5

d.    Allowance of Professional Fee Claims

Each Holder of a Professional Fee Claim (except for Professional Fee Claims falling under clause (b) of the definition of Professional Fee Claim, which claims are subject to the Non-Ordinary Course Administrative Claims Bar Date) seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date must (i) file its final application for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the forty-fifth (45th) day following the Effective Date.  Any objection to such Professionals Fee Claims shall be filed on or before the date specified in the application for final compensation.  All such requests for payment of such Professional Fee Claims will be subject to the authorization and approval of the Bankruptcy Court. **Persons holding Professional Fee Claims who do not timely File and serve a final fee application will be forever barred from asserting those Claims against the Debtor, the Liquidating Trustee, or the property of the Liquidating Trust.**

2.    **Treatment of Administrative Claims.**

a.    Payment of Allowed Non-Ordinary Course Administrative Claims.

Except to the extent that any entity entitled to payment of a Non-Ordinary Course Allowed Administrative Claim agrees to a less favorable treatment, each Holder of a Non-Ordinary Course Allowed Administrative Claim will receive in full satisfaction, discharge, exchange and release thereof, Cash in an amount equal to such Allowed Non-Ordinary Course Administrative Claim on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such Non-Ordinary Course Administrative Claim becomes an Allowed Non-Ordinary Course Administrative Claim, or, in either case, as soon thereafter as is practicable.

b.    Payment of Allowed Ordinary Course Administrative Claims.

Each Ordinary Course Administrative Claim, unless disputed by Debtor, the Liquidating Debtor or the Liquidating Trustee, shall be satisfied by the Debtor, the Liquidating Debtor or the Liquidating Trustee, as the case may be, under the terms and conditions of the particular transaction giving rise to that Ordinary Course Administrative Claim without any further action by the Holder of such Ordinary Course Administrative Claim.  Pursuant to the terms of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Amended ASA, any payroll or PTO claim of any Hired Employee that constitutes an Allowed

2    Ordinary Course Administrative Claim will by assumed by the Purchasers at Closing in accordance

3    with the terms of the Amended ASA.  The Debtor will pay any amount due for Administrative

4    payroll and PTO to each employee that is not an Hired Employee after such employee's employment

5    by the Debtor is terminated, as required by applicable non-bankruptcy law.

6              **c.**       Payment of 503(b)(9) Claims.

7              Except to the extent that any Holder of a 503(b)(9) Claim agrees to a less favorable

8    treatment, each Holder of a 503(b)(9) Claim will receive in full satisfaction, discharge, exchange and

9    release thereof, Cash in an amount equal to such Allowed amount of the 503(b)(9) Claim plus

10    interest at the Judgment Rate from the Petition Date to the date of payment on the later of (i) the

11    Effective Date, and (ii) the fifteenth (15th) Business Day after such 503(b)(9) Claim becomes an

12    Allowed Claim, or, in either case, as soon thereafter as is practicable.

13              d.       Payment of Professionals.

14              Professional Fee Claims, to the extent approved by the Bankruptcy Court, are to be

15    paid, in full satisfaction, discharge, exchange and release thereof, Cash in such amounts as are

16    Allowed by the Bankruptcy Court on the date such Professional Fee Claim becomes an Allowed

17    Claim, or as soon thereafter as is practicable.

18              e.       Payment of U.S. Trustee Fees.

19              On or before the Effective Date, all fees payable under 28 U.S.C. § 1930, as

20    determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash, in full.  The

21    Debtor will continue to file the Post-Confirmation Quarterly Reports as required until the Effective

22    Date.  After the Effective Date until the Transfer Date, the Liquidating Debtor will file the Post-

23    Confirmation Quarterly Reports as they become due and the Liquidating Trustee will file such

24    reports from the Transfer Date until the Case is closed under section 350 of the Bankruptcy Code.

25        **3.**       **Treatment of Priority Tax Claims.**

26              In accordance with section 1129(a)(9)(C) of the Bankruptcy Code, except as

27    otherwise agreed to by the parties, each holder of an Allowed Priority Tax Claim shall receive

28    deferred Cash payments over a period not exceeding five (5) years from the date of assessment of

such Claim.  Payments shall be made in equal, quarterly installments and each installment shall

include simple interest accrued on the unpaid portion of such Claim at the Judgment Rate per annum

from and after the Effective Date; provided, however, that the Liquidating Debtor and the

Liquidating Trustee reserve the right to pay any Allowed Priority Tax Claim, or any remaining

balance of such Allowed Claim, in full, at any time on or after the Effective Date or the Transfer

Date, respectively, without premium or penalty.  Notwithstanding the forgoing, any Allowed Priority

Tax Claims that were secured by property of the Debtor prior to the Closing of the Sale shall be paid

in full on the Effective Date.

**4.      Treatment of Cure Claims**

Each Holder of a Cure Claim will receive in full satisfaction, discharge, exchange and

release thereof, payment of such Cure Claim pursuant to the terms of any agreement between the

Holder of the Cure Claim and the Debtor or pursuant to the terms of any Final Order of the

Bankruptcy Court establishing the Cure Claim.  If no terms of payment are specified in either an

agreement between the Holder of a Cure Claim and the Debtor or an order of the Bankruptcy Court,

the Cure Claim will be paid in Cash, in full, on or before the Closing Date.

**B.      Classified Claims.**

**1.      Class 1 (Secured Claims).**

a.      Class 1a (Secured Tax Claims) is Unimpaired under the Plan.  The Holders of

each Allowed Class 1a Claim will receive Cash equal to its Allowed Claim, including interest, fees

and costs to which it is entitled under sections 506 and 1124 of the Bankruptcy Code either on the

Closing Date as part of the Closing of the Sale as required by the Sale Order or, if not so required by

the Sale Order, on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after

such Class 1a Claim becomes an Allowed Secured Claim, or, in either case, as soon thereafter as is

practicable or such other treatment as the Debtor and the Holder of an Allowed Class 1a Claim agree

to in writing.

b.      Classes 1b (Secured Claim of PHM) and 1c (Secured Claim of Corwin) are

Impaired under the Plan.  Pursuant to the terms of the Amended ASA, the Allowed Class 1b and 1c

Claims will be assumed by the Purchasers at Closing in accordance with the terms of the Amended

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ASA and paid according to the terms of agreements between the Purchasers and PHM and Corwin, respectively.  In connection with certain transactions that may occur prior to the Closing, PHM and Corwin may become affiliated with the Purchasers.

        c.      Class 1d (Asserted Secured Claim of DHCS) is Unimpaired under the Plan. The payments due on the Class 1d Claim have been made during the Case pursuant to the terms of the Repayment Agreement, so no default under the Repayment Agreement between the Debtor and DHCS exists.  The security for the Class 1e Claim of DHS is its asserted right of recoupment from Medi-Cal payments.  Pursuant to the terms of the Amended ASA, the obligations of the Debtor with respect to the Allowed Class 1e Claim under the terms of the Repayment Agreement will be assumed by the Purchasers at Closing as provided by the terms of the Amended ASA and will be paid according to the terms of the Repayment Agreement.

        d.      Classes 1e (Secured Claim of OSHPD) and 1g (Miscellaneous Secured Claims, to the extent any such Claims exist) are Unimpaired under the Plan.  The Holder of each Allowed Class 1e and 1g Claim will receive Cash equal to its Allowed Claim, including any interest, fees and costs to which it is entitled under sections 506 and 1124 of the Bankruptcy Code, either on the Closing Date as part of the Closing of the Sale as required by the Sale Order or, if not so required by the Sale Order on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such Class 1e or 1g Claim becomes an Allowed Secured Claim, or, in either case, as soon thereafter as is practicable or such other treatment as the Debtor and the Holder of an Allowed Class 1e or 1g Claim agree to in writing.

        f.      Class 1f (Secured Claim of Indenture Trustee for Bonds) are Unimparied under the Plan and have been fully satisfied pursuant to the terms of the *Order Approving the Redemption of Bonds by the Debtor in the Ordinary Course of Business* entered by the Bankruptcy Court on March 30, 2011 [Docket No. 791].

      **2.**      **Class 2 (Priority Non-Tax Claims).**

        a.      Class 2a (Priority Non-Tax Claims that are not Priority Assumed Employee Claims) is Unimpaired under the Plan.  Each Holder of an Allowed Class 2a Claim will be paid in Cash, in full, with interest at the Judgment Rate from the Petition Date to the date of Payment on the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

27

1  later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such Priority Non-Tax

2  Claim becomes an Allowed Priority Claim, or, in either case, as soon thereafter as is practicable.

3         b.      Class 2b (the Priority Assumed Employee Claims) is Unimpaired under the

4  Plan.  Pursuant to the terms of the Amended ASA, the obligations of the Debtor with respect to the

5  Allowed Class 2b Claims will be assumed by the Purchasers at Closing and the Purchasers will

6  honor the legal and contractual rights of the Holders of such Allowed Class 2b Claims as set forth in

7  the Amended ASA.

8         **3.**      **Class 3 (General Unsecured Claims).**

9         Class 3 is Unimpaired under the Plan.  Each Holder of an Allowed Class 3 Claim will

10  be paid in Cash, in full, with interest on the later of (i) the Effective Date, and (ii) the fifteenth (15th)

11  Business Day after such General Unsecured Claim becomes an Allowed Unsecured Claim, or, in

12  either case, as soon thereafter as is practicable.

13         The Debtor will pay to each Holder of an Allowed Class 3 Claim interest at the

14  Judgment Rate from the Petition Date to the date the Allowed Class 3 Claim is paid in full.

15         **4.**      **Class 4 (Subordinated Unsecured Claims).**

16         Class 4 is Impaired under the Plan.  Each Holder of an Allowed Class 4 Claim will be

17  paid its Pro-Rata share of Available Cash after payment of all other Allowed Claims in full until the

18  Allowed Class 4 Claims are paid in full with interest at the Judgment Rate or until there are no more

19  Liquidating Trust's Assets.

20  **IV.**

21  **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

22  **A.**      **Rejection of Executory Contracts and Unexpired Leases**

23         Each executory contract or unexpired lease of the Debtor that (i) has not expired by

24  its own terms before the Effective Date, (ii) previously has not been assumed or rejected by the

25  Debtor, (iii) is not the subject of a pending motion to assume or reject that has been Filed and served

26  prior to the Confirmation Date, (iv) is not the employment agreement between the Debtor and the

27  Cathy Pelley, the CEO, or Edward Matthews, the CFO, or (v) does not constitute a contract of

28  insurance in favor of, or that benefits, the Debtor, the Liquidating Debtor or the Liquidating Trust is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code; provided that the

2    Asset Sale Documents and those contracts or leases that are needed by the Debtor or required by the

3    Debtor to be maintained in existence in order for the Debtor and the Liquidating Debtor to fulfill

4    their obligations under the Conditions to Approval of Sale, the Interim Management and Lease

5    Agreement and the other Asset Sale Documents and to maintain the necessary licenses to operate the

6    Hospital shall not be rejected as of the Effective Date.  The Confirmation Order shall constitute an

7    order of the Bankruptcy Court approving such rejection as of the Confirmation Date.

8            Nothing in the Plan, any Exhibit to the Plan, or any document executed or delivered

9    in connection with the Plan or any such Exhibit creates any obligation or liability on the part of the

10   Debtor, the Liquidating Debtor, or the Liquidating Trust, or any other person or entity that is not

11   currently liable on such obligation, with respect to any executory contract or unexpired lease.

12   **B.    Bar Date for Rejection Damages**

13           If the rejection of an executory contract or unexpired lease pursuant to the Plan and

14   the Confirmation Order or a previous order of the Court gives rise to a Claim by the other party or

15   parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable

16   against the Debtor, the Liquidating Debtor, Liquidating Trust or the Estate unless a proof of Claim is

17   Filed and served on the Debtor or the Liquidating Debtor, as the case may be, and its counsel within

18   thirty (30) days after the entry of the Confirmation Order.  All such Claims for which proofs of

19   Claim are required to be Filed, if Allowed, will be, and will be treated as, General Unsecured

20   Claims, subject to the provisions of the Plan.

21   **C.    Insurance Policies**

22           For the avoidance of doubt, the Debtor's rights with respect to all insurance policies

23   under which the Debtor may be beneficiaries (including all insurance policies that may have expired

24   prior to the Petition Date, all insurance policies in existence on the Petition Date, all insurance

25   policies entered into by the Debtor after the Petition Date, and all insurance policies under which the

26   Debtor holds rights to make, amend, prosecute and benefit from claims), are either retained by the

27   Liquidating Debtor or cancelled, in the Liquidating Debtor's sole discretion, after the Effective Date

28   until its dissolution.  Upon the dissolution of the Liquidating Debtor, any existing insurance policies

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

29

that can be assigned and all proceeds of such policies will be transferred or assigned to the

Liquidating Trust pursuant to this Plan.  Notwithstanding any provision providing for the rejection of

executory contracts, any insurance policy that is deemed to be an executory contract shall neither be

rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the

Liquidating Debtor or the Liquidating Trustee, as the case may be, who shall retain the right to

assume or reject any such executory contracts pursuant to and subject to the provisions of section

365 of the Bankruptcy Code following the Effective Date.

**V.**

**MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN**

**A.**	**Implementing Actions In General; Conditions to the Effective Date**

As a condition to effectiveness of the Plan, the following must occur:

(i)	the Confirmation Order shall have become a Final Order; provided,

however, at the option of the Debtor with the consent of the Committee and the Purchasers,

the Confirmation Order that is subject to a pending appeal or certiorari proceeding may be

considered a Final Order provided no court of competent jurisdiction has entered an order

staying the effect of the Confirmation Order;

(ii)	the Closing shall have occurred;

(iii)	the Debtor, Committee and the Liquidating Trustee have executed the

Trust Agreement; provided, however, that the no assets shall be transferred to the

Liquidating Trust until the Transfer Date and the Liquidating Trust shall not incur any

expenses until the Transfer Date;

(iv)	all actions, documents and agreements necessary to implement the

Plan will have been effected or executed;

(v)	the Debtor will have received all authorizations, consents, rulings,

opinions or other documents that are determined by the Debtor to be necessary to implement

the Plan; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(vi)    the Proponents will have determined in their reasonable discretion

that sufficient Cash exists to satisfy all Unclassified Allowed Claims and all Allowed

Claims in Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3.

The Plan will not be consummated or become binding unless and until the Effective

Date occurs, which shall in all events occur prior to the date that is forty-five (45) days following

entry of the Confirmation Order, unless the Confirmation Order is stayed or the Plan is modified

pursuant to an order of the Court extending the Effective Date for good cause shown.

The Debtor may in its reasonable discretion, with consent of the Committee, waive

any of the conditions except conditions (i), (ii) and (vi) set forth above without notice and a hearing.

Unless the condition is waived as set forth above, the failure to satisfy any condition may be asserted

by the Debtor as a basis to allege that the Effective Date has not occurred regardless of the

circumstances giving rise to the failure of such condition to be satisfied (including, without

limitation, any act, action, failure to act, or inaction by the Debtor).  If the Debtor fails to assert the

non-satisfaction of any such conditions, such failure will not be deemed a waiver of any other rights

hereunder.

As soon as practicable after the occurrence of the Effective Date, but no later than ten

(10) days thereafter, the Liquidating Debtor shall File and serve on each Holder of a Claim a written

notice of occurrence of Effective Date.

**B.    Debtor's Authority.**

Upon the Effective Date, all transactions and applicable matters provided for under

the Plan will be deemed to be authorized and approved by the Debtor without any requirement of

further action by the Court, the Debtor or the Debtor's board of directors.

**C.    The Liquidating Debtor**

**1.    Continued Corporate Existence of the Debtor.**

The Liquidating Debtor will continue to exist as a corporation from and after the

Effective Date until the Transfer Date.  On and after the Effective Date, the Amended ASA, the

Interim Management and Lease Agreement and the Other Sale Documents shall remain in full force

and affect notwithstanding the occurrence of the Effective Date and all obligations of Debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

31

thereunder shall survive the occurrence of the Effective Date.   The Asset Sale Documents and all of

the obligations of the Debtor thereunder shall vest in and be the obligations of the Liquidating

Debtor.  After the Effective Date, the Liquidating Debtor shall be responsible for performing the

obligations of the Debtor under the Asset Sale Documents.  On and after the Effective Date, the

Liquidating Debtor shall retain all of the powers of corporation under the applicable non-bankruptcy

law, provided that the Liquidating Debtor's purpose from and after the Effective Date will be (i) to

fulfill the obligations of the Debtor under the Interim Lease and Management Agreement and the

other Asset Sale Documents, including causing the Liquidating Debtor to retain the Debtor's

licenses, permits and payor certifications for the Hospital as required by the Interim Management

and Lease Agreement, (ii) to lease certain of the assets that have been purchased by the Purchasers

as provided in the Interim Management and Lease Agreement, (iii) to take all steps necessary to

preserve and protect all of  the Debtor's existing licenses and permits necessary for the operation of

the Hospital as a general acute care hospital and to supervise the operation of the hospital by VVHA,

which will manage the Hospital under the Interim Management and Lease Agreement under the

Debtor's existing licenses, until VVHA has obtained its own licenses and permits to operate the

Hospital and the Debtor's Medicare certification and VVHA is able to bill the United States Centers

for Medicare and Medicaid Services in its own right for services at the Hospital, (iv) to review and

object to any Claim, (v) to settle any dispute to a Claim or to prosecute any objection to a Claim, (vi)

to make Distributions to Holders of Allowed Claims as provided in the Plan, and (vi) to otherwise

take any reasonable and necessary action to protect and preserve the Liquidating Debtor's Assets and

the Liquidating Debtor.

> **2.     Officers and Directors of the Liquidating Debtor.**

The Board of Directors serving the Debtor on the Effective Date will continue to

serve the Liquidating Debtor.  As of the date of the filing of this Plan, the Board was comprised of

six members:  Kathy Davis, Chair; Dennis G. Killion, Vice-Chair; Thomas Brown; Michael Fermin;

Tim Jasper; and Herbert Williamson, III.  The Liquidating Debtor shall at all times have a Board of

Directors necessary to maintain its corporate status until the occurrence of the Transfer Date.  Any

member resigning from the Board of Directors shall be replaced, if necessary, in accordance with

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

32

applicable law and the Debtor's operating documents.  The Debtor's Chief Executive Officer

("CEO") is Cathy Pelley, who has served in this position since March 2009 and will continue in that

position after the Effective Date.  The Debtor's Chief Financial Officer ("CFO") and Chief

Information Officer is Edward Matthews, who has served in this position since December 2008 and

will continue in that position after the Effective Date.  Each member of the Board of Directors will

be compensated $500 for each board meeting attended after the Effective Date and the CEO and the

CFO will continue to receive compensation for their services in accordance with their existing

employment contracts. The compensation for the members of the Board of Directors, the CEO and

CFO will be included in the Post-Effective Date Expenses of the Liquidating Debtor.  The members

of the Board of Directors, the CEO and the CFO will continue to serve in such positions until the

earlier of (1) the date an individual chooses to resign or (2) the date the Liquidating Debtor is

dissolved, which date shall be as soon as is possible after the Transfer Date.

**3.     Vesting of the Debtor's Assets.**

Except as otherwise provided in the Plan, on and after the Effective Date, all Assets

will vest in the Liquidating Debtor free and clear of all Claims, liens, charges, other encumbrances

and interests, except the liens, Claims, interests, rights and remedies of the Purchasers under the

Asset Sale Documents.  The Confirmation Order will provide the Liquidating Debtor with express

authority to convey, transfer and assign any and all of the Liquidating Debtor's Assets in accordance

with the terms of this Plan and to take all actions necessary to effectuate same and to prosecute or

not prosecute, as the Liquidating Debtor deems appropriate, any and all Causes of Action.

**4.     Funding of the Liquidating Debtor**

The funding of the Liquidating Debtor for the payments to be made to Holders of

Allowed Claims under the Plan and the payment of Post-Effective Date Expenses will be from (i) the

Debtor's Cash on hand as of the Effective Date, which shall include, but is not limited to, the net

proceeds of the Sale, which will be transferred to the Liquidating Debtor as of the Effective Date and

proceeds from the investment of such Cash, (ii) the proceeds of the Purchase Notes, including the

interest thereon, and (iv) the proceeds of the liquidation by the Liquidating Debtor of any other of

the Liquidating Debtor's Assets.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**5.      No Liability of Liquidating Debtor**

**To the maximum extent permitted by law, the Liquidating Debtor and the Liquidating Debtor's Agents will not have or incur liability to any Person for an act taken or omission made in good faith in connection with or related to the administration of the Liquidating Debtor's Assets, the implementation of the Plan and the Distributions made thereunder.  The Liquidating Debtor and the Liquidating Debtor's Agents will in all respects be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan.  Entry of the Confirmation Order constitutes a judicial determination that the exculpation provision contained in Section VII.A. of the Plan is necessary, *inter alia*, to facilitate Confirmation and feasibility of the Plan and to minimize potential claims arising after the Effective Date for indemnity, reimbursement or contribution from the Liquidating Debtor or the Liquidating Debtor's Assets.  The Confirmation Order's approval of the Plan also constitutes a *res judicata* determination of the matters included in the exculpation provisions of the Plan.**  Nothing in this Section V.C.5 shall apply to any acts taken or omissions made by the Liquidating Debtor and the Liquidating Debtor's Agents in connection with their responsibilities and obligations under the Interim Management and Lease Agreement and the other Asset Sale Documents.

**6.      Funding of the Liquidating Debtor's Post-Effective Date Expenses**

All expenses related to implementation of the Plan incurred from and after the Effective Date through the Transfer Date will be expenses of the Liquidating Debtor, and the Liquidating Debtor will disburse funds from the Liquidating Debtor's Assets, as appropriate, for purposes of paying the Post-Effective Date Expenses of the Liquidating Debtor without the need for any further Order of the Court.  The Post-Effective Date Expenses shall include, but are not limited to, the Board of Director's fees, the salaries of the CEO and CFO of the Liquidating Debtor and other costs, expenses and obligations of the Liquidating Debtor until the Transfer Date.  Prior to any making distribution to any Holders of Allowed Claims under the Plan, the Debtor or the Liquidating Debtor, as the case may be, shall set aside from the available Cash and shall reserve and fund into a separate account the a sum sufficient for the payment of the Liquidating Debtor's ongoing Post

34

1  Effective Date Expenses (the "Liquidating Debtor Expense Reserve").  Any remaining funds held in

2  the Liquidating Debtor Expense Reserve on the Transfer Date shall be transferred to the Liquidating

3  Trust.

4  **D.    Liquidating Trust.**

5      **1.    Effectiveness of the Liquidating Trust.**

6          On the Transfer Date: (i) the Liquidating Trust Agreement, a copy of which will be

7  filed as Plan **Exhibit B**, will become effective, and, if not previously signed, the Liquidating Debtor

8  and the Liquidating Trustee will execute the Liquidating Trust Agreement.  The Liquidating Trust is

9  organized and established as a trust for the benefit of the Beneficiaries and is intended to qualify as a

10  liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).  The Liquidating

11  Trust shall not terminate until the Purchase Notes have been paid in full or otherwise satisfied and

12  the assets of the Liquidating Trust have been disbursed either to creditors or, if all creditors have

13  been paid, as required by the Conditions to Approval of Sale.

14      **2.    Beneficiaries**

15          In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of

16  the Liquidating Trust will be the Holders of all Allowed Claims against the Debtor whose Allowed

17  Claims have not been previously satisfied in full.  Each such Holder of an Allowed Claim will

18  receive its share of the Liquidating Trust's Assets as provided for in the Plan and the Liquidating

19  Trust Agreement.  The Beneficiaries of the Liquidating Trust shall be treated as the grantors and

20  owners of such Beneficiaries' respective portion of the Liquidating Trust.

21      **3.    Implementation of the Liquidating Trust.**

22          On the Transfer Date, the Liquidating Debtor and the Liquidating Trustee will be

23  authorized to, and will execute the Liquidating Trust Agreement, in substantially the form as will

24  subsequently be filed, take all such actions as required to transfer from the Liquidating Debtor the

25  Liquidating Debtor's Assets to the Liquidating Trust.  From and after the Transfer Date, the

26  Liquidating Trustee will be authorized to, and will take all such actions as required to implement the

27  Liquidating Trust Agreement and the provisions of the Plan as are contemplated to be implemented

28  by the Liquidating Trustee, including, without limitation, directing and causing Distributions to be

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

35

1    made to Holders of Allowed Claims pursuant to the terms of the Plan, objecting to Claims, and

2    prosecuting, determining not to prosecute or otherwise resolving any Causes of Action.

3        **4.**       **Transfer of Liquidating Debtor's Assets.**

4        On the Transfer Date, the Liquidating Debtor is authorized and directed to transfer,

5    grant, assign, convey, set over, and deliver to the Liquidating Trustee all of the Liquidating Debtor's

6    right, title and interest in and to the remaining Liquidating Debtor's Assets, including, without

7    limitation, all Cash, free and clear of all liens, claims, encumbrances or interests of any kind in such

8    Liquidating Debtor's Assets, except as otherwise expressly provided in the Plan.  To the extent

9    required to implement the transfer of the Liquidating Debtor's Assets from the Liquidating Debtor to

10   the Liquidating Trust, all Persons will cooperate with the Liquidating Debtor to assist the

11   Liquidating Debtor to implement said transfers.

12       **5.**       **Vesting of Assets.**

13       Unless otherwise expressly provided under this Plan, on the Transfer Date, all of the

14   Liquidating Debtor's Assets will vest in the Liquidating Trust free and clear of all claims, liens,

15   encumbrances, charges and other interests, subject to the provisions of the Plan and to the liens,

16   Claims, interests, rights and remedies of the Purchasers under the Asset Sale Documents if any.  On

17   and after the Transfer Date, the transfer of the Liquidating Debtor's Assets to the Liquidating Trust

18   will be deemed final and irrevocable and Distributions will be made from the Liquidating Trust.

19       In connection with the foregoing:

20           (i)     On the Transfer Date, the appointment of the Liquidating Trustee

21   shall become effective and the Liquidating Trustee shall begin to administer the Liquidating

22   Trust pursuant to the terms of the Liquidating Trust Agreement and the Plan and may use,

23   acquire and dispose of the Liquidating Trust's Assets free of any restrictions imposed under

24   the Bankruptcy Code.

25           (ii)    The Confirmation Order will provide the Liquidating Trustee with

26   express authority to convey, transfer and assign any and all of the Liquidating Trust's Assets

27   in accordance with the terms of this Plan and the Liquidating Trust Agreement and to take

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

36

1    all actions necessary to effectuate same and to prosecute or not prosecute, as the Liquidating

2    Trustee deems appropriate, any and all objections to Claims or Causes of Action.

3            (iii)    As of the Transfer Date, the Liquidating Trust's Assets will be free

4    and clear of all liens, claims and interests of Holders of Claims, except the liens, Claims,

5    interests, rights and remedies of the Purchasers under the Asset Sale Documents and as

6    otherwise provided in the Plan.

7    **6.    Funding of the Liquidating Trust**

8            The funding of the Liquidating Trust for the payments to be made to Holders of

9    Allowed Claims under the Plan and the payment of Post-Effective Date Expenses will be from (i) the

10    Liquidating Debtor's Cash on hand as of the Transfer Date and proceeds from the investment of such

11    Cash, (ii) the proceeds of the Purchase Notes, including all interest that accrues thereon, and (iv) the

12    proceeds of the liquidation by the Liquidating Trustee of any other Liquidating Trust's Assets.

13    **7.    No Liability of Liquidating Trustee.**

14            **To the maximum extent permitted by law, the Liquidating Trustee and the**

15    **Liquidating Trustee's Agents will not have or incur liability to any Person for an act taken or**

16    **omission made in good faith in connection with or related to the administration of the**

17    **Liquidating Trust's Assets, the implementation of the Plan and the Distributions made**

18    **thereunder.  The Liquidating Trustee and the Liquidating Trustee's Agents will in all respects**

19    **be entitled to reasonably rely on the advice of counsel with respect to their duties and**

20    **responsibilities under the Plan and the Liquidating Trust Agreement.  Entry of the**

21    **Confirmation Order constitutes a judicial determination that the exculpation provision**

22    **contained in Section VII.A. of the Plan is necessary, *inter alia*, to facilitate Confirmation and**

23    **feasibility of the Plan and to minimize potential claims arising after the Effective Date for**

24    **indemnity, reimbursement or contribution from  the Liquidating Trust or the Liquidating**

25    **Trust's Assets.  The Confirmation Order's approval of the Plan also constitutes a *res judicata***

26    **determination of the matters included in the exculpation provisions of the Plan.**

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Notwithstanding the foregoing, nothing herein or in Section VII.A. of the Plan will alter any provision in the Liquidating Trust Agreement that provides for the potential liability of the Liquidating Trustee to any Person.**

**8.    Funding of the Liquidating Trust's Post-Effective Date Expenses.**

All expenses related to implementation of the Plan incurred from and after the Transfer Date will be expenses of the Liquidating Trust, and the Liquidating Trustee will disburse funds from the Liquidating Trust's Assets, as appropriate, for purposes of paying the Post-Effective Date Expenses of the Liquidating Trust without the need for any further Order of the Court. The Post-Effective Date Expenses shall include, but are not limited to, the Board of Director's fees, the salaries of the CEO and CFO of the Liquidating Debtor and other expenses of the Liquidating Debtor if any until the Liquidating Debtor is dissolved.

**9.    Provisions Relating to Federal Income Tax Compliance.**

A transfer to the Liquidating Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), as a transfer to Creditors to the extent Creditors are beneficiaries of the Liquidating Trust. For example, such treatment shall apply for purposes of sections 61(a)(12), 483, 1001, 1012 and 1274 of the Internal Revenue Code. Any such transfer shall be treated for federal income tax purposes as a deemed transfer to the beneficiary-Creditors followed by a deemed transfer by the beneficiary-Creditors to the Liquidating Trust. The beneficiaries of the Liquidating Trust shall be treated for federal income tax purposes as the grantors and deemed owners of the Liquidating Trust.

**E.    Representative of the Estate.**

The Liquidating Debtor from the Effective Date through the Transfer Date and Liquidating Trustee from the Transfer Date until the Liquidating Trust is terminated will be appointed as the representative the Estate pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code and as such will be vested with the authority and power to *inter alia*: (i) object to Claims against the Debtor; (ii) administer, investigate, prosecute, settle and abandon all Causes of Action; (iii) make Distributions provided for in the Plan, including, but not limited to, on account of Allowed Claims; and (iv) take such action as required to administer, wind-down, and close the Case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:235948.5

As the representative of the Estate, the Liquidating Debtor and then the Liquidating Trustee will succeed to all of the rights and powers of the Debtor and the Estate with respect to all Assets vested in the Liquidating Debtor and all assets transferred to the Liquidating Trust, and the Liquidating Debtor, as of the Effective Date, and then the Liquidating Trustee, as of the Transfer Date, will be substituted and will replace the Debtor and the Estate, as the party in interest in any litigation pending as of the Effective Date.

**F.       The Committee.**

Until the Effective Date, the Committee shall continue in existence.  As of Effective Date, the Committee shall terminate and disband and the members of the Committee and the Committee shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from their service as Committee members.

**G.       Earmarked Charitable Donations**

Earmarked Charitable Contributions shall remain under the control of the Liquidating Debtor.  The Liquidating Debtor, pursuant to section XIII of the Conditions to Approval of shall, within thirty (30) days after the Closing Date, transfer all Earmarked Charitable Donations to The Community Foundation Serving Riverside and San Bernardino Counties, a California nonprofit benefit corporation, to be used in accordance with the purposes for which said funds are earmarked.

**H.       Unrestricted Charitable Donations**

Unrestricted Charitable Donations plus interest shall remain under the control of the Liquidating Debtor until the Transfer Date and then the Liquidating Trust.  The Liquidating Debtor or the Liquidating Trustee, as the case may be, pursuant to section XV of the Conditions to Approval of Sale shall, within sixty (60) days after the entry of the final decree in this Case, transfer all Unrestricted Charitable Donations to The Community Foundation Serving Riverside and San Bernardino Counties for deposit in a Donor-Advised Pass-Through Fund called "Victor Valley Community Hospital Health Fund" for the purpose of making grants to charitable healthcare facilities and clinics exempt from taxation pursuant to section 501(c)(3) of the Internal Revenue Code to provide healthcare services to residents in the Debtor's service area.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:235948.5

I.    **Provisions Governing Distributions.**

    1.    **Disbursing Agent**

        The Liquidating Debtor, from the Effective Date through the Transfer Date, and then the Liquidating Trustee, after the Effective Date until the Liquidating Trust terminates, will serve as the Disbursing Agent under the Plan or shall select another entity to serve as the Disbursing Agent. Any entity other than the Liquidating Debtor or the Liquidating Trustee that acts as a Disbursing Agent for the Liquidating Debtor or the Liquidating Trust will be an agent of the Liquidating Debtor or the Liquidating Trustee, respectively, and not a separate taxable entity with respect to, for example, the assets held, income received or disbursements or Distributions made for the Liquidating Debtor or the Liquidating Trustee. Neither the Liquidating Debtor nor the Liquidating Trustee will be required to provide a bond in connection with the making of any distributions pursuant to the Plan.

        The Disbursing Agent will make all Distributions required under this Plan. The Disbursing Agent shall be authorized to implement such procedures as it deems necessary to make Distributions pursuant to this Plan so as to efficiently and economically assure prompt and accurate Distributions.

    2.    **The Source of Distributions.**

        The sources of all Distributions and payments made by the Liquidating Debtor under the Plan and will be Cash (which includes, but is not limited to, the net proceeds of the Sale) that vests in the Liquidating Debtor as of the Effective Date and proceeds from the investment of Cash, the liquidation by the Liquidating Debtor of any non-Cash Assets that vest in the Liquidating Debtor, interest paid to the Liquidating Debtor from the Community Foundation Escrow and the Operating and Capital Needs Escrow and the proceeds of the Purchase Notes. Prior to any making distribution to any Holders of Allowed Claims under the Plan, the Debtor and the Liquidating Debtor as the case may be shall establish and fund the Liquidating Debtor Expense Reserve and thereafter maintain sufficient funds therein to satisfy the anticipated ongoing Post-Effective Date Expenses of the Liquidating Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:235948.5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    The sources of all Distributions and payments made by the Liquidating Trustee under

2    the Plan and the Liquidating Trust Agreement will be the Liquidating Trust's Assets.

3    A chart of the sources and uses of funds will be filed as Plan **Exhibit A**.

4    **3.    Distribution Dates**

5    The date of the initial Distribution of Cash by the Liquidating Debtor shall be on the

6    Effective Date or as soon thereafter as is practicable.  Each subsequent Distribution Date shall be on

7    the tenth Business Day after any Disputed Claim becomes an Allowed Claim.

8    **4.    Manner of Cash Payments**

9    Cash Distributions made pursuant to the Plan will be in United States funds, by check

10   drawn on a domestic bank, or, if the Liquidating Debtor or the Liquidating Trustee so elects in its

11   discretion for Distributions to certain large claimants, by wire transfer from a domestic bank.

12   **5.    Setoff and Recoupment.**

13   **Notwithstanding anything to the contrary in the Plan, the Liquidating Debtor or**

14   **the Liquidating Trustee may set off, recoup, or withhold against the Distributions to be made**

15   **on account of any Allowed Claim any Claims or Causes Of Action that the Debtor or the**

16   **Estate may have against the entity holding the Allowed Claim.  The Debtor, the Estate, the**

17   **Liquidating Debtor and the Liquidating Trust will not waive or release any Claim or Cause of**

18   **Action against those entities by failing to effect such a setoff or recoupment, by failing to assert**

19   **any such matter prior to Confirmation or the Effective Date, by allowing any Claim against**

20   **the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim.**

21   **6.    No *De Minimis* Distributions.**

22   Notwithstanding anything to the contrary in this Plan, no Distribution of less than

23   $20.00 will be made to any Holder of an Allowed Claim on account thereof.  No consideration will

24   be provided in lieu of the *de minimis* Distributions that are not made under this Section.

25   **7.    Fractional Cents**

26   When any payment of a fraction of a cent would otherwise be called for, the actual

27   payment will reflect a rounding of such fraction to the nearest whole cent (rounding down in the case

28   of less than $0.005 and rounding up in the case of $0.005 or more); provided, however, that, in no

41

1    event, will a Distribution of less than $10.00 will be made to any Holder of an Allowed Claim on

2    account thereof as set forth above.

3    **8.    No Distributions with Respect to Disputed Claims.**

4          Notwithstanding any other Plan provision, no Distributions will be made on account

5    of a Disputed Claim.  Distribution on such Claim will be made when the Claim becomes or is

6    deemed to be an Allowed Claim for purposes of Distributions.

7    **9.    Undeliverable or Unclaimed Distributions.**

8          Distributions to entities holding Allowed Claims will initially be made by mail as

9    follows:

10          (a)    Distributions will be sent to the address, if any, set forth on a filed proof of

11    claim as amended by any written notice of address change received by the Debtor prior to the

12    Effective Date or Liquidating Trustee no later than ten (10) Business Days prior to the date of any

13    Distribution; or

14          (b)    If no such address is available, Distributions will be sent to the address set

15    forth on the Schedules or address otherwise readily obtainable by a cursory review of the Debtor's

16    other books and records.

17          If no address is available either on a proof of claim or on the Schedules or on the

18    Debtor's other books and records after a cursory review, the Distribution will be deemed to be

19    undeliverable.  If a Distribution is returned to the Liquidating Debtor or the Liquidating Trustee as

20    an undeliverable Distribution or is deemed to be an undeliverable Distribution, neither the

21    Liquidating Debtor nor the Liquidating Trustee will make any further Distribution to the Holder of

22    the Claim on which the Distribution is being made, except as provided below.

23          Any entity that is otherwise entitled to an undeliverable Distribution and that does

24    not, within forty-five (45) days after a Distribution is returned as undeliverable, provide the

25    Liquidating Debtor or the Liquidating Trustee, as appropriate, with a written notice asserting its

26    claim to or interest in that undeliverable Distribution and setting forth a current, deliverable address

27    will be deemed to waive any claim to or interest in that undeliverable Distribution and will be

28    forever barred from receiving that undeliverable Distribution or asserting any Claim against the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

42

Debtor, the Estate, the Liquidating Debtor, the Liquidating Trust or their property.  Any

undeliverable Distributions that are not claimed hereunder will be distributed to other Holders of

Allowed Claims pursuant to the terms of the Plan.  If after the occurrence of the Transfer Date, any

amount of undeliverable Distributions remains undistributed after all Holders of Allowed Claims in

all Classes have been paid and after all the expenses of the Liquidating Debtor and, if the

Liquidating Trust is in existence at the time, the Liquidating Trust Expenses have been paid in full as

under the Plan, the balance of the funds available from undeliverable Distributions shall be donated

to the Community Foundation Serving Riverside and San Bernardino Counties for deposit in a

Donor-Advised Pass-Through Fund called "Victor Valley Community Hospital Health Fund" for the

purpose of making grants to charitable healthcare facilities and clinics exempt from taxation

pursuant to IRS § 501(c)(3) to provide healthcare services to residents in the Debtor's service area.

Nothing herein requires a Liquidating Debtor or the Liquidating Trustee to attempt to locate any

entity holding an Allowed Claim whose distribution is undeliverable.

> **10.      Record Date.**

> The record date for purposes of Distributions under this Plan shall be the
Confirmation Date.  To determine the names of the Holders of Claims as of the Record Date, the
Liquidating Debtor and the Liquidating Trustee will rely on the register maintained by AlixPartners,
LLC, the claims agent appointed in this Case by the Bankruptcy Court, of proofs of Claim and
transfers of such proofs of Claim filed in the Case.

**J.      Donation of Remaining Liquidating Trust Cash.**

> After all Assets of the Debtor have been liquidated, the Purchase Notes have been
paid in full or otherwise satisfied, all Allowed Claims have been fully satisfied as provided in this
Plan, and all Post-Effective Date Expenses have been paid, all remaining Cash held by the
Liquidating Debtor or, if then in existence, the Liquidating Trust shall be donated to the Community
Foundation Serving Riverside and San Bernardino Counties for deposit in a Donor-Advised Pas-
Through Fund called "Victor Valley Community Hospital Health Fund" for the purpose of making
grants to charitable healthcare facilities and clinics exempt from taxation pursuant to IRS § 501(c)(3)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

43

1    to provide healthcare services to residents in the Debtor's service area; provided that no such

2    donation or transfer shall occur prior to the occurrence of the Transfer Date.

3                                              **VI.**

4                         **LITIGATION AND CLAIMS OBJECTIONS**

5    **A.      Preservation of Rights of Action and Defenses.**

6                    Except to the extent such rights, claims, causes of action, defenses, and counterclaims

7    are (a) expressly and specifically released in connection with the Plan or in any settlement agreement

8    approved by the Bankruptcy Court during the Case or (b) sold, transferred or assigned to the

9    Purchasers pursuant to the Asset Sale Documents, (i) any and all rights, claims, causes of action,

10   defenses, and counterclaims accruing to the Debtor or the Estate (including, without limitation,

11   Avoiding Power Causes of Action but excluding any causes of action under section 547 of the

12   Bankruptcy Code) on the Effective Date shall vest in the Liquidating Debtor and, to the extent such

13   still exist on the Transfer Date, shall be transferred to the Liquidating Trust, whether or not litigation

14   relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes

15   of action, defenses, and counterclaims have been Scheduled or otherwise listed or referred to in the

16   Plan, or any other document filed with the Bankruptcy Court, and (ii) neither the Debtor, the

17   Liquidating Debtor nor the Liquidating Trust waives, relinquishes, or abandons (nor shall they be

18   estopped or otherwise precluded from asserting) any right, claim, cause of action, defense, or

19   counterclaim that constitutes property of the Debtor's Estate: (a) whether or not such right, claim,

20   cause of action, defense, or counterclaim has been listed or referred to in the Schedules, the Plan, or

21   any other document filed with the Bankruptcy Court, (b) whether or not such right, claim, cause of

22   action, defense, or counterclaim is currently known to the Debtor, and (c) whether or not a defendant

23   in any litigation relating to such right, claim, cause of action, defense, or counterclaim filed a proof

24   of Claim in the Case, filed a notice of appearance or any other pleading or notice in the Case, or

25   received or retained any consideration under the Plan.  Without in any manner limiting the scope of

26   the foregoing, notwithstanding any otherwise applicable principle of law or equity, including,

27   without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue

28   preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

44

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in the Debtor's Schedules, the Plan, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the right of the Liquidating Debtor or the Liquidating Trust, through the Liquidating Trustee, to commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that the Debtor has or may have as of the Effective Date.  The Liquidating Debtor or the Liquidating Trust, through the Liquidating Trustee, may commence, prosecute, defend against, recover on account of, and settle all rights, claims, causes of action, defenses, and counterclaims in their sole discretion in accordance with what is in the best interests, and for the benefit, of the Beneficiaries of the Liquidating Trust.  Notwithstanding the foregoing reservation of rights, neither the Liquidating Debtor nor the Liquidating Trust shall not pursue any action arising under section 547 of the Bankruptcy Code, because all Claims are being paid in full pursuant to the Plan.

As of the Effective Date through the Transfer Date, the Liquidating Debtor will be authorized to exercise and perform the rights, powers and duties held by the Debtor's Estate with respect to the rights, claims, causes of action, defenses, and counterclaims, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code to provide for the settlement, adjustment, retention and enforcement of claims and interests of the Estate, without the consent or approval of any third party, and without any further order of the Bankruptcy Court. As of the Transfer Date, subject to the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating Trust, will be authorized to exercise and perform the rights, powers and duties held by the Debtor's Estate with respect to the rights, claims, causes of action, defenses, and counterclaims, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code to provide for the settlement, adjustment, retention and enforcement of claims and interests of the Estate, without the consent or approval of any third party, and without any further order of the Bankruptcy Court.

Any Person with respect to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with any

1    of the Debtor, or leased equipment or property from the Debtor should assume that such obligation,

2    transfer, or transaction may be reviewed by the Liquidating Debtor or the Liquidating Trustee, on

3    behalf of the Liquidating Trust, and may, if appropriate, be the subject of an action after the

4    Effective Date, whether or not (i) such Person has filed a proof of Claim against the Debtor; (ii) such

5    Person's proof of Claim has been objected to; (iii) such Person's Claim was included in the

6    Schedules; (iv) such Person's scheduled Claims have been objected to or has been identified by the

7    Debtor as disputed, contingent, or unliquidated, or (v) such Person has been notified that the Debtor

8    or Committee believes the state holds Causes of Action against such Person.

9         **The Liquidating Debtor, from the Effective Date to the Transfer Date and the**

10    **Liquidating Trustee, subject to the Liquidating Trust Agreement, from and after the Transfer**

11    **Date will make the decision of whether or not to pursue any Cause of Action.**

12    **B.**    **Disputed Claims.**

13         **1.**    **Disputed Claims Reserve**

14         On the Effective Date, the Liquidating Debtor will establish a Disputed Claims

15    Reserve from the Liquidating Debtor's Assets on account of Disputed Claims.  The Disputed Claims

16    Reserve will initially include cash in amounts sufficient to distribute to each holder of a Disputed

17    Claim the amount estimated by the Debtor that it would receive under the Plan if its Claim should

18    ultimately become an Allowed Claim.  The Liquidating Trustee, after the Transfer Date, will

19    maintain such Disputed Claims Reserve pursuant to the same requirements.

20         After any Disputed Claim becomes an Allowed Claim, the Disbursing Agent, within

21    fifteen (15) Business Days after the Disputed Claim becomes an Allowed Claim, or as soon

22    thereafter as is practicable, pay the amount of the Allowed Claim pursuant to the treatment of such

23    Allowed Claim as provided in this Plan.

24         If a Disputed Claim (i) becomes a Disallowed Claim or (ii) becomes an Allowed

25    Claim in an amount that would result in such Allowed Claim receiving less than the amount held in

26    the Disputed Claims Reserve on account thereof, the excess attributable to the Claim's disallowed or

27    expunged portion will be Available Cash.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   After Final Orders have been entered, or other final resolutions have been reached,

2   with respect to all Disputed Claims or the Liquidating Debtor or Liquidating Trust has obtained an

3   Order of the Court setting a reduced dollar amount of required reserves, any remaining Cash held in

4   the Disputed Claims Reserve will be Available Cash.

5          **2.      Objections to and Resolution of Disputed Claims.**

6                  On and after the Effective Date to the Transfer Date, the Liquidating Debtor and, on

7   or after the Transfer Date, the Liquidating Trustee will have the right to make and file objections to

8   any Claim of any nature and to prosecute, settle and/or withdraw such objections.  The Liquidating

9   Debtor or Liquidating Trustee, as the case may be, will have the authority to compromise, settle,

10  withdraw or otherwise resolve any objections to a Claim without approval of the Bankruptcy Court;

11  provided, however, that the Liquidating Debtor or the Liquidating Trustee may in its discretion seek

12  relief before the Bankruptcy Court with respect to any Disputed Claim.  The Liquidating Debtor or

13  the Liquidating Trustee will file and serve all objections to 503(b)(9) Claims, Priority Claims, and

14  General Unsecured Claims upon the Holder of the Claim as to which the objection is made no later

15  than three months after the Confirmation Date, provided, however, that nothing herein will reduce

16  the time permitted under applicable statutes of limitation for bringing any affirmative Causes of

17  Action that the Liquidating Debtor or the Liquidating Trustee may assert against any third party.

18  The Claim Objection Deadline may be extended only by an order of the Bankruptcy Court.

19                              **VII.**
20                  **OTHER PLAN PROVISIONS**

21  **A.     Exculpation and Release of Debtor, Committee and Professionals.**

22                  Except to the extent arising from willful misconduct or gross negligence, any and all

23  Claims, liabilities, causes of action, rights, damages, costs and obligations held by any party against

24  the Debtor, the Committee, the members of the Committee (and their respective officers, directors,

25  employees, affiliates and agents), and/or each of their respective attorneys, accountants, agents and

26  other professionals, whether known or unknown, matured or contingent, liquidated or unliquidated,

27  existing, arising or accruing, whether or not yet due in any manner related to the Postpetition

28  administration of the Case, any Postpetition act or omission in connection with, arising out of, or

related to the Case, or the formulation, negotiation, prosecution or implementation of the Plan, will

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

47

be deemed fully waived, barred, released and discharged in all respects, except as to rights,

obligations, duties, claims and responsibilities preserved, created or established by terms of this

Plan, provided however nothing in this  Section VII. A. or the Confirmation Order shall waive, bar,

release or discharge any of the Debtor's, the Liquidating Debtor's or the Liquidating Trust's liabilities

and obligations under the Amended ASA, the Interim Management and Lease Agreement and the

Other Sale Documents which are hereby preserved and remain fully enforceable by the Purchasers.

Except for parties opposing confirmation of the Plan, pursuant to section 1125(e) of

the Bankruptcy Code, the Debtor, the Committee and its present and former members, and each of

their respective affiliates, officers, directors, employees, agents, advisors, representatives, successors

or assigns, and any Professionals employed by any of the foregoing entities will neither have nor

incur any liability to any Person for their role in soliciting acceptance of this Plan.

**B.      Injunction.**

**The Plan is the sole means for resolving, paying or otherwise dealing with**

**Claims.  To that end, except as expressly provided in the Plan, at all times on and after the**

**Effective Date, all Persons who have been, are, or may be Holders of Claims against the Debtor**

**arising prior to the Effective Date, will be permanently enjoined from taking any of the**

**following actions, on account of any such Claim, against the Debtor, the Estate, the**

**Liquidating Debtor, the Liquidating Trust or their respective property (other than actions**

**brought to enforce any rights or obligations under the Plan):**

**(i)      commencing, conducting or continuing in any manner, directly or**

**indirectly any suit, action, or other proceeding of any kind against the Debtor, the**

**Estate, the Liquidating Debtor, the Liquidating Trust, or the Liquidating Trustee, their**

**successors, or their respective property or assets (including, without limitation, all suits,**

**actions, and proceedings that are pending as of the Effective Date which will be deemed**

**to be withdrawn or dismissed with prejudice);**

**(ii)      Enforcing, levying, attaching, executing, collecting, or otherwise**

**recovering by any manner or means whether directly or indirectly any judgment,**

**award, decree, or order against the Debtor, the Estate, the Liquidating Debtor, the**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

48

1    **Liquidating Trust, or the Liquidating Trustee, their successors, or their respective**

2    **property or assets;**

3           **(iii)**    **creating, perfecting, or otherwise enforcing in any manner,**

4    **directly or indirectly, any lien, security interest or encumbrance against the Debtor, the**

5    **Estate, the Liquidating Debtor, the Liquidating Trust, or the Liquidating Trustee, their**

6    **successors, or their respective property or assets; and**

7           **(iv)**    **proceeding in any manner in any place whatsoever against the Debtor,**

8    **the Estate, the Liquidating Debtor, the Liquidating Trust, or the Liquidating Trustee, their**

9    **successors, or their respective property or assets, that does not conform to or comply with the**

10   **provisions of the Plan.**

11          Nothing in this Section VII. B. or the Confirmation Order shall enjoin or act to enjoin

12   the Purchasers from seeking to enforce against the Debtor, the Estate, the Liquidating Debtor, the

13   Liquidating Trust, or any of their respective property or assets, or the Liquidating Trustee any of

14   Purchasers' rights and remedies under the Amended ASA, the Interim Management and Lease

15   Agreement and the Other Sale Documents or seeking to enforce any of the Debtor's, the Liquidating

16   Debtor's or the Liquidating Trust's liabilities and obligations under the Amended ASA, the Interim

17   Management and Lease Agreement and the Other Sale Documents.

18   **C.**    **Nondischarge of the Debtor.**

19          In accordance with section 1141(d)(3) of the Bankruptcy Code, the Confirmation

20   Order will not discharge Claims.  However, no Holder of a Claim may receive any payment from, or

21   seek recourse against, any assets that are to be distributed under the Plan other than assets required to

22   be distributed to that Holder pursuant to the Plan.  **As of the Confirmation Date, all Persons are**

23   **enjoined from asserting against any property that is to be distributed under the Plan any**

24   **Claims, rights, causes of action, liabilities, or Interests based upon any act, omission,**

25   **transaction, or other activity that occurred before the Effective Date except as expressly**

26   **provided in the Plan or the Confirmation Order.** Nothing in this Section VII. C. or the

27   Confirmation Order shall enjoin or act to enjoin the Purchasers from seeking to enforce against the

28   Debtor, the Estate, the Liquidating Debtor, the Liquidating Trust, or their respective property or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

49

assets, or the Liquidating Trustee any of Purchasers' rights and remedies under the Amended ASA, the Interim Management and Lease Agreement and the Other Sale Documents or seeking to enforce any of the Debtor's, the Liquidating Debtor's or the Liquidating Trust's liabilities and obligations under the Amended ASA, the Interim Management and Lease Agreement and the Other Sale Documents.

**D.      Entry of Final Decree**

          Promptly following the Distributions to the Holders of the Unsecured Claims, and the Allowance or Disallowance of all Claims, the Liquidating Debtor or the Liquidating Trustee, as the case may be, will file a motion with the Bankruptcy Court to obtain entry of a final decree closing the Debtor's Case; provided that in no event will the Liquidating Debtor or the Liquidating Trustee file such a motion to until the Transfer Date has occurred.  After entry of the final decree the Liquidating Debtor or the Liquidating Trustee, on behalf of the Liquidating Trust, as the case may be, will be authorized in its sole and absolute discretion to discard or destroy any and all pre-Effective Date books and records, other than any records that relate to the Sale, the Closing, the Purchase Notes, the Community Foundation Escrow and the Operating and Capital Needs Escrow or payment of the Subordinated Claims, of the Debtor in the Liquidating Debtor's or Liquidating Trustee's custody or control.  The Liquidating Debtor and the Liquidating Trustee will continue to preserve the respective post-Effective Date books and records as well as all books and records that relate to the Sale, the Closing, the Purchase Notes, or the Community Foundation Escrow and the Operating and Capital Needs Escrow, subject to further Bankruptcy Court order.

**E.      Post-Effective Date Quarterly Reports and Fees**

          After the Effective Date and before the Transfer Date, the Liquidating Debtor shall File all required Quarterly Reports if any, and serve the Quarterly Report on the U.S. Trustee and shall pay all U.S. Trustee Fees if any.  From and after the Transfer Date, the Liquidating Trustee, on behalf of the Liquidating Trust, shall File all required Quarterly Reports if any, and serve the Quarterly Report on the U.S. Trustee and shall pay all U.S. Trustee Fees if any.

DOCS_LA:235948.5

**F.      Post-Effective Date Status Reports**

The Liquidating Debtor or the Liquidating Trustee, on behalf of the Liquidating Trust, will file status reports regarding the status of implementation of the Plan every one hundred and twenty (120) days following the entry of the Confirmation Order through date of the entry of a final decree closing the Case pursuant to Local Bankruptcy Rule 3020-1(b), or as otherwise ordered by the Bankruptcy Court.

**G.      Exemption from Stamp, Transfer and Other Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**H.      Withholding and Reporting Requirements**

In connection with the consummation of the Plan, the Liquidating Debtor and the Liquidating Trustee will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder will be subject to any such withholding and reporting requirements.  The Liquidating Debtor or the Liquidating Trustee may reasonably request tax reporting information from persons entitled to receive Distributions under the Plan and may withhold the payment of such Distributions pending the receipt of such tax reporting information.

**I.      Pre-Confirmation Injunction and Stays**

Unless otherwise provided, all injunctions or stays arising under or entered during the Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date at which time the injunction contained in Section VII.B shall become effective.

**J.      Retention Of Jurisdiction.**

After Confirmation of the Plan and occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including for the following purposes:

DOCS_LA:235948.5

1.     To resolve any and all disputes regarding the operation and interpretation of the Plan or the Confirmation Order;

2.     To determine the allowability, classification, or priority of any Claim or interest, based on any objection by the Debtor, the Liquidating Debtor, the Liquidating Trustee or by other parties in interest with standing to bring such objection or proceeding;

3.     To determine the extent, validity, and priority of any lien asserted against property of the Debtor, property of the Estate, Liquidating Debtor's Assets or the Liquidating Trust's Assets;

4.     To construe and to take any action to (a) enforce and execute the Plan, the Confirmation Order, and any other order of the Bankruptcy Court; (b) issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order and all matters referred to in the Plan and the Confirmation Order; and (c) determine all matters that may be pending before the Bankruptcy Court in this Case on or before the Effective Date with respect to any Person;

5.     To determine any and all applications for allowance of compensation and reimbursement of expenses of Professionals for periods on or before the Effective Date;

6.     To determine any other request for payment of administrative expenses;

7.     To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Plan or the Confirmation Order;

8.     To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

9.     To adjudicate all adversary proceedings and contested matters, if any, initiated by the Liquidating Debtor or the Liquidating Trustee to pursue retained causes of action;

10.     To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters commenced during the Case whether before, on, or after the Effective Date;

11.     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12.    To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intents and purposes;

13.    To issue injunctions or take such other actions or issue such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order or their implementation by any person or entity;

14.    To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Amended ASA, the Interim Management and Lease Agreement and the Other Sale Documents;

15.    To issue such orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed or vacated; and

16.    To issue such orders in aid of consummation of the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the full extent authorized by the Bankruptcy Code or Bankruptcy Rules.

**K.    Successors And Assigns.**

The rights, benefits and obligations of any entity named or referred to in the Plan are binding on, and will inure to the benefit of, any permitted heirs, executors, administrators, successors or assigns of such entity.

**L.    Modification or Withdrawal of the Plan.**

In accordance with section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule, including amending or modifying it to satisfy the requirements of the Bankruptcy Code.  The Debtor reserves the right to withdraw the Plan before the Confirmation Date.

**M.    Effect on Sale .**

Nothing contained in the Plan or the Confirmation Order shall effect, modify, amend release, waive or alter (a) any of the terms and conditions of the Amended ASA, the Interim Management and Lease Agreement and the Other Sale Documents, (b) any of the obligations and liabilities of the Debtor or its Estate, and any of the obligations and liabilities of the Liquidating

53

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Debtor or the Liquidating Trust, as successors, under the Amended ASA, the Interim Management

2    and Lease Agreement and the Other Sale Documents  or (c) any of the rights and remedies of the

3    Purchasers thereunder.

4    **N.        Severability of Plan Provisions.**

5                 If, before Confirmation, the Bankruptcy Court holds that any Plan term or provision

6    is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision

7    so that it is valid and enforceable to the maximum extent possible consistent with the original

8    purpose of that term or provision, so long as such alternative interpretation does not materially alter

9    the rights, remedies and distributions under the Plan of parties in interest in this Case.  That term or

10   provision will then be applicable as altered or interpreted.  Notwithstanding any such holding,

11   alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and

12   effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will

13   constitute a judicial determination providing that each Plan term and provision, as it may have been

14   altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

15   **O.        Exhibits.**

16                Any Exhibits to the Plan that is not filed with the Plan will be Filed not later than the

17   Exhibit Filing Date.  Copies of all such Exhibits not filed and served with the Plan will not be served

18   by any method other than ECF, but will be available upon written request to the Debtor's counsel.

19   **P.        No Admission.**

20                Except as specifically provided in the Plan, nothing contained in the Plan shall be

21   deemed or construed in any way as an admission by the Debtor or the Estate with respect to any

22   matter set forth in the Plan , including the amount or allowability of any Claim, or the value of any

23   property of the Estate.

24                Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or

25   the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan

26   will: (a) be deemed to be an admission by the Debtor with respect to any matter discussed in the

27   Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a

28   waiver, acknowledgement, or release of any Claims or any claims held by the Debtor; or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

54

1    (c) prejudice in any manner the rights of the Debtor, the Estate, or the Committee in any further

2    proceedings.

3    **Q.    General Authority.**

4    The Debtor shall execute such documents, and take such other actions, as are

5    necessary to effectuate the transactions provided for in the Plan.

6    **R.    Binding Effect.**

7    The Plan and all rights, duties and obligations thereunder shall be binding upon and

8    inure to the benefit of the Debtor, Holders of Claims, the Liquidating Debtor, the Liquidating

9    Trustee and their respective successors and assigns.

10    **S.    Governing Law.**

11    Unless a rule of law or procedure is supplied by federal law (including the

12    Bankruptcy Code and Federal Rules of Bankruptcy Procedure), or by an express choice of law

13    provision in any agreement, contract, document, or instrument provided for or executed in

14    connection with the Plan, the rights and obligations arising under the Plan and any agreement,

15    contract, document, or instrument provided for or executed in connection with the Plan, shall be

16    governed by, and construed and enforced in accordance with, the laws of the State of California,

17    without giving effect to the principles of conflict of laws thereof.

18    **T.    Payment Dates.**

19    Whenever any payment or Distribution to be made under the Plan shall be due on a

20    day other than a Business Day, such payment or distribution shall instead be made, without interest,

21    on the immediately following Business Day.

22    **U.    Headings.**

23    The headings used in the Plan are inserted for convenience only and neither

24    constitutes a portion of the Plan nor in any manner affects the construction of the provisions of the

25    Plan.

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

55

**V.     No Waiver.**

The failure of the Debtor or any other person to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtor's, Liquidating Debtor's or Liquidating Trustee's right to object to or examine such Claim, in whole or in part.

**W.     Post-Effective Date Notice.**

From and after the Effective Date, any Person who desires notice of any pleading or document filed in the Case, or of any hearing in the Court, or of any matter as to which the Bankruptcy Code requires notice to be provided, will file a request for post-effective date notice and will serve the request on the Liquidating Debtor (from the Effective Date to the Transfer Date) or the Liquidating Trustee (from and after the Transfer Date).  Any Person filing such a request will be placed on the Post-Effective Date Notice List.  The U.S. Trustee, the Liquidating Debtor and the Liquidating Trustee will be deemed to have requested post-Effective Date notice and will be placed on the Post-Effective Date Notice List without taking any further action.

**VIII.**

**CONDITIONS TO CONFIRMATION**

The only conditions precedent to Confirmation of the Plan is that Classes 1b, 1c, and 4 have voted to accept the Plan and the Bankruptcy Court shall have entered the Confirmation Order in a form acceptable to the Debtor.

**IX.**

**RECOMMENDATION AND REQUEST TO CONFIRM PLAN WITHOUT**

**DISCLOSURE STATEMENT**

The Debtor believes that confirmation of this Plan is preferable to any other alternative because, in its view, the Plan will provide Holders of Allowed Claims with the maximum recovery.  All Classes, except Classes 1b, 1c and 4, are deemed to have accepted the Plan, pursuant to Bankruptcy Code section 1126(f) of the Bankruptcy Code.  Holders of the Claims in Classes 1b, 1c, and 4 are co-Proponents of the Plan and have waived their right to receive a disclosure statement. All Holders of Claims will be served a Notice of the Filing of the Plan and Hearing Thereon and Notice of Motion for Order Confirming the Plan and Holders of Claims in Classes 1b, 1c, and 4 will

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   be served a copy of the Plan, the Motion for Order Confirming the Plan and Ballots.  If Classes 1b,

2   1c and 4 vote to accept the Plan and return, by the Balloting Deadline, the Ballots to counsel for the

3   Debtor, the Debtor requests confirmation of the Plan under sections 1124 and 1129 of the

4   Bankruptcy Code, without the need for a disclosure statement.

5   Dated: April 15, 2011               VICTOR VALLEY COMMUNITY HOSPITAL,
a California corporation

6

7

8                             By: Catherine Pelley
Its: Chief Executive Officer

9

10   Submitted by:

11   PACHULSKI STANG ZIEHL & JONES LLP

12   By:   */s/ Samuel R. MAizel*
       Samuel R. Maizel (CA Bar No. 189301)

13      Scotta E. McFarland (CA Bar No. 165391)
       Mary D. Lane (CA Bar No. 071592)

14      Attorneys for Debtor and Debtor in Possession,
       Victor Valley Community Hospital

15

16   DANNING, GILL, DIAMOND & KOLLITZ, LLP

17

18   By:
       Richard K. Diamond (CA Bar No. 070634)
       Steven Schwartz (CA Bar No. 200586)

19      Attorneys for Official Committee
       of Creditors Holding Unsecured Claims

20

21   WEISS & SPEES

22   By:
       Michael H. Weiss (CA Bar No. 107481)

23      Attorneys for Physicians Hospital
       Management, LLC

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:235948.5

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 11th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document **_FIRST AMENDED LIQUIDATING PLAN OF REORGANIZATION FOR VICTOR VALLEY COMMUNITY HOSPITAL (APRIL 15, 2011)_** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 15, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **April 15, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**By Overnight Mail**
Honorable Catherine Bauer
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 365
Riverside, CA  92501-3819

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 15, 2011 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                 **F 9013-3.1.PROOF.SERVICE**

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Allison R Axenrod    allison@claimsrecoveryllc.com
- Martin R Barash    mbarash@ktbslaw.com
- Kirk A Barber    barberlawgroup@yahoo.com
- Manuel A Boigues    bankruptcycourtnotices@unioncounsel.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Jeff Cohen    JC@SouthpawAsset.com
- Sanaea Daruwalla    sdaruwalla@bwslaw.com
- Richard K Diamond (TR)    jlv@dgdk.com, rdiamond@ecf.epiqsystems.com
- Abram Feuerstein    abram.s.feuerstein@usdoj.gov
- H Alexander Fisch    afisch@stutman.com
- Fredric Glass    fglass@fairharborcapital.com
- Matthew A Gold    courts@argopartners.net
- Everett L Green    everett.l.green@usdoj.gov
- Robert A Hessling    rhessling@dgdk.com
- Lawrence J Hilton    lhilton@oneil-llp.com, ssimmons@oneil-llp.com
- Mark D Houle    mark.houle@pillsburylaw.com
- Raffi Khatchadourian    raffi@hemar-rousso.com
- Maya Krish    mkrish@cactuscollect.com
- Mary D Lane    mlane@pszjlaw.com
- Ganna Liberchuk    gliberchuk@haincapital.com
- Michael B Lubic    michael.lubic@klgates.com
- Samuel R Maizel    smaizel@pszjlaw.com, smaizel@pszjlaw.com
- Elmer D Martin    elmermartin@gmail.com
- Scotta E McFarland    smcfarland@pszjlaw.com, smcfarland@pszjlaw.com
- Robert K Minkoff    rminkoff@jefferies.com
- Jane Odonnell    jane.odonnell@doj.ca.gov
- Courtney E Pozmantier    cpozmantier@ktbslaw.com
- Martha E Romero    Romero@mromerolawfirm.com
- Steven J Schwartz    sschwartz@dgdk.com
- David Scott    centillion@centillioninvest.com
- Seth B Shapiro    seth.shapiro@usdoj.gov
- David P Tonner    operations@blueheroncapital.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- Michael H Weiss    mw@weissandspees.com, lm@weissandspees.com;jb@weissandspees.com
- Andrew F Whatnall    awhatnall@daca4.com

**II. SERVED BY U.S. MAIL**

*Please see attached Service List*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9013-3.1.PROOF.SERVICE**

**Victor Valley Community Hospital**
**Chapter 11 Case No.:  6:10-bk-39537-CB**
**2002 Service List**

**Debtor**
Victor Valley Community Hospital
Catherine M. Pelley
Chief Executive Officer
15248 Eleventh Street
Victorville, CA  92395

**Board of Directors**
Kathy Davis
Chair, Governing Board of Directors
17100 B Bear Valley Rd.
Box 357
Victorville, CA  92395

Charlie Slyngstad
Burke Williams and Sorenson, LLP
444 S. Flower St., Ste. 2400
Los Angeles, CA  90071

**United States Trustee**
Everett Green
Office of the United States Trustee
3685 Main St., Ste. 300
Riverside, CA  92501

**Attorneys for Creditors' Committee**
Richard K. Diamond
Steven Schwartz
Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067

**Committee Member**
Medtronic USA, Inc.
MS V215
3850 Victoria Street North
Shoreview, MN  55126-2978
Representative: Steve Carlson

**Committee Member**
PHS Professional Hospital Supply
42500 Winchester Road
Temecula, CA 92590
Representative: Kirk Barber

**Committee Member**
Rodney W. Brown, J.D.
LabWest, Inc.
1821 E. Dyer Rd., Suite 100
Santa Ana, CA 92705

**Government Agencies**

**Counsel for the US DHHS/CMS**
Phillip Seligman, Esq.
US Department of Justice
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, DC  20044-0875

Wendi A. Horwitz
Deputy Attorney General
California Department of Justice
Office of the Attorney General
300 South Spring St., Suite 1702
Los Angeles, CA 90013

90231-002\DOCS_LA:224983.1

Office of Statewide Health Planning and Development
Cal-Mortgage Loan Insurance Division
818 K. Street, Room 210
Sacramento, CA  95814

California Health Facilities Financing Authority
915 Capitol Mall, Suite 590
Sacramento, CA  95814

**Secured Creditors**

Gregg Buxton, Vice President
Desert Community Bank
a Division of East West Bank
14800 La Paz Drive
Victorville, CA  92395

Corwin Medical Group
Manmohan Nayyar, MD
Raman Poola, MD
Anna Sugi
18564 Hwy 18, Suite 110
Apple Valley, CA  92307

Manmohan Nayyar, MD
Physicians Hospital Management, LLC
18523 Corwin Rd., Suite H
Apple Valley, CA  92307

Attorneys for PHM
Michael S. Weiss, Esq.
Weiss & Spees
1925 Century Park East, Suite 650
Los Angeles, CA 90067-

2701 Commonwealth Land Title Company
888 West Sixth Street, 4th Floor
Los Angeles, CA  90017

BNY Mellon Trust Company NA
700 South Flower Street, Suite 500
Los Angeles, CA  90017
Attention:  Aaron Masters

Counsel to the Indenture Trustee for the HFFA Bonds
Catherine D. Meyer
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406

**Interested Parties**

90231-002\DOCS_LA:224983.1

Thomas L. Driscoll, Esq.
Attorney at Law
2002 3rd St Apt 114
San Francisco, CA 94107

Biotronik
Attention:  Allen Trammell
6024 Jean Road
Lake Oswego, Oregon  97035

Delta One Partners, Inc.
Corporate Headquarters South
48550 North View Drive
Palm Desert, CA  92260

Attorneys for LabWest, a subsidiary of LabCorp.
Michael Benjamin Lubic
K&L Gates
10100 Santa Monica Blvd., 7th Floor
Los Angeles, California  90067

Law Offices of Leslie M. Lava
580 California Street, Suite 1600
San Francisco, CA  94104

Westhoff, Cone & Holmstedt
1777 Botelho Drive, Suite 370
Walnut Creek, CA  94596

Davis Wright Tremaine LLP
64 Oak Knoll Drive
San Anselmo, CA  94960

Daniel Settelmayer, Esq.
Latham & Watkins LLP
PO Box 894256
Los Angeles, CA  90189-4256

Stalking Horse Bidder
Prime Healthcare Services Foundation, Inc.
Attn: Lex Reddy
Chief Executive Officer
3300 East Guasti Road, 2nd Fl.
Ontario, CA  91761

Counsel for Prime Healthcare Services Foundation, Inc.
Lee Shulman
Mark Bradshaw
Shulman Hodges & Bastian LLP
26632 Towne Centre Drive, Ste. 300
Foothill Ranch, CA  92610

J. Raymond Elliott
President and Chief Executive Officer
Boston Scientific
re: Guidant Corporation
One Boston Scientific Place
Natick, MA 01760-1537

Johnson & Johnson Health Care Systems Inc.
425 Hoes Lane
Piscataway, NJ 08854

Radiometer America, Inc.
810 Sharon Drive
Westlake, OH 44145

90231-002\DOCS_LA:224983.1

Quadramed
Attention: Penny W. Collings
QuadraMed Corporation
12110 Sunset Hills Road # 600
Reston VA 20190

Stephen M. O'Hara
President and CEO
Angelica Textile Services (R-Colton
1105 Lakewood Parkway #210
Alpharetta, GA  30004


**Requests for Special Notice**


Attorneys for Professional Hospital Supply
Kirk Barber
Kirk Barber Law Group, A.P.L.C.
43426 Business Park Drive
Temecula, CA 92590

Attorneys for Creditor OSHPD and the
CA Health Facilities and Financing Authority
Jane O'Donnell
Deputy Attorney General Dept of Justice
Office of the Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550


Attorneys for Cerner Corporation
Lawrence J. Hilton
O'Neil LLP
19900 MacArthur Boulevard; Suite 1050
Irvine, California 92612

DARRELL W. CLARK
Stinson Morrison Hecker LLP
1150 18th Street, NW; Suite 800
Washington, DC 20036-3816


Counsel for The Senior Associates Group
Klee, Tuchin, Bogdanoff & Stern LLP
Attn: Thomas E. Patterson, Esq. and
Martin R. Barash, Esq.
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049

Counsel for The Senior Associates Group
Michael C. Kelcy, Esq.
3605 Canon Blvd.
Altadena, CA 91001


Attorneys for Health Net
Mark D. Houle, Esq.
Pillsbury Winthrop Shaw Pittman LLP
650 Town Center Drive, Suite 700
Costa Mesa, California 92626-7122

Attorneys for County of San Bernardino
Martha E. Romero
Romero Law Firm
BMR Professional Building
6516 Bright Avenue
Whittier, CA  90601


Seth B. Shapiro, Trial Attorney
U.S. Department of Justice - Civil Division
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044

Attorneys for Victor Valley Hospital Real Estate
LLC and Victory Valley Hospital Acquisition, Inc.
Gary E. Klausner
H. Alexander Fisch
Jeffrey A. Resler
Stutman, Treister & Glatt PC
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067

Victor Valley Hospital Real Estate, LLC
6800 Indiana Avenue, Suite 130
Riverside, CA  92506
Attention:  William E. Thomas, Esq.

Victor Valley Hospital Acquisition, Inc.
6800 Indiana Avenue, Suite 130
Riverside, CA  92506
Attention:  William E. Thomas, Esq.

Tin Kin Lee on behalf of Creditor Inland
Empire Health   Plan
Tin Kin Lee Law Offices
55 S Lake Ave Ste 705
Pasadena, CA 91101

Liquidity Solutions Inc
One University Plaza
Ste 312
Hackensack, NJ 07601

Tannor Partners Credit Fund II, LP
200 Business Park Drive, Suite 200
Armonk, NY 10504

Attorney for Creditor, Peggy Buckley
Michael Grennier
Law Offices of Steve Pell
2633 Loma Vista Road
Ventura, CA  93003-1548