1  Samuel R. Maizel (CA Bar No. 189301)
   Scotta E. McFarland (CA Bar No. 165391)
2  Mary D. Lane (CA Bar No. 071592)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 11th Floor
   Los Angeles, California  90067-4100
4  Telephone: 310/277-6910
   Facsimile:  310/201-0760
5  E-mail:      smaizel@pszjlaw.com
                mlane@pszjlaw.com
6
   Attorneys for Debtor and Debtor in Possession Victor
7  Valley Community Hospital

8              **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                  **RIVERSIDE DIVISION**

11 In re:                              Case No.: 6:10-bk-39537-CB
                                       Chapter 11
12 VICTOR VALLEY COMMUNITY
   HOSPITAL, a California corporation, **NOTICE OF MOTION AND MOTION FOR
13                                     ENTRY OF AN ORDER CONFIRMING THE
                            Debtor.    FIRST AMENDED LIQUIDATING PLAN OF
14                                     REORGANIZATION FOR VICTOR VALLEY
                                       COMMUNITY HOSPITAL (APRIL 15, 2011);
15                                     MEMORANDUM OF POINTS AND
                                       AUTHORITIES IN SUPPORT THEREOF**
16
                                       [Declarations of Edward Matthews and George
17                                     Pillari in Support filed concurrently herewith]

18                                     Hearing:
                                       Date:    May 6, 2011
19                                     Time:    10:00 a.m.
                                       Place:   3420 Twelfth Street
20                                              Riverside, CA 92501-3819
                                                Bankruptcy Courtroom 303
21                                     Judge:   Honorable Catherine E. Bauer

22     **TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES**

23 **BANKRUPTCY JUDGE; COUNSEL FOR THE OFFICIAL COMMITTEE OF**

24 **UNSECURED CREDITORS; THE OFFICE OF THE UNITED STATES TRUSTEE;**

25 **PARTIES REQUESTING SPECIAL NOTICE; AND ALL CREDITORS[1]:**

26

27 [1] The creditors who have not requested notice in this Case will be served only the Notice of Motion and
   Motion for Entry of an Order Confirming the First Amended Liquidating Plan of Reorganization for Victor
28 Valley Community Hospital (April 15, 2011).  A copy of the Memorandum of Points and Authorities is
   available upon request directed to Felice Harrison at fharrison@pszjlaw.com or (310) 277-6910.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PLEASE TAKE NOTICE** that Victor Valley Community Hospital, the above-captioned debtor and debtor in possession (the "Debtor"), the Official Committee of Unsecured Creditors (the "Committee"), Physicians Hospital Management, LLC ("PHM") and Corwin Medical Group, Inc. ("Corwin" and together with the Debtor, the Committee, PHM, the "Proponents") hereby move (the "Motion") pursuant to section 1129(a) of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order confirming the *First Amended Liquidating Plan of Reorganization for Victor Valley Community Hospital (April 15, 2011)* (the "Plan"),[2] filed concurrently herewith.

**PLEASE TAKE FURTHER NOTICE** that the Plan proposes that, after the sale of substantially all of the Debtor's assets closes (the sale has previously been approved by order of the Bankruptcy Court) and the Plan becomes effective,[3] all of the Debtor's assets will vest in the Liquidating Debtor, which will remain in existence until the Transfer Date[4]. The Liquidating Debtor, prior to the Transfer Date, will be responsible for, among other things, objecting to and resolving all disputes to Claims and making all Distributions to creditors holding Allowed Claims as provided in the Plan. On the Transfer Date the Liquidating Debtor will transfer all of its remaining assets to the Liquidating Trust formed pursuant to the Plan. After the Transfer Date, the Liquidating Trustee will be responsible for, among other things, objecting to and resolving all

---

[2] All capitalized terms not otherwise defined herein shall have the meaning given them in the Plan.

[3] "Effective Date" means the first Business Day after the date when all of the following have occurred, unless waived: (i) the Confirmation Order shall have become a Final Order; provided, however, at the option of the Debtor with the consent of the Committee and the Purchasers, a Confirmation Order that is subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no court of competent jurisdiction has entered an order staying the effect of the Confirmation Order; (ii) the Closing has occurred; (iii) the Debtor, Committee and the Liquidating Trustee have executed the Trust Agreement; provided, however, that the no assets shall be transferred to the Liquidating Trust until the Transfer Date and the Liquidating Trust shall not incur any expenses until the Transfer Date; (iv) all actions, documents and agreements necessary to implement the Plan will have been effected or executed, (v) the Debtor will have received all authorizations, consents, rulings, opinions or other documents that are determined by the Debtor to be necessary to implement the Plan, and (vi) the Proponents will have determined in their reasonable discretion that sufficient Cash exists to satisfy all Unclassified Allowed Claims and all Allowed Claims in Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b and 3. In no event shall the Effective Date occur more than forty-five (45) calendar days following entry of the Confirmation Order, unless the Plan is modified pursuant to Order of the Court extending such date for good cause shown.

[4] "Transfer Date" means the first business day after both of the following have occurred: (1) the Purchasers have received all licenses and permits necessary for VVHA to operate the Hospital in its own right, including the DPH License, and such licenses and permits are effective; and (2) the Interim Management and Lease Agreement between the Debtor and the Purchasers has terminated.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    disputes to Claims and making all Distributions to creditors holding Allowed Claims as provided in

2    the Plan.

3        **PLEASE TAKE FURTHER NOTICE** that the Claims against the Debtor are divided into

4    (1) unclassified Claims, which are (a) Administrative Claims,[5] (b) Priority Tax Claims and (c) Cure

5    Claims, and (2) Classes of Claims, which are (a) Class 1, Secured Claims, which are further divided

6    into (i) Class 1a, Secured Tax Claims, (ii) Class 1b, the Secured Claim of PHM, (iii) Class 1c, the

7    Secured Claim of Corwin, (iv) Class 1d, the asserted Secured Claim of the Department of Health

8    Care Services, (v) Class 1e, the Secured Claim of California Office of State Health Planning and

9    Development, (vi) Class 1f, the Secured Claim of The Bank of New York Mellon Trust Company,

10   N.A, as Indenture Trustee of the Bonds, and (vi) Class 1g, any Miscellaneous Secured Claims (the

11   Debtor is not aware of any Class 1g Claims); (b) Class 2, Priority Non-Tax Claims, which are

12   further divided into (i) Class 2a, Priority Non-Tax Claims that are not Priority Assumed Employee

13   Claims[6] and (ii) Class 2b, the Priority Assumed Employee Claims; (c) Class 3, General Unsecured

14   Claims; and (iv) Class 4, Subordinated Unsecured Claims, which is comprised of the General

15   Unsecured Claims, of PHM and Corwin.

16       **PLEASE TAKE FURTHER NOTICE** that the Liquidating Debtor will pay all persons

17   and entities holding Administrative Claims 100% of the allowed amount of such Claims, plus

18   interest, fees and costs on the Effective Date or when the Claim becomes an Allowed Claim,[7]

19   whichever is later.

20

---

21   [5] "Administrative Claim" means a Claim for administrative costs or expenses that is allowable under
22   sections 503(b) and 507(a)(2) of the Bankruptcy Code or 28 U.S.C. § 1930, including, without limitation, (a)
     Non-Ordinary Course Administrative Claims; (b) Ordinary Course Administrative Claims; (c) 503(b)(9)
     Claims; (d) Professional Fee Claims; (e) Administrative Tax Claims; and (f) U.S. Trustee Fees.

23   [6] "Priority Assumed Employee Claims" means those Claims of the Debtor's employees who are hired by the
24   Purchasers that both (i) constitute PTO owed to such hired employees as of the Closing Date of the Sale and
     (ii) constitute Priority Claims under section 507(a)(4) of the Bankruptcy Code.

25   [7] An allowed claim is (a) a Claim, as to which no proof of claim has been filed, that is (i) listed in the
     Debtor's Schedules in an amount greater than zero and not in an unknown amount and (ii) not listed as
26   disputed, contingent or unliquidated; or (b) a Claim as to which a timely proof of claim has been filed in a
     sum certain and (i) no objection or motion to estimate, equitably subordinate, reclassify, set off, or otherwise
27   limit the recovery thereon has been asserted before the expiration of the time period to object to such claim
     as set forth in this Plan or order of the Bankruptcy Court or (ii) any objection or motion to estimate,
     equitably subordinate, reclassify, or set off has been resolved by agreement between the Claimant and the
28   Liquidating Trustee or by Final Order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that Priority Tax Claims will be satisfied in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, except as otherwise agreed to by the parties.  The Debtor, the Liquidating Debtor and the Liquidating Trustee reserve the right to pay any Allowed Priority Tax Claim, or any remaining balance of such Allowed Claim, in full, at any time on or after the Effective Date, without premium or penalty.

**PLEASE TAKE FURTHER NOTICE** that each Holder of a Cure Claim (the amounts of which have been established by previous orders of the Bankruptcy Court) will receive in full satisfaction, discharge, exchange and release thereof, payment of such Cure Claim pursuant to the terms of any agreement between the Holder of the Cure Claim and the Debtor or pursuant to the terms of any Final order of the Bankruptcy Court establishing the Cure Claim.  If no terms of payment are specified in either an agreement between the Holder of a Cure Claim and the Debtor or an order of the Bankruptcy Court, the Cure Claim will be paid in Cash, in full, on or before the Closing Date.

**PLEASE TAKE FURTHER NOTICE** that **Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3** are Unimpaired under the Plan.  The treatment of Allowed Claims in the Unimpaired Classes in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights of each Holder of an Allowed Claim in the Unimpaired Classes.  Although the Claims in Classes 1b, 1c and 4 are Impaired under the terms of the Plan, the Holders of the Claim in the Impaired Classes are co-Proponents of the Plan, have agreed to the treatment of their Class 1b and 1c Claims and to the subordination and treatment of their Class 4 Claims, and have waived rights to receive a disclosure statement pursuant to section 1125 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that if the Plan is confirmed by the Bankruptcy Court, the treatment of Claims set forth in the Plan supersedes and replaces any agreements or rights the Holders of the Claims have in or against the Debtor or its property.  All Distributions under the Plan will be tendered to the Holder of the Allowed Claim as of the Record Date. **EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM, WHETHER AN ALLOWED CLAIM OR NOT.**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PLEASE TAKE FURTHER NOTICE** that the Classes of Claims will be treated pursuant to the terms of the Plan as set forth below:

1.  **Class 1 (Secured Claims).**

    a.    Class 1a (Secured Tax Claims) is Unimpaired under the Plan.  The Holders of each Allowed Class 1a Claim will receive Cash equal to its Allowed Claim, including interest, fees and costs to which it is entitled under sections 506 and 1124 of the Bankruptcy Code either on the Closing Date as part of the Closing of the Sale as required by the Sale Order or, if not so required by the Sale Order, on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such Class 1a Claim becomes an Allowed Secured Claim, or, in either case, as soon thereafter as is practicable or such other treatment as the Debtor and the Holder of an Allowed Class 1a Claim agree to in writing.

    b.    Classes 1b (Secured Claim of PHM) and 1c (Secured Claim of Corwin) are Impaired under the Plan.  Pursuant to the terms of the Amended ASA, the Allowed Class 1b and 1c Claims will be assumed by the Purchasers at Closing in accordance with the terms of the Amended ASA and paid according to the terms of agreements between the Purchasers and PHM and Corwin, respectively.  In connection with certain transactions that may occur prior to the Closing, PHM and Corwin may become affiliated with the Purchasers.

    c.    Class 1d (Asserted Secured Claim of DHCS) is Unimpaired under the Plan. The payments due on the Class 1d Claim have been made during the Case pursuant to the terms of the Repayment Agreement, so no default under the Repayment Agreement between the Debtor and DHCS exists.  The security for the Class 1e Claim of DHS is its asserted right of recoupment from Medi-Cal payments.  Pursuant to the terms of the Amended ASA, the obligations of the Debtor with respect to the Allowed Class 1e Claim under the terms of the Repayment Agreement will be assumed by the Purchasers at Closing as provided by the terms of the Amended ASA and will be paid according to the terms of the Repayment Agreement.

    d.    Classes 1e (Secured Claim of OSHPD) and 1g (Miscellaneous Secured Claims, to the extent any such Claims exist) are Unimpaired under the Plan.  The Holder of each Allowed Class 1e and 1g Claim will receive Cash equal to its Allowed Claim, including any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   interest, fees and costs to which it is entitled under sections 506 and 1124 of the Bankruptcy Code,

2   either on the Closing Date as part of the Closing of the Sale as required by the Sale Order or, if not

3   so required by the Sale Order on the later of (i) the Effective Date, and (ii) the fifteenth (15th)

4   Business Day after such Class 1e or 1g Claim becomes an Allowed Secured Claim, or, in either

5   case, as soon thereafter as is practicable or such other treatment as the Debtor and the Holder of an

6   Allowed Class 1e or 1g Claim agree to in writing.

7         e.      Class 1f (Secured Claim of Indenture Trustee for Bonds) are Unimpaired

8   under the Plan and will be fully satisfied pursuant to the terms of the *Order Approving the*

9   *Redemption of Bonds by the Debtor in the Ordinary Course of Business* entered by the Bankruptcy

10  Court on March 30, 2011 [Docket No. 791].

11         2.      **Class 2 (Priority Non-Tax Claims).**

12         a.      Class 2a (Priority Non-Tax Claims that are not Priority Assumed Employee

13  Claims) is Unimpaired under the Plan.  Each Holder of an Allowed Class 2a Claim will be paid in

14  Cash, in full, with interest at the Judgment Rate (0.26%) from the Petition Date to the date of

15  Payment on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such

16  Priority Non-Tax Claim becomes an Allowed Priority Claim, or, in either case, as soon thereafter as

17  is practicable.

18         b.      Class 2b (the Priority Assumed Employee Claims) is Unimpaired under the

19  Plan.  Pursuant to the terms of the Amended ASA, the obligations of the Debtor with respect to the

20  Allowed Class 2b Claims will be assumed by the Purchasers at Closing and the Purchasers will

21  honor the legal and contractual rights of the Holders of such Allowed Class 2b Claims as set forth

22  in the Amended ASA.

23         3.      **Class 3 (General Unsecured Claims).**

24         Class 3 is Unimpaired under the Plan.  Each Holder of an Allowed Class 3 Claim

25  will be paid in Cash, in full, with interest on the later of (i) the Effective Date, and (ii) the fifteenth

26  (15th) Business Day after such General Unsecured Claim becomes an Allowed Unsecured Claim,

27  or, in either case, as soon thereafter as is practicable.  The Debtor will pay to each Holder of an

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Allowed Class 3 Claim interest at the Judgment Rate (0.26%) from the Petition Date to the date the

2    Allowed Class 3 Claim is paid in full.

3        4.    **Class 4 (Subordinated Unsecured Claims).**

4        Class 4 is Impaired under the Plan.  Each Holder of an Allowed Class 4 Claim will be paid

5    its Pro-Rata share of Available Cash after payment of all other Allowed Claims in full until the

6    Allowed Class 4 Claims are paid in full with interest at the Judgment Rate or until there are no

7    more Liquidating Trust's Assets.

8        **PLEASE TAKE FURTHER NOTICE** that all claims, except the Secured Claims of PHM

9    and Corwin and the Subordinated Unsecured Claims, are unimpaired by the Plan.  Holders of

10   unimpaired claims are deemed to have accepted the Plan pursuant to section 1126(f) of the

11   Bankruptcy Code and do not vote on the Plan.  Holders of unimpaired claims may, however, file an

12   objection to the Plan, to the extent any such objection is deemed appropriate.

13       **PLEASE TAKE FURTHER NOTICE** that the Secured Claims of PHM and Corwin and

14   the Subordinated Unsecured Claims of PHM and Corwin will also be paid in full with interest but

15   such payment may be over time.  The subordinated unsecured claims of PHM and Corwin, co-

16   proponents of the plan, are impaired under the Plan.  PHM and Corwin are, therefore, allowed to

17   vote on the Plan and will receive Ballots.  Such Ballots should be completed and returned to

18   counsel for the Debtor at Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Los

19   Angeles, 90067, Attn.: Felice Harrison, by mail, overnight delivery or hand delivery by no later

20   than April 22, 2011.  PHM and Corwin have waived their right to receive a disclosure statement.

21       **PLEASE TAKE FURTHER NOTICE** that the funding for the payments to be made

22   pursuant to the Plan to Holders of Allowed Claims under the Plan and the payment of

23   Post-Effective Date Expenses will be from (i) the Debtor's Cash on hand as of the Effective Date,

24   which the Debtor projects will be approximately $22 million, and which shall include, but is not

25   limited to, the Cash in the Debtor's accounts prior to the closing of the Sale, the net proceeds of the

26   Sale and proceeds from the investment of such Cash, (ii) the proceeds of the Purchase Notes,

27   including the interest thereon, and (iv) the proceeds of the liquidation by the Liquidating Debtor of

28   any other of the Liquidating Debtor's Assets.  As set forth in the Plan and demonstrated by the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Sources and Uses of Cash attached to the Pillari Declaration as Exhibit A, the Cash on Hand as of

2   the Effective Date will be sufficient to pay all Allowed Claims in full except for the Claims

3   assumed by the Purchasers and the Subordinated Unsecured Claims.

4       **PLEASE TAKE FURTHER NOTICE** that because all claims other than those of co-

5   proponents of the Plan, PHM and Corwin, each of which have waived the right to receive a

6   disclosure statement, are unimpaired and not entitled to vote on the Plan, the Debtor requests that

7   the order confirming the Plan specify that a disclosure statement is not required under section

8   1125(b).

9       **PLEASE TAKE FURTHER NOTICE** that a hearing will be held on May 6, 2011 at

10  10:00 a.m. before the Honorable Catherine E. Bauer, Courtroom 303, 3420 Twelfth Street,

11  Riverside, California to consider the Motion and the confirmation of the Plan.  Local Bankruptcy

12  Rule 9013-1(f) requires that any objection or response to the Motion be filed with the Court and

13  served upon undersigned counsel for the Debtor at least fourteen (14) days prior to the hearing date.

14  Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve written opposition

15  may be deemed by the Court to be consent to the granting of the relief requested in the Motion and

16  the relief sought in this Motion may be granted without further notice.

17      **PLEASE TAKE FURTHER NOTICE** that the Motion is based on the Memorandum of

18  Points and Authorities and Declarations of Edward Matthews and George Pillari in support of the

19  Plan filed concurrently herewith, the First Amended Plan, and any other admissible evidence

20  properly brought before the Court.  In addition, the Debtor requests that the Court take judicial

21  notice of the *Declaration of Edward Matthews Filed in Support of Emergency Motions* [Docket

22  No. 12] and all other documents filed with the Bankruptcy Court and orders entered by the

23  Bankruptcy Court in this chapter 11 case.

24      **PLEASE TAKE FURTHER NOTICE** that you can view the Plan, the Memorandum of

25  Points and Authorities and the Declaration of Edward Matthews in support of the Plan by going to

26  www.vvchinfo.org and clicking on "Court Documents" or by requesting a copy of the documents

27  or any of them from counsel for the Debtor.  Such request should be directed to Felice Harrison by

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    email at fharrison@pszjlaw.com (<u>EMAIL PREFERRED</u>) or by telephone at (310) 277-6910 or by

2    fax at (310) 201-0760.

3        **WHEREFORE**, the Proponents respectfully request that the Court enter an Order

4    (i) granting the Motion, (ii) confirming the Plan, and (iii) granting such other and further relief as it

5    deems necessary and appropriate.

6

7    Dated:     April 15, 2011                     PACHULSKI STANG ZIEHL & JONES LLP

8                                          By     */s/ Samuel R. Maizel*
                                                  Samuel R. Maizel
9                                                 Scotta E. McFarland
                                                  Mary D. Lane
10                                                Attorneys for Victor Valley Community
                                                  Hospital, Debtor and Debtor in Possession

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **Table of Contents**

Page

I.      INTRODUCTION ................................................................................................................ 10

II.     JURISDICTION AND VENUE ........................................................................................ 11

III.    HISTORY OF THE DEBTOR .......................................................................................... 12

    A.      General Background ............................................................................................. 12

    B.      General Description of the Debtor ....................................................................... 12

    C.      The Debtor's Physical Plant ................................................................................. 12

    D.      The Debtor's Staff ................................................................................................ 13

    E.      The Debtor's Services .......................................................................................... 13

    F.      The Debtor's Management ................................................................................... 13

    G.      The Debtor's Secured Debt .................................................................................. 14

        1.      The 2000 Bonds ....................................................................................... 14

        2.      OSHPD Obligations ................................................................................ 15

        3.      The PHM Obligations .............................................................................. 15

        4.      The Corwin Medical Group Obligations ................................................. 16

        5.      Claim of Department of Health Services (Medi-Cal) .............................. 16

        6.      San Bernardino County Tax Claim .......................................................... 16

    H.      The Debtor's Unsecured Debt .............................................................................. 16

    I.      The Chapter 11 Filing .......................................................................................... 17

IV.     THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS ......................................... 18

V.      THE CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE PLAN ......... 21

    A.      Unclassified Claims. ............................................................................................ 21

        1.      Allowance of Administrative Claims ...................................................... 21

            a.      Allowance of Non-Ordinary Course Administrative Claims ........... 21

            b.      Allowance of Ordinary Course Administrative Claims .................... 22

            c.      Allowance of 503(b)(9) Claims ....................................................... 22

            d.      Allowance of Professional Fee Claims ............................................ 22

        2.      Treatment of Administrative Claims. ...................................................... 23

            a.      Payment of Allowed Non-Ordinary Course Administrative Claims. 23

            b.      Payment of Allowed Ordinary Course Administrative Claims. ....... 23

            c.      Payment of 503(b)(9) Claims .......................................................... 23

            d.      Payment of Professionals. ................................................................ 24

            e.      Payment of U.S. Trustee Fees. ......................................................... 24

        3.      Treatment of Priority Tax Claims. ........................................................... 24

         4.      Treatment of Cure Claims ....................................................................... 24

    B.      Classified Claims. ................................................................................................ 25

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

|  |  |  |  |  |
|---|---|---|---|---|
| | 1. | Class 1 (Secured Claims)............................................................ | 25 |
| | 2. | Class 2 (Priority Non-Tax Claims)............................................. | 26 |
| | 3. | Class 3 (General Unsecured Claims).......................................... | 26 |
| | 4. | Class 4 (Subordinated Unsecured Claims)................................. | 27 |
| C. | Impaired and Unimpaired Classes .................................................... | | 27 |

VI.   FUNDING OF THE PLAN ....................................................................... 27

    A.   The Debtor's Cash Position on the Effective Date .......................... 27

    B.   Other Sources of Funding for the Plan ............................................ 28

VII.  ALL APPLICABLE REQUIREMENTS FOR CONFIRMATION OF THE PLAN HAVE BEEN SATISFIED ........................................................................ 31

    A.   The Plan Complies With The Applicable Provisions of Title 11 (Section 1129(a)(1)).......................................................................... 31

        1.   The Plan Properly Classifies Claims (Section 1122)..................... 31

        2.   Content:  The Plan Contains All Mandatory Provisions and Two Permitted Provisions (Section 1123). ........................................... 32

            a.   Mandatory Plan Provisions (Section 1123). ..................... 32

                (i)   The Plan Designates Classes of Claims (Section 1123(a)(1))............................................... 32

                (ii)   The Plan Lists All Unimpaired Classes (1123(a)(2)). .......... 32

                (iii)   The Plan Describes the Treatment of Impaired Classes (1123(a)(3))................................................. 34

                (iv)   Except as Otherwise Agreed, the Plan Provides the Same Treatment for Each Claim or Interest Within a Class (1123(a)(4))............................................. 34

                (v)   The Plan Includes Adequate Means for Its Implementation (1123(a)(5))....................................... 34

                (vi)   The Plan Appropriately Provides for the Selection of Officers, Directors, Trustees, and Successors Thereto (Section 1123(a)(7)).......................... 34

            b.   Permitted Provisions (Section 1123). ............................... 35

                (i)   Impairment/Nonimpairment (Section 1123(b)(1)). .............. 35

                (ii)   Assumption/Rejection of Executory Contracts and Unexpired Leases (Section 1123(b)(2))...................... 35

                (iii)   Retention and Enforcement of Claims of the Debtor (Section 1123(b)(3)(B))....................................... 37

                (iv)   Distribution of the Proceeds of the Sale of the Debtor's Assets (Section 1123(b)(4))........................... 37

                (v)   Other Appropriate Provisions (Section 1123(b)(6).............. 37

    B.   The Plan Proponents Have Complied With the Applicable Provisions of Title 11 (Section 1129(a)(2)).......................................... 37

    C.   The Plan Is Proposed In Good Faith (Section 1129(a)(3)). ................... 38

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ii

D.    Compensation of Professionals Will Remain Subject to Bankruptcy Court Approval (Section 1129(a)(4)). ................................................................. 39

E.    The Plan Identifies Officers, Directors, and Insiders (Section 1129(a)(5)). ............. 39

F.    The Plan Does Not Require Approval of Any Regulatory Commission (Section 1129(a)(6)). .................................................................................. 40

G.    The Plan Complies With the Best Interests Test (Section 1129(a)(7)). .................... 40

H.    The Plan Will Be Accepted By Each Class Whose Acceptance is Required (Section 1129(a)(8)). .................................................................................. 42

I.    The Plan Provides Appropriate Treatment For Administrative Expense And Priority Claims (Section 1129(a)(9)). .................................................................... 43

J.    At Least One Impaired Class Will Have Accepted the Plan (Section 1129(a)(10)). 43

K.    The Plan Is Feasible (Section 1129(a)(11)). .............................................. 44

L.    All Bankruptcy Fees Have or Will Be Paid (Section 1129(a)(12)). ....................... 45

M.    Continuation of Retiree Benefits (Section 1129(a)(13)). ................................. 45

N.    Section 1129(b) of the Bankruptcy Code Does Not Apply To The Plan................. 46

VIII.    CONCLUSION .......................................................................................... 46

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

iii

# TABLE OF AUTHORITIES

**Cases**

*Am. v. Pac. Gas & Elec. Co.,*
549 U.S. 443, 127 S. Ct. 1199, 1204-05, 167 L. Ed. 2d 178 (2007) ............................................. 41

*Commercial Finance Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.),*
47 B.R. 425 (D. Haw. 1985) ............................................. 36

*Computer Task Group, Inc. v. Brotby (In re Brotby),*
303 F.3d 177 (9th Cir. B.A.P. 2003) ............................................. 44

*F.H. Partners, L.P. v. Inv. Co. of the Southwest, Inc. (In re Inv. Co. of the Southwest, Inc.),*
341 B.R. 298 (B.A.P. 10th Cir. 2006) ............................................. 45

*GE Capital Corp. v. Future Media Prods.,*
2008 U.S. App. LEXIS 22367 (9th Cir. 2008), *a* ............................................. 41

*Group of Institutional Investors v. Chicago, M., St. P. & Pac. Ry. Co.,*
318 U.S. 523 (1943) ............................................. 36

*In re Acequia, Inc.,*
787 F.2d 1352 (9th Cir. 1986) ............................................. 31, 44

*In re Amster Yard Associates,*
214 B.R. 122 (Bankr. S.D.N.Y. 1997) ............................................. 38

*In re Beguelin,*
220 BR 94 (9th Cir. BAP 1998) ............................................. 33

*In re Cardelucci,*
285 F.3d 1231 (9th Cir. 2002) ............................................. 33

*In re Chipwich, Inc.,*
54 B.R. 427 (Bankr. S.D.N.Y. 1985) ............................................. 36

*In re DBSC Investments, L.L.C.,*
2009 Bankr. LEXIS 2954 (Bankr. D. Az. 2009) ............................................. 40

*In re Diversified Investors Fund XVII,*
91 B.R. 559 (Bankr. C.D. Cal. 1988) ............................................. 40

*In re Entz-White Lumber & Supply, Inc.,*
850 F.2d 1338 (9th Cir. 1988) ............................................. 40, 41

*In re FCX, Inc.,*
60 B.R. 405 (E.D.N.C. 1986) ............................................. 36

*In re Fur Creations by Varriale, Ltd.,*
188 B.R. 754 (Bankr. S.D.N.Y. 1995) ............................................. 31

*In re Greate Bay Hotel & Casino, Inc.,*
251 B.R. 213 (Bankr. D.N.J. 2000) ............................................. 31

*In re M. Long Arabians,*
103 B.R. 211 (B.A.P. 9th Cir. 1989) ............................................. 40

*In re Patrician St. Joseph Partners, Ltd.,*
169 B.R. 669 (D. Ariz. 1994) ............................................. 44

*In re Sagewood Manor Assocs. Ltd. P'ship,*
223 B.R. 756 (Bankr. D. Nev. 1998) ............................................. 44

*In re Southeast Co.,*
868 F.2d 335 (9th Cir. 1989) ............................................. 40, 41

*In re TS Indus. Inc.,*
117 B.R. 682 (Bankr. D. Utah 1990) ............................................. 35

*In re: DSBC Investments, L.L.C.,*
2009 Bankr. LEXIS 2954 at *9 (Bankr. D. Az. 2009) ............................................. 42

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
843 F.2d 636 (2d Cir. 1988) ............................................. 44

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp. (In re Ambanc La Mesa Ltd. Pshp.),*
115 F.3d 650 (9th Cir. 1997) ............................................. 31

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza L.P.)*,
    314 F.3d 1070 (9th Cir. 2002) ................................................................................ 38
*Robertson v. Pierce (In re Chi-Feng Huang)*,
    23 B.R. 798 (B.A.P. 9th Cir. 1982) ......................................................................... 36
*See Brady v. Andrew (In re Commercial Western Fin. Corp.)*,
    761 F.2d 1329 (9th Cir. 1985) ................................................................................ 31
*Summit Land Co. v. Allen (In re Summit Land Co.)*,
    13 B.R. 310 (Bankr. D. Utah 1981) ........................................................................ 36

**Statutes**
11 U.S.C. §  1122 ....................................................................................................... 31
11 U.S.C. §  1125 ...................................................................................... 4, 8, 27, 38
11 U.S.C. §  507(a)(2) ............................................................................................... 43
11 U.S.C. § 1107(a) .................................................................................................. 12
11 U.S.C. § 1108 ...................................................................................................... 12
11 U.S.C. § 1114 ...................................................................................................... 45
11 U.S.C. § 1122 ................................................................................................. 31, ii
11 U.S.C. § 1122(b) .................................................................................................. 31
11 U.S.C. § 1123 ................................................................................................. passim
11 U.S.C. § 1123(a)(4) ........................................................................................ 34, ii
11 U.S.C. § 1123(a)(5) .................................................................................... 34, 40, ii
11 U.S.C. § 1123(a)(7) .............................................................................................. 34
11 U.S.C. § 1123(b)(2) .............................................................................................. 35
11 U.S.C. § 1123(b)(2) .............................................................................................. 35
11 U.S.C. § 1124 ................................................................................................. passim
11 U.S.C. § 1124(1) ............................................................................................ 32, 41
11 U.S.C. § 1124(2)(A) .............................................................................................. 41
11 U.S.C. § 1126(f) ................................................................................................... 42
11 U.S.C. § 1127(f) .............................................................................................. 37, 38
11 U.S.C. § 1129 ................................................................................................. passim
11 U.S.C. § 1129(a) ............................................................................................ passim
11 U.S.C. § 1129(a)(10) ............................................................................................ 44
11 U.S.C. § 1129(a)(11) ............................................................................................ 44
11 U.S.C. § 1129(a)(8) .............................................................................................. 42
11 U.S.C. § 1129(a)(9)(C) ......................................................................................... 43
11 U.S.C. § 1129(b)(2) .............................................................................................. 33
11 U.S.C. § 350 ........................................................................................................ 24
11 U.S.C. § 363 ................................................................................................... 18, 19
11 U.S.C. § 365 ................................................................................................... 35, 36
11 U.S.C. § 503(b) ......................................................................................... 22, 23, i
11 U.S.C. § 506 ........................................................................................................ 25
11 U.S.C. § 507(a)(1) ................................................................................................ 43
11 U.S.C. § 507(a)(4) ................................................................................................ 43
11 U.S.C. § 507(a)(5) ................................................................................................ 43
11 U.S.C. § 507(a)(6) ................................................................................................ 43
11 U.S.C. § 507(a)(7) ................................................................................................ 43
11 U.S.C. § 507(a)(8) ................................................................................................ 43
11 U.S.C. § 726(a)(5) ................................................................................................ 33
11 U.S.C. §1129(a)(7) ............................................................................................... 42
28 U.S.C. § 1334 ...................................................................................................... 11
28 U.S.C. § 1408 ...................................................................................................... 11
28 U.S.C. § 1409 ...................................................................................................... 11
28 U.S.C. § 157 ........................................................................................................ 11
28 U.S.C. § 157(b)(2) ............................................................................................... 11
28 U.S.C. § 1930 ...................................................................................................... 24
28 U.S.C. § 1930 ...................................................................................................... 45

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ii

28 U.S.C .§ 1961(a) ................................................................................................. 33

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

iii

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Victor Valley Community Hospital, the debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Case"), the Official Committee of Unsecured Creditors (the "Committee"), Physicians Hospital Management, LLC ("PHM") and Corwin Medical Group, Inc. ("Corwin" and together with the Debtor, the Committee, PHM, the "Proponents") hereby submit this Memorandum of Points and Authorities (the "Memorandum") in support of the *Motion for Entry of an Order Confirming the First Amended Liquidating Plan of Reorganization for Victor Valley Community Hospital (April 15, 2011)* (the "Motion"),[8] which seeks confirmation of the *First Amended Liquidating Plan of Reorganization for Victor Valley Community Hospital (April 8, 2011)* (the "Plan").

The following pleadings and documents have been filed, or will be filed concurrently herewith, in connection with confirmation of the Plan:

1.      The *First Amended Liquidating Plan of Reorganization for Victor Valley Community Hospital (April 8, 2011)* [Docket No. 843];

2.      The *Notice of Filing Liquidating Plan of Reorganization for Victor Valley Community Hospital(April 8, 2011) and of Confirmation Hearing* [Docket No. 844];

3.      *Declaration of Edward Matthews in Support of Confirmation of the Plan* (the "Matthews Declaration").

4.      *Declaration of George D. Pillari in Support of Confirmation of the Plan* (the "Pillari Declaration").

The Plan also provides that the Debtor will file certain Exhibits on or before the Exhibit Filing Date (ten (10) days prior to the Confirmation Hearing).  The Proponents will rely on these Exhibits, as well as the pleadings and papers on file with the Bankruptcy Court in this Case, and such further evidence and arguments of counsel as may be presented to the Bankruptcy Court at or

---

[8] All capitalized terms not otherwise defined in this Memorandum shall have the meaning given them in the Motion or in the Plan.

1 before the Confirmation Hearing.  Based on all of the foregoing, the Debtor respectfully submits to

2 the Bankruptcy Court that the Plan meets the requirements for confirmation contained in section

3 1129(a) of title 11 of the United States Code (the "Bankruptcy Code") and should be confirmed.

4 This Memorandum is submitted in support of confirmation of the Plan.  The Proponents

5 have filed the Plan and seek confirmation thereof without a disclosure statement.  Claims in Classes

6 1a, 1d, 1e, 1f, and 1g, 2a, 2b and 3 of the Plan are Unimpaired under the Plan and each Claim will

7 be paid in full with interest on the later of the Effective Date or the date the Claim becomes an

8 Allowed Claim.  Therefore, all Holders of Claims in Classes 1a, 1d, 1e, 1f, and 1g, 2a, 2b and 3 are

9 deemed to have accepted the Plan and there will be no solicitation of votes on the Plan from those

10 Creditors.  Classes 1b, 1c and 4 under the Plan, which are the secured and the subordinated

11 unsecured Claims of PHM and Corwin, are Impaired under the Plan.  Both PHM and Corwin are

12 co-Proponents of the Plan and have waived, in writing, their right to receive a disclosure statement

13 (see Waiver by Co-Proponents PHM and Corwin of Disclosure Statement ("Waiver") to be filed

14 shortly hereafter; however, PHM and Corwin have received Ballots to vote on the Plan.

15 As set forth below, the Debtor's Plan meets all the requirements for confirmation under

16 section 1129(a) of the Bankruptcy Code.  This Memorandum, the Matthews and Pillari

17 Declarations and the original first-day Edward Matthews Declaration present a comprehensive

18 analysis of the issues before the Bankruptcy Court regarding, and evidence supporting, the

19 confirmation of the Plan and the approval of certain provisions of the Plan necessary for its

20 implementation.  The Debtor respectfully submits that the Plan should be confirmed.

## II.

## JURISDICTION AND VENUE

23 The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a

24 core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The venue is proper pursuant to 28 U.S.C.

25 §§ 1408 and 1409.  The statutory predicate for the relief requested herein is section 1129(a) of the

26 Bankruptcy Code.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# III.

## HISTORY OF THE DEBTOR

### A.    General Background

On September 13, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manages its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.  On September 24, 2010, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

### B.    General Description of the Debtor

The Debtor, a California nonprofit public benefit corporation, operates the Victor Valley Community Hospital ("Hospital").  The Debtor was founded in 1967 and is the only non-profit community hospital in the California High Desert, a service area that includes the communities of Adelanto, Apple Valley, Hesperia and Victorville, serving a population of over 300,000 people. The High Desert communities served by the Debtor are culturally and ethnically diverse.  They also are economically depressed, and suffer under unemployment rates that are higher than 20%.  The Debtor, therefore, serves a high volume of medically under served and indigent patients and has been designated as a Disproportionate Share Hospital.  As a result of this high volume of indigent patients, millions of dollars worth of the Debtor's services were expended on charity care in 2009 and 2010.

### C.    The Debtor's Physical Plant

The Hospital is located at 15248 Eleventh Street, Victorville, California 92392.  The facility was designed and constructed as an acute care hospital, and over the years it has been renovated and expanded to accommodate the needs of its patients and the communities it serves.  The Debtor owns the main, two-story hospital building and its adjacent modular office complex which houses its administrative offices.  The Debtor also leases two other facilities: (a) the Women's Center and Outpatient Imaging facility, along with the Debtor's human resources department, at 15203

Eleventh Street in Victorville, and (b) the Education Center, at 15366 Eleventh Street, Suite R, in Victorville.

**D.    The Debtor's Staff**

The Hospital is currently staffed to operate approximately 60 beds on a normal day, although it has access to visiting nurse registries, which allow it to quickly increase its staff to meet patient needs.  Approximately 224 doctors from the local community have privileges at the Hospital.  As of the Petition Date, the Debtor employed approximately 572 people, of which, approximately 160 were nurses.  The rest include, but are not limited to, office staff, technicians, maintenance staff, IT staff, human resources staff, and Quality Assurance staff.  The Debtor currently employees approximately 602 people.

**E.    The Debtor's Services**

As an acute care facility, the Debtor provides a full range of inpatient and outpatient specialty services, including, but not limited to, basic 24-hour emergency room services, surgical services, pediatric services, operating room services, physical therapy, respiratory therapy, outpatient ambulatory services, catheterization laboratory, diagnostic services, women's health center and outpatient imaging services, laboratory and pathology services, social and Medi-Cal eligibility services, physician referral service, and community wellness and education programs. The Debtor treats approximately 2,900 patients per month in the Emergency Room, of which approximately 250 are eventually admitted to the Hospital.  Annually, the Debtor has approximately 6,600 patients admitted to the Hospital, not including newborns.  Doctors working in the Hospital perform approximately 2,500 out-patient surgeries and approximately 2,000 in-patient surgeries and deliver approximately 1,400 babies annually.

**F.    The Debtor's Management**

The Debtor is governed by a Board of Directors (the "Board") that is comprised of six members who are leaders in the High Desert community: Kathy Davis, Chair; Dennis G. Killion, Vice-Chair; Thomas Brown; Michael Fermin; Tim Jasper; and Herbert Williamson, III.  The Debtor's Chief Executive Officer is Cathy Pelley, who has served in this position since March

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2009.  The Debtor's Chief Financial Officer ("CFO") and Chief Information Officer is Edward Matthews, who has served in this position since December 2008.

Additionally, prior to the Petition Date, the Debtor had a contract with PHM as contract administrator to provide a qualified professional senior management team for the Debtor to assist the Board in implementing measures necessary to improve the Debtor's fiscal and operational management.  On October 21, 2010, the Bankruptcy Court entered the *Order Authorizing Rejection of Agreement for Management Services with Physicians Hospital Management, LLC* [Docket No. 156], the Agreement for Management Services was rejected by the Debtor and PHM ceased its services thereunder.

## G.    The Debtor's Secured Debt

### 1.    **The 2000 Bonds**

In 2000, the Debtor applied to the California Health Facilities Financing Authority ("HFFA") for financial assistance in refinancing its existing Insured Hospital Revenue Bonds (Victor Valley Community Hospital) 1984 Series A, and this application was approved.  In May 2000 the HFFA and the Treasurer of the State of California issued the California Health Facilities Financing Authority Insured Hospital Refunding Revenue Bonds (Victor Valley Community Hospital) Series 2000A (the "Bonds") in the amount of $8,470,000.  HFFA entered into an Indenture with Bank of New York West Trust Company as Trustee,[9] and the proceeds of the sale of the Bonds were loaned to the Debtor (the "HFFA Loan").

As permitted by the Indenture, the Debtor entered into an Escrow Deposit and Trust Agreement (the "Escrow Agreement") with HFFA and the Trustee, as Escrow Bank, for the purpose of  providing for the full redemption of the outstanding Bonds.  The redemption date for the Bonds was April 11, 2011.  On March 30, 2011, the Bankruptcy Court entered the *Order Approving the Redemption of Bonds by the Debtor in the Ordinary Course of Business* [Docket No. 791].  The Bonds, therefore were redeemed on April 11, 2011, and although they are nominally Class 1f under the Plan, the redemption has been effected and there are no longer any Holders of Class 1f claims.

---

[9]    The indenture trustee's current name is Bank of New York Mellon Trust Company, N.A.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2.    **OSHPD Obligations**

In 2007 the Debtor desired to establish a revolving line of credit with Desert Community Bank, now a division of East West Bank (the "Bank") in the maximum amount of $4.9 million (the "Bank Loan"), which line of credit was authorized pursuant to a Note dated August 27, 2007 and a Loan Agreement, also dated August 27, 2007, between the Debtor and the Bank.  The Bank and the Debtor asked OSHPD to insure the Debtor's obligations to the Bank, and on or about August 30, 2007, the Debtor entered into an Amendment to Regulatory Agreement with OSHPD and HFFA ("the Amendment") under which Debtor obtained permission to enter into the line of credit with the Bank to finance working capital and pay expenses related to the execution and issuance of the line of credit and related documents.

On or about August 27, 2007, the Debtor executed for the benefit of OSHPD a Deed of Trust with Fixture Filing and Security Agreement ("Trust Deed") that was duly recorded on August 30, 2007.  The Trust Deed conveyed a security interest to secure both the HFFA Loan and the Bank Loan, in, among other things, all of Debtor's land, improvements, fixtures, equipment, leases, rentals, accounts, accounts receivable, and inventory, and replaced the earlier Deed of Trust which related only to the HFFA Loan.

During the course of this Case, OSHPD has paid the Bank pursuant to the guaranty.  The current balance owed to OSHPD under the Bank Loan is approximately $4,445,000.  Under the terms of the Plan, OSHPD's Allowed Secured Claim will be paid in Cash in full on the Effective Date.

3.    **The PHM Obligations**

As of February 2, 2005, Debtor entered into a Loan Agreement with PHM that provided for a loan of $6 million (the "PHM Loan"), some funds of which had been previously provided and previously evidenced by other notes.  Interest accrues and was to be paid monthly; the principal is due to be paid in 2012 in a balloon payment.  The PHM Loan is secured by a trust deed on Debtor's real estate subordinate to the OSHPD Deed of Trust and has a current balance of approximately $6,686,000.

Under the terms of the Plan, the PHM Loan will be assumed by the Purchasers pursuant to the Asset Sale Agreement and Sale Order at the Closing of the Sale, all as discussed in more detail below.

### 4.    The Corwin Medical Group Obligations

On or about September 1, 2010, the Debtor borrowed $700,000.00 from Corwin Medical Group, Inc., IPA (the "Corwin Loan") in order to pay its September 3, 2010 payroll.  The promissory note evidencing the Corwin Loan provides that (a) the principal amount of the note will be due and payable on December 1, 2010, with interest at 5.00% annually; (b) that it is secured by the DSH adjustment receivable and by Medicare Settlement receivables; and (c) that the proceeds of either or both of these receivables shall be used to repay this note prior to satisfying other obligations of the Hospital.  Corwin had also previously loaned the Debtor additional amount.

Under the terms of the Plan, the secured claims of Corwin in the approximate amount of $1,121,000 will be assumed by the Purchasers pursuant to the Asset Sale Agreement and the Sale Order at the Closing of the Sale.

### 5.    Claim of Department of Health Services (Medi-Cal)

The Department of Health Services ("DHS") filed a Claim in the Case in the amount of $5,560,160.60 based upon the Repayment Agreement between the Debtor and DHS dated June 21, 2004.  DHS alleges that the amount is secured by recoupment rights from Medi-Cal payments.  Under the terms of the Plan, the Purchasers will assume the Repayment Agreement pursuant to the Asset Sale Agreement and the Sale Order at the Closing of the Sale.

### 6.    San Bernardino County Tax Claim

The County of San Bernardino has a tax claim in the amount of approximately $6,692 that is secured by the real property owned by the Debtor.  Under the terms of the Plan, the Claim will be paid in full, in Cash, on the Closing Date of the Sale.

## H.    The Debtor's Unsecured Debt

The Debtor, the Claims Agent and the Debtor's Professionals have been reviewing the Claims and the Debtor carefully reviewed its books and records as they relate to the Claims.  Based on the careful analysis of the Unsecured Claims and the Debtor's books and records, the conclusion

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

is that the Debtor has approximately $6,982,000 in total valid unsecured debt, of which

approximately $1,734,000 is being subordinated in the Plan to General Unsecured Claims by

agreement with PHM and Corwin due to their potential affiliation with the Purchasers.  The balance

of the unsecured debt is owed to providers of goods and services to the Debtor, including, but not

limited to, Cerner, Medtronic, Stryker, J&J and others, as well as to the State of California for

genetic testing for newborns.  Under the terms of the Plan, the Holders of  General Unsecured

Claims will be paid in full, in Cash, on the later of the Effective Date or when the Claim becomes

an Allowed Claim.  The Subordinated Unsecured Claims will also be paid in full, over time, after

all of the Administrative Claims, Priority Claims, Cure Claims, Secured Claims, and General

Unsecured Claims have been paid in full.

I.      **The Chapter 11 Filing**

The Debtor's fiscal crisis was the result of the confluence of several factors.  First, the

Debtor provides millions of dollars per year in care to indigents, for which it is not compensated at

all or is inadequately compensated.  The percentage of the Debtor's resources expended on indigent

care is increasing because the Debtor serves a depressed community and the economic condition of

this community has worsened in the past few years.  As the unemployment rate has risen, so has the

number of uninsured patients.  Over the last 18 months, the volume of patients has not increased

substantially, however, the number of Medi-Cal and self-pay patients increased by 7%.

Second, the Hospital's plant is approximately 45 years old and the maintenance costs for

this plant are substantial and increasing every year.  In addition to the maintenance costs, the costs

of bringing and keeping the hospital plant in compliance with the various governmental regulatory

requirements is also substantial.

Third, Medi-Cal arbitrarily reduced its payment rate by 10% in January 2010, and Medicare

payment rates were be reduced in October 2010.  These changes have caused a decline in the

Debtor's revenues without a corresponding reduction in the Debtor's obligations to provide patient

care.

Fourth, being a stand alone, small rural hospital in California is simply not an advantageous

financial situation.  Such hospitals, including the Hospital, suffer from a lack of economies of scale,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  poor payor mix, high overhead costs, less high-margin specialty service lines, and an overall lower

2  revenue base.  Thus, the Hospital, like many rural small hospitals, struggles to meet even the

3  relatively small (1 - 3 %) profit margins that is the norm for most of the not-for-profit hospital

4  industry.

5  During the relatively short period of time that Ms. Pelley and Mr. Matthews have managed

6  the Hospital they have made extensive efforts to deal with the financial crisis, including, but not

7  limited to, laying off staff, changing to outsourcing for medical transcriptions, negotiating an

8  increase in payor rates from Inland Empire Health Plan, a public entity, and attempting to re-

9  negotiate commercial contracts, however, they lacked leverage and were not able to increase those

10  contract rates.  In any event, because 75% of the Debtor's payments come from governmental

11  payors, even an increase in payment rates from HMOs/PPOs would not make a significant

12  difference in the Hospital's cash flow.

13  The Debtor needs to generate approximately $150,000 to $200,000 per day in revenue to

14  cover its operating costs.  No appreciable cost savings are recognized by the Debtor when the

15  patient census drops below 65 beds a day, as the fixed costs remain fairly constant.  The Hospital

16  has been generating only approximately $100,000 per day in revenue.  Thus, the Debtor loses

17  money every month it operates, and could not have paid its employees their last prepetition pay

18  period absent an emergency loan from the Corwin Medical Group.  In light of this ongoing cash

19  flow shortage, the Debtor was forced to file this chapter 11 case.

20  **IV.**

21  **THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS**

22  On September 14, 2010, the Debtor filed a motion to approve the sale of substantially all the

23  Debtor's assets to Prime and to set bidding procedures to allow the Debtor to hold an auction

24  pursuant to section 363 of the Bankruptcy Code [Docket No. 22].  The Court held a hearing on the

25  bid procedures on September 21, 2010 and approved them with changes as stated on the record.

26  On November 5, 2010, an auction of substantially all the Debtor's assets was conducted

27  between the two bidders who had previously timely deposited their $5 million good faith deposits

28  and had been financially qualified Alvarez & Marsal Healthcare Industry Group ("A&M") -- Prime

1   Healthcare Services Foundation, Inc. on the one hand, and Victor Valley Hospital Real Estate LLC

2   and Victor Valley Hospital Acquisition, Inc. (collectively "VHA" or the "Purchasers"), on the other

3   hand.

4          VHA presented the highest monetary bid, at $37 million. The Board of Directors considered

5   the monetary aspects of the bids and the non-monetary considerations, which had been presented to

6   the Board by the two bidders in person at a meeting the previous evening, and decided to accept the

7   bid of VHA.

8          On November 8, 2010, the Debtor filed its *Report on the Results of the Auction;*

9   *Declaration of George D. Pillari in Support Thereof* [Docket No. 227] which set forth the above,

10  described various enhancements to the VHA bid that had come about during the auction, and asked

11  that the sale be approved.  Various parties filed objections, comments, or expressions of support.

12  Debtor filed a reply and lodged the transcript of the auction.

13         On November 9, 2010, a hearing was held on the Debtors' *Motion For Sale of Property*

14  *under Section 363(b) Notice of Motion and Motion for the Entry of an Order (A) Approving Sale*

15  *Procedures in Connection with Sale of Victor Valley Community Hospital; (B) Scheduling an*

16  *Auction for the Sale and a Hearing to Approve the Sale; (C) Authorizing the Sale Free and Clear of*

17  *Liens, Claims, Encumbrances and Interests; and (D) Granting Related Relief; Memorandum of*

18  *Points and Authorities in Support Thereof* [Docket No. 22].  After hearing argument, the Court

19  granted the motion.

20         An *Order (1) Authorizing the Sale of Substantially All of the Debtor's Assets Free and*

21  *Clear of Liens, Claims, Encumbrances and Interests, (2) Authorizing the Assignment of Certain*

22  *Obligations of the Debtor to Purchasers, (3) Finding that Purchasers are Good Faith Purchasers,*

23  *and (4) Granting Related Relief,* approved as to form, was entered on December 3, 2010 [Docket

24  No. 351].

25         On or about November 19, 2010, corporate counsel for the Debtor, Charles Slyngstad,

26  presented to the Attorney General a complete package of materials relating to both the seller and

27  the Purchasers from which the Attorney General will consider whether to approve the proposed

28  sale.  This package included an updated version of the Asset Sale Agreement ("ASA") with VHA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    which was revised to take into account the bid enhancements made by VHA in the course of the

2    auction.

3        The California Attorney General conducted a public meeting on Monday, December 13,

4    2010, to receive comments on the proposed sale of Victor Valley Community Hospital and to

5    consider the Health Care Impact Report prepared by MDS, the consultants engaged by the Attorney

6    General in connection with the Attorney General's review of this transaction, as required by

7    Corporations Code section 5914, *et seq*.

8        Subsequently, on December 29, 2010, the Attorney General issued its conditional approval

9    of the sale (the "Conditions to Approval of Sale"). Notably, the Conditions to Approval of Sale

10   imposed two significant obligations on the Purchasers, which required the Purchasers to post two

11   $3 million escrows, one in a segregated account for working capital needs that is to be maintained

12   until the Hospital achieves "operating self-sustainability" as defined in the Conditions to Approval

13   of Sale, and the other in a blocked account which would be forfeited to the Community Foundation

14   in the event the Purchasers close, sell, transfer, lease, exchange, option, convey, or otherwise

15   dispose of the Hospital of if the Purchasers file bankruptcy before April 30, 2016. Additionally, the

16   Conditions to Approval of Sale required the Purchasers to take an assignment of the Debtor's

17   contract with the Inland Empire Health Plan for at least five years. The Conditions to Approval of

18   Sale also directed that any surplus funds of the Debtor after payment of all Allowed Claims in full

19   would be paid over the Community Foundation Serving Riverside and San Bernardino Counties.

20       The Debtor, based upon the substantial conditions placed upon the Purchasers by the

21   Conditions to Approval of Sale and negotiations with the Purchasers over the satisfaction of those

22   conditions, has requested that the Attorney General approve certain changes to the asset sale

23   agreement intended to enable the parties to fulfill the Conditions to Approval of Sale.[10] The

24   Attorney General, at the time of the filing of the Motion, is still considering her decision on such

25   request.

26

27

28

---

[10] The terms of the request for the amendment of the Conditions to Approval of Sale are discussed more fully below.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## V.

## THE CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE PLAN

**A.    Unclassified Claims.**

Certain types of Claims are not placed into Classes; instead, such Claims are Unclassified Claims. Such Unclassified Claims are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has <u>not</u> placed the following Claims in a Class. The respective treatments for these Claims are provided below.

      1.    **Allowance of Administrative Claims**

          a.    **Allowance of Non-Ordinary Course Administrative Claims**

Unless otherwise expressly provided in the Plan, Non-Ordinary Course Administrative Claims will be Allowed Claims only if:

(i)    On or before the Non-Ordinary Course Administrative Claim Bar Date, the entity holding such Non-Ordinary Course Administrative Claim both Files with the Court a motion requesting allowance of the Non-Ordinary Course Administrative Claim and serves the motion on the Liquidating Debtor, the Liquidating Trustee and the U.S. Trustee; and

(ii)    an order is entered by the Bankruptcy Court allowing the Non-Ordinary Course Administrative Claim.

**Entities holding Non-Ordinary Course Administrative Claims that do not timely File and serve a request for payment will be forever barred from asserting those Claims against the Debtor, the Liquidating Debtor, the Liquidating Trustee, the Estate, or their respective property.**

The Liquidating Debtor, the Liquidating Trustee or any other party in interest must File any objection to such motion at least (14) days prior to the hearing date on such motion and any reply to such objection must be filed at least seven (7) days prior to the hearing date pursuant to Local Bankruptcy Rule 9013-1(f) and (g).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**b.**    **Allowance of Ordinary Course Administrative Claims**

Holders of Ordinary Course Administrative Claims (i.e., claims for administrative costs or expenses that are allowable under section 503(b) of the Bankruptcy Code that are incurred in the ordinary course of the Debtor's operations, including but not limited to PTO that accrued after the Petition Date but remains unused) shall not be required to File any request for payment of such Claims.

**c.**    **Allowance of 503(b)(9) Claims**

Holders of 503(b)(9) Claims were required to File their Claims by the January 7, 2011, the General Bar Date.  A 503(b)(9) Claim will be an Allowed 503(b)(9) Claim if (i) no objection or motion to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the Claims Objection Deadline or (ii) any objection or motion to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement between the Claimant and the Debtor, the Liquidating Debtor or the Liquidating Trustee or by Final Order of the Bankruptcy Court.

**d.**    **Allowance of Professional Fee Claims**

Each Holder of a Professional Fee Claim (except for Professional Fee Claims falling under clause (b) of the definition of Professional Fee Claim, which claims are subject to the Non-Ordinary Course Administrative Claims Bar Date) seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date must (i) file its final application for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the forty-fifth (45th) day following the Effective Date.  Any objection to such Professionals Fee Claims shall be filed on or before the date specified in the application for final compensation.  All such requests for payment of such Professional Fee Claims will be subject to the authorization and approval of the Bankruptcy Court.  **Persons holding Professional Fee Claims who do not timely File and serve a final fee application will be forever barred from asserting those Claims against the Debtor, the Liquidating Trustee, or the property of the Liquidating Trust.**

2.    **Treatment of Administrative Claims.**

a.    **Payment of Allowed Non-Ordinary Course Administrative Claims.**

Except to the extent that any entity entitled to payment of a Non-Ordinary Course Allowed Administrative Claim agrees to a less favorable treatment, each Holder of a Non-Ordinary Course Allowed Administrative Claim will receive in full satisfaction, discharge, exchange and release thereof, Cash in an amount equal to such Allowed Non-Ordinary Course Administrative Claim on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such Non-Ordinary Course Administrative Claim becomes an Allowed Non-Ordinary Course Administrative Claim, or, in either case, as soon thereafter as is practicable.

b.    **Payment of Allowed Ordinary Course Administrative Claims.**

Each Ordinary Course Administrative Claim, unless disputed by Debtor, the Liquidating Debtor or the Liquidating Trustee, shall be satisfied by the Debtor, the Liquidating Debtor or the Liquidating Trustee, as the case may be, under the terms and conditions of the particular transaction giving rise to that Ordinary Course Administrative Claim without any further action by the Holder of such Ordinary Course Administrative Claim.  Pursuant to the terms of the Amended ASA, any payroll or PTO claim of any Hired Employee that constitutes an Allowed Ordinary Course Administrative Claim will by assumed by the Purchasers at Closing in accordance with the terms of the Amended ASA.  The Debtor will pay any amount due for Administrative payroll and PTO to each employee that is not an Hired Employee after such employee's employment by the Debtor is terminated, as required by applicable non-bankruptcy law.

c.    **Payment of 503(b)(9) Claims.**

Except to the extent that any Holder of a 503(b)(9) Claim agrees to a less favorable treatment, each Holder of a 503(b)(9) Claim will receive in full satisfaction, discharge, exchange and release thereof, Cash in an amount equal to such Allowed amount of the 503(b)(9) Claim plus interest at the Judgment Rate from the Petition Date to the date of payment on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such 503(b)(9) Claim becomes an Allowed Claim, or, in either case, as soon thereafter as is practicable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1      **d.      Payment of Professionals.**

2              Professional Fee Claims, to the extent approved by the Bankruptcy Court, are to be

3      paid, in full satisfaction, discharge, exchange and release thereof, Cash in such amounts as are

4      Allowed by the Bankruptcy Court on the date such Professional Fee Claim becomes an Allowed

5      Claim, or as soon thereafter as is practicable.

6      **e.      Payment of U.S. Trustee Fees.**

7              On or before the Effective Date, all fees payable under 28 U.S.C. § 1930, as

8      determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash, in full.

9      The Debtor will continue to file the Post-Confirmation Quarterly Reports as required until the

10     Effective Date.  After the Effective Date until the Transfer Date, the Liquidating Debtor will file

11     the Post-Confirmation Quarterly Reports as they become due and the Liquidating Trustee will file

12     such reports from the Transfer Date until the Case is closed under section 350 of the Bankruptcy

13     Code.

14     3.      **Treatment of Priority Tax Claims.**

15             In accordance with section 1129(a)(9)(C) of the Bankruptcy Code, except as

16     otherwise agreed to by the parties, each holder of an Allowed Priority Tax Claim shall receive

17     deferred Cash payments over a period not exceeding five (5) years from the date of assessment of

18     such Claim.  Payments shall be made in equal, quarterly installments and each installment shall

19     include simple interest accrued on the unpaid portion of such Claim at the Judgment Rate per

20     annum from and after the Effective Date; provided, however, that the Liquidating Debtor and the

21     Liquidating Trustee reserve the right to pay any Allowed Priority Tax Claim, or any remaining

22     balance of such Allowed Claim, in full, at any time on or after the Effective Date or the Transfer

23     Date, respectively, without premium or penalty.  Notwithstanding the forgoing, any Allowed

24     Priority Tax Claims that were secured by property of the Debtor prior to the Closing of the Sale

25     shall be paid in full on the Effective Date.

26     4.      **Treatment of Cure Claims**

27             Each Holder of a Cure Claim will receive in full satisfaction, discharge, exchange

28     and release thereof, payment of such Cure Claim pursuant to the terms of any agreement between

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Holder of the Cure Claim and the Debtor or pursuant to the terms of any Final Order of the

Bankruptcy Court establishing the Cure Claim.  If no terms of payment are specified in either an

agreement between the Holder of a Cure Claim and the Debtor or an order of the Bankruptcy Court,

the Cure Claim will be paid in Cash, in full, on or before the Closing Date.

**B.      Classified Claims.**

      1.      **Class 1 (Secured Claims).**

          a.      Class 1a (Secured Tax Claims) is Unimpaired under the Plan.  The Holders

of each Allowed Class 1a Claim will receive Cash equal to its Allowed Claim, including interest,

fees and costs to which it is entitled under sections 506 and 1124 of the Bankruptcy Code either on

the Closing Date as part of the Closing of the Sale as required by the Sale Order or, if not so

required by the Sale Order, on the later of (i) the Effective Date, and (ii) the fifteenth (15th)

Business Day after such Class 1a Claim becomes an Allowed Secured Claim, or, in either case, as

soon thereafter as is practicable or such other treatment as the Debtor and the Holder of an Allowed

Class 1a Claim agree to in writing.

          b.      Classes 1b (Secured Claim of PHM) and 1c (Secured Claim of Corwin) are

Impaired under the Plan.  Pursuant to the terms of the Amended ASA, the Allowed Class 1b and 1c

Claims will be assumed by the Purchasers at Closing in accordance with the terms of the Amended

ASA and paid according to the terms of agreements between the Purchasers and PHM and Corwin,

respectively.  In connection with certain transactions that may occur prior to the Closing, PHM and

Corwin may become affiliated with the Purchasers.

          c.      Class 1d (Asserted Secured Claim of DHCS) is Unimpaired under the Plan.

The payments due on the Class 1d Claim have been made during the Case pursuant to the terms of

the Repayment Agreement, so no default under the Repayment Agreement between the Debtor and

DHCS exists.  The security for the Class 1e Claim of DHS is its asserted right of recoupment from

Medi-Cal payments.  Pursuant to the terms of the Amended ASA, the obligations of the Debtor

with respect to the Allowed Class 1e Claim under the terms of the Repayment Agreement will be

assumed by the Purchasers at Closing as provided by the terms of the Amended ASA and will be

paid according to the terms of the Repayment Agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

d.      Classes 1e (Secured Claim of OSHPD) and 1g (Miscellaneous Secured

Claims, to the extent any such Claims exist) are Unimpaired under the Plan.  The Holder of each

Allowed Class 1e and 1g Claim will receive Cash equal to its Allowed Claim, including any

interest, fees and costs to which it is entitled under sections 506 and 1124 of the Bankruptcy Code,

either on the Closing Date as part of the Closing of the Sale as required by the Sale Order or, if not

so required by the Sale Order on the later of (i) the Effective Date, and (ii) the fifteenth (15th)

Business Day after such Class 1e or 1g Claim becomes an Allowed Secured Claim, or, in either

case, as soon thereafter as is practicable or such other treatment as the Debtor and the Holder of an

Allowed Class 1e or 1g Claim agree to in writing.

e.      Class 1f (Secured Claim of Indenture Trustee for Bonds) are Unimpaired

under the Plan and will be fully satisfied pursuant to the terms of the *Order Approving the*

*Redemption of Bonds by the Debtor in the Ordinary Course of Business* entered by the Bankruptcy

Court on March 30, 2011 [Docket No. 791].

2.      **Class 2 (Priority Non-Tax Claims).**

a.      Class 2a (Priority Non-Tax Claims that are not Priority Assumed Employee

Claims) is Unimpaired under the Plan.  Each Holder of an Allowed Class 2a Claim will be paid in

Cash, in full, with interest at the Judgment Rate from the Petition Date to the date of Payment on

the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such Priority

Non-Tax Claim becomes an Allowed Priority Claim, or, in either case, as soon thereafter as is

practicable.

b.      Class 2b (the Priority Assumed Employee Claims) is Unimpaired under the

Plan.  Pursuant to the terms of the Amended ASA, the obligations of the Debtor with respect to the

Allowed Class 2b Claims will be assumed by the Purchasers at Closing and the Purchasers will

honor the legal and contractual rights of the Holders of such Allowed Class 2b Claims as set forth

in the Amended ASA.

3.      **Class 3 (General Unsecured Claims).**

Class 3 is Unimpaired under the Plan.  Each Holder of an Allowed Class 3 Claim

will be paid in Cash, in full, with interest on the later of (i) the Effective Date, and (ii) the fifteenth

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(15th) Business Day after such General Unsecured Claim becomes an Allowed Unsecured Claim, or, in either case, as soon thereafter as is practicable.

The Debtor will pay to each Holder of an Allowed Class 3 Claim interest at the Judgment Rate from the Petition Date to the date the Allowed Class 3 Claim is paid in full.

4.    **Class 4 (Subordinated Unsecured Claims).**

Class 4 is Impaired under the Plan.  Each Holder of an Allowed Class 4 Claim will be paid its Pro-Rata share of Available Cash after payment of all other Allowed Claims in full until the Allowed Class 4 Claims are paid in full with interest at the Judgment Rate or until there are no more Liquidating Trust's Assets.

**C.    Impaired and Unimpaired Classes**

Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3 are Unimpaired under the Plan.  The treatment of Allowed Claims in the Unimpaired Classes in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights of each Holder of an Allowed Claim in the Unimpaired Classes.  Although the Claims in Classes 1b, 1c and 4 are Impaired under the terms of the Plan, the Holders of the Claim in the Impaired Classes are co-Proponents of the Plan, have agreed to the treatment of their Class 1b and 1c Claims and to the subordination and treatment of their Class 4 Claims, and have waived their rights, if any, to receive a disclosure statement pursuant to section 1125 of the Bankruptcy Code.

**VI.**

**FUNDING OF THE PLAN**

**A.    The Debtor's Cash Position on the Effective Date**

On the Petition Date the Debtor had (a) approximately $2.6 million in cash in its bank accounts, (b) accounts receivables with a liquidation value of approximately $5 million, and (c) was owed approximately $1.5 million from other sources, including the State of California.  On May 31, 2011 the Debtor expects to have approximately $10.1 million in cash in its bank accounts. Additionally, the Debtor is entitled to be paid at closing of the sale of its assets another approximate

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

$10.5 million[11] in cash by the Purchasers and another $607,000 from the Good Faith Deposit established by the Purchasers that is currently held in an escrow account. Thus, the Debtor expects to have approximately $22 million in cash after the closing of the sale for satisfaction of its Plan obligations.

**B.    Other Sources of Funding for the Plan**

In addition to the Cash on hand as of the Effective Date, the Plan will be funded by the Purchase Notes, discussed below, and the liquidation of any other miscellaneous assets owned by the Debtor that were not purchased by the Purchasers.

As mentioned above, two of the conditions contained in the Attorney General's Conditions to Approval of Sale are the establishment by the Purchasers of two $3 million segregated accounts that are defined in the Plan as the Community Foundation Escrow and the Operating and Capital Needs Escrow. The Purchasers insisted that these conditions, in addition to other conditions, in the Conditions to Approval of Sale put a substantial burden on the Purchasers, and significantly increased the amount of cash required to be available to the Purchasers to close the purchase of the assets. In an attempt to resolve the concerns of the Purchasers and to close the sale, the Debtor agreed to allow the Purchasers to substitute two $3 million promissory notes in lieu of $6 million in cash; these notes are the Community Foundation Escrow Note and the Operating and Capital Needs Escrow Note.

The Community Foundation Escrow Note will be personally guaranteed by Dr. Kali Chaudhuri, an owner in the Purchasers and will be recourse against the Purchasers and the Purchasers shall assign to the Debtor, to the extent of all principal and interest owing under the Community Foundation Escrow Note and the Operating and Capital Needs Note, all of the Purchasers' rights to receive the funds held in the Community Foundation Escrow and the Operating and Capital Needs Escrow. The principal amount owing under the Community Foundation Escrow Note shall accrue interest equal to the interest earned on the funds held in the Community Foundation Escrow. The Community Foundation Escrow Note will be fully due and

---

[11] This amount of cash reflects $6 million of the purchase price being paid to the Debtor in the form of two $3 million promissory notes, all as is more fully discussed below.

1   payable upon the earlier of: (1) sixty (60) days after the release of the funds from the Community

2   Foundation Escrow to the Community Foundation (a "Community Foundation Distribution") in

3   accordance with the Conditions for Approval of Sale, as they may be modified or amended,

4   (i.e., Purchasers have closed, sold, transferred, leased, exchanged, optioned, conveyed, or otherwise

5   disposed of the Hospital (collectively, a "Hospital Disposition") or filed for bankruptcy); or

6   (2) ten (10) business days after the date on which the funds held in the Community Foundation

7   Escrow are unconditionally released to the Purchasers in accordance with the terms of the

8   Conditions for Approval of Sale, as they may be modified or amended, (i.e., after April 30, 2016 if,

9   as of such date, there has not been a Community Foundation Distribution), or for any other reason

10  the funds held in the Community Foundation Escrow are unconditionally released to the

11  Purchasers.  The Community Foundation Escrow Note will further provide that if, in connection

12  with a proposed Hospital Disposition, the California Attorney General waives or modifies the

13  Conditions for Approval of Sale as they relate to the release of the funds in the Community

14  Foundation Escrow such that the Community Foundation Escrow is maintained and the funds held

15  therein are not released to the Community Foundation upon the Hospital Disposition (i.e., if the

16  Hospital purchaser assumes and agrees to abide by the Escrow Conditions), the Community

17  Foundation Escrow Note shall not come due as a result of the Hospital Disposition, provided that

18  the obligations under the Community Foundation escrow Note are assigned to and assumed by the

19  Hospital purchaser in connection with the Hospital Disposition and provided that any such waiver

20  or modification does not extend the April 30, 2016 date set forth in Condition XVI of the

21  Conditions for Approval of Sale.

22          The Operating and Capital Needs Escrow Note will be secured by the funds in the

23  Operating and Capital Needs Escrow and will be recourse against the Purchasers.  The Purchasers

24  shall assign to the Debtor, to the extent of all principal and interest owing under the Community

25  Foundation Escrow Note and the Operating and Capital Needs Note, all of the Purchasers' rights to

26  receive the funds held in the Community Foundation Escrow and the Operating and Capital Needs

27  Escrow.  The principal amount owing under the Operating and Capital Needs Escrow Note shall

28  accrue interest equal to the interest earned on the funds held in the Operating and Capital Needs

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Escrow.  The Operating and Capital Needs Escrow Note shall be fully due and payable within ten

(10) business days after the date on which the funds held in the Operating and Capital Needs

Escrow are unconditionally released to the Purchasers in accordance with the terms of the

Conditions to Approval of Sale.  However, notwithstanding the Operating and Capital Needs

Escrow Note, the Purchasers will still be able to use the funds in the Operating and Capital Needs

Escrow for emergency operating and capital needs, as set forth in the Conditions to Approval of

Sale.  As an additional means of payment of the Operating and Capital Needs Escrow Note, the

Purchasers have agreed that they, or either of them, will use, as and when received by the

Purchasers, or either of them, fifty percent (50%) of any funds received as a result of current quality

assurance fee legislation or any follow on quality assurance fee legislation (the "Quality Assurance

Fees") by the Purchasers during calendar year 2011, after the receipt by the Purchaser of the first

$4.5 million of such Quality Assurance Fees in 2011, to pay down the Operating and Capital Needs

Escrow Note.

        The proceeds of the Purchaser Notes will be utilized to pay the Subordinated Unsecured

Claims and any unsatisfied Post-Effective Date Expenses.  Any funds remaining in the Liquidating

Trust after all Allowed Claims are paid in full and all of the expenses of the Liquidating Debtor and

the Liquidating Trust are paid will be donated to the Community Foundation Serving Riverside and

San Bernardino Counties as directed by the California Attorney General.

        This method of resolving the concerns of the Purchasers (in addition to other methods of

attempting to meet the conditions in the Conditions to Approval of Sale) have necessitated that the

Debtor request that the Attorney General approve certain changes to the asset sale agreement

intended to enable the parties to fulfill the Conditions to Approval of Sale.  At the time of the filing

of the Motion, the Attorney General has not made her decision.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**VII.**

**ALL APPLICABLE REQUIREMENTS FOR CONFIRMATION
OF THE PLAN HAVE BEEN SATISFIED**

Under the Bankruptcy Code, a plan of reorganization "shall" be confirmed if all of the applicable confirmation requirements set forth in section 1129[12] are satisfied.  *See Brady v. Andrew (In re Commercial Western Fin. Corp.)*, 761 F.2d 1329, 1338 (9th Cir. 1985); *accord In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000); *In re Fur Creations by Varriale, Ltd.*, 188 B.R. 754, 758-59 (Bankr. S.D.N.Y. 1995).  Compliance with section 1129 must be shown by a preponderance of the evidence.  *See, e.g., Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. Pshp. (In re Ambanc La Mesa Ltd. Pshp.)*, 115 F.3d 650, 653 (9th Cir. 1997).  By this Memorandum and the incorporated Confirmation Declarations, and through evidence to be presented at the Confirmation Hearing, the Debtor will demonstrate by a preponderance of the evidence that all elements of Bankruptcy Code section 1129(a) have been satisfied.

**A.     The Plan Complies With The Applicable Provisions of Title 11 (Section 1129(a)(1)).**

To satisfy Bankruptcy Code section 1129(a)(1), a plan must satisfy the applicable provisions of chapter 11.  This has been interpreted to mean that the plan comply with section 1123, and thus section 1122, of the Code.  *In re Acequia, Inc.*, 787 F.2d 1352, 1358 (9th Cir. 1986).  Section 1122 provides for the classification of claims and interests.  Section 1123 of the Code provides for the contents of a plan, both mandatory and permissive.  The Debtor submits that the Plan complies with the provisions of those sections.

**1.     The Plan Properly Classifies Claims (Section 1122).**

A plan proponent has broad discretion to adopt classification schemes in a plan of reorganization.  The Bankruptcy Code's only restriction on this discretion is that a plan may place a claim in a particular class only if the claim or interest is substantially similar to the other claims in that class.  *See* 11 U.S.C. § 1122(b).

[12]     All statutory references are to the Bankruptcy Code, unless otherwise stated.

The Debtor's Plan properly classifies Claims.  *See* Section VI.B., *infra*, for a detailed

discussion of the classification of Claims.  Claims are only placed in Classes where they are

substantially similar to all other Claims in that Class.

   2.   **Content:  The Plan Contains All Mandatory Provisions and Two Permitted
Provisions (Section 1123).**

   Section 1123 of the Bankruptcy Code lists both the contents that a Plan must include and

those contents that a Plan may include.  As demonstrated below, the Debtor's Plan contains

mandatory provisions listed in section 1123, to the extent that such provisions are necessary[13], as

well as at least two permitted provisions.

   a.   **Mandatory Plan Provisions (Section 1123).**

   (i)   **The Plan Designates Classes of Claims (Section 1123(a)(1)).**

   The Plan satisfies the requirements of subsection 1123(a)(1) of the Bankruptcy Code by

classifying all Claims that must be classified under the Bankruptcy Code into appropriate Classes.

*See* Plan, Article II.

   (ii)   **The Plan Lists All Unimpaired Classes (1123(a)(2)).**

   The Plan satisfies the requirements of section 1123(a)(2)of the Bankruptcy Code in that the

Plan specifies the Classes of Claims that are Unimpaired under the Plan pursuant to section 1124(1)

of the Bankruptcy Code, which provides that claims are not impaired if "the plan leaves unaltered

the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such

claim or interest."  *See* 11 U.S.C. §1124(1).  Indeed, in the Plan, Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b,

and 3 are Unimpaired.  *See* Plan, Articles II and III.

   First, there are the Secured Claims.  The Holders of each Allowed Class 1a, 1e, and 1g

Claim will receive Cash equal to its Allowed Claim, including any interest, fees and costs to which

it is entitled under Sections 506 and 1124 of the Bankruptcy Code, on the later of (i) the Effective

Date, and (ii) the fifteenth (15th) Business Day after such Class 1a, 1e or 1g Claim becomes an

Allowed Secured Claim, or, in either case, as soon thereafter as is practicable or such other

treatment as the Debtor and the Holder of an Allowed Class 1a, 1e, or 1g Claim agree to in writing.

---

[13]   Section 1123(a)(6) (which applies to corporations) and 1123(a)(8) (which applies to individuals) are
       inapplicable to the Debtor, which is a not for profit entity.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Allowed Class 1b, 1c and 1d Claims will be assumed by the Purchaser at Closing and paid according to their terms or according to any agreement reached between the Purchaser and PHM, Corwin, and Medi-Cal respectively.  The Class 1f Claims have been fully satisfied pursuant to the terms of the *Order Approving the Redemption of Bonds by the Debtor in the Ordinary Course of Business* entered by the Bankruptcy Court on March 30, 2011 [Docket No. 791].  *See* Plan, Article III.B.1.

Next are the Priority Non-Tax Claims.  Each Holder of an Allowed Class 2a Claim, which is not a Priority Claim of an employee of the Debtor who is hired by the Purchasers, will be paid in Cash, in full, with interest at the Federal Judgment Rate of .26% per annum on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such Priority Non-Tax Claim becomes an Allowed Priority Claim, or, in either case, as soon thereafter as is practicable.  The Allowed Class 2b Claims, the Priority Claims of employees who are hired by the Purchasers, will be assumed by the Purchasers at Closing and the Purchasers will honor the legal and contractual rights of the Holders of such Allowed Class 2b Claims as set forth in the Asset Sale Agreement approved by the Sale Order.  *See* Plan, Article III.B.2.

Class 3 under the Plan is the Class of General Unsecured Claims.  Each Holder of an Allowed Class 3 Claim will be paid in Cash, in full, with interest at the Federal Judgment Rate of .26% per annum on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such General Unsecured Claim becomes an Allowed Unsecured Claim, or, in either case, as soon thereafter as is practicable.  *See* Plan, Article III.B.3.  In *In re Cardelucci,* 285 F.3d 1231 (9th Cir. 2002), the Ninth Circuit adopted the reasoning of *In re Beguelin*, 220 BR 94 (9th Cir. BAP 1998), and adopted the federal judgment rate found in 28 USC section 1961(a) as the "legal rate" to be applied to creditors claims in confirmation of a plan.  Although the Ninth Circuit ruled in the context of analysis of section 726(a)(5) of the Bankruptcy Code, the ruling is applicable to chapter 11 debtors by way of the "'so-called' best interest of creditors test" found in section 1129(a)(7) and the absolute priority rule found in section 1129(b)(2).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(iii)    The Plan Describes the Treatment of Impaired Classes (1123(a)(3)).**

Section 1123 (a)(3) requires that the Plan specify the treatment of any class of claims or interests that is impaired under the Plan.  There are three classes of impaired claims: Classes 1b, 1c and 4.  The Plan states that the Class 1b and 1c Claims will be assumed by the Purchasers and paid according to the terms of agreement between the Holders of the Class 1b and 1c Claims and the Purchasers.  *See* Plan, Article III.B.1.b.-c.  The Plan also provides that the Class 4 Claims will be paid their pro rata share of any funds left after paying all other Allowed Claims in full.  Thereafter, Class 4 Claims will be paid from future payments owed under the Purchase Notes until pain in full with interest.  *See* Plan, Article III.B.4.

**(iv)    Except as Otherwise Agreed, the Plan Provides the Same Treatment for Each Claim or Interest Within a Class (1123(a)(4)).**

The Plan complies with the requirements of section 1123(a)(4) of the Bankruptcy Code in that the Plan provides the same treatment for each Claim or interest of a particular class, except as the parties may otherwise mutually agree to different treatment.  *See* Plan, Article III.

**(v)    The Plan Includes Adequate Means for Its Implementation (1123(a)(5)).**

Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means for the Plan's implementation.  The means for implementing the Plan are set forth in Article V. of the Plan.  The evidence showing that the Debtor can fulfill its obligations under the Plan is set forth in Pillari Declaration and the Sources and Uses of Cash attached as Exhibit A thereto.  Further, pursuant to Article VI of the Plan, the Plan provides a mechanism for resolving all claims against the Estate and for making distributions on account of Disputed Claims to the extent they become Allowed Claims.  The Debtor has satisfied section 1123(a)(5).

**(vi)    The Plan Appropriately Provides for the Selection of Officers, Directors, Trustees, and Successors Thereto (Section 1123(a)(7)).**

Section 1123(a)(7) of the Bankruptcy Code requires that a plan contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee.  *See* 11 U.S.C. § 1123(a)(7).  Nothing in the Plan

affects the Debtor's existing corporate documents or the terms and conditions pursuant to which existing officers of the Debtor occupy their respective offices.  The Plan identifies the person selected to serve as Liquidating Trustee under the Plan and the Liquidating Trust Agreement will specify how such Liquidating Trustee can resign, be terminated and his successor appointed.  The Committee and the Holders of the Subordinated Unsecured Claims, as co-Proponents of the Plan, have participated in the determination of these matters.  *See* Plan, Article V.C.2 and D.

        **b.**      **Permitted Provisions (Section 1123).**

        **(i)**      **Impairment/Nonimpairment (Section 1123(b)(1)).**

Section 1123(b)(1) of the Bankruptcy Code provides that a plan may impair or leave unimpaired any classes of claims, secured or unsecured, or of interests.  The Plan specifies that all classes are unimpaired under the Plan other than Classes 1b, 1c and 4.  *See* Plan, Article II.E.

        **(ii)**      **Assumption/Rejection of Executory Contracts and Unexpired Leases (Section 1123(b)(2)).**

Subject to section 365 of the Bankruptcy Code, section 1123(b)(2) of the Bankruptcy Code permits a plan to provide for the assumption or rejection of any executory contract and unexpired lease not previously rejected.  11 U.S.C. § 1123(b)(2); *see also In re TS Indus. Inc.*, 117 B.R. 682, 685 (Bankr. D. Utah 1990).

Article IV of the Plan provides that each executory contract or unexpired lease of the Debtor that (i) has not expired by its own terms before the Effective Date, (ii) previously has not been assumed or rejected by the Debtor, (iii) is not the subject of a pending motion to assume or reject that has been Filed and served prior to the Confirmation Date, (iv) is not the employment agreement between the Debtor and the Cathy Pelley, the CEO, or Edward Matthews, the CFO, or (v) does not constitute a contract of insurance in favor of, or that benefits, the Debtor, the Liquidating Debtor or the Liquidating Trust is rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code; provided that the Asset Sale Documents and those contracts or leases that are needed by the Debtor or required by the Debtor to be maintained in existence in order for the Debtor and the Liquidating Debtor to fulfill their obligations under the Conditions to Approval of Sale, the Interim Management and Lease Agreement and the other Asset Sale

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Documents and to maintain the necessary licenses to operate the Hospital shall not be rejected as of

2   the Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court

3   approving such rejection as of the Confirmation Date.

4           Article IV further provides that Claims resulting from the rejection of an executory contract

5   or unexpired lease that is rejected as of the Confirmation Date, may be filed thirty (30) days after

6   the entry of the Confirmation Order  Any timely filed Allowed Claims arising from rejection of

7   such executory contracts or unexpired leases shall be classified in Class 3 and, therefore, paid in

8   full in Cash as provided in the Plan.  The only substantial rejection damage claim that the Debtor

9   expects will be filed after the Confirmation Date is the claim of the Inland Empire Health Plan, if

10  its contract is rejected.  The Debtor estimates that the claim will be in the approximate amount of

11  $360,000, which amount is included in the total amount of Unsecured Claims as shown in the

12  Sources and Uses of Cash, attached as Exhibit A to the Pillari Declaration.

13          Although the Bankruptcy Code does not itself set forth guidelines for determining whether

14  to approve the decision of a debtor-in-possession to assume or reject an executory contract or

15  unexpired lease, the overwhelming majority of Bankruptcy Courts have consistently applied the

16  well-established "business judgment" test.  *See, e.g., Group of Institutional Investors v. Chicago,*

17  *M., St. P. & Pac. Ry. Co.*, 318 U.S. 523, 550 (1943); *Robertson v. Pierce (In re Chi-Feng Huang)*,

18  23 B.R. 798, 800 (B.A.P. 9th Cir. 1982).

19          A trustee or debtor in possession satisfies the "business judgment" test when it decides, in

20  good faith, that assumption or rejection will benefit the estate.  *In re Chipwich, Inc.*, 54 B.R. 427,

21  430-31 (Bankr. S.D.N.Y. 1985) (rejection); *Commercial Finance Ltd. v. Hawaii Dimensions, Inc.*

22  *(In re Hawaii Dimensions, Inc.)*, 47 B.R. 425, 427 (D. Haw. 1985).  Bankruptcy courts generally

23  approve the decision of the debtor-in-possession regarding assumption or rejection absent either a

24  showing of bad faith or abuse of discretion or a clear demonstration that assumption or rejection

25  will not benefit the estate or creditors.  *In re FCX, Inc.*, 60 B.R. 405, 411 (E.D.N.C. 1986);

26  *Chipwich, Inc.*, 54 B.R. at 430-31.  Generally, "Bankruptcy Court approval under section 365(a), if

27  required, except in extraordinary situations, should be granted as a matter of course."  *Summit Land*

28  *Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981).

The Debtor's decisions regarding assumption of executory contracts and unexpired leases are supported by sound business reasons as the Debtor has determined that the contracts to be rejected are not to be assigned to the Purchasers and are therefore, no longer necessary for the Debtor.

### (iii)    Retention and Enforcement of Claims of the Debtor (Section 1123(b)(3)(B)).

Section 1123(b)(3)(B) of the Bankruptcy Code provides that a Plan may provide for the retention and enforcement by the debtor, trustee or other representative of the Estate claims of the Debtor.  The Plan, in Article VI, so provides.

### (iv)    Distribution of the Proceeds of the Sale of the Debtor's Assets (Section 1123(b)(4)).

Section 1123(b)(4) of the Bankruptcy Code provides that a plan can provide for the sale of a debtor's assets and the distribution of the proceeds of that sale.  Although the Sale was approved outside the Plan in this Case, the Plan does provide for the distribution of the proceeds of the Sale, as has been discussed above.

### (v)    Other Appropriate Provisions (Section 1123(b)(6)

Section 1123(b)(6) of the Bankruptcy Code provides that a plan can include any other appropriate provision that is not inconsistent with the Bankruptcy Code.  The Plan contains many other provisions, some of which are standard provisions found in plans.  The Proponents are not aware of any inappropriate provisions in the Plan.

As is set forth in the Plan and above, the Proponents have not sought approval of a disclosure statement in this Case because the only Claimants allowed to vote on the Plan are co-Proponents of the Plan and have waived in writing their right to a disclosure statement.  *See* Waiver, to be filed shortly hereafter.  All other Creditors are Unimpaired under that Plan and are deemed to have accepted the Plan.  11 U.S.C. § 1127(f).

### B.    The Plan Proponents Have Complied With the Applicable Provisions of Title 11 (Section 1129(a)(2)).

Section 1129(a)(2) of the Bankruptcy Code provides that a plan may be confirmed only if the proponent of the plan complies with the applicable provisions of title 11.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    The principal purpose of section 1129(a)(2) of the Bankruptcy Code is to require that the

2    Bankruptcy Court ascertain whether the proponent of the plan has complied with section 1125 of

3    the Bankruptcy Code.  Bankruptcy Rule 3017 (d) requires that a disclosure statement be transmitted

4    except to the extent that the court orders otherwise with respect to one or more unimpaired classes

5    of creditors or equity security holders.  Here, all creditors are unimpaired except two large creditors

6    who are co-proponents of the Plan.  Were the Court to require a disclosure statement, it would be a

7    pointless exercise because the proponents would be preparing the disclosure for, and giving it to,

8    themselves.  Unimpaired classes are deemed to accept the plan, and their votes need not be

9    solicited. Courts have stated that if all classes are unimpaired and no solicitation is required, the

10    court does not have to approve a disclosure statement prior to confirmation, if ever.  (*See, e.g., In re*

11    *Amster Yard Associates,* 214 B.R. 122, 124 (Bankr. S.D.N.Y. 1997) (footnote 5).

12    At the status conference hearing held on March 29, 2011, the Debtor informed the

13    Bankruptcy Court of its intention to proceed directly to Confirmation of the Plan without seeking

14    approval of a disclosure statement.  As is set forth in the Plan and above, the Proponents have not

15    sought approval of a disclosure statement in this Case because the only Claimants allowed to vote

16    on the Plan (PHM and Corwin) are co-Proponents of the Plan and they would be making disclosure

17    to themselves and have waived in writing their right to a disclosure statement.  *See* Waiver.  All

18    other Creditors are Unimpaired under that Plan and are deemed to have accepted the Plan.  11

19    U.S.C. § 1127(f).  Accordingly, a disclosure statement and the related approval and solicitation

20    process was not necessary, would have delayed both Confirmation and Distributions to Creditors,

21    and would have created significant additional expense to the Estate.  Accordingly, the Debtor has

22    complied with the requirements of section 1129(a)(2) of the Bankruptcy Code.

23    **C.    The Plan Is Proposed In Good Faith (Section 1129(a)(3)).**

24    A plan must be proposed in good faith and not by any means forbidden by law.  11 U.S.C.

25    § 1129(a)(3).  Although the Bankruptcy Code does not define the term good faith, the Ninth Circuit

26    Bankruptcy Court of Appeals has held that "a plan is proposed in good faith where it achieves a

27    result consistent with the objectives and purposes of the Code."  *Platinum Capital, Inc. v. Sylmar*

28    *Plaza, L.P. (In re Sylmar Plaza L.P.)*, 314 F.3d 1070, 1076 (9th Cir. 2002).

The Plan has been proposed by the Proponents with the legitimate purpose of liquidating the Debtor's business and paying its Creditors.  Moreover, no rights of the Debtor's Creditors have been Impaired under the Plan other than those which are co-Proponents of the Plan.  The Plan, which provides for the payment in full plus interest to all Holders of Allowed Claims, provides for a greater return to Creditors than any other alternative available to the Debtor or its Estate.  This result is fully consistent with the objectives and purposes of the Bankruptcy Code.  As such, the Plan is proposed in good faith and satisfies the requirements under section 1129(a)(3) of the Bankruptcy Code.

**D.    Compensation of Professionals Will Remain Subject to Bankruptcy Court Approval (Section 1129(a)(4).**

Section 1129(a)(4) of the Bankruptcy Code requires that any payment to be made by the proponent, by the Debtor, or by a person issuing securities or acquiring property under a plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.  The Plan requires that applications for final compensation (the "Final Fee Applications") of Professionals for services rendered prior to the Effective Date be filed with the Bankruptcy Court within forty-five (45) days of the Effective Date, and the Plan provides for the retention of jurisdiction by the Bankruptcy Court to determine requests for compensation and reimbursement of Professionals.  Thus, all Professional Fees Claims will remain subject to the jurisdiction of the Bankruptcy Court, and ultimately, the approval of the Bankruptcy Court as reasonable.

**E.    The Plan Identifies Officers, Directors, and Insiders (Section 1129(a)(5)).**

Section 1129(a)(5) of the Bankruptcy Code requires that the proponent of a plan has disclosed the identity of any individual proposed to serve, after confirmation, as a director or officer of the debtor, and the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.  That section also requires that the appointment to, or continuance in an office by such an individual is consistent with the interest of creditors and equity security holders and with public policy.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Debtor's officers and directors do not change after the Effective Date and are fully

described above and in Article V.C.2. of the Plan.  Accordingly, the foregoing disclosures satisfy

section 1129(a)(5)(B).

**F.    The Plan Does Not Require Approval of Any Regulatory Commission
(Section 1129(a)(6)).**

Since no governmental regulatory commission has jurisdiction in this case,

section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**G.    The Plan Complies With the Best Interests Test (Section 1129(a)(7)).**

Section 1129(a)(7) of the Bankruptcy Code requires that, <u>as to each Impaired Class of

Claims or interests</u>,[14] the Holder of a Claim of such Class has either accepted the Plan or it will

receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not

less than the amount that such Holder would receive or retain if the Debtors were liquidated under

chapter 7 on the Effective Date.  This is commonly referred to as the "best interests test".  *See In re

M. Long Arabians*, 103 B.R. 211, 216 (B.A.P. 9th Cir. 1989); *In re Diversified Investors Fund

XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988).

Under the Plan, there are only three Impaired Classes of Claims.  All other Classes are

Unimpaired in that they are being paid the full amount of their Allowed Claims, plus interest from

Petition Date though the date the Allowed Claim is paid.

The Plan provides for the payment of non-default interest on account of all Claims,

including Secured Claims.  *See In re Southeast Co.*, 868 F.2d 335 (9th Cir. 1989); *In re Entz-White

Lumber & Supply, Inc.*, 850 F.2d 1338 (9th Cir. 1988); *In re DBSC Investments, L.L.C.,* 2009

Bankr. LEXIS 2954 (Bankr. D. Az. 2009).  *In Entz-White*, the Bankruptcy Court of Appeals of the

Ninth Circuit relied on section 1123(a)(5) to override contractual provisions in a loan agreement,

thereby allowing a cure of the outstanding loan without payment of default interest under the terms

of the loan agreement.  As the Bankruptcy Court explained, "[i]t is clear that the power to cure

under the Bankruptcy Code authorizes a plan to nullify all consequences of default, including

avoidance of default penalties such as higher interest."  *In re Entz-White Lumber & Supply, Inc.*,

---

[14] There are no interests in the Debtor because it is a non-profit corporation.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   850 F.2d at 1342.  Specifically, the Bankruptcy Court found that the Debtor "is entitled to avoid all

2   consequences of default – including higher post-default interest rates." *Id.  See also In re Southeast*

3   *Co.*, 868 F.2d at 339 (emphasizing that, "[t]o allow pre-petition interest at the post-default rate

4   would completely eliminate the benefits of cure in this case, as it would fail to nullify a significant

5   consequence of default.").

6        In a later ruling, the Bankruptcy Court of Appeals of the Ninth Circuit emphasized that its

7   holding in *Entz-White* was limited to curing defaults under a plan (not the payment of secured

8   creditors through asset sales) because section 1124(2) allows the debtor to "nullify all consequences

9   of default" when curing claims through a plan of reorganization.  *See GE Capital Corp. v. Future*

10  *Media Prods.*, 2008 U.S. App. LEXIS 22367 (9th Cir. 2008), *amended*, 2008 U.S. App. LEXIS

11  22349 (9th Cir. 2008).  As the Bankruptcy Court explained:

12          Our analysis starts from a general premise recently articulated by the
            Supreme Bankruptcy Court: "[c]reditors' entitlements in bankruptcy
13          arise in the first instance from the underlying substantive law creating
            the debtor's obligation, subject to any qualifying or contrary
14          provisions of the Bankruptcy Code." *Travelers Cas. & Sur. Co. of
            Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 127 S. Ct. 1199, 1204-05,
15          167 L. Ed. 2d 178 (2007). We read *Travelers* to mean the default rate
            should be enforced, subject only to the substantive law governing the
16          loan agreement, unless a provision of the Bankruptcy Code provides
            otherwise.
17
            In *Entz-White* we identified such a "qualifying or contrary provision"
18          of the Bankruptcy Code. There, the debtor's proposed treatment of the
            oversecured creditor's claim was presented in a Chapter 11 plan. A
19          creditor's claim is considered "impaired" for purposes of voting on a
            Chapter 11 plan unless the plan leaves the creditor's legal, equitable,
20          and contractual rights unaltered, or the debtor "cures" any default that
            occurred prior to or during the Case. *See* 11 U.S.C. § 1124(1)-(2). We
21          have explained that the provision allowing "cures" under §
            1124(2)(A) "authorizes a plan to *nullify all consequences* of default,
22          including avoidance of default penalties such as higher interest."
            *Southeast Co.*, 868 F.2d at 338 (quoting *Entz-White*, 850 F.2d at
23          1342). Because the Code allows the debtor to "cure" defaults under a
            Chapter 11 plan, we permitted the debtor to nullify the interest owed
24          at the default rate. See id.

25  *Id.* at *8-9.  As emphasized in this 2008 decision by the Ninth Circuit Bankruptcy Court of

26  Appeals, the *Entz-White* decision remains good law and is binding on Bankruptcy Courts in the

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Ninth Circuit.  *See also In re: DSBC Investments, L.L.C.*, 2009 Bankr. LEXIS 2954 at *9 (Bankr.

2  D. Az. 2009).

3          Here, the Debtor is proposing to pay all claims with interest on account of such Claims.

4  *Entz-White*, 850 F.2d at 1341.  The Debtor will pay the Federal Judgment Rate of .26% on its

5  Allowed Unsecured Claims.  Accordingly, the Plan properly provides for the payment of interest on

6  account of all Allowed Claims and, therefore, the Allowed Claims in Classes 1a, 1d, 1e, 1g, 2a, 2b,

7  and 3 are Unimpaired by the Plan and, therefore, are not subject to the Best Interests of Creditor

8  Test.

9          The Holders of Claims in each of the Impaired Classes (PHM and Corwin) are co-

10  Proponents of the Plan and will certainly accept the Plan.  As section 1129(a)(7) applies to

11  "impaired classes" and the three such Classes under the Plan will certainly accept the Plan, the

12  Proponents assert that the "best interests test" is satisfied. and meets the best interest test under

13  section 1129(a)(7) by unimpairing all Claims.

14          In addition, the Debtor has prepared a Liquidation Analysis that is attached as Exhibit B to

15  the Pillari Declaration.  As is shown by that Liquidation Analysis, a liquidation of the Debtor under

16  chapter 7 of the Bankruptcy Code would result in a far smaller distribution to Creditors, if they

17  received any distribution at all.

18  **H.    The Plan Will Be Accepted By Each Class Whose Acceptance is Required
       (Section 1129(a)(8)).**

19

20          Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests

21  has accepted a plan <u>or that such class is not impaired under a plan</u>.  A class which is not impaired is

22  deemed to have accepted the plan.  *See* 11 U.S.C. § 1126(f) of the Bankruptcy Code.  Classes 1a,

23  1d, 1e, 1f, 1g. 2a, 2b, and 3 under the Plan are Unimpaired and, therefore, are deemed to have

24  accepted the Plan or will vote on the Plan.  Classes 1b, 1c, and 4 are Impaired under the Plan, but

25  the Holders of the Claims in those Classes are co-Proponents of the Plan and will vote to accept the

26  Plan.  Accordingly, the Plan satisfies section 1129(a)(8) of the Bankruptcy Code.

27

28

**I.     The Plan Provides Appropriate Treatment For Administrative Expense And Priority Claims (Section 1129(a)(9)).**

Section 1129(a)(9) of the Code requires that a plan pay administrative claims and expenses entitled to priority under section 507(a)(2)[15] of the Code, and claims of a kind specified in sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Code.  As set forth above in Article VI.A and VI.B.2., the Plan provides for payment in full in cash of all Allowed Administrative Claims and, and Allowed Priority Non-Tax Claims.

Subparagraph (C) of section 1129(a)(9) of the Bankruptcy Code requires that a plan must provide that each holder of a priority tax claim as specified in section 507(a)(8) of the Bankruptcy Code will receive deferred cash payments, over a period not exceeding five years after the date of assessment of such claim, of a value, as of the Effective Date, equal to the allowed amount of such claim unless the holder of the claim agrees to different treatment.  Article III.A.3. of the Plan provides that, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, except as otherwise agreed to by the parties, each holder of an Allowed Priority Tax Claim shall receive deferred Cash payments over a period not exceeding five (5) years from the date of assessment of such Claim.  Payments shall be made in equal, quarterly installments and each installment shall include simple interest accrued on the unpaid portion of such Claim at the Judgment Rate per annum from and after the Effective Date; provided, however, that the Liquidating Debtor and the Liquidating Trustee reserve the right to pay any Allowed Priority Tax Claim, or any remaining balance of such Allowed Claim, in full, at any time on or after the Effective Date or the Transfer Date, respectively, without premium or penalty.  Notwithstanding the forgoing, any Allowed Priority Tax Claims that were secured by property of the Debtor prior to the Closing of the Sale shall be paid in full on the Effective Date.

Thus, the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

**J.     At Least One Impaired Class Will Have Accepted the Plan (Section 1129(a)(10)).**

Section 1129(a)(10) of the Bankruptcy Code requires that **if** a class of claims is Impaired under the Plan, at least one Class that is Impaired under the Plan accept the Plan, determined

---

[15]    Section 507(a)(3) of the Bankruptcy Code is not applicable because there are no "involuntary gap" claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   without including acceptances of the Plan by any insider.  Since there are three Impaired Classes

2   under the Plan and the Holders of all Claims in those Classes are co-Proponents of the Plan, are not

3   insiders of the Debtor, and will vote to accept the Plan, section 1129(a)(10) of the Bankruptcy Code

4   is satisfied.

5   **K.      The Plan Is Feasible (Section 1129(a)(11)).**

6          Section 1129(a)(11) of the Bankruptcy Code requires that "[c]onfirmation of the plan is not

7   likely to be followed by the liquidation, or need for further financial reorganization, of the

8   debtor. . . ."  11 U.S.C. § 1129(a)(11).  This requirement is often referred to as the "feasibility"

9   requirement, and is satisfied by a showing that the reorganized debtor has a "reasonable

10  probability" of satisfying its obligations under a plan.  *See In re Acequia, Inc.,* 787 F.2d 1352, 1364

11  (9th Cir. 1986).  The Bankruptcy Appellate Panel for the Ninth Circuit summarized the feasibility

12  requirement in *Computer Task Group, Inc. v. Brotby (In re Brotby),* 303 B.R. 177, 191-192 (9th

13  Cir. B.A.P. 2003) as follows:

14          To demonstrate that a plan is feasible, a debtor need only show a
            reasonable probability of success.  The Code does not require the
15          debtor to prove that success is inevitable, and a relatively low
            threshold of proof will satisfy § 1129(a)(11), so long as adequate
16          evidence supports a finding of feasibility.

17  (citations omitted); *see also In re Melcher*, 329 B.R. 865, 878 (Bankr. N.D. Cal. 2005) (same).

18          Bankruptcy Courts have unanimously held that a plan does not require a guarantee of

19  success to meet the feasibility requirement.  *See, e.g., Kane v. Johns-Manville Corp. (In re*

20  *Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) ("the feasibility standard is whether the

21  plan offers a reasonable assurance of success. Success need not be guaranteed.").  As a result,

22  bankruptcy courts recognize that "[t]he mere potential failure of the plan or prospect of financial

23  uncertainty is insufficient to disprove feasibility."  *In re Sagewood Manor Assocs. Ltd. P'ship*,

24  223 B.R. 756, 7652-63 (Bankr. D. Nev. 1998); *see also In re Patrician St. Joseph Partners, Ltd.*,

25  169 B.R. 669, 674 (D. Ariz. 1994) (recognizing that "[t]he prospect of financial uncertainty does

26  not defeat a plan since a guarantee of the future is not required.  The mere potential for failure of

27  the plan is insufficient to disprove feasibility.") (internal citations omitted).  Thus, the mere

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.  *See, e.g., F.H.*

2   *Partners, L.P. v. Inv. Co. of the Southwest, Inc. (In re Inv. Co. of the Southwest, Inc.)*, 341 B.R.

3   298, 311 (B.A.P. 10th Cir. 2006) ("the fact that unexpected events may defeat [cash] projections

4   does not make a plan unfeasible as a matter of law or fact.") (internal quotations omitted).

5           Here, the Debtor's projections demonstrate the feasibility of the Plan.  <u>First</u>, with the

6   payment from the Purchasers, the Liquidating Debtor will have sufficient funds to make all of the

7   required payments due on the Effective Date of the Plan.  Indeed, the Debtor will have

8   approximately $22 million in Cash on the Effective Date, a sufficient amount to pay all Allowed

9   Claims in full except the Allowed Subordinated Unsecured Claims.  <u>Second</u>, the projected cash

10  flow from the recovery on the Purchase Notes will pay the Subordinated Unsecured Claims in full

11  over time with interests as well as any remaining Post-Effective Date Expenses.  These projections

12  are supported by the independent findings of the Debtor's experts.  *See* Pillari Declaration.  Taken

13  altogether, the Debtor has demonstrated the anticipated success of its Plan – one that will pay all of

14  its creditors in full.

15  **L.      All Bankruptcy Fees Have or Will Be Paid (Section 1129(a)(12)).**

16          Section 1129(a)(12) of the Bankruptcy Code requires that all bankruptcy fees payable

17  pursuant to section 1930 of title 28 of the United States Code have been paid or the plan provides

18  for payment of all such fees on the Effective Date of the plan.  The Debtor has paid all obligations

19  to the Office of the United States Trustee for which it has received a statement from the United

20  States Trustee and any amounts that come due hereafter shall be paid in Cash, in full, on or before

21  the Effective Date in accordance with the terms of the Plan.

22  **M.      Continuation of Retiree Benefits (Section 1129(a)(13)).**

23          Section 1129(a)(13) of the Bankruptcy Code requires that a plan must provide for the

24  continuation of payment of retiree benefits as defined in section 1114 of the Code, at the level

25  established in accordance with section 1114.  There are no retiree benefits required to be paid by

26  the Debtor and this provision is therefore inapplicable.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    **N.    Section 1129(b) of the Bankruptcy Code Does Not Apply To The Plan.**

2         Section 1129(b)(1) of the Bankruptcy Code, which governs the confirmation of a plan

3    notwithstanding the nonacceptance by one or more impaired classes, applies only where a Plan

4    contains at least one impaired class of claims or interest and that class has voted against the Plan.

5    Because all Classes that are Impaired under the Plan will certainly vote in favor of the Plan,

6    section 1129(b) does not apply.

7                                          VIII.

8                                    <u>CONCLUSION</u>

9         As discussed above, the Plan satisfies each of the applicable confirmation requirements in

10   section 1129(a), and section 1129(b) does not apply to the Plan.  For the reasons and authorities set

11   forth above, the Debtor respectfully requests that the Bankruptcy Court confirm the Plan.

12   Dated:    April 15, 2011          PACHULSKI STANG ZIEHL & JONES LLP

13

14                                By    */s/ Samuel R. Maizel*
                                          Samuel R. Maizel (CA Bar No. 189301)
15                                        Scotta E. McFarland (CA Bar No. 165391)
                                          Mary D. Lane (CA Bar No. 071592)
16                                        Attorneys for Debtor and Debtor in
                                          Possession, Victor Valley Community
17                                        Hospital

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 11th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document *NOTICE OF MOTION AND MOTION FOR ENTRY OF AN ORDER CONFIRMING THE FIRST AMENDED LIQUIDATING PLAN OF REORGANIZATION FOR VICTOR VALLEY COMMUNITY HOSPITAL (APRIL 15, 2011); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 15, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL</u>**(indicate method for each person or entity served)**:**
On **April 15, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**<u>By Overnight Mail</u>**
Honorable Catherine Bauer
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 365
Riverside, CA  92501-3819

☒  Service information continued on attached page

**III.  <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u>** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 15, 2011 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Allison R Axenrod    allison@claimsrecoveryllc.com
- Martin R Barash    mbarash@ktbslaw.com
- Kirk A Barber    barberlawgroup@yahoo.com
- Manuel A Boigues    bankruptcycourtnotices@unioncounsel.net
- Mark Bradshaw    mbradshaw@shbllp.com
- Jeff Cohen    JC@SouthpawAsset.com
- Sanaea Daruwalla    sdaruwalla@bwslaw.com
- Richard K Diamond (TR)    jlv@dgdk.com, rdiamond@ecf.epiqsystems.com
- Abram Feuerstein    abram.s.feuerstein@usdoj.gov
- H Alexander Fisch    afisch@stutman.com
- Fredric Glass    fglass@fairharborcapital.com
- Matthew A Gold    courts@argopartners.net
- Everett L Green    everett.l.green@usdoj.gov
- Robert A Hessling    rhessling@dgdk.com
- Lawrence J Hilton    lhilton@oneil-llp.com, ssimmons@oneil-llp.com
- Mark D Houle    mark.houle@pillsburylaw.com
- Raffi Khatchadourian    raffi@hemar-rousso.com
- Maya Krish    mkrish@cactuscollect.com
- Mary D Lane    mlane@pszjlaw.com
- Ganna Liberchuk    gliberchuk@haincapital.com
- Michael B Lubic    michael.lubic@klgates.com
- Samuel R Maizel    smaizel@pszjlaw.com, smaizel@pszjlaw.com
- Elmer D Martin    elmermartin@gmail.com
- Scotta E McFarland    smcfarland@pszjlaw.com, smcfarland@pszjlaw.com
- Robert K Minkoff    rminkoff@jefferies.com
- Jane Odonnell    jane.odonnell@doj.ca.gov
- Courtney E Pozmantier    cpozmantier@ktbslaw.com
- Martha E Romero    Romero@mromerolawfirm.com
- Steven J Schwartz    sschwartz@dgdk.com
- David Scott    centillion@centillioninvest.com
- Seth B Shapiro    seth.shapiro@usdoj.gov
- David P Tonner    operations@blueheroncapital.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- Michael H Weiss    mw@weissandspees.com, lm@weissandspees.com;jb@weissandspees.com
- Andrew F Whatnall    awhatnall@daca4.com

**II. SERVED BY U.S. MAIL**

*Please see attached Service List*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1.PROOF.SERVICE**

**Victor Valley Community Hospital**
**Chapter 11 Case No.:  6:10-bk-39537-CB**
**2002 Service List**

**Debtor**
Victor Valley Community Hospital
Catherine M. Pelley
Chief Executive Officer
15248 Eleventh Street
Victorville, CA  92395

**Board of Directors**
Kathy Davis
Chair, Governing Board of Directors
17100 B Bear Valley Rd.
Box 357
Victorville, CA  92395

Charlie Slyngstad
Burke Williams and Sorenson, LLP
444 S. Flower St., Ste. 2400
Los Angeles, CA  90071

**United States Trustee**
Everett Green
Office of the United States Trustee
3685 Main St., Ste. 300
Riverside, CA  92501

**Attorneys for Creditors' Committee**
Richard K. Diamond
Steven Schwartz
Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067

**Committee Member**
Medtronic USA, Inc.
MS V215
3850 Victoria Street North
Shoreview, MN  55126-2978
Representative: Steve Carlson

**Committee Member**
PHS Professional Hospital Supply
42500 Winchester Road
Temecula, CA 92590
Representative: Kirk Barber

**Committee Member**
Rodney W. Brown, J.D.
LabWest, Inc.
1821 E. Dyer Rd., Suite 100
Santa Ana, CA 92705

**Government Agencies**

**Counsel for the US DHHS/CMS**
Phillip Seligman, Esq.
US Department of Justice
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, DC  20044-0875

Wendi A. Horwitz
Deputy Attorney General
California Department of Justice
Office of the Attorney General
300 South Spring St., Suite 1702
Los Angeles, CA 90013

90231-002\DOCS_LA:224983.1

Office of Statewide Health Planning and Development
Cal-Mortgage Loan Insurance Division
818 K. Street, Room 210
Sacramento, CA  95814

California Health Facilities Financing Authority
915 Capitol Mall, Suite 590
Sacramento, CA  95814

**Secured Creditors**

Gregg Buxton, Vice President
Desert Community Bank
a Division of East West Bank
14800 La Paz Drive
Victorville, CA  92395

Corwin Medical Group
Manmohan Nayyar, MD
Raman Poola, MD
Anna Sugi
18564 Hwy 18, Suite 110
Apple Valley, CA  92307

Manmohan Nayyar, MD
Physicians Hospital Management, LLC
18523 Corwin Rd., Suite H
Apple Valley, CA  92307

Attorneys for PHM
Michael S. Weiss, Esq.
Weiss & Spees
1925 Century Park East, Suite 650
Los Angeles, CA 90067-

2701 Commonwealth Land Title Company
888 West Sixth Street, 4th Floor
Los Angeles, CA  90017

BNY Mellon Trust Company NA
700 South Flower Street, Suite 500
Los Angeles, CA  90017
Attention:  Aaron Masters

Counsel to the Indenture Trustee for the HFFA Bonds
Catherine D. Meyer
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406

**Interested Parties**

90231-002\DOCS_LA:224983.1

Thomas L. Driscoll, Esq.
Attorney at Law
2002 3rd St Apt 114
San Francisco, CA 94107


Biotronik
Attention:  Allen Trammell
6024 Jean Road
Lake Oswego, Oregon  97035

Delta One Partners, Inc.
Corporate Headquarters South
48550 North View Drive
Palm Desert, CA  92260


Attorneys for LabWest, a subsidiary of LabCorp.
Michael Benjamin Lubic
K&L Gates
10100 Santa Monica Blvd., 7th Floor
Los Angeles, California  90067

Law Offices of Leslie M. Lava
580 California Street, Suite 1600
San Francisco, CA  94104


Westhoff, Cone & Holmstedt
1777 Botelho Drive, Suite 370
Walnut Creek, CA  94596

Davis Wright Tremaine LLP
64 Oak Knoll Drive
San Anselmo, CA  94960


Daniel Settelmayer, Esq.
Latham & Watkins LLP
PO Box 894256
Los Angeles, CA  90189-4256

Stalking Horse Bidder
Prime Healthcare Services Foundation, Inc.
Attn: Lex Reddy
Chief Executive Officer
3300 East Guasti Road, 2nd Fl.
Ontario, CA  91761


Counsel for Prime Healthcare Services Foundation, Inc.
Lee Shulman
Mark Bradshaw
Shulman Hodges & Bastian LLP
26632 Towne Centre Drive, Ste. 300
Foothill Ranch, CA  92610

J. Raymond Elliott
President and Chief Executive Officer
Boston Scientific
re: Guidant Corporation
One Boston Scientific Place
Natick, MA 01760-1537


Johnson & Johnson Health Care Systems Inc.
425 Hoes Lane
Piscataway, NJ 08854

Radiometer America, Inc.
810 Sharon Drive
Westlake, OH 44145


90231-002\DOCS_LA:224983.1

Quadramed
Attention:  Penny W. Collings
QuadraMed Corporation
12110 Sunset Hills Road # 600
Reston VA 20190

Stephen M. O'Hara
President and CEO
Angelica Textile Services (R-Colton
1105 Lakewood Parkway #210
Alpharetta, GA  30004

**Requests for Special Notice**

Attorneys for Professional Hospital Supply
Kirk Barber
Kirk Barber Law Group, A.P.L.C.
43426 Business Park Drive
Temecula, CA 92590

Attorneys for Creditor OSHPD and the
CA Health Facilities and Financing Authority
Jane O'Donnell
Deputy Attorney General Dept of Justice
Office of the Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550

Attorneys for Cerner Corporation
Lawrence J. Hilton
O'Neil LLP
19900 MacArthur Boulevard; Suite 1050
Irvine, California 92612

DARRELL W. CLARK
Stinson Morrison Hecker LLP
1150 18th Street, NW; Suite 800
Washington, DC 20036-3816

Counsel for The Senior Associates Group
Klee, Tuchin, Bogdanoff & Stern LLP
Attn: Thomas E. Patterson, Esq. and
Martin R. Barash, Esq.
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049

Counsel for The Senior Associates Group
Michael C. Kelcy, Esq.
3605 Canon Blvd.
Altadena, CA 91001

Attorneys for Health Net
Mark D. Houle, Esq.
Pillsbury Winthrop Shaw Pittman LLP
650 Town Center Drive, Suite 700
Costa Mesa, California 92626-7122

Attorneys for County of San Bernardino
Martha E. Romero
Romero Law Firm
BMR Professional Building
6516 Bright Avenue
Whittier, CA  90601

Seth B. Shapiro, Trial Attorney
U.S. Department of Justice - Civil Division
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044

Attorneys for Victor Valley Hospital Real Estate
LLC and Victory Valley Hospital Acquisition, Inc.
Gary E. Klausner
H. Alexander Fisch
Jeffrey A. Resler
Stutman, Treister & Glatt PC
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067

Victor Valley Hospital Real Estate, LLC
6800 Indiana Avenue, Suite 130
Riverside, CA  92506
Attention:  William E. Thomas, Esq.

Victor Valley Hospital Acquisition, Inc.
6800 Indiana Avenue, Suite 130
Riverside, CA  92506
Attention:  William E. Thomas, Esq.

Tin Kin Lee on behalf of Creditor Inland
Empire Health   Plan
Tin Kin Lee Law Offices
55 S Lake Ave Ste 705
Pasadena, CA 91101

Liquidity Solutions Inc
One University Plaza
Ste 312
Hackensack, NJ 07601

Tannor Partners Credit Fund II, LP
200 Business Park Drive, Suite 200
Armonk, NY 10504

Attorney for Creditor, Peggy Buckley
Michael Grennier
Law Offices of Steve Pell
2633 Loma Vista Road
Ventura, CA  93003-1548

90231-002\DOCS_LA:224983.1