1
2
3
4
5
6
7

Samuel R. Maizel (CA Bar No. 189301)
Scotta E. McFarland (CA Bar No. 165391)
Mary D. Lane (CA Bar No. 71592)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:    smaizel@pszjlaw.com
           smcfarland@pszjlaw.com
           mlane@pszjlaw.com

FILED & ENTERED

JUN 10 2011

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY harris    DEPUTY CLERK

8
9

Attorneys for Victor Valley Community Hospital,
Debtor and Debtor in Possession

10
11

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**RIVERSIDE DIVISION**

12

In re:

Case No.:  6:10-bk-39537-CB

13

VICTOR VALLEY COMMUNITY HOSPITAL,

Chapter 11

14
15
16
17

Debtor.

**ORDER CONFIRMING SECOND
AMENDED LIQUIDATING PLAN OF
REORGANIZATION FOR VICTOR
VALLEY COMMUNITY HOSPITAL
(MAY 10, 2011), AS MODIFIED (on
May 26, 2011)**

18
19
20
21
22

**Plan Confirmation Hearing:**
Date:      May 17, 2011
Time:      2:00 p.m.
Place:     U.S. Bankruptcy Court
           3420 Twelfth Street
           Riverside, CA 92501-3819
Judge:     Hon. Catherine E. Bauer

23

     Debtor and debtor in possession Victor Valley Community Hospital ("Debtor") the Official

24

Committee of Unsecured Creditors (the "Committee"), Physicians Hospital Management, LLC

25

("PHM") and Corwin Medical Group, Inc. ("Corwin" and together with the Debtor, the Committee,

26

and PHM, the "Co-Propenents"), having filed and proposed the *Second Amended Liquidating Plan*

27
28

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES ,  CALIFORNIA

*of Reorganization for Victor Valley Community Hospital (May 10, 2011), as Modified (on May 26, 2011)* [Docket No. 1325] (the "Plan")[1]

A hearing to consider confirmation of the Plan having been held before this Court on May 17, 2011 (the "Confirmation Hearing"); Samuel R. Maizel, Scotta E. McFarland, and Mary D. Lane of Pachulski Stang Ziehl & Jones LLP, appearing on behalf of the Debtor; Steven Schwartz appearing on behalf of the Committee, Michael H. Weiss appearing on behalf of PHM and Corwin, and other appearances having been noted on the record;

And the Court having considered the following:

(a)    the Plan [Docket No. 1325];

(b)    *Notice of Filing Liquidating Plan of Reorganization for Victor Valley Community Hospital (April 8, 2011) and of Confirmation Hearing* filed on April 8, 2011 [Docket No. 844];

(c)    *Notice of Motion and Motion for Order Confirming First Amended Liquidating Plan of Reorganization for Victor Valley Community Hospital; Memorandum of Points and Authorities in Support Thereof* filed April 15, 2011 [Docket No. 879];

(d)    *Declaration of Edward T. Matthews in Support of Motion for Entry of an Order Confirming First Amended Liquidating Plan of Reorganization for Victor Valley Community Hospital* filed April 15, 2011 [Docket No. 878];

(e)    *Declaration of George Pillari in Support of Motion for Entry of an Order Confirming First Amended Liquidating Plan of Reorganization for Victor Valley Community Hospital* filed April 17, 2011 [Docket No. 882];

(f)    *Waiver by Co-Proponents PHM and Corwin of their Right to Receive a Disclosure Statement in Connection with Plan* filed on April 18, 2011 [Docket No. 884];

(g)    *Proof of Service of the Notice of Motion for Order Confirming First Amended Liquidating Plan of Reorganization for Victor Valley Community Hospital* filed April 18, 2011 [Docket No. 885];

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS  ANGELES ,  CALIFORNIA

(h)  *United States Trustee's Objection to First Amended Liquidating Plan of
Reorganization for Victor Valley Community Hospital (April 15, 2011)* filed April
22, 2011 [Docket No. 895];

(i)  *Prime Healthcare's Opposition to Debtor's Motion for entry of an Order
Confirming the First Amended Liquidating Plan of Reorganization for Victor Valley
Community Hospital (April 15, 2011)* filed April 22, 2011 [Docket No. 897];

(j)  *Limited Objection to the First Amended Liquidating Plan of Reorganization for
Victor Valley Community Hospital* filed on April 22, 2011 by National Fire &
Marine Insurance Company [Docket No. 900];

(k)  *Notice of Continued Hearing on: (1) Motion for Order Authorizing Assumption and
Assignment of Medicare Provider Agreement With United States Center for Medicare and
Medicaid Services;(2) Motion for Order Authorizing Assumption and Assignment of Payor
Contracts, to Choice Physicians Network, Heritage Provider Network, Inc. and Inland
Empire Health Plan;(3) Motion for the Entry of an Order Approving Amendments to
Asset Sale Agreement; and (4) Motion for Order Confirming the First Amended
Liquidating Plan of Reorganization for Victor Valley Community Hospital (April 15, 2011)*
(the "Notice of Continued Hearing") filed on April 26, 2011 [Docket No. 901];

(l)  *Order on the Notice of Continued Hearing* entered on April 26, 2011 [Docket No.
902];

(m)  *Declaration of Felice Harrison with Respect to the Tabulation of Votes on the
Debtor's First Amended Liquidating Plan of Reorganization for Victor Valley
Community Hospital (April 15, 2011)* filed on May 6, 2011 [Docket No. 1183];

(n)  *Committee's Reply to Prime Healthcare's Objections to Motion to Approve
Amendments to Asset Sale Agreement and Confirmation of the First Amended
Liquidating Plan of Reorganization* filed on May 19, 2011 [Docket No. 1202];

(o)  *Debtor's Omnibus Reply to Oppositions to Debtor's Motion for Order Confirming
the First Amended Liquidating Plan of Reorganization for Victor Valley Community
Hospital (April 15, 2011)* filed on May 10, 2011 [Docket No. 1206];

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    (p)    *Declaration of Edward T. Matthews in Support of Reply to Objections to (1) Motion*

2    *to Amend Asset Sale Agreement and (2) Motion for Order Confirming Plan of*

3    *Reorganization of Victor Valley Community Hospital* filed on May 10, 2011,

4    [Docket No. 1208];

5    (q)    the *Declaration of George Pillari in Support of Reply Briefs Filed by Debtor* filed

6    on May 10, 2011 [Docket No. 1209];

7    (r)    *Notice of Filing Plan Exhibits Including: (1) Sources and Uses of Cash (Exhibit A);*

8    *and (2) Liquidating Trust Agreement (Exhibit B)* filed on May 10, 2011 [Docket No.

9    1212];

10    (s)    *Stipulation Resolving Limited Objection to the First Amended Liquidating Plan of*

11    *Reorganization for Victor Valley Community Hospital* between the Debtor and

12    National Fire & Marine Insurance Company filed May 17, 2011 [Docket No. 1231];

13    (t)    *Notice of Withdrawal of Limited Objection to the First Amended Liquidating Plan of*

14    *Reorganization for Victor Valley Community Hospital* filed on May 17, 2011 by

15    National Fire & Marine Insurance Company [Docket No. 1237];

16    (u)    The record compiled in the Debtor's chapter 11 case (the "Case") and all pleadings

17    filed with respect thereto; and

18    (v)    the offers of proof, evidence admitted, and the arguments and representations of

19    counsel at the Confirmation Hearing;

20    **IT IS HEREBY ORDERED** that

21    A.    **Plan Confirmed**

22    The Plan, a copy of which is attached hereto as **Exhibit A**, is confirmed.  Any objections to

23    Confirmation of the Plan, whether formal or informal, written or oral, unless previously withdrawn

24    or resolved, are overruled.  The withdrawn objection is deemed withdrawn with prejudice.

25    B.    **Notice of Non-Ordinary Course Administrative Claim Bar Date**

26    Within four business days after the Effective Date of the Plan, the Debtor shall mail by first

27    class mail, a notice of the Effective Date of the Plan (the "Effective Date Notice") to (1) all parties

28    listed in the Debtor's creditor matrix filed in this Case, (2) all parties who filed a claim in this Case,

1  (3) all vendors with whom the Debtor has conducted business since the Petition Date; and (4) all

2  persons who have been admitted as patients to the hospital operated by the Debtor between the

3  Petition Date and the Effective Date.  The Effective Date Notice shall contain, among other things,

4  a clear and concise notice of the Non-Ordinary Course Administrative Claim Bar Date, the form

5  and substance of which shall be subject to the review and approval of the United States Trustee.

6  Further, within four business days after the Effective Date, a notice of the Non-Ordinary Course

7  Administrative Claim Bar Date, the form and substance of which shall be subject to the review and

8  approval of the United States Trustee, shall be published once in each of the LA Times, The Press

9  Enterprise, Desert Dispatch, and the Victor Valley Daily Press.

10  **C.      Payment of San Bernardino County Real and Personal Property Taxes**

11          To the extent that secured real property taxes for the current year 2010-2011 and/or secured

12  personal property taxes for the current year owed to the San Bernardino Taxing Authority have not

13  been paid prior to the Closing, such taxes will be paid out of the proceeds of the Sale.

14  **D.      Assumption of Insurance Policies with National Fire & Marine Insurance Company**

15          Pursuant to section 365 of the Bankruptcy Code, the assumption by the Debtor of the two

16  insurance polices entered into between the Debtor and National Fire & Marine Insurance Company

17  ("NFMIC"): (a) excess professional, commercial and employer's liability and other coverages

18  policy (Policy No. EN001066) for the period August 1, 2010 to August 1, 2011; and (b) employee

19  benefits liability policy (Policy No. HN001066) for the period August 1, 2010 to August 1, 2011

20  (collectively, the "Policies") is hereby approved and such assumption will be effective as of the

21  date of entry of this Confirmation Order.  Any claim payable under the assumed Policies shall be an

22  Ordinary Course Administrative Claim; provided however, the Debtor reserves all rights to

23  challenge the validity of or the Debtor's liability for any such asserted Ordinary Course

24  Administrative Claim.  Proof of claim number 286, filed by NFMIC is hereby deemed withdrawn

25  and expunged.

26

27

28

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

1

**E.**     **Binding Effect of Confirmation**

2

        Confirmation will bind the Debtor and all Creditors and other parties in interest to the

3

provisions of the Plan, whether or not the claim of any such Creditor is impaired under the Plan and

4

whether or not such Creditor has accepted the Plan.

5

<div align="center"># # #</div>

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DATED: June 10, 2011



United States Bankruptcy Judge

27

28

<div style="writing-mode: vertical">PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA</div>

1   1c, and 4 will be served a copy of the Plan, the Motion for Order Confirming the Plan and Ballots. If

2   Classes 1b, 1c and 4 vote to accept the Plan and return, by the Balloting Deadline, the Ballots to

3   counsel for the Debtor, the Debtor requests confirmation of the Plan under sections 1124 and 1129

4   of the Bankruptcy Code, without the need for a disclosure statement.

5

6   Dated: May 10, 2011                 VICTOR VALLEY COMMUNITY HOSPITAL,
                                        a California corporation

7

8                                       By: Catherine Pelley
9                                       Its:  Chief Executive Officer

10  Submitted by:

11  PACHULSKI STANG ZIEHL & JONES LLP

12
    By:  _/s/ Samuel R. Maizel_____
13       Samuel R. Maizel (CA Bar No. 189301)
         Scotta E. McFarland (CA Bar No. 165391)
14       Mary D. Lane (CA Bar No. 071592)
         Attorneys for Debtor and Debtor in Possession,
15       Victor Valley Community Hospital

16
    DANNING, GILL, DIAMOND & KOLLITZ, LLP
17

18  By:  _____
         Richard K. Diamond (CA Bar No. 070634)
19       Steven Schwartz (CA Bar No. 200586)
         Attorneys for Official Committee
20       of Creditors Holding Unsecured Claims

21  WEISS & SPEES

22
    By:  _____
23       Michael H. Weiss (CA Bar No. 107481)
         Attorneys for Physicians Hospital Management
24       and Corwin Medical Group, Inc.

25

26

27

28

                                        62

DOCS_LA:237825.7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    1c, and 4 will be served a copy of the Plan, the Motion for Order Confirming the Plan and Ballots.  If

2    Classes 1b, 1c and 4 vote to accept the Plan and return, by the Balloting Deadline, the Ballots to

3    counsel for the Debtor, the Debtor requests confirmation of the Plan under sections 1124 and 1129

4    of the Bankruptcy Code, without the need for a disclosure statement.

5

6    Dated: May 10, 2011                          VICTOR VALLEY COMMUNITY HOSPITAL,
                                                   a California corporation

7

8                                                  _____
                                                   By: Catherine Pelley

9                                                  Its:  Chief Executive Officer

10   Submitted by:

11   PACHULSKI STANG ZIEHL & JONES LLP

12
     By:   _/s/ Samuel R. Maizel_____
13         Samuel R. Maizel (CA Bar No. 189301)
           Scotta E. McFarland (CA Bar No. 165391)
14         Mary D. Lane (CA Bar No. 071592)
           Attorneys for Debtor and Debtor in Possession,
15         Victor Valley Community Hospital

16
     DANNING, GILL, DIAMOND & KOLLITZ, LLP
17

18   By:_____
           Richard K. Diamond (CA Bar No. 070634)
19         Steven Schwartz (CA Bar No. 200586)
           Attorneys for Official Committee
20         of Creditors Holding Unsecured Claims

21   WEISS & SPEES

22
     By: _____
23         Michael H. Weiss (CA Bar No. 107481)
           Attorneys for Physicians Hospital Management
24         and Corwin Medical Group, Inc.

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1 1c, and 4 will be served a copy of the Plan, the Motion for Order Confirming the Plan and Ballots. If

2 Classes 1b, 1c and 4 vote to accept the Plan and return, by the Balloting Deadline, the Ballots to

3 counsel for the Debtor, the Debtor requests confirmation of the Plan under sections 1124 and 1129

4 of the Bankruptcy Code, without the need for a disclosure statement.

5

6 Dated: May 10, 2011                              VICTOR VALLEY COMMUNITY HOSPITAL,
                                                   a California corporation

7

8                                                  _____

9                                                  By: Catherine Pelley
                                                   Its: Chief Executive Officer

10 Submitted by:

11 PACHULSKI STANG ZIEHL & JONES LLP

12

13 By:    /s/ Samuel R. Maizel
          Samuel R. Maizel (CA Bar No. 189301)
          Scotta E. McFarland (CA Bar No. 165391)
14        Mary D. Lane (CA Bar No. 071592)
          Attorneys for Debtor and Debtor in Possession,
15        Victor Valley Community Hospital

16

17 DANNING, GILL, DIAMOND & KOLLITZ, LLP

18 By: _____
          Richard K. Diamond (CA Bar No. 070634)
19        Steven Schwartz (CA Bar No. 200586)
          Attorneys for Official Committee
20        of Creditors Holding Unsecured Claims

21 WEISS & SPEES

22 By: _Michael H. Weiss_____
23        Michael H. Weiss (CA Bar No. 107481)
          Attorneys for Physicians Hospital Management
24        and Corwin Medical Group, Inc.

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:237825.7

# EXHIBIT A

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES ,  CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOCS_LA:229333.6
90231-002\DOCS_LA:238002.2

Samuel R. Maizel (CA Bar No. 189301)
Scotta E. McFarland (CA Bar No. 165391)
Mary D. Lane (CA Bar No. 071592)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  smaizel@pszjlaw.com;
smcfarland@pszjlaw.com; mlane@pszjlaw.com

Attorneys for Debtor and Debtor in Possession
Victor Valley Community Hospital

Richard K. Diamond (CA Bar No. 070634)
Steven Schwartz (CA Bar No. 200586)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, California  90067
Telephone:  310/277-0077
Facsimile: 310/277-5735
Email:  rdiamond@dgdk.com; sschwartz@dgdk.com

Attorneys for Official Committee of Creditors Holding
Unsecured Claims

Michael H. Weiss (CA Bar No. 107481)
WEISS & SPEES
1925 Century Park East, Suite 650
Los Angeles, California  90067-2701
Telephone:  424/245-3100
Facsimile:  424/245-3199
Email:  mw@weissandspees.com

Attorneys for Physicians Hospital
Management and Corwin Medical
Group, Inc.

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>VICTOR VALLEY COMMUNITY HOSPITAL,<br>a California corporation,<br><br>    Debtor | Case No.: 6:10-bk-39537-CB<br><br>Chapter 11<br><br>**SECOND AMENDED LIQUIDATING PLAN OF REORGANIZATION FOR VICTOR VALLEY COMMUNITY HOSPITAL (MAY 10, 2011), AS MODIFIED (on May 26, 2011)**<br><br>**Confirmation Hearing:**<br>Date:   May 17, 2011<br>Time:   2:00 pm<br>Place:  3420 Twelfth Street<br>          Riverside, CA 92501-3819<br>          Courtroom 303<br>Judge:  Honorable Catherine E. Bauer |

## TABLE OF CONTENTS

**Page**

I.    DEFINITIONS AND RULES OF CONSTRUCTION ................................................. 1

    A.    Definitions. ............................................................................................. 1

    B.    Interpretation, Rules Of Construction, Computation Of Time. ........................ 20

        1.    Defined Terms. .......................................................................... 20

        2.    Rules Of Interpretation. ............................................................... 20

        3.    Time Periods. ............................................................................ 21

II.    DESIGNATION OF CLASSES OF CLAIMS ...................................................... 21

    A.    Secured Claims (Class 1). ......................................................................... 22

        1.    Secured Tax Claims (Class 1a) ..................................................... 22

        2.    Secured Claim of Physicians Hospital Management, LLC (Class 1b) .... 22

        3.    Secured Claim of Corwin Medical Group, Inc. (Class 1c) ................... 22

        4.    Secured Claim of Department of Health Care Services (Medi-Cal) (Class 1d) ................................................................................ 22

        5.    Secured Claim of California Office of State Health Planning and Development (Class 1e) ............................................................... 22

        6.    Secured Claim of The Bank of New York Mellon Trust Company, N.A, as Indenture Trustee of the Bonds (Class 1f) ............................ 23

        7.    Miscellaneous Secured Claims (Class 1g). ..................................... 23

    B.    Priority Non-Tax Claims (Class 2). ............................................................ 23

        1.    Priority Non-Tax Claims that are not Priority Assumed Employee Claims (Class 2a) ...................................................................... 23

        2.    Priority Assumed Employee Claims (Class 2b) .................................. 23

    C.    General Unsecured Claims (Class 3). ......................................................... 23

    D.    Subordinated Unsecured Claims (Class 4) .................................................. 23

    E.    Unimpaired Classes. ............................................................................... 23

    F.    Waiver of Disclosure Statement. ................................................................ 24

    G.    Terms of Confirmed Plan Control Unless Otherwise Specified ........................ 24

    H.    Holders of Claims as of Record Date .......................................................... 24

III.    TREATMENT OF CLASSES OF CLAIMS ....................................................... 24

    A.    Unclassified Claims. ................................................................................ 24

        1.    Allowance of Administrative Claims ............................................... 24

            a.    Allowance of Non-Ordinary Course Administrative Claims ....... 24

            b.    Allowance of Ordinary Course Administrative Claims ............... 25

            c.    Allowance of 503(b)(9) Claims ......................................... 25

            d.    Allowance of Professional Fee Claims ................................. 26

        2.    Treatment of Administrative Claims ............................................... 26

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

i

a.       Payment of Allowed Non-Ordinary Course Administrative Claims. ...................................................................... 26

b.       Payment of Allowed Ordinary Course Administrative Claims.... 27

c.       Payment of 503(b)(9) Claims. ................................................... 27

d.       Payment of Professionals. ......................................................... 27

e.       Payment of U.S. Trustee Fees. .................................................. 27

f.       Payment of DIP Loan Claims ................................................... 28

3.       Treatment of Priority Tax Claims. .......................................................... 28

B.       Classified Claims. .......................................................................................... 29

1.       Class 1 (Secured Claims) ....................................................................... 29

2.       Class 2 (Priority Non-Tax Claims) ........................................................ 30

3.       Class 3 (General Unsecured Claims) ...................................................... 31

4.       Class 4 (Subordinated Unsecured Claims) ............................................. 31

IV. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............. 31

A.       Rejection of Executory Contracts and Unexpired Leases. ............................. 31

B.       Bar Date for Rejection Damages. ................................................................... 32

C.       Insurance Policies. ......................................................................................... 32

V. MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ...................... 33

A.       Implementing Actions In General; Conditions to the Effective Date. ............ 33

B.       Debtor's Authority. ......................................................................................... 34

C.       The Liquidating Debtor ................................................................................... 34

1.       Continued Corporate Existence of the Debtor ........................................ 34

2.       Officers and Directors of the Liquidating Debtor .................................. 35

3.       Vesting of the Debtor's Assets ............................................................... 36

4.       Funding of the Liquidating Debtor ......................................................... 36

5.       No Liability of Liquidating Debtor ........................................................ 36

6.       Funding of the Liquidating Debtor's Post-Effective Date Expenses ....... 37

D.       Liquidating Trust. ........................................................................................... 38

1.       Effectiveness of the Liquidating Trust .................................................... 38

2.       Beneficiaries ........................................................................................... 38

3.       Implementation of the Liquidating Trust ................................................ 38

4.       Transfer of Liquidating Debtor's Assets ................................................. 39

5.       Vesting of Assets .................................................................................... 39

6.       Funding of the Liquidating Trust ............................................................ 40

7.       No Liability of Liquidating Trustee ........................................................ 40

8.       Funding of the Liquidating Trust's Post-Effective Date Expenses ......... 41

9.       Provisions Relating to Federal Income Tax Compliance ........................ 41

E.       The VVCH Trust Committee ......................................................................... 41

F.    Representative of the Estate. .................................................................. 42

G.    The Committee. ....................................................................................... 43

H.    Earmarked Charitable Donations. .......................................................... 43

I.    Unrestricted Charitable Donations ......................................................... 43

J.    Provisions Governing Distributions. ...................................................... 44

    1.    Disbursing Agent ......................................................................... 44

    2.    The Source of Distributions ......................................................... 44

    3.    Distribution Dates ........................................................................ 45

    4.    Manner of Cash Payments ............................................................ 45

    5.    Setoff and Recoupment ................................................................ 45

    6.    No *De Minimis* Distributions ...................................................... 45

    7.    Fractional Cents ........................................................................... 46

    8.    No Distributions with Respect to Disputed Claims ..................... 46

    9.    Undeliverable or Unclaimed Distributions ................................. 46

    10.    Record Date ............................................................................... 47

K.    Donation of Remaining Liquidating Trust Cash. ................................... 47

VI.    LITIGATION AND CLAIMS OBJECTIONS ................................................. 48

A.    Preservation of Rights of Action and Defenses. .................................... 48

B.    Disputed Claims. .................................................................................... 50

    1.    Disputed Claims Reserve ............................................................. 50

    2.    Objections to and Resolution of Disputed Claims. ..................... 51

VII.    OTHER PLAN PROVISIONS ......................................................................... 51

A.    Exculpation and Release of Debtor, Committee and Professionals. ..... 51

B.    Terms of CMS Settlement Agreement Control ...................................... 52

C.    Injunction. .............................................................................................. 52

D.    Nondischarge of the Debtor. .................................................................. 54

E.    Entry of Final Decree. ............................................................................ 54

F.    Post-Effective Date Quarterly Reports and Fees ................................... 55

G.    Post-Effective Date Status Reports ........................................................ 55

H.    Exemption from Stamp, Transfer and Other Taxes ............................... 55

I.    Withholding and Reporting Requirements ............................................. 55

J.    Pre-Confirmation Injunction and Stays ................................................. 56

K.    Retention Of Jurisdiction. ...................................................................... 56

L.    Successors And Assigns. ........................................................................ 58

M.    Modification or Withdrawal of the Plan. ............................................... 58

N.    Effect on Sale. ........................................................................................ 58

O.    Severability of Plan Provisions. ............................................................. 58

P.    Exhibits. .................................................................................................. 59

| | Q. | No Admission. | 59 |
| | R. | General Authority. | 59 |
| | S. | Binding Effect. | 60 |
| | T. | Governing Law. | 60 |
| | U. | Payment Dates. | 60 |
| | V. | Headings. | 60 |
| | W. | No Waiver. | 61 |
| | X. | Post-Effective Date Notice. | 61 |
| VIII. | | CONDITIONS TO CONFIRMATION | 61 |
| IX. | | Recommendation and REQUEST TO CONFIRM plan WITHOUT disclosure statement | 61 |

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

1

# TABLE OF AUTHORITIES

**Page**

**Statutes**

| | |
|---|---|
| 11 U.S.C. § 101 | 3 |
| 11 U.S.C. § 101(10) | 7 |
| 11 U.S.C. § 101(5) | 5 |
| 11 U.S.C. § 102 | 21 |
| 11 U.S.C. § 105 | 56 |
| 11 U.S.C. § 327 | 17 |
| 11 U.S.C. § 328 | 17 |
| 11 U.S.C. § 329 | 17 |
| 11 U.S.C. § 330 | 17 |
| 11 U.S.C. § 331 | 17 |
| 11 U.S.C. § 350 | 28 |
| 11 U.S.C. § 362 | 56 |
| 11 U.S.C. § 365 | 7, 31, 33 |
| 11 U.S.C. § 365(b) | 7 |
| 11 U.S.C. § 502(d) | 3 |
| 11 U.S.C. § 503 | 17 |
| 11 U.S.C. § 503(b) | 1, 2, 15, 25 |
| 11 U.S.C. § 503(b)(2) | 17 |
| 11 U.S.C. § 503(b)(4) | 17 |
| 11 U.S.C. § 503(b)(9) | passim |
| 11 U.S.C. § 506 | 3, 29, 30 |
| 11 U.S.C. § 507(a)(2) | 1 |
| 11 U.S.C. § 507(a)(4) | 16 |
| 11 U.S.C. § 507(a)(8) | 17 |
| 11 U.S.C. § 521(a) | 18 |
| 11 U.S.C. § 541 | 2, 3, 10 |
| 11 U.S.C. § 544 | 3 |
| 11 U.S.C. § 545 | 3 |
| 11 U.S.C. § 547 | 3, 48, 49 |
| 11 U.S.C. § 548 | 3 |
| 11 U.S.C. § 549 | 3 |
| 11 U.S.C. § 550 | 3 |

PACHULSKI   STANG   ZIEHL   & JONES   LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11 U.S.C. § 553 ................................................................................................ 3

11 U.S.C. § 558 ................................................................................................ 3

11 U.S.C. § 1103 ............................................................................................ 17

11 U.S.C. § 1106 ............................................................................................ 17

11 U.S.C. § 1123(a)(1) .................................................................................. 21

11 U.S.C. § 1123(a)(5) .................................................................................. 43

11 U.S.C. § 1123(a)(7) .................................................................................. 43

11 U.S.C. § 1123(b)(2) .................................................................................... 7

11 U.S.C. § 1123(b)(3) .................................................................................. 49

11 U.S.C. § 1123(b)(3)(B) ............................................................................. 43

11 U.S.C. § 1125(e) ....................................................................................... 52

11 U.S.C. § 1126(f) ....................................................................................... 61

11 U.S.C. § 1127 ..................................................................................... 57, 58

11 U.S.C. § 1129 ....................................................................................... 7, 62

11 U.S.C. § 1129(a)(9)(C) ............................................................................. 28

11 U.S.C. § 1141(d)(3) .................................................................................. 54

11 U.S.C. § 1146(c) ....................................................................................... 55

26 U.S.C. § 61(a)(12) .................................................................................... 41

26 U.S.C. § 1001 ........................................................................................... 41

26 U.S.C. § 1012 ........................................................................................... 41

26 U.S.C. § 1274 ........................................................................................... 41

26 U.S.C. § 483 ............................................................................................. 41

26 U.S.C. § 501(c)(3) ........................................................................ 44, 47, 48

28 U.S.C. § 1930 ................................................................................ 1, 19, 27

28 U.S.C. § 1930(a)(6) .................................................................................. 16

28 U.S.C. § 1961(a) ....................................................................................... 11

## **Other Authorities**

Treasury Regulation Section 301.7701-4(d) .................................................. 38

## **Rules**

Fed. R. Bankr. Proc. 1007(b) ........................................................................ 18

Fed. R. Bankr. Proc. 3001(e) ........................................................................ 11

Fed. R. Bankr. Proc. 3020(b)(2) ...................................................................... 7

Fed. R. Bankr. Proc. 9006(a)................................................................................4, 21

Local Bankruptcy Rule 3020-1(b) ....................................................................55

Local Bankruptcy Rule 9013-1(f) .....................................................................25

Local Bankruptcy Rule 9013-1(g).....................................................................25

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

Victor Valley Community Hospital, the Official Committee of Unsecured Creditors, Physicians Hospital Management, LLC and Corwin Medical Group, Inc. collectively propose the following Second Amended Liquidating Plan of Reorganization for Victor Valley Community Hospital (May 10, 2011), as Modified.  All holders of claims are encouraged to read the Plan in its entirety.  **The Debtor is not soliciting acceptances or rejections of the Plan from Holders of Claims in Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3 because the Claims in those Classes are Unimpaired under the Plan.  Holders of Claims in Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3, therefore, are deemed to have accepted the Plan, are not permitted to vote, and are not required to respond.  Any Holder of a Claim in Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3, however, has the right to object to confirmation of the Plan if it wishes to do so.  Because Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3 are Unimpaired and deemed to have accepted the Plan and because CMS and the Holders of Claims in Classes 1b, 1c and 4 have waived their right to a disclosure statement, the Debtor has not filed or sought Court approval of a disclosure statement and will not distribute a disclosure statement with its Plan.**

## II.

## DEFINITIONS AND RULES OF CONSTRUCTION

**A.**    <u>**Definitions.**</u>

In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

**"503(b)(9) Claim"** means a Claim for the value of goods received by the Debtor in the ordinary course of its business within twenty (20) days before the Petition Date as provided in section 503(b)(9) of the Bankruptcy Code.

**"Administrative Claim"** means a Claim for administrative costs or expenses that is allowable under sections 365(b), 503(b) and 507(a)(2) of the Bankruptcy Code or 28 U.S.C. § 1930, including, without limitation, (a) Non-Ordinary Course Administrative Claims; (b) Ordinary Course Administrative Claims; (c) 503(b)(9) Claims; (d) Professional Fee Claims; (e) Administrative Tax Claims; (f) U.S. Trustee Fees, (g) DIP Loan Claims and (h) Cure Claims, provided, however, that to

1

the extent an unexpired lease or executory contract is not assumed pursuant to section 365 of the

Bankruptcy Code for any reason, any Claim that arose prior to the Petition Date that is based upon a

default under that unexpired lease or executory contract shall not be an Administrative Claim.

**"Administrative Tax Claim"** means a Claim other than an Allowed Secured Claim

that a government unit asserts against the Debtor for taxes or related interest or penalties, which

Claim is entitled to priority and allowable under section 503(b) of the Bankruptcy Code.

**"Allowed Administrative Claim"** means an Allowed Claim that is an

Administrative Claim.

**"Allowed Claim"** means (a) a Claim, as to which no proof of claim has been filed,

that is (i) listed in the Schedules in an amount greater than zero and not in an unknown amount and

(ii) not listed as disputed, contingent or unliquidated; or (b) a Claim as to which a timely proof of

claim has been filed in a sum certain and (i) no objection or motion to estimate, equitably

subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the

expiration of the time period to object to such claim as set forth in this Plan or order of the

Bankruptcy Court or (ii) any objection or motion to estimate, equitably subordinate, reclassify, or set

off has been resolved by agreement between the Claimant and the Liquidating Trustee or by Final

Order of the Bankruptcy Court.

**"Allowed Class '\*\*' Claim"** means an Allowed Claim classified in the specified

Class.

**"Allowed Priority Tax Claim"** means an Allowed Claim that is a Priority Tax

Claim.

**"Amended ASA"** means that certain Asset Sale Agreement, dated as of October 29,

2010, between the Purchasers and the Debtor that was approved by the Sale Order, as amended and

as it may be further amended subject to approval of the California Attorney General and the

Bankruptcy Court if such approval is required.

**"Assets"** means all assets of the Debtor's Estate including "property of the estate" as

described in section 541 of the Bankruptcy Code not sold, transferred or assigned to the Purchasers

pursuant to the terms of the Asset Sale Documents and shall, without limitation, include Cash,

2

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS  ANGELES ,  CALIFORNIA

Causes of Action, proceeds of insurance and insurance policies, all rights and interests, all real and personal property, and all files, books and records of the Estate, provided, however, Assets shall not include the Earmarked Charitable Donations.

**"Asset Sale Documents"** means the Amended ASA, the Interim Management and Lease Agreement and the Other Sale Documents.

**"Available Cash"** means any Cash held by the Liquidating Debtor or the Liquidating Trust that is not Unrestricted Charitable Donations or otherwise designated by the Liquidating Debtor or the Liquidating Trustee as Cash to be used to satisfy Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed General Unsecured Claims, and Post-Effective Date Expenses or otherwise subject to a reserve established by the Liquidating Debtor or the Liquidating Trustee.

**"Avoiding Power Causes of Action"** means causes of action, if any, arising under sections 502(d), 506, 544, 545, 547, 548, 549, 550, 553, and 558 of the Bankruptcy Code, or any fraudulent conveyance, fraudulent transfer or preference laws, or any cause of action arising under, or relating to, any similar state law or federal law that constitutes property of the Estate under section 541 of the Bankruptcy Code, whether or not an action is initiated on or before the Effective Date.

**"Ballot"** means the Ballot for accepting or rejecting the Plan.

**"Balloting Deadline"** means the date that is seven (7) days prior to the date of the Confirmation Hearing.

**"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, § 101 *et seq.*, as now or hereafter amended

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Central District of California, Riverside Division.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as applicable from time to time in the Case.

**"Beneficiaries"** means the Holders of Allowed Claims who are the beneficiaries of the Liquidating Trust.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

1     **"Bonds"** means the $8,470,000 Insured Hospital Refunding Revenue Bonds (Victor Valley

2 Community Hospital) Series 2000A in the current outstanding principal amount of $1,790,000.

3     **"Business Day"** means any day that is not a Saturday, Sunday, or "legal holiday" as

4 defined in Bankruptcy Rule 9006(a).

5     **"Case"** means the case under chapter 11 of the Bankruptcy Code commenced by the

6 Debtor and bearing Case Number 6:10-bk-39537-CB.

7     **"Cash"** means all of the Debtor's cash or cash equivalents held by the Debtor as of

8 the Effective Date and all cash held by the Liquidating Debtor or the Liquidating Trustee after the

9 Effective Date, including, but not limited to, bank deposits, checks or other similar items but

10 excluding cash in bank accounts that is Earmarked Charitable Donations or Unrestricted Charitable

11 Donations, cash held in the Operating and Capital Needs Escrow, cash held in the Community

12 Foundation Escrow and cash that is held in the Debtor's Governmental Deposit Account or otherwise

13 the property of the Purchasers under the Interim Management and Lease Agreement or the other

14 Asset Sale Documents.

15     **"Causes of Action"** means any and all claims, demands, rights, actions, suits, causes

16 of action, third-party claims, counterclaims and cross-claims of, or liabilities or obligations owing to,

17 the Debtor or the Estate not sold, transferred or assigned to the Purchasers pursuant to the terms of

18 the Asset Sale Documents, of any kind or character whatsoever, known or unknown, suspected or

19 unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort or otherwise,

20 at law or in equity or under any other theory, that the Debtor or the Estate has or asserts or may have

21 or assert, whether or not brought as of the Effective Date, and which have not been settled or

22 otherwise resolved by Final Order as of the Effective Date, including but not limited to (1) rights of

23 setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by

24 law, (2) the right to object to claims or interests, (3) such claims and defenses as fraud, mistake,

25 duress and usury, (4) Avoiding Power Causes of Action, (5) claims for tax refunds, (6) claims to

26 recover outstanding accounts receivable, and (7) any other claims which may be asserted against

27 other persons or entities.

28

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS  ANGELES , CALIFORNIA

4

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

1  **"Claim"** means a claim, as the term "claim" is defined in section 101(5) of the Bankruptcy

2  Code, against the Debtor.

3  **"Claimant"** means any entity that holds an Allowed Claim, whether a Secured Claim, an

4  Unsecured Claim, a Priority or an Administrative Claim and is entitled to receive a distribution

5  from the Liquidating Debtor or the Liquidating Trust pursuant to the Plan.

6  **"Claims Objection Deadline"** means the deadline for the Liquidating Debtor or the

7  Liquidating Trustee to file objections to 503(b)(9) Claims, Priority Claims, and General Unsecured

8  Claims as set forth in Section VI.B.2 hereof.

9  **"Class"** means a group of Claims as classified in Article II hereof.

10  **"Closing"** means the closing of the Sale.

11  **"Closing Date"** means the date upon which the Sale closes.

12  **"CMS"** means the Centers for Medicare and Medicaid Services, a component agency of the

13  U.S. Department of Health and Human Services.

14  **"CMS Settlement Agreement"** means the Stipulation Re: Assumption and Assignment of

15  Provider Agreement among the Debtor, VVHA and the Secretary of the U.S. Department of Health

16  and Human Services on behalf of CMS that has been or will be submitted to the Bankruptcy Court

17  for approval.

18  **"Committee"** means the Official Committee of Unsecured Creditors appointed in the Case.

19  **"Community Foundation Escrow"** means the $3,000,000 escrow account to be established

20  upon Closing pursuant to the requirements of section XVI of the Conditions to Approval of Sale, as

21  the conditions may be amended or modified by the California Attorney General.

22  **"Community Foundation Escrow Note"** means the Blocked Fund Note made by the

23  Purchasers payable to the Debtor in the amount of $3,000,000 that is related, as set forth below, to

24  the Community Foundation Escrow.  The Community Foundation Escrow Note will be personally

25  guaranteed by Dr. Kali Chaudhuri, an owner in the Purchasers and will be recourse against the

26  Purchasers and the Purchasers shall assign to the Debtor, to the extent of all principal and interest

27  owing under the Community Foundation Escrow Note, all of the Purchasers' rights to receive the

28  funds held in the Community Foundation Escrow.  The principal amount owing under the

5

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS  ANGELES  ,  CALIFORNIA

1  Community Foundation Escrow Note shall accrue interest equal to the interest earned on the funds

2  held in the Community Foundation Escrow.  The Community Foundation Escrow Note will be fully

3  due and payable upon the earlier of: (1) sixty (60) days after the release of the funds from the

4  Community Foundation Escrow to the Community Foundation (a "Community Foundation

5  Distribution") in accordance with the Conditions for Approval of Sale, as they may be modified or

6  amended, (i.e., Purchasers have closed, sold, transferred, leased, exchanged, optioned, conveyed, or

7  otherwise disposed of the Hospital (collectively, a "Hospital Disposition") or filed for bankruptcy);

8  or (2) ten (10) business days after the date on which the funds held in the Community Foundation

9  Escrow are unconditionally released to the Purchasers in accordance with the terms of the

10  Conditions for Approval of Sale, as they may be modified or amended, (i.e., expected to be the 62

11  month anniversary of the Closing Date, if, as of such date, there has not been a Community

12  Foundation Distribution), or for any other reason the funds held in the Community Foundation

13  Escrow are unconditionally released to the Purchasers.  The Community Foundation Escrow Note

14  will further provide that if, in connection with a proposed Hospital Disposition, the California

15  Attorney General waives or modifies the Conditions for Approval of Sale as they relate to the

16  release of the funds in the Community Foundation Escrow such that the Community Foundation

17  Escrow is maintained and the funds held therein are not released to the Community Foundation

18  upon the Hospital Disposition (i.e., if the Hospital purchaser assumes and agrees to abide by the

19  Escrow Conditions), the Community Foundation Escrow Note shall not come due as a result of the

20  Hospital Disposition, provided that the obligations under the Community Foundation escrow Note

21  are assigned to and assumed by the Hospital purchaser in connection with the Hospital Disposition

22  and provided that any such waiver or modification does not extend the maturity date set forth in

23  Condition XVI of the Conditions for Approval of Sale.

24      **"Conditions to Approval of Sal**e" means the California Attorney General's Conditions to

25  Approval of Sale of Victor Valley Community Hospital set forth in that certain letter to Debtor's

26  counsel dated December 29, 2010, as they may be amended or modified by the California Attorney

27  General.

28

6

**"Confirmation"** means the entry of the Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which Confirmation occurs.

**"Confirmation Hearing"** means the hearing held pursuant to Bankruptcy Rule 3020(b)(2), including any continuances thereof, at which the Bankruptcy Court will consider Confirmation of the Plan.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

**"Corwin"** means Corwin Medical Group, Inc.

**"Creditor"** means "creditor," as the term is defined in section 101(10) of the Bankruptcy Code.

**"Cure Claims"** means the right to payment of cash or the distribution of other property (as the parties may agree or the Court may order), as necessary to cure defaults under an executory contract or unexpired lease of the Debtor, or as otherwise required by section 365(b) of the Bankruptcy Code as a condition of assumption and assignment, so that the Debtor may assume and assign the contract or lease pursuant to sections 365 or 1123(b)(2) of the Bankruptcy Code. Cure Claims include, but are not limited to, the $6.4 million Claim of CMS as set forth in the CMS Settlement Agreement, with $4.5 million of said Cure Claim to be paid as provided in the CMS Settlement Agreement, and the remaining balance of $1.9 million of said Cure Claim, which amount is referred to herein for convenience purposes only as a Subordinated Unsecured Claim, being satisfied in the same manner as the Subordinated Unsecured Claims, also as provided in the CMS Settlement Agreement.

**"Debtor" or "Debtor in Possession"** means Victor Valley Community Hospital, when acting in its capacity as representative of the Estate in the Case.

**"Debtor's Governmental Deposit Account"** means the bank account or accounts into which any payments to Debtor from Medicare, Medi-Cal or other governmental payment are initially deposited, which will be subject to special handling provisions pursuant to the Interim Management and Lease Agreement.

7

**"DHCS"** means the California Department of Health Care Services for Medi-Cal Program reimbursements.

**"DHCS Repayment Agreement"** means that certain Repayment Agreement dated as of June 21, 2004 by and between the Debtor and DHCS that was assumed by the Debtor and assigned to VVHA pursuant to that certain *Order Authorizing Assumption And Assignment Of Contracts With (1) California Department Of Health Services And (2) Anthem Blue Cross* entered by the Bankruptcy Court on February 10, 2011 (the "DHCS Assumption Order") [Docket no. 647].

**"DIP Loan Claims"** means the total amount outstanding under that certain Postpetition Revolving Credit and Security Agreement, dates as of September 16, 2010 (as subsequently amended), including all loans and advances made thereunder.

**"Disallowed Claim"** means a Claim or any portion thereof that (i) has been disallowed by agreement between the Claimant and the Liquidating Debtor or the Liquidating Trustee or by Final Order, (ii) is Scheduled in an unknown amount or as zero or as contingent, disputed, or unliquidated or is not Scheduled and as to which no Proof of Claim or Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, or (iii) has been withdrawn by the Claimant.

**"Disbursing Agent"** means the Liquidating Debtor, as long as it remains in existence, and then the Liquidating Trustee or any entity selected by the Liquidating Trustee to act as its agent in conducting the disbursements to Holders of Allowed Claims pursuant to the Liquidating Trust Agreement.

**"Disputed Claim"** means any Claim that is not an Allowed Claim or a Disallowed Claim.

**"Disputed Claim Reserve"** means the Cash reserves, established pursuant to Section VI.B.1 hereof by the Liquidating Debtor in the estimated amount necessary to satisfy all distributions under the Plan on account of Disputed Claims if such Disputed Claims become Allowed Claims. The Disputed Claim Reserve, to the extent it continues to exist on the Transfer

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

Date, will be transferred to the Liquidating Trust and the Liquidating Trustee will maintain the Disputed Claim Reserve as required in the Plan and the Liquidating Trust Agreement.

   **"Distribution(s)"** means any transfer under the Plan of Cash or other property or instruments to a Holder of an Allowed Claim.

   **"Distribution Date(s)"** means the date(s) for making Distributions to Holders of Allowed Unsecured Claims in accordance with Section V.E.3 hereof.

   "**DPH**" means the California Department of Public Health.

   "**DPH License**" means the license or licenses and permits that the Purchasers need to obtain after the Closing Date from the DPH in order for VVHA to operate the Hospital as a general acute care hospital in its own right.

   **"Earmarked Charitable Donations"** means cash or other property donated to the Debtor for a specific charitable purpose that has not been utilized by the Debtor for such specified purpose prior to the Effective Date but continues to be held by the Debtor in the approximate amount of $69,000 as of the date of filing the Plan.

   **"Effective Date"** means the first Business Day after the date when all of the following have occurred: (i) the Confirmation Order shall have become a Final Order; provided, however, at the option of the Debtor with the consent of the Committee and the Purchasers, a Confirmation Order that is subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no court of competent jurisdiction has entered an order staying the effect of the Confirmation Order; (ii) the Closing has occurred; (iii) CMS shall have been paid the $4.5 million of its Cure Claim; (iv) the Debtor and the Liquidating Trustee have executed the Trust Agreement; provided, however, that the no assets shall be transferred to the Liquidating Trust until the Transfer Date and the Liquidating Trust shall not incur any expenses until the Transfer Date; (v) the VVCH Trust Committee is formed; (vi) all actions, documents and agreements necessary to implement the Plan will have been effected or executed, (vii) the Debtor will have received all authorizations, consents, rulings, opinions or other documents that are determined by the Debtor to be necessary to implement the Plan, and (viii) the Proponents will have determined in their reasonable discretion that sufficient Cash exists to satisfy all Unclassified Allowed Claims and all Allowed Claims in Classes

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS  ANGELES , CALIFORNIA

9

1    1a, 1d, 1e, 1f, 1g, 2a, 2b and 3, and sufficient Cash is reserved in the Disputed Claims Reserve to

2    satisfy the remaining General Unsecured Claims that are Disputed Claims.  The Debtor may in its

3    reasonable discretion, with consent of the Committee, waive any of the conditions except conditions

4    (i), (ii), (iii) and (vii) set forth above without notice and a hearing.  In no event shall the Effective

5    Date occur more than ninety (90) calendar days following entry of the Confirmation Order, unless

6    the Plan is modified pursuant to Order of the Court extending such date for good cause shown.

7          **"Estate"** means the estate created in the Case under section 541 of the Bankruptcy

8    Code.

9          **"Exhibit Filing Date"** means a Business Day on which drafts of all Exhibits to the

10   Plan shall be Filed and which day shall be no later than ten (10) days prior to the Confirmation

11   Hearing.  The Debtor reserves the right to File amended or revised versions of any Exhibit through

12   and including the Confirmation Date.

13          **"File" or "Filed"** means filed with the Bankruptcy Court in the Case.

14          **"Final Order"** means an order or judgment of the Bankruptcy Court, as entered on

15   its docket, which has not been reversed, stayed, modified or amended, and as to which (a) the time to

16   appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no

17   appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be

18   pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been

19   waived in writing in form and substance satisfactory to the Debtor, the Liquidating Debtor or

20   Liquidating Trustee, as applicable, or (b) in the event that an appeal, writ of certiorari, or re-

21   argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or

22   other applicable court shall have been affirmed by the highest court to which such order or judgment

23   was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought, and

24   the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall

25   have expired.

26          **"General Unsecured Claim"** or **"Unsecured Claim"** means any Claim that is not an

27   Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, or a Secured Claim.

28

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

10

**"Hired Employees"** means those employees of the Debtor who are hired at the Closing by the Purchasers, or either of them, in accordance with the terms of the Amended ASA.

**"Holder"** means the owner of a Claim against the Debtor, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferor to be deemed the Holder of the Claim for distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either (1) no objection to the transfer having been filed, or (2) any objection to such transfer having been resolved in favor of the transferor by no later than thirty (30) prior to the initial Distribution Date.

**"Hospital"** means the non-profit community hospital located at 15248 Eleventh Street, Victorville, California.

**"IEHP Contract"** means that certain hospital provider agreement entitled Hospital Per Diem Agreement, (as amended), by and between the Debtor and Inland Empire Health Plan and IEHP Health Access.

**"IMA Termination Date"** means the date on which the Interim Management and Lease Agreement terminates.

**"Impaired"** means, when used with respect to a Claim, the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim are unaltered by the Plan.

**"Indenture Trustee"** means The Bank of New York Mellon Trust Company, N.A., as indenture trustee of the Bonds.

**"Interim Management and Lease Agreement"** means that certain Interim Management and Lease Agreement to be executed by the Debtor and the Purchasers on the Closing Date in connection with the Amended ASA and the Sale, a copy of which will be filed with the Court.

**"Judgment Rate"** means the interest rate as set forth in 28 U.S.C. § 1961(a) on a federal judgment entered on the Petition Date, which was .26% per annum.

**"Licensing Date"** means the effective date on which VVHA obtains the DPH License and all other permits and licenses needed for VVHA to operate the Hospital in its own right.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES , CALIFORNIA

11

1    **"Liquidating Debtor"** means the Debtor after the Effective Date until the date of its

2    dissolution, which date shall not occur any earlier than the Transfer Date.

3    **"Liquidating Debtor's Assets"** means any and all Assets of the Debtor's Estate,

4    including, but not limited to, Cash, Causes of Action, and any other real or personal property that

5    remain property of the Estate on the Effective Date, all of which shall vest in the Liquidating Debtor

6    on the Effective Date and any proceeds thereof.  The Liquidating Debtor's Assets shall be free and

7    clear of any liens or claims that might otherwise have existed in favor of any party, except any

8    rights, remedies, liens and claims of the Purchasers, or any liabilities or obligations of the Debtor,

9    under the Asset Sale Documents and as otherwise provided in the Plan or the Confirmation Order.

10    **"Liquidating Trustee"** means Alvarez & Marsal Healthcare Industry Group in its

11    capacity as trustee of the Liquidating Trust, or any other person approved by the Bankruptcy Court

12    as Liquidating Trustee, and any successor trustee(s) appointed pursuant to the Liquidating Trust

13    Agreement, that has the powers and responsibilities set forth in the Plan, the Confirmation Order and

14    the Liquidating Trust Agreement and in such capacity shall act as a liquidator of Liquidating Trust

15    Assets for the benefit of Holders of Allowed Claims.  Whenever the Liquidating Trustee is referred

16    to herein, all such references are qualified by the Liquidating Trustee's powers, rights and

17    obligations as set forth in the applicable Liquidating Trust Agreement.

18    **"Liquidating Trustee's Agents"** means, collectively, employees, officers, directors,

19    agents, members, representatives, or professionals employed or retained by the Liquidating Trustee.

20    **"Liquidating Trust"** means the certain trust as described in Section V.E. of the Plan,

21    created pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, and created for

22    the benefit of Holders of all Allowed Claims.  Except as otherwise expressly provided in the Plan, all

23    Liquidating Debtor's Assets that remain assets of the Liquidating Debtor as of the Transfer Date will

24    be transferred to the Liquidating Trust on the Transfer Date or as soon thereafter as is practicable.

25    The Liquidating Trust will continue and conclude the work started by the Liquidating Debtor to

26    resolve all Disputed Claims, liquidate the Liquidating Trust Assets, including the resolution of any

27    Causes of Action, make Distributions to the Holders of Allowed Claims, and pay the expenses of the

28    Liquidating Trust, all as provided in the Plan.

12

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

**"Liquidating Trust Agreement"** means the Liquidating Trust Agreement by and among Victor Valley Community Hospital ( "Debtor"), the VVCH Trust Committee and Alvarez & Marsal Healthcare Industry Group as Liquidating Trustee to be entered into pursuant to the Plan and the Confirmation Order, substantially in the form included in the Plan Exhibits, as it may be amended from time to time, a copy of which will be filed as Plan **Exhibit B**.

**"Liquidating Trust Assets"** means any and all Liquidating Debtor's Assets, including, but not limited to, Cash, Causes of Action, and other personal property that remain property of the Liquidating Debtor on the Transfer Date, all of which shall be transferred to the Liquidating Trust by the Liquidating Debtor on the Transfer Date or as soon thereafter as is practicable, plus the Liquidating Trust Proceeds. The Liquidating Trust Assets shall be free and clear of any liens or claims that might otherwise have existed in favor of any party, except any rights, remedies, liens and claims of the Purchasers, or any liabilities or obligations of the Debtor or the Liquidating Debtor, under the Asset Sale Documents and as otherwise provided in the Plan or the Confirmation Order.

**"Liquidating Trust Proceeds"** means any and all Cash, property and other rents, profits and/or proceeds derived from the Liquidating Trust Assets, including reducing Causes of Action to Cash.

**"Local Bankruptcy Rules"** means the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California, effective as of January 4, 2010, as now in effect or hereafter amended.

**"Miscellaneous Secured Claims"** means every Claim that is a Secured Claim other than a Secured Claim that is separately classified in the Plan. Although CMS alleges that its Cure Claim is a Secured Claim because of its alleged right of set-off, such Claim has not been placed in the Class of Miscellaneous Secured Claims. The Debtor is unaware of any other Miscellaneous Secured Claim.

**"Non-Ordinary Course Administrative Claim"** means any Administrative Claim, but excluding Ordinary Course Administrative Claims, 503(b)(9) Claims; Professional Fee Claims, or U.S. Trustee Fees.

13

90231-002\DOCS_LA:238002.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

1    **"Non-Ordinary Course Administrative Claim Bar Date"** means, with respect to

2    Non-Ordinary Course Administrative Claims, the date that is twenty (20) days after the Effective

3    Date.

4    **"Non-Ordinary Course Administrative Claim Objection Deadline"** means the

5    date that is at least fourteen (14) days prior to the hearing date set with the Bankruptcy Court for the

6    request for the allowance of the Non-Ordinary Course Administrative Claim.

7    **"Operating and Capital Needs Escrow"** means the $3,000,000 escrow account to

8    be established upon Closing pursuant to the requirements of section XIV of the Conditions to

9    Approval of Sale, as the condition may be amended or modified by the California Attorney General.

10    **"Operating and Capital Needs Escrow Note"** means the Emergency Fund Note

11    made by the Purchasers payable to the Debtor in the amount of $3,000,000 that is related, as set forth

12    below, to the Operating and Capital Needs Escrow.  The Operating and Capital Needs Escrow Note

13    will be secured by the funds in the Operating and Capital Needs Escrow and will be recourse against

14    the Purchasers.  The Purchasers shall assign to the Debtor, to the extent of all principal and interest

15    owing under the Operating and Capital Needs Note, all of the Purchasers' rights to receive the funds

16    held in the Operating and Capital Needs Escrow.  The principal amount owing under the Operating

17    and Capital Needs Escrow Note shall accrue interest equal to the interest earned on the funds held in

18    the Operating and Capital Needs Escrow.  The Operating and Capital Needs Escrow Note shall be

19    fully due and payable within ten (10) business days after the date on which the funds held in the

20    Operating and Capital Needs Escrow are unconditionally released to the Purchasers in accordance

21    with the terms of the Conditions to Approval of Sale.  However, notwithstanding the Operating and

22    Capital Needs Escrow Note, the Purchasers will still be able to use the funds in the Operating and

23    Capital Needs Escrow for emergency operating and capital needs, as set forth in the Conditions to

24    Approval of Sale.  As an additional means of payment of the Operating and Capital Needs Escrow

25    Note, the Purchasers have agreed that they, or either of them, will use, as and when received by the

26    Purchasers, or either of them, fifty percent (50%) of any funds received as a result of current quality

27    assurance fee legislation or any follow on quality assurance fee legislation (the "Quality Assurance

28    Fees") by the Purchasers during calendar year 2011, after the receipt by the Purchaser of the first

14

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

$4.5 million of such Quality Assurance Fees in  calendar year 2011, to pay down the Operating and Capital Needs Escrow Note.

**"Ordinary Course Administrative Claim"** means a claim for administrative costs or expenses that are allowable under section 503(b) of the Bankruptcy Code that are incurred in the ordinary course of the Debtor's operations but excluding 503(b)(9) Claims, including, but not limited to the Administrative Tax Claims.

**"OSHPD"** means California Office of State Health Planning and Development.

**"Other Sale Documents"** means any agreement or document executed or delivered in connection with the Amended ASA other than the Amended ASA and the Interim Management and Lease Agreement.

**"Person"** means any natural person or entity.

**"Petition Date"** means September 13, 2010, the date on which the Debtor filed its voluntary petition for relief commencing its Case.

**"PHM"** means Physicians Hospital Management, LLC.

**"Plan"** means this liquidating plan of reorganization under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, or modified from time to time.

**"Plan Documents"** means those documents necessary to effectuate the Plan.

**"Post-Effective Date Expense(s)"** means all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated (collectively, the **"Expenses"**) incurred by the Liquidating Debtor after the Effective Date until the Transfer Date and thereafter by the Liquidating Trust related to the implementation of the Plan and the operation and administration of the Liquidating Debtor or the Liquidating Trust, as applicable, including, but not limited to: (i) the Expenses of the Liquidating Debtor and the Liquidating Trustee, as applicable, in connection with administering and implementing the Plan, including any taxes incurred by the Liquidating Debtor or Liquidating Trustee or on the Liquidating Debtor's Assets or the Liquidating Trust Assets and accrued on or after the Effective Date; (ii) all fees which accrue after the Effective Date which are payable to the U.S. Trustee pursuant to 28

15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  U.S.C. § 1930(a)(6); (iii) the Expenses of the Liquidating Debtor or the Liquidating Trustee, as

2  applicable, in making the Distributions required by the Plan, including paying taxes and filing tax

3  returns;  (iv) any Expenses incurred by the VVCH Trust Committee, Liquidating Debtor or the

4  Liquidating Trustee resulting from the employment of independent contractors and professionals

5  (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts,

6  professionals and other Persons) providing necessary services to the VVCH Trust Committee, the

7  Liquidating Debtor or the Liquidating Trustee, (v) the Expenses of the Liquidating Debtor in

8  connection with fulfilling and satisfying the Debtor's and its obligations under the Amended ASA,

9  Interim Management and Lease Agreement, the Other Sale Documents and the Plan, including the

10  maintaining of its existence until the Transfer Date and the winding down of its affairs after the

11  Transfer Date and any compensation paid to officers and directors, and (vi) any expenses incurred by

12  the members of the VVCH Trust Committee related to their service as members of the VVCH Trust

13  Committee to the extent permitted by the Liquidating Trust Agreement.  All Expenses of the

14  Liquidating Trust and the VVCH Trust Committee are further defined by the Liquidating Trust

15  Agreement and to the extent there are any inconsistencies between the definition of Trust

16  Administrative Expenses as defined in the Liquidating Trust Agreement and the above definition of

17  Post-Effective Date Expenses as it relates to the Expenses of the Liquidating Trust and the VVCH

18  Trust Committee, the Liquidating Trust Agreement controls.

19  **"Post-Effective Date Notice List"** means the list of Persons who have requested

20  notice in accordance with Section VII.V of the Plan, from and after the Effective Date, of Court

21  filings, hearings and other matters as to which the Bankruptcy Code requires that notice be given.

22  **"Postpetition"** means the time from and after the filing of the voluntary chapter 11

23  petition in the Debtor's Case on September 13, 2010 through the Effective Date.

24  **"Priority Assumed Employee Claims"** means those Claims of the Hired Employees

25  of the Debtor which both (i) constitute PTO owed to such Hired Employees as of the Closing Date

26  and (ii) constitute Priority Claims under section 507(a)(4) of the Bankruptcy Code and that are

27  Assumed Obligations under the Amended ASA.

28

16

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

1      **"Priority Non-Tax Claim"** means a Claim, other than an Administrative Claim or

2  Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy

3  Code.

4      **"Priority Tax Claim"** means an Allowed Claim entitled to priority under

5  section 507(a)(8) of the Bankruptcy Code.

6      **"Professionals"** means those Persons providing advisory or consulting services (i)

7  retained pursuant to an order of the Bankruptcy Court in accordance with sections 327, 1103 and/or

8  1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective

9  Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (ii) for which

10  compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to sections

11  330 and 503(b)(2)  of the Bankruptcy Code.

12      **"Proponents"** means, collectively, the Debtor, the Committee, PHM, and Corwin.

13      **"Professional Fee Claim"** means:

14      (a) a Claim under sections 327, 328, 330, 331, 503 , or 1103 of the Bankruptcy Code

15  for compensation for professional services rendered or expenses incurred on the Estate's behalf; or

16      (b) a Claim either under section 503(b)(4) of the Bankruptcy Code for compensation

17  for professional services rendered or under section 503(b)(3)(D) of the Bankruptcy Code for

18  expenses incurred in making a substantial contribution to the Estate.

19      **"Pro-Rata"** means proportionately so that the ratio of (a) the amount of consideration

20  distributed on account of a particular Allowed Claim to (b) the amount of such Allowed Claim is the

21  same as the ratio of (x) the amount of consideration distributed on account of all Allowed Claims of

22  the class in which the particular Allowed Claim is included to (y) the amount of all Allowed Claims

23  of that class.

24      **"PTO"** means accrued and unused paid time off owed as of the Closing Date to any

25  Hired Employee that constitute Assumed Obligations under the Amended ASA.

26      **"Purchasers"** means Victor Valley Hospital Real Estate LLC and Victor Valley

27  Hospital Acquisition, Inc., the purchasers of substantially all of the Debtor's assets pursuant to the

28  Amended ASA.

17

1      **"Purchase Notes"** means the Community Foundation Escrow Note and the

2  Operating and Capital Needs Escrow Note.

3      **"Record Date"** means, for purposes of Distributions under this Plan, the

4  Confirmation Date.

5      **"Sale"** means the sale of substantially all of the Debtor's real and personal property

6  assets and other intangible property to the Purchasers pursuant to the terms of the Amended ASA

7  which was approved by the Sale Order, including, but not limited to, the main, two-story, hospital

8  building and its adjacent modular office complex which houses its administrative offices and leases

9  of two facilities, one that houses the Women's Center and Outpatient Imaging facility, along with

10  the Debtor's human resources department, and the other that houses the Education Center, to the

11  Purchasers.

12      **"Sale Order"** means the *Order (i) Authorizing the Sale of Substantially All of the*

13  *Debtor's Assets Free and Clear of Liens, Claim, Encumbrances and Interests, (2) Authorizing the*

14  *Assignment of Certain Obligations of the Debtor to the Purchasers, (3) Finding that Purchasers are*

15  *Good Faith Purchasers, and (4) Granting Related Relief*, entered on December 3, 2010 by the

16  Bankruptcy Court [Docket No. 351], as the same may be amended or supplemented.

17      **"Scheduled"** means set forth on the Schedules.

18      **"Schedules"** means the Schedules of Assets and Liabilities and the Statement of

19  Financial Affairs filed by the Debtor with the Bankruptcy Court, pursuant to section 521(a) of the

20  Bankruptcy Code, Bankruptcy Rule 1007(b), and the Official Bankruptcy Forms, as may be

21  amended from time to time.

22      **"Secured Claim"** means an Allowed Claim of a Creditor which was secured by a

23  valid, enforceable and unavoidable lien against property in which the Estate had an interest prior to

24  the Closing of the Sale, or that was subject to setoff under the Bankruptcy Code, to the extent of the

25  value of such Creditor's interest in the Estate's interest in such property, or to the extent of the

26  amount subject to setoff, as the case may be. Except as otherwise provided in the Amended ASA,

27  pursuant to the terms of the Sale and the provisions of the Sale Order, all asserted liens,

28  encumbrances and interests against the Debtor's assets and property that were sold to the Purchasers

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES ,  CALIFORNIA

18

are transferred to the cash proceeds of the Sale received by the Debtor under the Amended ASA with the same right, validity and priority as existed prior to the closing of the Sale.

**"Secured Tax Claims"** means every Claim of a Governmental Unit for taxes which, by operation of applicable nonbankruptcy law, is a Secured Claim.

**"Subordinated Unsecured Claims"** means the Unsecured Claims of PHM and Corwin and the $1.9 million portion of the Cure Claim of the CMS, pursuant to the terms of the CMS Settlement Agreement, which are being subordinated to the General Unsecured Claims by agreement.

**"Transfer Date"** means the first business day after which both of the following have occurred:

(1)    the Purchasers have received all licenses and permits necessary for VVHA to operate the Hospital in its own right, including the DPH License, and such licenses and permits are effective; and

(2)    the IMA Termination Date has occurred.

**"Unclassified Claim"** means any Claim that is not part of any Class, including Administrative Claims, Priority Tax Claims and Cure Claims.

**"Unimpaired"** means that the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim are not altered pursuant to the Plan.

**"Unrestricted Charitable Donations"** means cash or other property donated to the Debtor for an unspecified charitable purpose that has not been utilized by the Debtor prior to the Effective Date but continues to be held by the Debtor in the approximate amount of $323,000 as of the date of filing the Plan.

**"U.S. Trustee"** means the Office of the United States Trustee for the Central District of California.

**"U.S. Trustee Fees"** means all fees and charges assessed against the applicable Estate by the U.S. Trustee and due pursuant to 28 U.S.C. § 1930.

**"VVCH Trust Committee"** means the committee that will function after the Effective Date in accordance with Section V.E. hereof, the initial members of which will be Corwin,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

19

represented by Raman Poola, MD, PHM, represented by Manmohan Nayya, MD, and Thomas

Brown, the Secretary of the Debtor's Board of Directors, as the representative of any Holders of

Claims that are not Subordinated Unsecured Claims and that have not previously been satisfied

pursuant to the terms of the Plan, CMS, in its capacity as a Holder of a Subordinated Unsecured

Claim, and The Community Foundation Serving Riverside and San Bernardino Counties, a

California nonprofit benefit corporation.

       **"VVHA"** means Victor Valley Hospital Acquisition, Inc., one of the Purchasers.

**B.**    **Interpretation, Rules Of Construction, Computation Of Time.**

    (w)    Defined Terms.

       Any term used in the Plan that is not defined in the Plan, but that is used in the

Bankruptcy Code or Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy

Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

    (x)    Rules Of Interpretation.

       For purposes of the Plan:

         a.    whenever from the context it is appropriate, each term, whether stated

in the singular or the plural, shall include both the singular and the plural;

         b.    any payment required under the Plan on a particular date shall be made

on such date or as soon thereafter as practicable;

         c.    any reference in the Plan to a contract, instrument, release or other

agreement or document being in a particular form or on particular terms and conditions

means that such document shall be substantially in such form or substantially on such terms

and conditions, delivered and Filed on or before the Exhibit Filing Date as an exhibit to the

Plan;

         d.    any reference in the Plan to an existing document or exhibit Filed or to

be Filed means such document or exhibit, as it may have been or may be amended, modified

or supplemented through and including the Confirmation Date which, after they are Filed,

may be amended, modified or supplemented only with the express written consent of the

Proponents;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

90231-002\DOCS_LA:238002.2

1               e.    unless otherwise specified in a particular reference, all references in

2    the Plan to sections, articles and exhibits are references to sections, articles and exhibits of or

3    to the Plan;

4               f.    the words "herein," "hereof," "hereto," "hereunder" and others of

5    similar import refer to the Plan in its entirety rather than to only a particular portion of the

6    Plan;

7               g.    captions and headings to articles and sections are inserted for

8    convenience of reference only and are not intended to be a part of or to affect the

9    interpretation of the Plan;

10               h.    all exhibits to the Plan and Plan Documents are incorporated herein,

11    regardless of when those exhibits are Filed;

12               i.    to the extent any discrepancy exists between the description contained

13    herein of a document or agreement that is an exhibit to the Plan and with the provisions of

14    that exhibit, the actual agreement or document shall govern; and

15               j.    the rules of construction set forth in section 102 of the Bankruptcy

16    Code shall apply.

17    (y)    Time Periods.

18          In computing any period of time prescribed or allowed by the Plan, the provisions of

19    Bankruptcy Rule 9006(a) shall apply.

20    **III.**

21    **DESIGNATION OF CLASSES OF CLAIMS**

22          The following is a designation of the classes of Claims under the Plan.

23    Administrative Claims and Priority Tax Claims have not been classified and are excluded from the

24    following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code.  A Claim is

25    classified in a particular Class only to the extent that the Claim qualifies within the description of

26    that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies

27    within the description of such different Class.  A Claim is in a particular Class only to the extent that

28

90231-002\DOCS_LA:238002.2

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES  ,  CALIFORNIA

1    the Claim is an Allowed Claim and has not been paid, released, or otherwise satisfied before the

2    Effective Date.

3    **A.    Secured Claims (Class 1).**

4            Except as otherwise provided in the Amended ASA and to the extent not paid at or on the

5    Effective Date, pursuant to the terms of the Sale and the provisions of the Sale Order, all asserted

6    liens, encumbrances and interests against the Debtor's assets and property that were sold to the

7    Purchasers are transferred to the cash proceeds of the Sale received by the Debtor under the

8    Amended ASA with the same right, validity and priority as existed prior to the Sale.

9            (z)    Secured Tax Claims (Class 1a)

10                  Class 1a consists of all Claims that are Secured Tax Claims.

11          (aa)    Secured Claim of Physicians Hospital Management, LLC (Class 1b)

12                  Class 1b consists of the Secured Claim of PHM in the approximate amount of

13    $6,685,770.

14          (bb)    Secured Claim of Corwin Medical Group, Inc. (Class 1c)

15                  Class 1c consists of the Secured Claim of Corwin in the approximate amount of

16    $701,246.58.

17          (cc)    Secured Claim of Department of Health Care Services (Medi-Cal) (Class 1d)

18                  Class 1d consists of the asserted Secured Claim of DHCS based upon a asserted right

19    of recoupment in the current approximate amount of $5,560,000 which is being repaid pursuant to

20    the DHCS Repayment Agreement.  The placement of the asserted Secured Claim of DHCS in this

21    Class 1d is not an acknowledgement or admission by any party that the claim is secured in any

22    amount.

23          (dd)    Secured Claim of California Office of State Health Planning and Development (Class

24    1e)

25                  Class 1e consists of the Secured Claim of OSHPD in the approximate amount of

      $4,449,058.[2]

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

---

[2] This Claim was originally held by Desert Community Bank, now a division of East West Bank.  OSHPD paid Desert
Community Bank on the loan pursuant to a guaranty.    22

(ee)    Secured Claim of The Bank of New York Mellon Trust Company, N.A, as Indenture Trustee of the Bonds (Class 1f)

Class 1f consists of the Secured Claim of the Indenture Trustee for the Bonds in the current approximate outstanding principal amount of $1,790,000, which are secured by cash deposits and are the subject of the *Order Approving the Redemption of Bonds by the Debtor in the Ordinary Course of Business* entered by the Bankruptcy Court on March 30, 2011 [Docket No. 791].

(ff)    Miscellaneous Secured Claims (Class 1g).

Class 1g consists of any Miscellaneous Secured Claims.  The Debtor is currently unaware of any such Claims.

**B.    Priority Non-Tax Claims (Class 2).**

(gg)    Priority Non-Tax Claims that are not Priority Assumed Employee Claims (Class 2a)

Class 2a consists of any Priority Non-Tax Claims that are not Priority Assumed Employee Claims.

(hh)    Priority Assumed Employee Claims (Class 2b)

Class 2b consists of any Priority Assumed Employee Claims.

**C.    General Unsecured Claims (Class 3).**

Class 3 consists of all Unsecured Claims not in Class 4.

**D.    Subordinated Unsecured Claims (Class 4).**

Class 4 consists of the Unsecured Claims of PHM and Corwin, both of which are co-Proponents of the Plan, which Claims are being subordinated to Class 3 Claims by agreement of PHM and Corwin and, for purposes of payment only, the $1.9 million portion of the Cure Claim of CMS.

**E.    Unimpaired Classes.**

Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b, and 3 are Unimpaired under the Plan.  The treatment of Allowed Claims in the Unimpaired Classes in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights of each Holder of an Allowed Claim in the Unimpaired Classes.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

23

**F.    Waiver of Disclosure Statement.**

Although the Claims in Classes 1b, 1c and 4 are Impaired under the terms of the Plan, the three Holders of the Claims in the Impaired Classes, two of which are co-Proponents of the Plan, have agreed to the treatment of their Class 1b and 1c Claims and to the subordination and treatment of their Class 4 Claims, and have waived rights to receive a disclosure statement pursuant to section 1125 of the Bankruptcy Code.

**G.    Terms of Confirmed Plan Control Unless Otherwise Specified**

If the Plan is confirmed by the Bankruptcy Court, except as specifically set forth in this Plan, the treatment of Claims set forth in the Plan supersedes and replaces any agreements or rights the Holders of the Claims have in or against the Debtor or its property.  .  **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM, WHETHER AN ALLOWED CLAIM OR NOT.**

**H.    Holders of Claims as of Record Date**

All Distributions under the Plan will be tendered to the Holder of the Allowed Claim as of the Record Date.

**IV.**

**TREATMENT OF CLASSES OF CLAIMS**

**A.    Unclassified Claims.**

Certain types of Claims are not placed into Classes; instead, such Claims are Unclassified Claims.  Such Unclassified Claims are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has <u>not</u> placed the following Claims in a Class.  The respective treatments for these Claims are provided below.

(ii)    Allowance of Administrative Claims

a.    **Allowance of Non-Ordinary Course Administrative Claims**

Unless otherwise expressly provided in the Plan, Non-Ordinary Course Administrative Claims will be Allowed Claims only if:

24

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT  LAW
LOS  ANGELES ,  CALIFORNIA

(i)      On or before the Non-Ordinary Course Administrative Claim Bar Date, the entity holding such Non-Ordinary Course Administrative Claim both Files with the Court a motion requesting allowance of the Non-Ordinary Course Administrative Claim and serves the motion on the Liquidating Debtor, the Liquidating Trustee and the U.S. Trustee; and

(ii)      an order is entered by the Bankruptcy Court allowing the Non-Ordinary Course Administrative Claim.

**Entities holding Non-Ordinary Course Administrative Claims that do not timely File and serve a request for payment will be forever barred from asserting those Claims against the Debtor, the Liquidating Debtor, the Liquidating Trustee, the Estate, or their respective property.**

The Liquidating Debtor, the Liquidating Trustee or any other party in interest must File any objection to such motion at least (14) days prior to the hearing date on such motion and any reply to such objection must be filed at least seven (7) days prior to the hearing date pursuant to Local Bankruptcy Rule 9013-1(f) and (g).

b.      **Allowance of Ordinary Course Administrative Claims**

Holders of Ordinary Course Administrative Claims (i.e., claims for administrative costs or expenses that are allowable under section 503(b) of the Bankruptcy Code that are incurred in the ordinary course of the Debtor's operations, including but not limited to PTO that accrued after the Petition Date but remains unused) shall not be required to File any request for payment of such Claims.

c.      **Allowance of 503(b)(9) Claims**

Holders of 503(b)(9) Claims were required to File their Claims by the January 7, 2011, the General Bar Date.  A 503(b)(9) Claim will be an Allowed 503(b)(9) Claim if (i) no objection or motion to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the Claims Objection Deadline or (ii) any objection or motion to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement between the Claimant and the Debtor, the Liquidating Debtor or the Liquidating Trustee or by Final Order of the Bankruptcy Court.

25

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES , CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES , CALIFORNIA

d.    **Allowance of Professional Fee Claims**

Each Holder of a Professional Fee Claim (except for Professional Fee Claims falling under clause (b) of the definition of Professional Fee Claim, which claims are subject to the Non-Ordinary Course Administrative Claims Bar Date) seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date must (i) file its final application for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the forty-fifth (45th) day following the Effective Date.  Any objection to such Professionals Fee Claims shall be filed on or before the date specified in the application for final compensation.  All such requests for payment of such Professional Fee Claims will be subject to the authorization and approval of the Bankruptcy Court.  **Persons holding Professional Fee Claims who do not timely File and serve a final fee application will be forever barred from asserting those Claims against the Debtor, the Liquidating Trustee, or the property of the Liquidating Trust.**

e.    Allowance of Cure Claims

A Cure Claim shall be come an Allowed Cure Claim when the assumption of the affected unexpired lease or executory contract is effective, pursuant to the applicable order of the Bankruptcy Court that addresses the assumption of the applicable unexpired lease or executory contract.

(jj)    Treatment of Administrative Claims

a.    **Payment of Allowed Non-Ordinary Course Administrative Claims.**

Except to the extent that any entity entitled to payment of a Non-Ordinary Course Allowed Administrative Claim agrees to a less favorable treatment, each Holder of a Non-Ordinary Course Allowed Administrative Claim will receive in full satisfaction, discharge, exchange and release thereof, Cash in an amount equal to such Allowed Non-Ordinary Course Administrative Claim on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such Non-Ordinary Course Administrative Claim becomes an Allowed Non-Ordinary Course Administrative Claim, or, in either case, as soon thereafter as is practicable.

26

b.    **Payment of Allowed Ordinary Course Administrative Claims.**

Each Ordinary Course Administrative Claim, unless disputed by Debtor, the Liquidating Debtor or the Liquidating Trustee, shall be satisfied by the Debtor, the Liquidating Debtor or the Liquidating Trustee, as the case may be, under the terms and conditions of the particular transaction giving rise to that Ordinary Course Administrative Claim without any further action by the Holder of such Ordinary Course Administrative Claim.  Pursuant to the terms of the Amended ASA, any accrued and unpaid payroll or PTO claim of any Hired Employee that constitutes an Allowed Ordinary Course Administrative Claim and is an Assumed Obligation under the terms of the Amended ASA will by assumed by the Purchasers at Closing in accordance with the terms of the Amended ASA.  The Debtor will pay any amount due for Administrative payroll and PTO to each employee that is not an Hired Employee after such employee's employment by the Debtor is terminated, as required by applicable non-bankruptcy law.

c.    **Payment of 503(b)(9) Claims.**

Except to the extent that any Holder of a 503(b)(9) Claim agrees to a less favorable treatment, each Holder of a 503(b)(9) Claim will receive in full satisfaction, discharge, exchange and release thereof, Cash in an amount equal to such Allowed amount of the 503(b)(9) Claim plus interest at the Judgment Rate from the Petition Date to the date of payment on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such 503(b)(9) Claim becomes an Allowed Claim, or, in either case, as soon thereafter as is practicable.

d.    **Payment of Professionals.**

Professional Fee Claims, to the extent approved by the Bankruptcy Court, are to be paid, in full satisfaction, discharge, exchange and release thereof, Cash in such amounts as are Allowed by the Bankruptcy Court on the date such Professional Fee Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

e.    **Payment of U.S. Trustee Fees.**

On or before the Effective Date, all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash, in full.  The Debtor will continue to file the Post-Confirmation Quarterly Reports as required until the Effective

27

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Date.  After the Effective Date until the Transfer Date, the Liquidating Debtor will file the Post-

2    Confirmation Quarterly Reports as they become due and the Liquidating Trustee will file such

3    reports from the Transfer Date until the Case is closed under section 350 of the Bankruptcy Code.

4              f.      **Payment of DIP Loan Claims**

5              Upon the Closing of the Sale to the Purchasers and to the extent and as provided for

6    and in accordance with Section 3(d) of the Sale Order, the Purchasers shall forgive the repayment of

7    the DIP Loan Claims provided that the Purchasers are the acquirers of the Debtor's assets under the

8    Amended ASA.  To the extent not forgiven, the DIP Loan Claims will be paid in full in Cash on the

9    Effective Date.

10              e.      Payment of Cure Claims

11              Each Holder of a Cure Claim will receive in full satisfaction, discharge, exchange and

12    release thereof, payment of such Cure Claim pursuant to the terms of any agreement between the

13    Holder of the Cure Claim and the Debtor or pursuant to the terms of any Final Order of the

14    Bankruptcy Court establishing the Cure Claim; provided, however, that the payment to CMS of $4.5

15    million pursuant to the terms of the CMS Settlement Agreement will not be in full satisfaction,

16    discharge, exchange and release of its Cure Claim.  If no terms of payment are specified in either an

17    agreement between the Holder of a Cure Claim and the Debtor or an order of the Bankruptcy Court,

18    the Cure Claim will be paid in Cash, in full, on the date that the assumption and assignment of the

19    unexpired lease or executory contract is effective or as soon thereafter as is practicable as required

20    by section 365(b) of the Bankruptcy Code.  To the extent that the assumption and assignment of any

21    unexpired lease or executory contract is not effective until after the Effective Date of the Plan, the

22    Liquidating Debtor or the Liquidating Trustee, as the case may be, shall hold, in a segregated

23    account, the funds necessary to satisfy any such Cure Claim on the date that the assumption and

24    assignment becomes effective or as soon thereafter as is practicable.

25        (kk)    Treatment of Priority Tax Claims.

26              In accordance with section 1129(a)(9)(C) of the Bankruptcy Code, except as

27    otherwise agreed to by the parties, each holder of an Allowed Priority Tax Claim shall receive

28    deferred Cash payments over a period not exceeding five (5) years from the date of assessment of

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS  ANGELES ,  CALIFORNIA

28

such Claim.  Payments shall be made in equal, quarterly installments and each installment shall

include simple interest accrued on the unpaid portion of such Claim at the Judgment Rate per annum

from and after the Effective Date; provided, however, that the Liquidating Debtor and the

Liquidating Trustee reserve the right to pay any Allowed Priority Tax Claim, or any remaining

balance of such Allowed Claim, in full, at any time on or after the Effective Date or the Transfer

Date, respectively, without premium or penalty.  Notwithstanding the forgoing, any Allowed Priority

Tax Claims that were secured by property of the Debtor prior to the Closing of the Sale shall be paid

in full on the Effective Date.

**B.**    **Classified Claims.**

(ll)    Class 1 (Secured Claims)

a.    Class 1a (Secured Tax Claims) is Unimpaired under the Plan.  The Holders of

each Allowed Class 1a Claim will receive Cash equal to its Allowed Claim, including interest, fees

and costs to which it is entitled under sections 506 and 1124 of the Bankruptcy Code either on the

Closing Date as part of the Closing of the Sale as required by the Sale Order or, if not so required by

the Sale Order, on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after

such Class 1a Claim becomes an Allowed Secured Claim, or, in either case, as soon thereafter as is

practicable or such other treatment as the Debtor and the Holder of an Allowed Class 1a Claim agree

to in writing.

b.    Classes 1b (Secured Claim of PHM) and 1c (Secured Claim of Corwin) are

Impaired under the Plan.  Pursuant to the terms of the Amended ASA, the Allowed Class 1b and 1c

Claims will be assumed by the Purchasers at Closing in accordance with the terms of the Amended

ASA and paid according to the terms of agreements between the Purchasers and PHM and Corwin,

respectively.  In connection with certain transactions that may occur prior to the Closing, PHM and

Corwin may become affiliated with the Purchasers.

c.    Class 1d (Asserted Secured Claim of DHCS) is Unimpaired under the Plan.

The payments due on the Class 1d Claim have been made during the Case pursuant to the terms of

the DHCS Repayment Agreement, so no default under the DHCS Repayment Agreement between

the Debtor and DHCS exists.  The security for the Class 1d Claim of DHCS is its asserted right of

29

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES ,  CALIFORNIA

1    recoupment from Medi-Cal payments.  Pursuant to the terms of the Amended ASA, the obligations

2    of the Debtor with respect to the Allowed Class 1d Claim under the terms of the DHCS Repayment

3    Agreement will be assumed by the Purchasers at Closing as provided by the terms of the Amended

4    ASA and will be paid according to the terms of the DHCS Repayment Agreement.

5            d.        Classes 1e (Secured Claim of OSHPD) and 1g (Miscellaneous Secured

6    Claims, to the extent any such Claims exist) are Unimpaired under the Plan.  The Holder of each

7    Allowed Class 1e and 1g Claim will receive Cash equal to its Allowed Claim, including any interest,

8    fees and costs to which it is entitled under sections 506 and 1124 of the Bankruptcy Code, either on

9    the Closing Date as part of the Closing of the Sale as required by the Sale Order or, if not so required

10   by the Sale Order on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after

11   such Class 1e or 1g Claim becomes an Allowed Secured Claim, or, in either case, as soon thereafter

12   as is practicable or such other treatment as the Debtor and the Holder of an Allowed Class 1e or 1g

13   Claim agree to in writing.

14           f.         Class 1f (Secured Claim of Indenture Trustee for Bonds) is Unimpaired under

15   the Plan and have been fully satisfied pursuant to the terms of the *Order Approving the Redemption*

16   *of Bonds by the Debtor in the Ordinary Course of Business* entered by the Bankruptcy Court on

17   March 30, 2011 [Docket No. 791].

18       (mm)   Class 2 (Priority Non-Tax Claims)

19           a.        Class 2a (Priority Non-Tax Claims that are not Priority Assumed Employee

20   Claims) is Unimpaired under the Plan.  Each Holder of an Allowed Class 2a Claim will be paid in

21   Cash, in full, with interest at the Judgment Rate from the Petition Date to the date of Payment on the

22   later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such Priority Non-Tax

23   Claim becomes an Allowed Priority Claim, or, in either case, as soon thereafter as is practicable.

24           b.        Class 2b (the Priority Assumed Employee Claims) is Unimpaired under the

25   Plan.  Pursuant to the terms of the Amended ASA, the obligations of the Debtor with respect to the

26   Allowed Class 2b Claims will be assumed by the Purchasers at Closing and the Purchasers will

27   honor the legal and contractual rights of the Holders of such Allowed Class 2b Claims as set forth in

28   the Amended ASA.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

30

(nn)     Class 3 (General Unsecured Claims)

Class 3 is Unimpaired under the Plan.  Each Holder of an Allowed Class 3 Claim will be paid in Cash, in full, with interest on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such General Unsecured Claim becomes an Allowed Unsecured Claim, or, in either case, as soon thereafter as is practicable.

The Debtor will pay to each Holder of an Allowed Class 3 Claim interest at the Judgment Rate from the Petition Date to the date the Allowed Class 3 Claim is paid in full.

(oo)     Class 4 (Subordinated Unsecured Claims)

Class 4 is Impaired under the Plan.  Each Holder of an Allowed Class 4 Claim will be paid its Pro-Rata share of Available Cash after payment of all other Allowed Claims in full until the Allowed Class 4 Claims are paid in full with interest at the Judgment Rate or until there are no more Liquidating Trust Assets.

**V.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.     Rejection of Executory Contracts and Unexpired Leases.**

Each executory contract or unexpired lease of the Debtor that (i) has not expired by its own terms before the Effective Date, (ii) previously has not been assumed or rejected by the Debtor, (iii) is not the subject of a pending motion to assume or reject that has been Filed and served prior to the Confirmation Date, (iv) is not the employment agreement between the Debtor and the Cathy Pelley, the CEO, or Edward Matthews, the CFO, or (v) does not constitute a contract of insurance in favor of, or that benefits, the Debtor, the Liquidating Debtor or the Liquidating Trust is rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code; provided that the Asset Sale Documents and those contracts or leases that are needed by the Debtor or required by the Debtor to be maintained in existence, including the IEHP Contract and the contracts and leases that are not assumed and assigned to the Purchasers until the Licensing Date, in order for the Debtor and the Liquidating Debtor to fulfill their obligations under the Conditions to Approval of Sale, the Interim Management and Lease Agreement and the other Asset Sale Documents and to maintain the necessary licenses to operate the Hospital shall not be rejected as of the Effective Date.  The

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection as of the Effective Date.

Nothing in the Plan, any Exhibit to the Plan, or any document executed or delivered in connection with the Plan or any such Exhibit creates any obligation or liability on the part of the Debtor, the Liquidating Debtor, or the Liquidating Trust, or any other person or entity that is not currently liable on such obligation, with respect to any executory contract or unexpired lease.

**B.** **Bar Date for Rejection Damages.**

If the rejection of an executory contract or unexpired lease pursuant to the Plan and the Confirmation Order or a previous order of the Court gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Liquidating Debtor, Liquidating Trust or the Estate unless a proof of Claim is Filed and served on the Debtor or the Liquidating Debtor, as the case may be, and its counsel within thirty (30) days after the entry of the Confirmation Order. All such Claims for which proofs of Claim are required to be Filed, if Allowed, will be, and will be treated as, General Unsecured Claims, subject to the provisions of the Plan.

**C.** **Insurance Policies.**

For the avoidance of doubt, the Debtor's rights with respect to all insurance policies under which the Debtor may be beneficiaries (including all insurance policies that may have expired prior to the Petition Date, all insurance policies in existence on the Petition Date, all insurance policies entered into by the Debtor after the Petition Date, and all insurance policies under which the Debtor holds rights to make, amend, prosecute and benefit from claims), are either retained by the Liquidating Debtor or cancelled, in the Liquidating Debtor's sole discretion, after the Effective Date until its dissolution. Upon the dissolution of the Liquidating Debtor, any existing insurance policies that can be assigned and all proceeds of such policies will be transferred or assigned to the Liquidating Trust pursuant to this Plan. Notwithstanding any provision providing for the rejection of executory contracts, any insurance policy that is deemed to be an executory contract shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidating Debtor or the Liquidating Trustee, as the case may be, who shall retain the right to

32

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

assume or reject any such executory contracts pursuant to and subject to the provisions of section 365 of the Bankruptcy Code following the Effective Date.

## VI.

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**A.**     **Implementing Actions In General; Conditions to the Effective Date.**

As a condition to effectiveness of the Plan, the following must occur:

(i)     the Confirmation Order shall have become a Final Order; provided, however, at the option of the Debtor with the consent of the Committee and the Purchasers, the Confirmation Order that is subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no court of competent jurisdiction has entered an order staying the effect of the Confirmation Order;

(ii)     the Closing shall have occurred;

(iii)     CMS shall have been paid the $4.5 million portion of its Cure Claim;

(iv)     the Liquidating Trust Agreement is final and approved and the Liquidating Trustee is appointed; provided, however, that the no assets shall be transferred to the Liquidating Trust until the Transfer Date and the Liquidating Trust shall not incur any expenses until the Transfer Date;

(v)     the VVCH Trust Committee is formed;

(vi)     all actions, documents and agreements necessary to implement the Plan will have been effected or executed;

(vii)     the Debtor will have received all authorizations, consents, rulings, opinions or other documents that are determined by the Debtor to be necessary to implement the Plan; and

(viii)     the Proponents will have determined in their reasonable discretion that sufficient Cash exists to satisfy all Unclassified Allowed Claims and all Allowed Claims in Classes 1a, 1d, 1e, 1f, 1g, 2a, 2b and 3, and sufficient Cash is reserved in the Disputed Claims Reserve to satisfy the remaining General Unsecured Claims that are Disputed Claims.

33

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

1    The Plan will not be consummated or become binding unless and until the Effective Date

2    occurs, which shall in all events occur prior to the date that is ninety (90) days following entry of the

3    Confirmation Order, unless the Confirmation Order is stayed or the Plan is modified pursuant to an

4    order of the Court extending the Effective Date for good cause shown.

5    The Debtor may in its reasonable discretion, with consent of the Committee, waive any of the

6    conditions except conditions (i), (ii), (iii) and (vii) set forth above without notice and a hearing.

7    Unless the condition is waived as set forth above, the failure to satisfy any condition may be asserted

8    by the Debtor as a basis to allege that the Effective Date has not occurred regardless of the

9    circumstances giving rise to the failure of such condition to be satisfied (including, without

10   limitation, any act, action, failure to act, or inaction by the Debtor).  If the Debtor fails to assert the

11   non-satisfaction of any such conditions, such failure will not be deemed a waiver of any other rights

12   hereunder.

13   As soon as practicable after the occurrence of the Effective Date, but no later than ten (10)

14   days thereafter, the Liquidating Debtor shall File and serve on each Holder of a Claim a written

15   notice of occurrence of Effective Date.

16   **B.    Debtor's Authority.**

17   Upon the Effective Date, all transactions and applicable matters provided for under the Plan

18   will be deemed to be authorized and approved by the Debtor without any requirement of further

19   action by the Court, the Debtor or the Debtor's board of directors.

20   **C.    The Liquidating Debtor.**

21   (pp)    Continued Corporate Existence of the Debtor

22   The Liquidating Debtor will continue to exist as a corporation from and after the Effective

23   Date until the Transfer Date.  On and after the Effective Date, the Amended ASA, the Interim

24   Management and Lease Agreement and the Other Sale Documents shall remain in full force and

25   affect notwithstanding the occurrence of the Effective Date and all obligations of Debtor thereunder

26   shall survive the occurrence of the Effective Date.   The Asset Sale Documents and all of the

27   obligations of the Debtor thereunder shall vest in and be the obligations of the Liquidating Debtor.

28   After the Effective Date, the Liquidating Debtor shall be responsible for performing the obligations

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

34

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

1   of the Debtor under the Asset Sale Documents.  On and after the Effective Date, the Liquidating

2   Debtor shall retain all of the powers of corporation under the applicable non-bankruptcy law,

3   provided that the Liquidating Debtor's purpose from and after the Effective Date will be (i) to fulfill

4   the obligations of the Debtor under the Interim Lease and Management Agreement and the other

5   Asset Sale Documents, including causing the Liquidating Debtor to retain the Debtor's licenses,

6   permits and payor certifications for the Hospital as required by the Interim Management and Lease

7   Agreement, (ii) to lease certain of the assets that have been purchased by the Purchasers as provided

8   in the Interim Management and Lease Agreement, (iii) to take all steps necessary to preserve and

9   protect all of  the Debtor's existing licenses and permits necessary for the operation of the Hospital

10  as a general acute care hospital and to supervise the operation of the hospital by VVHA, which will

11  manage the Hospital under the Interim Management and Lease Agreement under the Debtor's

12  existing licenses, until VVHA has obtained its own licenses and permits to operate the Hospital and

13  the Debtor's Medicare certification and VVHA is able to bill the United States Centers for Medicare

14  and Medicaid Services in its own right for services at the Hospital, (iv) to review and object to any

15  Claim, (v) to settle any dispute to a Claim or to prosecute any objection to a Claim, (vi) to make

16  Distributions to Holders of Allowed Claims as provided in the Plan, and (vi) to otherwise take any

17  reasonable and necessary action to protect and preserve the Liquidating Debtor's Assets and the

18  Liquidating Debtor.

19          (qq)     Officers and Directors of the Liquidating Debtor

20          The Board of Directors serving the Debtor on the Effective Date will continue to serve the

21  Liquidating Debtor.  As of the date of the filing of this Plan, the Board was comprised of six

22  members:  Kathy Davis, Chair; Dennis G. Killion, Vice-Chair; Thomas Brown; Michael Fermin;

23  Tim Jasper; and Herbert Williamson, III.  The Liquidating Debtor shall at all times have a Board of

24  Directors necessary to maintain its corporate status until the occurrence of the Transfer Date.  Any

25  member resigning from the Board of Directors shall be replaced, if necessary, in accordance with

26  applicable law and the Debtor's operating documents.  The Debtor's Chief Executive Officer

27  ("CEO") is Cathy Pelley, who has served in this position since March 2009 and will continue in that

28  position after the Effective Date.  The Debtor's Chief Financial Officer ("CFO") and Chief

1   Information Officer is Edward Matthews, who has served in this position since December 2008 and

2   will continue in that position after the Effective Date.  Each member of the Board of Directors will

3   be compensated $500 for each board meeting attended after the Effective Date and the CEO and the

4   CFO will continue to receive compensation for their services in accordance with their existing

5   employment contracts. The compensation for the members of the Board of Directors, the CEO and

6   CFO will be included in the Post-Effective Date Expenses of the Liquidating Debtor.  The members

7   of the Board of Directors, the CEO and the CFO will continue to serve in such positions until the

8   earlier of (1) the date an individual chooses to resign or (2) the date the Liquidating Debtor is

9   dissolved, which date shall be as soon as is possible after the Transfer Date.

10          (rr)    Vesting of the Debtor's Assets

11          Except as otherwise provided in the Plan, on and after the Effective Date, all Assets will vest

12  in the Liquidating Debtor free and clear of all Claims, liens, charges, other encumbrances and

13  interests, except the liens, Claims, interests, rights and remedies of the Purchasers under the Asset

14  Sale Documents.  The Confirmation Order will provide the Liquidating Debtor with express

15  authority to convey, transfer and assign any and all of the Liquidating Debtor's Assets in accordance

16  with the terms of this Plan and to take all actions necessary to effectuate same and to prosecute or

17  not prosecute, as the Liquidating Debtor deems appropriate, any and all Causes of Action.

18          (ss)    Funding of the Liquidating Debtor

19          The funding of the Liquidating Debtor for the payments to be made to Holders of Allowed

20  Claims under the Plan and the payment of Post-Effective Date Expenses will be from (i) the

21  Debtor's Cash on hand as of the Effective Date, which shall include, but is not limited to, the net

22  proceeds of the Sale, which will be transferred to the Liquidating Debtor as of the Effective Date and

23  proceeds from the investment of such Cash, (ii) the proceeds of the Purchase Notes, including the

24  interest thereon, and (iv) the proceeds of the liquidation by the Liquidating Debtor of any other of

25  the Liquidating Debtor's Assets.

26          (tt)    No Liability of Liquidating Debtor

27          **To the maximum extent permitted by law, the Liquidating Debtor and the Liquidating**

28  **Debtor's Agents will not have or incur liability to any Person for an act taken or omission**

36

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

1    **made in good faith in connection with or related to the administration of the Liquidating**

2    **Debtor's Assets, the implementation of the Plan and the Distributions made thereunder.  The**

3    **Liquidating Debtor and the Liquidating Debtor's Agents will in all respects be entitled to**

4    **reasonably rely on the advice of counsel with respect to their duties and responsibilities under**

5    **the Plan.  Entry of the Confirmation Order constitutes a judicial determination that the**

6    **exculpation provision contained in Section VII.A. of the Plan is necessary, *inter alia*, to**

7    **facilitate Confirmation and feasibility of the Plan and to minimize potential claims arising**

8    **after the Effective Date for indemnity, reimbursement or contribution from the Liquidating**

9    **Debtor or the Liquidating Debtor's Assets.  The Confirmation Order's approval of the Plan**

10    **also constitutes a *res judicata* determination of the matters included in the exculpation**

11    **provisions of the Plan.**  Nothing in this Section V.C.5 shall apply to any acts taken or omissions

12    made by the Liquidating Debtor and the Liquidating Debtor's Agents in connection with their

13    responsibilities and obligations under the Interim Management and Lease Agreement and the other

14    Asset Sale Documents.

15        (uu)    Funding of the Liquidating Debtor's Post-Effective Date Expenses

16        All expenses related to implementation of the Plan incurred from and after the Effective Date

17    through the Transfer Date will be expenses of the Liquidating Debtor, and the Liquidating Debtor

18    will disburse funds from the Liquidating Debtor's Assets, as appropriate, for purposes of paying the

19    Post-Effective Date Expenses of the Liquidating Debtor without the need for any further Order of

20    the Court.  The Post-Effective Date Expenses shall include, but are not limited to, the Board of

21    Director's fees, the salaries of the CEO and CFO of the Liquidating Debtor and other costs, expenses

22    and obligations of the Liquidating Debtor until the Transfer Date.  Prior to any making distribution

23    to any Holders of Allowed Claims under the Plan, the Debtor or the Liquidating Debtor, as the case

24    may be, shall set aside from the available Cash and shall reserve and fund into a separate account the

25    a sum sufficient for the payment of the Liquidating Debtor's ongoing Post Effective Date Expenses

26    (the "Liquidating Debtor Expense Reserve").  Any remaining funds held in the Liquidating Debtor

27    Expense Reserve on the Transfer Date shall be transferred to the Liquidating Trust.

28

37

**D.    Liquidating Trust.**

(vv)    Effectiveness of the Liquidating Trust

On the Transfer Date: (i) the Liquidating Trust Agreement, a copy of which will be filed as Plan **Exhibit B**, will become effective.  The Liquidating Trust is organized and established as a trust for the benefit of the Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).  The Liquidating Trust shall not terminate until the Purchase Notes have been paid in full or otherwise satisfied, all Post-Effective Date Expenses of the Liquidating Trust and the VVCH Trust Committee have been satisfied, and the remaining Liquidating Trust Assets have been disbursed either to Holders of Allowed Claims or, if all Allow Claims have been paid in full as required by the Plan, as required by the Conditions to Approval of Sale.

(ww)    Beneficiaries

In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Liquidating Trust will be the Holders of all Allowed Claims against the Debtor whose Allowed Claims have not been previously satisfied in full.  Each such Holder of an Allowed Claim will receive its share of the Liquidating Trust Assets as provided for in the Plan and the Liquidating Trust Agreement.  The Beneficiaries of the Liquidating Trust shall be treated as the grantors and owners of such Beneficiaries' respective portion of the Liquidating Trust.

(xx)    Implementation of the Liquidating Trust

On the Transfer Date, the Liquidating Debtor take all such actions as required to transfer from the Liquidating Debtor the Liquidating Debtor's Assets to the Liquidating Trust.  From and after the Transfer Date, the Liquidating Trustee will be authorized to, and will take all such actions as required to implement the Liquidating Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidating Trustee, including, without limitation, directing and causing Distributions to be made to Holders of Allowed Claims pursuant to the terms of the Plan, objecting to Claims, and prosecuting, determining not to prosecute or otherwise resolving any Causes of Action.

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

38

1    (yy)    Transfer of Liquidating Debtor's Assets

2    On the Transfer Date, the Liquidating Debtor is authorized and directed to transfer, grant,

3    assign, convey, set over, and deliver to the Liquidating Trustee all of the Liquidating Debtor's right,

4    title and interest in and to the remaining Liquidating Debtor's Assets, including, without limitation,

5    all Cash, free and clear of all liens, claims, encumbrances or interests of any kind in such Liquidating

6    Debtor's Assets, except as otherwise expressly provided in the Plan.  To the extent required to

7    implement the transfer of the Liquidating Debtor's Assets from the Liquidating Debtor to the

8    Liquidating Trust, all Persons will cooperate with the Liquidating Debtor to assist the Liquidating

9    Debtor to implement said transfers.

10    (zz)    Vesting of Assets

11    Unless otherwise expressly provided under this Plan, on the Transfer Date, all of the

12    Liquidating Debtor's Assets will vest in the Liquidating Trust free and clear of all claims, liens,

13    encumbrances, charges and other interests, subject to the provisions of the Plan and to the liens,

14    Claims, interests, rights and remedies of the Purchasers under the Asset Sale Documents if any.  On

15    and after the Transfer Date, the transfer of the Liquidating Debtor's Assets to the Liquidating Trust

16    will be deemed final and irrevocable and Distributions will be made from the Liquidating Trust.

17    In connection with the foregoing:

18    (i)    On the Transfer Date, the appointment of the Liquidating Trustee shall

19    become effective and the Liquidating Trustee shall begin to administer the Liquidating Trust

20    pursuant to the terms of the Liquidating Trust Agreement and the Plan and may use, acquire

21    and dispose of the Liquidating Trust Assets free of any restrictions imposed under the

22    Bankruptcy Code.

23    (ii)    The Confirmation Order will provide the Liquidating Trustee with express

24    authority to convey, transfer and assign any and all of the Liquidating Trust Assets in

25    accordance with the terms of this Plan and the Liquidating Trust Agreement and to take all

26    actions necessary to effectuate same and to prosecute or not prosecute, as the Liquidating

27    Trustee deems appropriate, any and all objections to Claims or Causes of Action.

28

39

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS  ANGELES ,  CALIFORNIA

1    (iii)    As of the Transfer Date, the Liquidating Trust Assets will be free and clear of

2    all liens, claims and interests of Holders of Claims, except the liens, Claims, interests, rights

3    and remedies of the Purchasers under the Asset Sale Documents and as otherwise provided

4    in the Plan.

5    (aaa)    Funding of the Liquidating Trust

6    The funding of the Liquidating Trust for the payments to be made to Holders of Allowed

7    Claims under the Plan and the payment of Post-Effective Date Expenses will be from (i) the

8    Liquidating Debtor's Cash on hand as of the Transfer Date and proceeds from the investment of such

9    Cash, (ii) the proceeds of the Purchase Notes, including all interest that accrues thereon, and (iv) the

10    proceeds of the liquidation by the Liquidating Trustee of any other Liquidating Trust Assets.

11    (bbb)    No Liability of Liquidating Trustee

12    **To the maximum extent permitted by law, the Liquidating Trustee and the Liquidating**

13    **Trustee's Agents will not have or incur liability to any Person for an act taken or omission**

14    **made in good faith in connection with or related to the administration of the Liquidating Trust**

15    **Assets, the implementation of the Plan and the Distributions made thereunder.  The**

16    **Liquidating Trustee and the Liquidating Trustee's Agents will in all respects be entitled to**

17    **reasonably rely on the advice of counsel with respect to their duties and responsibilities under**

18    **the Plan and the Liquidating Trust Agreement.  Entry of the Confirmation Order constitutes a**

19    **judicial determination that the exculpation provision contained in Section VII.A. of the Plan is**

20    **necessary, *inter alia*, to facilitate Confirmation and feasibility of the Plan and to minimize**

21    **potential claims arising after the Effective Date for indemnity, reimbursement or contribution**

22    **from  the Liquidating Trust or the Liquidating Trust Assets.  The Confirmation Order's**

23    **approval of the Plan also constitutes a *res judicata* determination of the matters included in the**

24    **exculpation provisions of the Plan.**

25    **Notwithstanding the foregoing, nothing herein or in Section VII.A. of the Plan will alter**

26    **any provision in the Liquidating Trust Agreement that provides for the potential liability of**

27    **the Liquidating Trustee to any Person.**

28

90231-002\DOCS_LA:238002.2

(ccc)    Funding of the Liquidating Trust's Post-Effective Date Expenses

All expenses related to implementation of the Plan incurred from and after the Transfer Date will be expenses of the Liquidating Trust, and the Liquidating Trustee will disburse funds from the Liquidating Trust Assets, as appropriate, for purposes of paying the Post-Effective Date Expenses of the Liquidating Trust without the need for any further Order of the Court.  The Post-Effective Date Expenses shall include, but are not limited to, the Board of Director's fees, the salaries of the CEO and CFO of the Liquidating Debtor and other expenses of the Liquidating Debtor if any until the Liquidating Debtor is dissolved.

(ddd)    Provisions Relating to Federal Income Tax Compliance

A transfer to the Liquidating Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), as a transfer to Creditors to the extent Creditors are beneficiaries of the Liquidating Trust.  For example, such treatment shall apply for purposes of sections 61(a)(12), 483, 1001, 1012 and 1274 of the Internal Revenue Code.  Any such transfer shall be treated for federal income tax purposes as a deemed transfer to the beneficiary-Creditors followed by a deemed transfer by the beneficiary-Creditors to the Liquidating Trust.  The beneficiaries of the Liquidating Trust shall be treated for federal income tax purposes as the grantors and deemed owners of the Liquidating Trust.

**E.    The VVCH Trust Committee**

As provided herein and in the Liquidating Trust Agreement, as of the Effective Date, there will be formed the VVCH Trust Committee that will have consultation, approval and information rights with respect to the Liquidating Trust as set forth in the Liquidating Trust Agreement.  The initial members of the VVCH Trust Committee will be Corwin represented by Raman Poola, MD, PHM represented by Manmohan Nayya, MD, and Thomas Brown, the Secretary of the Debtor's Board of Directors, as the representative of the CMS and The Community Foundation Serving Riverside and San Bernardino Counties, a California nonprofit benefit corporation.

The VVCH Trust Committee will prescribe its own rules of procedure and bylaws; provided, however, that such rules of procedure and bylaws will not be inconsistent with the terms of the Plan or the Liquidating Trust Agreement.  If a VVCH Trust Committee member assigns its Claim in full

41

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

or releases the Debtor, Liquidating Debtor or Liquidating Trust from payment of the balance of its

Claim, such act will constitute a resignation from the VVCH Trust Committee.  Until a vacancy on

the VVCH Trust Committee is filled, the VVCH Trust Committee will function in its reduced

number.  The VVCH Trust Committee's rules of procedure may provide that, in the event any

member of  the VVCH Trust Committee resigns or otherwise is unable to serve subsequent to the

Effective Date, the VVCH Trust Committee may appoint a replacement that represents, to the

greatest extent practicable, the same interests that were represented by the departing member and has

the capacity and competency to serve in place of the resigned or deceased member without approval

by the Bankruptcy Court.

Except for the reimbursement of reasonable actual costs and expenses in connection with

their duties as members of the VVCH Trust Committee, the members of the VVCH Trust Committee

will serve without compensation.  Reasonable expenses incurred by members of the VVCH Trust

Committee may be paid by the Liquidating Debtor or the Liquidating Trust, as appropriate, without

need for Bankruptcy Court approval.

The VVCH Trust Committee will have authority to employ, at the expense of the Liquidating

Debtor or the Liquidating Trust, as applicable, counsel or any other professionals.

The VVCH Trust Committee and its members will not be liable for any act any member may

do or fail to do as a member of the VVCH Trust Committee while acting in good faith and in the

exercise of the member's best judgment.  No member of the VVCH Trust Committee will be liable

in any event for claims, liabilities or damages unless they arise from such member's personal gross

negligence or willful misconduct.

The VVCH Trust Committee will dissolve upon the completion of all distributions to

Beneficiaries of the Liquidating Trust and the termination of that Liquidating Trust in accordance

with the terms of the Plan and the Liquidating Trust Agreement.

**F.**     **Representative of the Estate.**

The Liquidating Debtor from the Effective Date through the Transfer Date and Liquidating

Trustee from the Transfer Date until the Liquidating Trust is terminated will be appointed as the

representative the Estate pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy

42

90231-002\DOCS_LA:238002.2

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

Code and as such will be vested with the authority and power to *inter alia*: (i) object to Claims against the Debtor; (ii) administer, investigate, prosecute, settle and abandon all Causes of Action; (iii) make Distributions provided for in the Plan, including, but not limited to, on account of Allowed Claims; and (iv) take such action as required to administer, wind-down, and close the Case.  As the representative of the Estate, the Liquidating Debtor and then the Liquidating Trustee will succeed to all of the rights and powers of the Debtor and the Estate with respect to all Assets vested in the Liquidating Debtor and all assets transferred to the Liquidating Trust, and the Liquidating Debtor, as of the Effective Date, and then the Liquidating Trustee, as of the Transfer Date, will be substituted and will replace the Debtor and the Estate, as the party in interest in any litigation pending as of the Effective Date.

**G.**     **The Committee.**

     Until the Effective Date, the Committee shall continue in existence.  As of Effective Date, the Committee shall terminate and disband and the members of the Committee and the Committee shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from their service as Committee members.

**H.**     **Earmarked Charitable Donations.**

     Earmarked Charitable Contributions shall remain under the control of the Liquidating Debtor.  The Liquidating Debtor, pursuant to section XIII of the Conditions to Approval of shall, within thirty (30) days after the Closing Date, transfer all Earmarked Charitable Donations to The Community Foundation Serving Riverside and San Bernardino Counties, a California nonprofit benefit corporation, to be used in accordance with the purposes for which said funds are earmarked.

**I.**     **Unrestricted Charitable Donations**

     Unrestricted Charitable Donations plus interest shall remain under the control of the Liquidating Debtor until the Transfer Date and then the Liquidating Trust.  The Liquidating Debtor or the Liquidating Trustee, as the case may be, pursuant to section XV of the Conditions to Approval of Sale shall, within sixty (60) days after the entry of the final decree in this Case, transfer all Unrestricted Charitable Donations to The Community Foundation Serving Riverside and San Bernardino Counties for deposit in a Donor-Advised Pass-Through Fund called "Victor Valley

43

Community Hospital Health Fund" for the purpose of making grants to charitable healthcare

facilities and clinics exempt from taxation pursuant to section 501(c)(3) of the Internal Revenue

Code to provide healthcare services to residents in the Debtor's service area.

**J.     Provisions Governing Distributions.**

(eee)    Disbursing Agent

The Liquidating Debtor, from the Effective Date through the Transfer Date, and then the

Liquidating Trustee, after the Effective Date until the Liquidating Trust terminates, will serve as the

Disbursing Agent under the Plan or shall select another entity to serve as the Disbursing Agent.  Any

entity other than the Liquidating Debtor or the Liquidating Trustee that acts as a Disbursing Agent

for the Liquidating Debtor or the Liquidating Trust will be an agent of the Liquidating Debtor or the

Liquidating Trustee, respectively, and not a separate taxable entity with respect to, for example, the

assets held, income received or disbursements or Distributions made for the Liquidating Debtor or

the Liquidating Trustee.  Neither the Liquidating Debtor nor the Liquidating Trustee will be required

to provide a bond in connection with the making of any distributions pursuant to the Plan.

The Disbursing Agent will make all Distributions required under this Plan.  The Disbursing

Agent shall be authorized to implement such procedures as it deems necessary to make Distributions

pursuant to this Plan so as to efficiently and economically assure prompt and accurate Distributions.

(fff)    The Source of Distributions

The sources of all Distributions and payments made by the Liquidating Debtor under the Plan

and will be Cash (which includes, but is not limited to, the net proceeds of the Sale) that vests in the

Liquidating Debtor as of the Effective Date and proceeds from the investment of Cash, the

liquidation by the Liquidating Debtor of any non-Cash Assets that vest in the Liquidating Debtor,

interest paid to the Liquidating Debtor from the Community Foundation Escrow and the Operating

and Capital Needs Escrow and the proceeds of the Purchase Notes.  Prior to any making distribution

to any Holders of Allowed Claims under the Plan, the Debtor and the Liquidating Debtor as the case

may be shall establish and fund the Liquidating Debtor Expense Reserve and thereafter maintain

sufficient funds therein to satisfy the anticipated ongoing Post-Effective Date Expenses of the

Liquidating Debtor.

44

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

The sources of all Distributions and payments made by the Liquidating Trustee under the Plan and the Liquidating Trust Agreement will be the Liquidating Trust Assets.

A chart of the sources and uses of funds will be filed as Plan **Exhibit A**.

(ggg)   Distribution Dates

The date of the initial Distribution of Cash by the Liquidating Debtor shall be on the Effective Date or as soon thereafter as is practicable.  Each subsequent Distribution Date shall be on the tenth Business Day after any Disputed Claim becomes an Allowed Claim.

(hhh)   Manner of Cash Payments

Cash Distributions made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank, or, if the Liquidating Debtor or the Liquidating Trustee so elects in its discretion for Distributions to certain large claimants, by wire transfer from a domestic bank.

(iii)   Setoff and Recoupment

**Notwithstanding anything to the contrary in the Plan, the Liquidating Debtor or the Liquidating Trustee may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim any Claims or Causes Of Action that the Debtor or the Estate may have against the entity holding the Allowed Claim.  The Debtor, the Estate, the Liquidating Debtor and the Liquidating Trust will not waive or release any Claim or Cause of Action against those entities by failing to effect such a setoff or recoupment, by failing to assert any such matter prior to Confirmation or the Effective Date, by allowing any Claim against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim.**

(jjj)   No *De Minimis* Distributions

Notwithstanding anything to the contrary in this Plan, no Distribution of less than $20.00 will be made to any Holder of an Allowed Claim on account thereof.  No consideration will be provided in lieu of the *de minimis* Distributions that are not made under this Section.

(kkk)   Fractional Cents

When any payment of a fraction of a cent would otherwise be called for, the actual payment will reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of less than $0.005 and rounding up in the case of $0.005 or more); provided, however, that, in no event,

45

1  will a Distribution of less than $20.00 will be made to any Holder of an Allowed Claim on account

2  thereof as set forth above.

3      (lll)    No Distributions with Respect to Disputed Claims

4      Notwithstanding any other Plan provision, no Distributions will be made on account of a

5  Disputed Claim.  Distribution on such Claim will be made when the Claim becomes or is deemed to

6  be an Allowed Claim for purposes of Distributions.

7      (mmm)Undeliverable or Unclaimed Distributions

8      Distributions to entities holding Allowed Claims will initially be made by mail as follows:

9      (a)    Distributions will be sent to the address, if any, set forth on a filed proof of claim as

10  amended by any written notice of address change received by the Debtor prior to the Effective Date

11  or Liquidating Trustee no later than ten (10) Business Days prior to the date of any Distribution; or

12      (b)    If no such address is available, Distributions will be sent to the address set forth on

13  the Schedules or address otherwise readily obtainable by a cursory review of the Debtor's other

14  books and records.

15      If no address is available either on a proof of claim or on the Schedules or on the Debtor's

16  other books and records after a cursory review, the Distribution will be deemed to be undeliverable.

17  If a Distribution is returned to the Liquidating Debtor or the Liquidating Trustee as an undeliverable

18  Distribution or is deemed to be an undeliverable Distribution, neither the Liquidating Debtor nor the

19  Liquidating Trustee will make any further Distribution to the Holder of the Claim on which the

20  Distribution is being made, except as provided below.

21      Any entity that is otherwise entitled to an undeliverable Distribution and that does not, within

22  forty-five (45) days after a Distribution is returned as undeliverable, provide the Liquidating Debtor

23  or the Liquidating Trustee, as appropriate, with a written notice asserting its claim to or interest in

24  that undeliverable Distribution and setting forth a current, deliverable address will be deemed to

25  waive any claim to or interest in that undeliverable Distribution and will be forever barred from

26  receiving that undeliverable Distribution or asserting any Claim against the Debtor, the Estate, the

27  Liquidating Debtor, the Liquidating Trust or their property.  Any undeliverable Distributions that are

28  not claimed hereunder will be distributed to other Holders of Allowed Claims pursuant to the terms

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

46

of the Plan.  If after the occurrence of the Transfer Date, any amount of undeliverable Distributions remains undistributed after all Holders of Allowed Claims in all Classes have been paid and after all the expenses of the Liquidating Debtor and, if the Liquidating Trust is in existence at the time, the Liquidating Trust Expenses have been paid in full as under the Plan, the balance of the funds available from undeliverable Distributions shall be donated to the Community Foundation Serving Riverside and San Bernardino Counties for deposit in a Donor-Advised Pass-Through Fund called "Victor Valley Community Hospital Health Fund" for the purpose of making grants to charitable healthcare facilities and clinics exempt from taxation pursuant to IRS § 501(c)(3) to provide healthcare services to residents in the Debtor's service area.  Nothing herein requires a Liquidating Debtor or the Liquidating Trustee to attempt to locate any entity holding an Allowed Claim whose distribution is undeliverable.

(nnn)    Record Date

The record date for purposes of Distributions under this Plan shall be the Confirmation Date.  To determine the names of the Holders of Claims as of the Record Date, the Liquidating Debtor and the Liquidating Trustee will rely on the register maintained by AlixPartners, LLC, the claims agent appointed in this Case by the Bankruptcy Court, of proofs of Claim and transfers of such proofs of Claim filed in the Case.

**K.    Donation of Remaining Liquidating Trust Cash.**

After all Assets of the Debtor have been liquidated, the Purchase Notes have been paid in full or otherwise satisfied, all Allowed Claims have been fully satisfied as provided in this Plan, and all Post-Effective Date Expenses have been paid, all remaining Cash held by the Liquidating Debtor or, if then in existence, the Liquidating Trust shall be donated to the Community Foundation Serving Riverside and San Bernardino Counties for deposit in a Donor-Advised Pas-Through Fund called "Victor Valley Community Hospital Health Fund" for the purpose of making grants to charitable healthcare facilities and clinics exempt from taxation pursuant to IRS § 501(c)(3) to provide healthcare services to residents in the Debtor's service area; provided that no such donation or transfer shall occur prior to the occurrence of the Transfer Date.

47

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

# VII.

## LITIGATION AND CLAIMS OBJECTIONS

### A.    Preservation of Rights of Action and Defenses.

Except to the extent such rights, claims, causes of action, defenses, and counterclaims are (a) expressly and specifically released in connection with the Plan or in any settlement agreement approved by the Bankruptcy Court during the Case or (b) sold, transferred or assigned to the Purchasers pursuant to the Asset Sale Documents, (i) any and all rights, claims, causes of action, defenses, and counterclaims accruing to the Debtor or the Estate (including, without limitation, Avoiding Power Causes of Action but excluding any causes of action under section 547 of the Bankruptcy Code) on the Effective Date shall vest in the Liquidating Debtor and, to the extent such still exist on the Transfer Date, shall be transferred to the Liquidating Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses, and counterclaims have been Scheduled or otherwise listed or referred to in the Plan, or any other document filed with the Bankruptcy Court, and (ii) neither the Debtor, the Liquidating Debtor nor the Liquidating Trust waives, relinquishes, or abandons (nor shall they be estopped or otherwise precluded from asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Debtor's Estate: (a) whether or not such right, claim, cause of action, defense, or counterclaim has been listed or referred to in the Schedules, the Plan, or any other document filed with the Bankruptcy Court, (b) whether or not such right, claim, cause of action, defense, or counterclaim is currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to such right, claim, cause of action, defense, or counterclaim filed a proof of Claim in the Case, filed a notice of appearance or any other pleading or notice in the Case, or received or retained any consideration under the Plan.  Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in the Debtor's Schedules, the Plan, or any other document filed with the Bankruptcy

48

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

Court shall in no manner waive, eliminate, modify, release, or alter the right of the Liquidating

Debtor or the Liquidating Trust, through the Liquidating Trustee, to commence, prosecute, defend

against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that

the Debtor has or may have as of the Effective Date.  The Liquidating Debtor or the Liquidating

Trust, through the Liquidating Trustee, may commence, prosecute, defend against, recover on

account of, and settle all rights, claims, causes of action, defenses, and counterclaims in their sole

discretion in accordance with what is in the best interests, and for the benefit, of the Beneficiaries of

the Liquidating Trust.  Notwithstanding the foregoing reservation of rights, neither the Liquidating

Debtor nor the Liquidating Trust shall not pursue any action arising under section 547 of the

Bankruptcy Code, because all Claims are being paid in full pursuant to the Plan.

       As of the Effective Date through the Transfer Date, the Liquidating Debtor will be authorized

to exercise and perform the rights, powers and duties held by the Debtor's Estate with respect to the

rights, claims, causes of action, defenses, and counterclaims, including, without limitation, the

authority under section 1123(b)(3) of the Bankruptcy Code to provide for the settlement, adjustment,

retention and enforcement of claims and interests of the Estate, without the consent or approval of

any third party, and without any further order of the Bankruptcy Court. As of the Transfer Date,

subject to the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating

Trust, will be authorized to exercise and perform the rights, powers and duties held by the Debtor's

Estate with respect to the rights, claims, causes of action, defenses, and counterclaims, including,

without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code to provide for the

settlement, adjustment, retention and enforcement of claims and interests of the Estate, without the

consent or approval of any third party, and without any further order of the Bankruptcy Court.

       Any Person with respect to whom the Debtor has incurred an obligation (whether on account

of services, purchase or sale of property, or otherwise), or who has received services from the Debtor

or a transfer of money or property of the Debtor, or who has transacted business with any of the

Debtor, or leased equipment or property from the Debtor should assume that such obligation,

transfer, or transaction may be reviewed by the Liquidating Debtor or the Liquidating Trustee, on

behalf of the Liquidating Trust, and may, if appropriate, be the subject of an action after the

49

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Effective Date, whether or not (i) such Person has filed a proof of Claim against the Debtor; (ii) such Person's proof of Claim has been objected to; (iii) such Person's Claim was included in the Schedules; (iv) such Person's scheduled Claims have been objected to or has been identified by the Debtor as disputed, contingent, or unliquidated, or (v) such Person has been notified that the Debtor or Committee believes the state holds Causes of Action against such Person.

**The Liquidating Debtor, from the Effective Date to the Transfer Date and the Liquidating Trustee, subject to the Liquidating Trust Agreement, from and after the Transfer Date will make the decision of whether or not to pursue any Cause of Action.**

B.    <u>Disputed Claims.</u>

(ooo)    Disputed Claims Reserve

On the Effective Date, the Liquidating Debtor will establish a Disputed Claims Reserve from the Liquidating Debtor's Assets on account of Disputed Claims.  The Disputed Claims Reserve will initially include cash in amounts sufficient to distribute to each holder of a Disputed Claim the amount estimated by the Debtor that it would receive under the Plan if its Claim should ultimately become an Allowed Claim.  The Liquidating Trustee, after the Transfer Date, will maintain such Disputed Claims Reserve pursuant to the same requirements.

After any Disputed Claim becomes an Allowed Claim, the Disbursing Agent, within fifteen (15) Business Days after the Disputed Claim becomes an Allowed Claim, or as soon thereafter as is practicable, pay the amount of the Allowed Claim pursuant to the treatment of such Allowed Claim as provided in this Plan.

If a Disputed Claim (i) becomes a Disallowed Claim or (ii) becomes an Allowed Claim in an amount that would result in such Allowed Claim receiving less than the amount held in the Disputed Claims Reserve on account thereof, the excess attributable to the Claim's disallowed or expunged portion will be Available Cash.

After Final Orders have been entered, or other final resolutions have been reached, with respect to all Disputed Claims or the Liquidating Debtor or Liquidating Trust has obtained an Order of the Court setting a reduced dollar amount of required reserves, any remaining Cash held in the Disputed Claims Reserve will be Available Cash.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

(ppp)   Objections to and Resolution of Disputed Claims.

On and after the Effective Date to the Transfer Date, the Liquidating Debtor and, on or after the Transfer Date, the Liquidating Trustee will have the right to make and file objections to any Claim of any nature and to prosecute, settle and/or withdraw such objections.  The Liquidating Debtor or Liquidating Trustee, as the case may be, will have the authority to compromise, settle, withdraw or otherwise resolve any objections to a Claim without approval of the Bankruptcy Court; provided, however, that the Liquidating Debtor or the Liquidating Trustee may in its discretion seek relief before the Bankruptcy Court with respect to any Disputed Claim.  The Liquidating Debtor or the Liquidating Trustee will file and serve all objections to 503(b)(9) Claims, Priority Claims, and General Unsecured Claims upon the Holder of the Claim as to which the objection is made no later than three months after the Confirmation Date, provided, however, that nothing herein will reduce the time permitted under applicable statutes of limitation for bringing any affirmative Causes of Action that the Liquidating Debtor or the Liquidating Trustee may assert against any third party. The Claim Objection Deadline may be extended only by an order of the Bankruptcy Court.

## VIII.

## OTHER PLAN PROVISIONS

**A.**    **Exculpation and Release of Debtor, Committee and Professionals.**

Except to the extent arising from willful misconduct or gross negligence, any and all Claims, liabilities, causes of action, rights, damages, costs and obligations held by any party against the Debtor, the Committee, the members of the Committee (and their respective officers, directors, employees, affiliates and agents), and/or each of their respective attorneys, accountants, agents and other professionals, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising or accruing, whether or not yet due in any manner related to the Postpetition administration of the Case, any Postpetition act or omission in connection with, arising out of, or related to the Case, or the formulation, negotiation, prosecution or implementation of the Plan, will be deemed fully waived, barred, released and discharged in all respects, except as to rights, obligations, duties, claims and responsibilities preserved, created or established by terms of this Plan, provided however nothing in this  Section VII. A. or the Confirmation Order shall waive, bar,

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT LAW
LOS  ANGELES ,  CALIFORNIA

release or discharge any of the Debtor's, the Liquidating Debtor's or the Liquidating Trust's liabilities and obligations under the Amended ASA, the Interim Management and Lease Agreement and the Other Sale Documents which are hereby preserved and remain fully enforceable by the Purchasers.

Except for parties opposing confirmation of the Plan, pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, the Committee and its present and former members, and each of their respective affiliates, officers, directors, employees, agents, advisors, representatives, successors or assigns, and any Professionals employed by any of the foregoing entities will neither have nor incur any liability to any Person for their role in soliciting acceptance of this Plan.

**B.      Terms of CMS Settlement Agreement Control**

Notwithstanding the terms and provisions of this Plan, the terms of the CMS Settlement Agreement, after it is approved by the Bankruptcy Court, will control all the rights and obligations among the Debtor, VVHA and CMS that arise from or that relate to the CMS Settlement Agreement. To the extent there are any discrepancies or inconsistencies between this Plan and the CMS Settlement Agreement, the CMS Settlement Agreement shall control.

**C.      Injunction.**

**The Plan is the sole means for resolving, paying or otherwise dealing with Claims.  To that end, except as expressly provided in the Plan, at all times on and after the Effective Date, all Persons who have been, are, or may be Holders of Claims against the Debtor arising prior to the Effective Date, will be permanently enjoined from taking any of the following actions, on account of any such Claim, against the Debtor, the Estate, the Liquidating Debtor, the Liquidating Trust or their respective property (other than actions brought to enforce any rights or obligations under the Plan):**

**(i)      commencing, conducting or continuing in any manner, directly or indirectly any suit, action, or other proceeding of any kind against the Debtor, the Estate, the Liquidating Debtor, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date which will be deemed to be withdrawn or dismissed with prejudice);**

52

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES ,  CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

1         **(ii)**    **Enforcing, levying, attaching, executing, collecting, or otherwise**

2    **recovering by any manner or means whether directly or indirectly any judgment,**

3    **award, decree, or order against the Debtor, the Estate, the Liquidating Debtor, the**

4    **Liquidating Trust, or the Liquidating Trustee, their successors, or their respective**

5    **property or assets;**

6         **(iii)**    **creating, perfecting, or otherwise enforcing in any manner, directly or**

7    **indirectly, any lien, security interest or encumbrance against the Debtor, the Estate, the**

8    **Liquidating Debtor, the Liquidating Trust, or the Liquidating Trustee, their successors,**

9    **or their respective property or assets; and**

10    **(iv)**    **proceeding in any manner in any place whatsoever against the Debtor, the**

11    **Estate, the Liquidating Debtor, the Liquidating Trust, or the Liquidating Trustee, their**

12    **successors, or their respective property or assets, that does not conform to or comply with the**

13    **provisions of the Plan.**

14    Nothing in this Section VII. B. or the Confirmation Order shall enjoin or act to enjoin the

15    Purchasers from seeking to enforce against the Debtor, the Estate, the Liquidating Debtor, the

16    Liquidating Trust, or any of their respective property or assets, or the Liquidating Trustee any of

17    Purchasers' rights and remedies under the Amended ASA, the Interim Management and Lease

18    Agreement and the Other Sale Documents or seeking to enforce any of the Debtor's, the Liquidating

19    Debtor's or the Liquidating Trust's liabilities and obligations under the Amended ASA, the Interim

20    Management and Lease Agreement and the Other Sale Documents.

21    **D.**    **Nondischarge of the Debtor.**

22    In accordance with section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will

23    not discharge Claims.  However, no Holder of a Claim may receive any payment from, or seek

24    recourse against, any assets that are to be distributed under the Plan other than assets required to be

25    distributed to that Holder pursuant to the Plan.  **As of the Confirmation Date, all Persons are**

26    **enjoined from asserting against any property that is to be distributed under the Plan any**

27    **Claims, rights, causes of action, liabilities, or Interests based upon any act, omission,**

28    **transaction, or other activity that occurred before the Effective Date except as expressly**

53

1    **provided in the Plan or the Confirmation Order.** Nothing in this Section VII. C. or the

2    Confirmation Order shall enjoin or act to enjoin the Purchasers from seeking to enforce against the

3    Debtor, the Estate, the Liquidating Debtor, the Liquidating Trust, or their respective property or

4    assets, or the Liquidating Trustee  any of Purchasers' rights and remedies under the Amended ASA,

5    the Interim Management and Lease Agreement and the Other Sale Documents or seeking to enforce

6    any of the Debtor's, the Liquidating Debtor's or the Liquidating Trust's liabilities and obligations

7    under the Amended ASA, the Interim Management and Lease Agreement and the Other Sale

8    Documents.

9    **E.        Entry of Final Decree.**

10           Promptly following the Distributions to the Holders of the Unsecured Claims, and the

11    Allowance or Disallowance of all Claims, the Liquidating Debtor or the Liquidating Trustee, as the

12    case may be, will file a motion with the Bankruptcy Court to obtain entry of a final decree closing

13    the Debtor's Case; provided that in no event will the Liquidating Debtor or the Liquidating Trustee

14    file such a motion to until the Transfer Date has occurred.  After entry of the final decree the

15    Liquidating Debtor or the Liquidating Trustee, on behalf of the Liquidating Trust, as the case may

16    be, will be authorized in its sole and absolute discretion to discard or destroy any and all pre-

17    Effective Date books and records, other than any records sold or transferred to the Purchasers

18    pursuant to the Asset Sale Documents, that relate to the Sale, the Closing, the Purchase Notes, the

19    Community Foundation Escrow and the Operating and Capital Needs Escrow or payment of the

20    Subordinated Claims, of the Debtor in the Liquidating Debtor's or Liquidating Trustee's custody or

21    control.  The Purchasers shall have the opportunity to make copies, at Purchasers' expense, of all

22    books and records that are sought to be discarded or destroyed.  The Liquidating Debtor and the

23    Liquidating Trustee will continue to preserve the respective post-Effective Date books and records

24    as well as all books and records that relate to the Sale, the Closing, the Purchase Notes, or the

25    Community Foundation Escrow and the Operating and Capital Needs Escrow, subject to further

26    Bankruptcy Court order.

27

28

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

54

**F.      Post-Effective Date Quarterly Reports and Fees**

After the Effective Date and before the Transfer Date, the Liquidating Debtor shall File all required Quarterly Reports if any, and serve the Quarterly Report on the U.S. Trustee and shall pay all U.S. Trustee Fees if any.  From and after the Transfer Date, the Liquidating Trustee, on behalf of the Liquidating Trust, shall File all required Quarterly Reports if any, and serve the Quarterly Report on the U.S. Trustee and shall pay all U.S. Trustee Fees if any.

**G.      Post-Effective Date Status Reports**

The Liquidating Debtor or the Liquidating Trustee, on behalf of the Liquidating Trust, will file status reports regarding the status of implementation of the Plan every one hundred and twenty (120) days following the entry of the Confirmation Order through date of the entry of a final decree closing the Case pursuant to Local Bankruptcy Rule 3020-1(b), or as otherwise ordered by the Bankruptcy Court.

**H.      Exemption from Stamp, Transfer and Other Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**I.      Withholding and Reporting Requirements**

In connection with the consummation of the Plan, the Liquidating Debtor and the Liquidating Trustee will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder will be subject to any such withholding and reporting requirements.  The Liquidating Debtor or the Liquidating Trustee may reasonably request tax reporting information from persons entitled to receive Distributions under the Plan and may withhold the payment of such Distributions pending the receipt of such tax reporting information.

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

55

**J.      Pre-Confirmation Injunction and Stays**

Unless otherwise provided, all injunctions or stays arising under or entered during the Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date at which time the injunction contained in Section VII.B shall become effective.

**K.      Retention Of Jurisdiction.**

After Confirmation of the Plan and occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including for the following purposes:

1.      To resolve any and all disputes regarding the operation and interpretation of the Plan or the Confirmation Order;

2.      To determine the allowability, classification, or priority of any Claim or interest, based on any objection by the Debtor, the Liquidating Debtor, the Liquidating Trustee or by other parties in interest with standing to bring such objection or proceeding;

3.      To determine the extent, validity, and priority of any lien asserted against property of the Debtor, property of the Estate, Liquidating Debtor's Assets or the Liquidating Trust Assets;

4.      To construe and to take any action to (a) enforce and execute the Plan, the Confirmation Order, and any other order of the Bankruptcy Court; (b) issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order and all matters referred to in the Plan and the Confirmation Order; and (c) determine all matters that may be pending before the Bankruptcy Court in this Case on or before the Effective Date with respect to any Person;

5.      To determine any and all applications for allowance of compensation and reimbursement of expenses of Professionals for periods on or before the Effective Date;

6.      To determine any other request for payment of administrative expenses;

7.      To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Plan or the Confirmation Order;

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

56

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS  ANGELES , CALIFORNIA

8.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

9.      To adjudicate all adversary proceedings and contested matters, if any, initiated by the Liquidating Debtor or the Liquidating Trustee to pursue retained causes of action;

10.     To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters commenced during the Case whether before, on, or after the Effective Date;

11.     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

12.     To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intents and purposes;

13.     To issue injunctions or take such other actions or issue such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order or their implementation by any person or entity;

14.     To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Amended ASA, the Interim Management and Lease Agreement and the Other Sale Documents;

15,     To issue such orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed or vacated; and

16.     To issue such orders in aid of consummation of the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the full extent authorized by the Bankruptcy Code or Bankruptcy Rules.

**L.      Successors And Assigns.**

The rights, benefits and obligations of any entity named or referred to in the Plan are binding on, and will inure to the benefit of, any permitted heirs, executors, administrators, successors or assigns of such entity.

57

**M.    Modification or Withdrawal of the Plan.**

         In accordance with section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule, including amending or modifying it to satisfy the requirements of the Bankruptcy Code; provided that the Debtor shall not modify or amend the Plan in a manner that adversely effects the rights or obligations of the Purchasers without first obtaining the written consent of the Purchasers.  The Debtor reserves the right to withdraw the Plan before the Confirmation Date.

**N.    Effect on Sale.**

         Nothing contained in the Plan or the Confirmation Order shall effect, modify, amend release, waive or alter (a) any of the terms and conditions of the Amended ASA, the Interim Management and Lease Agreement and the Other Sale Documents, (b) any of the obligations and liabilities of the Debtor or its Estate, and any of the obligations and liabilities of the Liquidating Debtor or the Liquidating Trust, as successors, under the Amended ASA, the Interim Management and Lease Agreement and the Other Sale Documents  or (c) any of the rights and remedies of the Purchasers thereunder.  Notwithstanding the description in Section I of the Plan of the terms and conditions of the Community Foundation Escrow Note and the Operating and Capital Needs Escrow Note or anything to contrary otherwise contained in the Plan, the terms and conditions of the Community Foundation Escrow Note and the Operating and Capital Needs Escrow Note shall be those terms and conditions expressly set forth in the form of the Community Foundation Escrow Note and the Operating and Capital Needs Escrow Note executed and delivered by the Purchasers at the Closing.

**O.    Severability of Plan Provisions.**

         If, before Confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision, so long as such alternative interpretation does not materially alter the rights, remedies and distributions under the Plan of parties in interest in this Case.  That term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and

58

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

1  effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will

2  constitute a judicial determination providing that each Plan term and provision, as it may have been

3  altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

4  **P.**    **Exhibits.**

5      Any Exhibits to the Plan that is not filed with the Plan will be Filed not later than the Exhibit

6  Filing Date.  Copies of all such Exhibits not filed and served with the Plan will not be served by any

7  method other than ECF, but will be available upon written request to the Debtor's counsel.

8  **Q.**    **No Admission.**

9      Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or

10  construed in any way as an admission by the Debtor or the Estate with respect to any matter set forth

11  in the Plan , including the amount or allowability of any Claim, or the value of any property of the

12  Estate.

13      Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the

14  Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan will:

15  (a) be deemed to be an admission by the Debtor with respect to any matter discussed in the Plan,

16  including liability on any Claim or the propriety of any Claim's classification; (b) constitute a

17  waiver, acknowledgement, or release of any Claims or any claims held by the Debtor; or

18  (c) prejudice in any manner the rights of the Debtor, the Estate, or the Committee in any further

19  proceedings.

20  **R.**    **General Authority.**

21      The Debtor shall execute such documents, and take such other actions, as are necessary to

22  effectuate the transactions provided for in the Plan.

23  **S.**    **Binding Effect.**

24      The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to

25  the benefit of the Debtor, Holders of Claims, the Liquidating Debtor, the Liquidating Trustee and

26  their respective successors and assigns.

27

28

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

59

**T.  Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including, but not limited to, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure), the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflict of laws thereof.  Unless a rule of law or procedure is supplied by federal law (including, but not limited to, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure), the rights and obligations arising under any agreement, contract, document, or instrument provided for or executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with express choice of law provision in such an agreement, contract, document, or instrument; provided, however, if no rule of law or procedure is supplied by federal law (including, but not limited to, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure) and if no choice of law provision is contained in such an agreement, contract, document, or instrument, such agreement, contract, document, or instrument shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

**U.  Payment Dates.**

Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

**V.  Headings.**

The headings used in the Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affects the construction of the provisions of the Plan.

**W.  No Waiver.**

The failure of the Debtor or any other person to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtor's, Liquidating Debtor's or Liquidating Trustee's right to object to or examine such Claim, in whole or in part.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

60

**X.**    **Post-Effective Date Notice.**

From and after the Effective Date, any Person who desires notice of any pleading or document filed in the Case, or of any hearing in the Court, or of any matter as to which the Bankruptcy Code requires notice to be provided, will file a request for post-effective date notice and will serve the request on the Liquidating Debtor (from the Effective Date to the Transfer Date) or the Liquidating Trustee (from and after the Transfer Date).  Any Person filing such a request will be placed on the Post-Effective Date Notice List.  The U.S. Trustee, the Liquidating Debtor and the Liquidating Trustee will be deemed to have requested post-Effective Date notice and will be placed on the Post-Effective Date Notice List without taking any further action.

## IX.

## CONDITIONS TO CONFIRMATION

The only conditions precedent to Confirmation of the Plan is that Classes 1b, 1c, and 4 have voted to accept the Plan and the Bankruptcy Court shall have entered the Confirmation Order in a form acceptable to the Debtor.

## X.

## RECOMMENDATION AND REQUEST TO CONFIRM PLAN WITHOUT DISCLOSURE STATEMENT

The Debtor believes that confirmation of this Plan is preferable to any other alternative because, in its view, the Plan will provide Holders of Allowed Claims with the maximum recovery.  All Classes, except Classes 1b, 1c and 4, are deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.  The three Holders of the Claims in Classes 1b, 1c, and 4, two of which are co-Proponents of the Plan, have waived their right to receive a disclosure statement.  All Holders of Claims will be served a Notice of the Filing of the Plan and Hearing Thereon and Notice of Motion for Order Confirming the Plan and Holders of Claims in Classes 1b, 1c, and 4 will be served a copy of the Plan, the Motion for Order Confirming the Plan and Ballots.  If Classes 1b, 1c and 4 vote to accept the Plan and return, by the Balloting Deadline, the Ballots to counsel for the Debtor, the Debtor requests confirmation of the Plan under sections 1124 and 1129 of the Bankruptcy Code, without the need for a disclosure statement.

61

90231-002\DOCS_LA:238002.2

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

1

2    Dated: May 10, 2011                    VICTOR VALLEY COMMUNITY HOSPITAL,
                                           a California corporation
3

4                                          _____

5                                          By: Catherine Pelley
                                           Its:  Chief Executive Officer
6    Submitted by:

7    PACHULSKI STANG ZIEHL & JONES LLP

8

9    By:   /s/ Samuel R. Maizel
             Samuel R. Maizel (CA Bar No. 189301)
10           Scotta E. McFarland (CA Bar No. 165391)
             Mary D. Lane (CA Bar No. 071592)
11           Attorneys for Debtor and Debtor in Possession,
             Victor Valley Community Hospital
12

13

14   DANNING, GILL, DIAMOND & KOLLITZ, LLP

15   By: _____
             Richard K. Diamond (CA Bar No. 070634)
16           Steven Schwartz (CA Bar No. 200586)
             Attorneys for Official Committee
17           of Creditors Holding Unsecured Claims

18   WEISS & SPEES

19

20   By: _____
             Michael H. Weiss (CA Bar No. 107481)
21           Attorneys for Physicians Hospital Management
             and Corwin Medical Group, Inc.
22

23

24

25

26

27

28

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

62

90231-002\DOCS_LA:238002.2

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 11th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document ***[PROPOSED] ORDER CONFIRMING SECOND AMENDED LIQUIDATING PLAN OF REORGANIZATION FOR VICTOR VALLEY COMMUNITY HOSPITAL (MAY 10, 2011), AS MODIFIED*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On **May 26, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**By Overnight Mail**
Honorable Catherine Bauer
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 365
Riverside, CA  92501-3819

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 26, 2011 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                        **F 9013-3.1.PROOF.SERVICE**

90231-002\DOCS_LA:238002.2

**NOTE TO USERS OF THIS FORM**:

**1)**  Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)**  The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)  Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4)  Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an
opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) *[ENTERED] ORDER CONFIRMING SECOND
AMENDED LIQUIDATING PLAN OF REORGANIZATION FOR VICTOR VALLEY COMMUNITY HOSPITAL (MAY 10,
2011), AS MODIFIED* was entered on the date indicated as "Entered" on the first page of this judgment or order and will
be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s)
and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and
hyperlink to the judgment or order. As of *May 26, 2011*, the following person(s) are currently on the Electronic Mail Notice
List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated
below.

☒  Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by
United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated
below:

☐  Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which
bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp
by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the
following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es)
indicated below:

☒  Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                              **F 9021-1.1.NOTICE.ENTERED.ORDER**

90231-002\DOCS_LA:238002.2

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"**)

*Allison R Axenrod on behalf of Creditor Claims Recovery Group LLC*
*allison@claimsrecoveryllc.com*

*Martin R Barash on behalf of Interested Party The Senior Associates Group, Inc.*
*mbarash@ktbslaw.com*

*Kirk A Barber on behalf of Creditor Professional Hospital Supply, Inc.*
*barberlawgroup@yahoo.com*

*Manuel A Boigues on behalf of Creditor SEIU United Healthcare Workers - West*
*bankruptcycourtnotices@unioncounsel.net*

*Mark Bradshaw on behalf of Creditor Prime Healthcare Services Foundation, Inc.*
*mbradshaw@shbllp.com*

*Jeff Cohen on behalf of Interested Party Southpaw Asset Management LP*
*JC@SouthpawAsset.com*

*Sanaea Daruwalla on behalf of Attorney Burke, Williams, & Sorensen, LLP*
*sdaruwalla@bwslaw.com*

*Richard K Diamond (TR) on behalf of Creditor Committee Committee Of Creditors, Unsecured Claims*
*jlv@dgdk.com, rdiamond@ecf.epiqsystems.com*

*Abram Feuerstein on behalf of U.S. Trustee United States Trustee (RS)*
*abram.s.feuerstein@usdoj.gov*

*H Alexander Fisch on behalf of Interested Party Victor Valley Acquisition, Inc.*
*afisch@stutman.com*

*Fredric Glass on behalf of Creditor Fair Harbor Capital, LLC*
*fglass@fairharborcapital.com*

*Matthew A Gold on behalf of Creditor Argo Partners*
*courts@argopartners.net*

*Everett L Green on behalf of U.S. Trustee United States Trustee (RS)*
*everett.l.green@usdoj.gov*

*Robert A Hessling on behalf of Interested Party Courtesy NEF*
*rhessling@dgdk.com*

*Lawrence J Hilton on behalf of Creditor Cerner Corporation*
*lhilton@oneil-llp.com, ssimmons@oneil-llp.com*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                    **F 9021-1.1.NOTICE.ENTERED.ORDER**
90231-002\DOCS_LA:238002.2

*Mark D Houle on behalf of Creditor Health Net of California, Inc.*
*mark.houle@pillsburylaw.com*

*Raffi Khatchadourian on behalf of Creditor Sysco Food Services of Los Angeles, Inc.*
*raffi@hemar-rousso.com*

*Maya Krish on behalf of Creditor Fair Liquidity Partners, LLC*
*mkrish@cactuscollect.com*

*Mary D Lane on behalf of Debtor Victor Valley Community Hospital*
*mlane@pszjlaw.com*

*Ganna Liberchuk on behalf of Creditor Hain Capital Group, LLC*
*gliberchuk@haincapital.com*

*Michael B Lubic on behalf of Interested Party LabWest, Inc.*
*michael.lubic@klgates.com*

*Samuel R Maizel on behalf of Attorney Pachulski Stang Ziehl & Jones LLP*
*smaizel@pszjlaw.com, smaizel@pszjlaw.com*

*Elmer D Martin on behalf of Creditor Desert Community Bank, a Division of East West Bank*
*elmermartin@gmail.com*

*Scotta E McFarland on behalf of Debtor Victor Valley Community Hospital*
*smcfarland@pszjlaw.com, smcfarland@pszjlaw.com*

*Robert K Minkoff on behalf of Creditor Jefferies Leveraged Credit Products, LLC*
*rminkoff@jefferies.com*

*Jane Odonnell on behalf of Creditor California Health Facilities Financing Authority*
*jane.odonnell@doj.ca.gov*

*Courtney E Pozmantier on behalf of Interested Party The Senior Associates Group, Inc.*
*cpozmantier@ktbslaw.com*

*Martha E Romero on behalf of Creditor San Bernardino County Tax Collector*
*Romero@mromerolawfirm.com*

*Terrel Ross on behalf of Interested Party TR Capital Management, LLC*
*tross@trcmllc.com*

*Steven J Schwartz on behalf of Attorney DANNING GILL DIAMOND & KOLLITZ, LLP*
*sschwartz@dgdk.com*

*David Scott on behalf of Creditor Centillion Investments LLC*
*centillion@centillioninvest.com*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*Seth B Shapiro on behalf of Interested Party Centers for Medicare and Medicaid Services*
*seth.shapiro@usdoj.gov*

*David P Tonner on behalf of Creditor Archon Bay Capital, LLC*
*operations@blueheroncapital.com*

*United States Trustee (RS)*
*ustpregion16.rs.ecf@usdoj.gov*

*Michael H Weiss on behalf of Interested Party Choice Medical Group*
*mw@weissandspees.com, lm@weissandspees.com;jb@weissandspees.com*

*Andrew F Whatnall on behalf of Creditor DACA 2010L, LP*
*awhatnall@daca4.com*


## III.  **TO BE SERVED BY THE LODGING PARTY**


**Victor Valley Community Hospital**
**Chapter 11 Case No.:  6:10-bk-39537-CB**
**2002 Service List**


**Debtor**
Victor Valley Community Hospital
Catherine M. Pelley
Chief Executive Officer
15248 Eleventh Street
Victorville, CA  92395

**Board of Directors**
Kathy Davis
Chair, Governing Board of Directors
17100 B Bear Valley Rd.
Box 357
Victorville, CA  92395

Charlie Slyngstad
Burke Williams and Sorenson, LLP
444 S. Flower St., Ste. 2400
Los Angeles, CA  90071

<u>United States Trustee</u>
Everett Green
Office of the United States Trustee
3685 Main St., Ste. 300
Riverside, CA  92501

<u>Attorneys for Creditors' Committee</u>
Richard K. Diamond
Steven Schwartz
Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067

<u>Committee Member</u>
Medtronic USA, Inc.
MS V215
3850 Victoria Street North
Shoreview, MN  55126-2978
Representative: Steve Carlson

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

90231-002\DOCS_LA:238002.2

**F 9021-1.1.NOTICE.ENTERED.ORDER**

Committee Member
PHS Professional Hospital Supply
42500 Winchester Road
Temecula, CA 92590
Representative: Kirk Barber

Committee Member
Rodney W. Brown, J.D.
LabWest, Inc.
1821 E. Dyer Rd., Suite 100
Santa Ana, CA 92705

**Government Agencies**

Counsel for the US DHHS/CMS
Phillip Seligman, Esq.
US Department of Justice
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, DC  20044-0875

Wendi A. Horwitz
Deputy Attorney General
California Department of Justice
Office of the Attorney General
300 South Spring St., Suite 1702
Los Angeles, CA 90013

Office of Statewide Health Planning and Development
Cal-Mortgage Loan Insurance Division
400 "R" Street, Suite 470
Sacramento, CA  95811

California Health Facilities Financing Authority
915 Capitol Mall, Suite 590
Sacramento, CA  95814

**Secured Creditors**

Gregg Buxton, Vice President
Desert Community Bank
a Division of East West Bank
14800 La Paz Drive
Victorville, CA  92395

Corwin Medical Group
Manmohan Nayyar, MD
Raman Poola, MD
Anna Sugi
18564 Hwy 18, Suite 110
Apple Valley, CA  92307

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9021-1.1.NOTICE.ENTERED.ORDER**

90231-002\DOCS_LA:238002.2

Manmohan Nayyar, MD
Physicians Hospital Management, LLC
18523 Corwin Rd., Suite H
Apple Valley, CA  92307

Attorneys for PHM
Michael S. Weiss, Esq.
Weiss & Spees
1925 Century Park East, Suite 650
Los Angeles, CA 90067-

2701 Commonwealth Land Title Company
801 South Figueroa Street, Suite 870
Los Angeles, CA  90017

BNY Mellon Trust Company NA
700 South Flower Street, Suite 500
Los Angeles, CA  90017
Attention:  Aaron Masters

Counsel to the Indenture Trustee for the HFFA Bonds
Catherine D. Meyer
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406

**Interested Parties**

Thomas L. Driscoll, Esq.
Attorney at Law
2002 3rd St Apt 114
San Francisco, CA 94107

Biotronik
Attention:  Allen Trammell
6024 Jean Road
Lake Oswego, Oregon  97035

Delta One Partners, Inc.
Corporate Headquarters South
48550 North View Drive
Palm Desert, CA  92260

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9021-1.1.NOTICE.ENTERED.ORDER**

90231-002\DOCS_LA:238002.2

Attorneys for LabWest, a subsidiary of LabCorp.
Michael Benjamin Lubic
K&L Gates
10100 Santa Monica Blvd., 7th Floor
Los Angeles, California  90067

Law Offices of Leslie M. Lava
207 2nd St #A
Sausalito, CA 94965

Westhoff, Cone & Holmstedt:
500 Ygnacio Valley Road, Suite 380
Walnut Creek, CA 94596

Davis Wright Tremaine LLP
64 Oak Knoll Drive
San Anselmo, CA  94960

Daniel Settelmayer, Esq.
Latham & Watkins LLP
PO Box 894256
Los Angeles, CA  90189-4256

Stalking Horse Bidder
Prime Healthcare Services Foundation, Inc.
Attn: Lex Reddy
Chief Executive Officer
3300 East Guasti Road, 2nd Fl.
Ontario, CA  91761

Counsel for Prime Healthcare Services Foundation, Inc.
Lee Shulman
Mark Bradshaw
Shulman Hodges & Bastian LLP
26632 Towne Centre Drive, Ste. 300
Foothill Ranch, CA  92610

J. Raymond Elliott
President and Chief Executive Officer
Boston Scientific
re: Guidant Corporation
One Boston Scientific Place
Natick, MA 01760-1537

Johnson & Johnson Health Care Systems Inc.
425 Hoes Lane
Piscataway, NJ 08854

Radiometer America, Inc.
810 Sharon Drive
Westlake, OH 44145

Quadramed
Attention:  Penny W. Collings
QuadraMed Corporation
12110 Sunset Hills Road # 600
Reston VA 20190

Stephen M. O'Hara
President and CEO
Angelica Textile Services (R-Colton
1105 Lakewood Parkway #210
Alpharetta, GA  30009

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                          **F 9021-1.1.NOTICE.ENTERED.ORDER**

90231-002\DOCS_LA:238002.2

**Requests for Special Notice**

Attorneys for Professional Hospital Supply
Kirk Barber
Kirk Barber Law Group, A.P.L.C.
42500 Winchester Road
Temecula, CA  92590

Attorneys for Creditor OSHPD and the
CA Health Facilities and Financing Authority
Jane O'Donnell
Deputy Attorney General Dept of Justice
Office of the Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550

Attorneys for Cerner Corporation
Lawrence J. Hilton
O'Neil LLP
19900 MacArthur Boulevard; Suite 1050
Irvine, California 92612

DARRELL W. CLARK
Stinson Morrison Hecker LLP
1150 18th Street, NW; Suite 800
Washington, DC 20036-3816

Counsel for The Senior Associates Group
Klee, Tuchin, Bogdanoff & Stern LLP
Attn: Thomas E. Patterson, Esq. and
Martin R. Barash, Esq.
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049

Counsel for The Senior Associates Group
Michael C. Kelcy, Esq.
3605 Canon Blvd.
Altadena, CA 91001

Attorneys for Health Net
Mark D. Houle, Esq.
Pillsbury Winthrop Shaw Pittman LLP
650 Town Center Drive, Suite 700
Costa Mesa, California 92626-7122

Attorneys for County of San Bernardino
Martha E. Romero
Romero Law Firm
BMR Professional Building
6516 Bright Avenue
Whittier, CA  90601

Seth B. Shapiro, Trial Attorney
U.S. Department of Justice - Civil Division
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044

Attorneys for Victor Valley Hospital Real Estate
LLC and Victory Valley Hospital Acquisition, Inc.
Gary E. Klausner
H. Alexander Fisch
Jeffrey A. Resler
Stutman, Treister & Glatt PC
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Victor Valley Hospital Real Estate, LLC
6800 Indiana Avenue, Suite 130
Riverside, CA  92506
Attention:  William E. Thomas, Esq.

Victor Valley Hospital Acquisition, Inc.
6800 Indiana Avenue, Suite 130
Riverside, CA  92506
Attention:  William E. Thomas, Esq.

Tin Kin Lee on behalf of Creditor Inland
Empire Health Plan
Tin Kin Lee Law Offices
55 S Lake Ave Ste 705
Pasadena, CA 91101

Liquidity Solutions Inc
One University Plaza
Ste 312
Hackensack, NJ 07601

Tannor Partners Credit Fund II, LP
200 Business Park Drive, Suite 200
Armonk, NY 10504

Attorney for Creditor, Peggy Buckley
Michael Grennier
Law Offices of Steve Pell
2633 Loma Vista Road
Ventura, CA  93003-1548

State Board Of Equalization
P O Box 942879
Sacramento, CA 94279-0055

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9021-1.1.NOTICE.ENTERED.ORDER**

90231-002\DOCS_LA:238002.2